# UNITED STATES DISTRICT COURT

## DISTRICT OF COLUMBIA

| | |
|---|---|
| Lawrence E. Tannas, Jr., an individual dba Tannas Electronics; Tannas Electronic Displays, Inc., a California corporation <br><br> Plaintiffs, <br><br> v. <br><br> BAE Systems Avionics Limited, a British Corporation; BAE Systems Electronics Limited, a British corporation <br><br> Defendants. | Case No. 05-1866 (RWR) <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF PLAINTIFFS, LAWRENCE E. TANNAS, JR. AND TANNAS ELECTRONIC DISPLAYS, INC., TO TRANSFER UNDER 28 U.S.C. § 1404(a)** <br><br> **Hon. Richard W. Roberts** |

COME NOW the Plaintiffs, Lawrence E. Tannas, Jr. and Tannas Electronic Displays, Inc., by counsel, and hereby file their Memorandum of Points and Authorities in Support of Tannas Motion to Transfer Under 28 U.S.C. § 1404(a) as follows:

# Table of Contents

Table of Authorities .......................................................................................................... iii

I.    FACTUAL BACKGROUND. ................................................................................. 1

II.   THE LEGAL STANDARD FOR VENUE TRANSFER UNDER 28 U.S.C. § 1404(a). ..... 4

III.  THE § 146 CAUSE OF ACTION WAS PROPERLY BROUGHT IN THE DISTRICT
      COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA. .......................................... 7

      A. 35 U.S.C. § 146 Permits the District Court for the Central District of California to
      Review the Board's Decision ..............................................................................7

      B. BAE  System is Subject to Personal Jurisdiction Within the Central District of
      Califonia ............................................................................................................9

            1. BAE System is Subject to Personal Jurisdiction in the Central District of
            California Because its Agent, BAE Avionics, Admitted to Jurisdiction ...........10

            2. BAE System is Subject to Personal Jurisdiction in the Central District of
            California Based on General Jurisdiction ..............................................12

            3. BAE System is Subject to Personal Jurisdiction in the Central District of
            California Based on Specific Jurisdiction ..............................................14

IV.   PRIVATE AND PUBLIC INTERESTS FAVOR TRANSFERRING THE § 146 ACTION
      TO THE CENTRAL DISTRICT OF CALIFORNIA. ......................................................... 16

      A. Significant Deference Should be Given to Tannas' Choice to Litigate the § 146 Cause of
      Action in the Central District of California. ........................................................ 16

      B. The Inventive Acts on the Part of Mr. Tannas Occurred Within the Central District of
      California. ............................................................................................................. 17

      C. The Central District of California is More Convenient For Mr. Tannas........................ 18

      D. The Central District of California is More Convenient for Most of the Anticipated
      Witnesses. ............................................................................................................. 19

      E. Several of Mr. Tannas' Witnesses May Be Unable to Testify Should The Case Remain in
      the District of Columbia............................................................................................. 20

      F. Ease of Access to Proof Does Not Weigh For or Against Transfer. .............................. 21

      G. The Central District of California is Well-Equipped to Review the Board's Decision.. 21

i

H. California Has a Strong Interest in Protecting California Inventors. .............................. 22

V.    CONCLUSION. ...................................................................................................... 22

## Table of Authorities

## Cases

Air Line Pilots Ass'n v. Eastern Air Lines, 672 F. Supp. 525, 527 (D. D.C. 1987)...................... 22

Automotive Products v. Tilton Engineering, 1994 U.S. Dist. LEXIS 21642 (C.D. Cal. 1994) ... 23

Cell Genesys, Inc. v. Applied Research Systems ARS Holding N.V. 2005 U.S. Dist. LEXIS
10152, *5 (D. D.C. 2005) ........................................................................................ 4, 5, 8, 9

Chan v. Society Expeditions, Inc., 39 F.3d 1398, 1405-06 (9th Cir. 1994) .................................. 13

Conversion Chemical Corp. v. Gottschalk, 341 F. Supp. 754, 174 U.S.P.Q. 346 (D. Conn. 1972)9

Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 435 (2nd Cir. 2005)................................... 5

Eastman Kodak Co. v. Duracell, Inc., 1998 U.S. Dist. LEXIS 17623; 48 U.S.P.Q.2d 1061 (D.
D.C. 1998)........................................................................................................................... 7

Haisten v. Grass Valley Medical Reimbursement Fund Ltd., 784 F.2d 1392, 1397 (9th Cir. 1986)
................................................................................................................................................ 15

Harris Rutsky & Co. Insurance Services, Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1134 (9th
Cir. 2003) ...................................................................................................... 10, 13, 14, 15

Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415 n. 9 (1984). ................. 12

Id. ............................................................................................................................... 8, 13

International Shoe Co. v. Washington, 326 U.S. 310 (1945) ....................................................... 10

Myers v. Bennett Law Offices, 238 F.3d 1068, 1072 (9th Cir. 2001).......................................... 14

Phillips v. Seiter, 173 F.3d 609, 610 (7th Cir. 1999)................................................................... 5

Plumley v. Mockett, 1998 U.S. Dist. LEXIS 23501 (C.D. Cal. 1998) ..................................... 6, 22

Roofing & Sheet Metal Services, Inc. v. La Quinta Motor Inns, Inc., 689 F.2d 982, 989 (11th Cir.
1982) ....................................................................................................................................... 5

Sher v. Johnson, 911 F.2d 1357, 1362 (9th Cir. 1990) ............................................................. 14

Slip Track Sys. v. Metal Lite, Inc., 2003 U.S. Dist. LEXIS 26098 (C.D. Cal. 2003) ................... 6

Southern Utah Wilderness Alliance v. Gale Norton ................................................................... 23

Southern Utah Wilderness Alliance v. Gale Norton, 315 F. Supp. 2d 82, 85 (D. D.C. 2004) ..... 21

Standard Oil Co. v. Montecatini Edison S.A., 342 F. Supp. 125, 132 (D. Del. 1972) .............. 7, 8

Thayer/Patricof Educ. Funding LLC v. Pryor Resources, Inc., 196 F. Supp. 2d 21 (D. D.C. 2002)
................................................................................................................................................ 5, 22

Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) ...................................................................... 4

Wang Lab. v. Mitsubishi Elecs. Am., 1994 U.S. Dist. LEXIS 17749 (C.D. Cal. 1994) .............. 22

Winner Int'l Royalty Corp. v. Wang, 202 F.3d 1340, 1347-48 (Fed. Cir. 2000) ........................ 18

## Statutes

28 U.S.C. § 1404(a) ................................................................................................. 4

35 U.S.C. § 101 ....................................................................................................... 1

35 U.S.C. § 112 ....................................................................................................... 2

35 U.S.C. § 1338(a) ................................................................................................. 8

35 U.S.C. § 135......................................................................................................... 1, 18

35 U.S.C. § 146.......................................................................................................... 2, 7, 17

California Civil Procedure Code § 410.10............................................................................. 9

Fed. R. Civ. Pro. 45 (c)(3)(B)(iii) ...................................................................................... 21

I.      FACTUAL BACKGROUND.

The present dispute principally concerns whether Mr. Lawrence E. Tannas, Jr. ("Mr. Tannas") was the first to invent a process for changing the shape of or "resizing" liquid crystal displays ("LCDs"). The US Patent Office (the "PTO") grants patents to those individuals who are the first to invent (rather than the first to file for patent protection). 35 U.S.C. § 101. Within the PTO, the Board of Patent Appeals and Interferences (the "Board") declares "interferences" to determine who was the first to invent any subject matter in dispute. See 35 U.S.C. § 135. In the present case, on April 14, 2003, the Board initiated Interference No. 105,096 ("the Interference") between two patents owned by Mr. Tannas, US Patent Nos. 6,204,906 and 6,380,999 ("the Tannas patents"), and patent application Serial No. 09/529,201 naming David S. Watson as inventor ("the Watson application").[1]

While the Interference was pending before the Board, Mr. Tannas and his company, Tannas Electronic Displays, Inc. (collectively referred to herein as "Tannas") sued BAE Systems, PLC ("BAE Systems"), the real party in interest to the Watson application, BAE Systems Avionics Limited ("BAE Avionics"), and BAE Systems Electronics Limited (collectively "the BAE Systems entities") in the District Court for the Central District of California (hereinafter "the California case"). English Decl. ¶ 7. Based upon a threatening letter sent by BAE Systems' attorney to Mr. Tannas in California, Mr. Tannas brought the California case seeking, among other relief, declaratory judgment that Mr. Tannas did not breach any contract or misappropriate any trade secrets from the BAE Systems entities. Id.

In a Final Decision in the Interference dated May 9, 2005, the Board concluded that Mr. Tannas failed to demonstrate sufficiently that he was diligent (or excused) in reducing to practice

---

[1] At the time the Interference was initiated, the Watson application was assigned to BAE Systems Avionics Limited. In April 2005, the Watson application was transferred to BAE Systems, PLC. English Decl. ¶ 3. In a brief filed September 28, 2004, BAE Systems, PLC admitted that it was the real party in interest to the Watson application. English Decl. ¶ 4.

1

the resizing process claimed in the Tannas patents before the constructive reduction to practice of

the Watson application. English Decl. ¶ 5. Based upon this conclusion, the Board awarded

priority of invention to David S. Watson – i.e., that Watson was the "first to invent." Id. In

addition, before issuing its Final Decision, the Board held that certain claims in the Tannas

patents were unpatentable for failing to comply with the "best mode" requirement of 35 U.S.C. §

112, ¶1. English Decl. ¶ 6. On May 19, 2005, Mr. Tannas timely amended his complaint in the

California case to include a cause of action under 35 U.S.C. § 146, *inter alia*, to overturn the

Board's decision on priority of invention and patentability. English Decl. ¶ 7.

On September 2, 2005, the California court transferred the § 146 cause of action to this

Court, erroneously concluding that any civil action brought under 35 U.S.C. § 146 against a

foreign defendant (i.e., the BAE Systems entities) must be filed in the District Court for the

District of Columbia.[2] Id. Subsequent to the § 146 cause of action being transferred, the parties

to the California case reached a settlement on the remaining causes of action, and the California

case was dismissed. Id. Consequently, the present action is the only pending lawsuit between

Tannas and BAE Systems.

Earlier, because of a personal jurisdiction challenge by the BAE Systems entities in the

California case, the California court permitted Tannas to undertake discovery by written

interrogatories to gather information regarding contacts of the BAE Systems entities with

California. However, the BAE Systems entities' responses were wholly insufficient in that they

provided little or no responsive information and did not clarify the extent of California contacts

for the BAE Systems entities. English Decl. ¶¶ 14-18. For example, an Order dated December

1, 2004 issued in the California case required BAE Avionics to provide revised responses to

---

[2] The other causes of action were dismissed without prejudice, *inter alia*, because Tannas had failed to make a prima facie showing of personal jurisdiction, but with leave to amend to plead additional bases for personal jurisdiction over the BAE Systems entities. English Decl. ¶ 7. The case was settled and dismissed before the issue of personal jurisdiction was ultimately decided. Id.

2

Tannas' discovery requests by January 3, 2005. English Decl. ¶ 15. On the deadline date of January 3, 2005, instead of providing verified responses to the discovery requests, and despite the court's Order, BAE Avionics' counsel sent a letter to Tannas' counsel naming conditions required for answering some of the interrogatories, while stating that other responses previously provided were "sufficient." English Decl. ¶ 16.

On April 5, 2005, the Court in the California case issued an Order in response to another motion to compel discovery filed by Tannas, requiring BAE Avionics to provide more detailed responses to the interrogatories, spanning the time period of January 2002 to the present, because BAE Avionics only provided one year's worth of information in their previous responses. English Decl. ¶ 17. The Defendants also failed to provide verified responses to the interrogatories within the time specified in that Court Order. English Decl. ¶¶ 16-18.

Before BAE Avionics actually submitted its responses, however, on April 14, 2005, BAE Avionics and BAE Systems executed an assignment agreement transferring ownership of the Watson application from BAE Avionics to BAE Systems. English Decl. ¶¶ 19, 34. At that time, BAE Systems was not named in the lawsuit, and therefore BAE Systems never provided any responses to Tannas' interrogatories related to personal jurisdiction. After ownership of the patent application was transferred from BAE Avionics to BAE Systems, on June 13, 2005, BAE Avionics' counsel then admitted that BAE Avionics would not contest personal jurisdiction in California, without any mention of the transfer or the involvement of BAE Systems. English Decl. ¶ 20. Not only had BAE Avionics provided inadequate and belated responses to interrogatories pertaining to its California contacts, but BAE Avionics and BAE Systems played a "shell-game" by changing ownership of the Watson application, making it difficult to ascertain California contacts for the proper party for the purpose of personal jurisdiction.

3

Because BAE Systems and BAE Avionics stonewalled Tannas' attempts to determine the extent of their contacts in California, Tannas has resorted to searches of publicly-available information to support its motion. Importantly, however, BAE Avionics, the agent of BAE Systems for the Watson application, has already admitted that it is subject to personal jurisdiction in the Central District of California. English Decl. ¶ 20. In addition, Tannas has accumulated sufficient evidence of BAE Systems' contacts to show that the Central District of California has personal jurisdiction over BAE Systems.

By this motion, Plaintiffs seek to transfer the case back to the District Court for the Central District of California, where Tannas originally brought the action, and from where it was improperly transferred based upon an erroneous interpretation of 35 U.S.C. § 146.

II.     THE LEGAL STANDARD FOR VENUE TRANSFER UNDER 28 U.S.C. § 1404(a).

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The underlying purpose of the venue transfer statute is to prevent avoidable waste of time, energy, and money, as well as to protect parties, witnesses, and the public against prejudice, inconvenience and expense. Van Dusen v. Barrack, 376 U.S. 612, 616 (1964); Cell Genesys, Inc. v. Applied Research Systems ARS Holding N.V. 2005 U.S. Dist. LEXIS 10152, *5 (D. D.C. 2005). In deciding whether to transfer, an initial inquiry is made on whether Tannas could have properly brought this action in the District Court for the Central District of California. Cell Genesys at *6, citing Thayer/Patricof Educ. Funding LLC v. Pryor Resources, Inc., 196 F. Supp. 2d 21 (D. D.C. 2002).

After this initial determination, the private and public interests at stake are then weighed to determine whether transfer is warranted. Id. at *6. The private interests include: (1) the

4

plaintiff's choice of forum; (2) the defendant's choice of forum; (3) where the claim arose; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof. Id. The public interest considerations include: (1) the relative familiarity with the governing law by the transferee and transferor courts; (2) the relative congestion of the calendars of each court; and (3) any local interest in deciding local controversies.[3] Id.

In addition, nothing prevents this court from transferring the case back to California. Roofing & Sheet Metal Services, Inc. v. La Quinta Motor Inns, Inc., 689 F.2d 982, 989 (11th Cir. 1982) ("Although, of course, a district court cannot perform an appellate function by directly reviewing the decisions of another district court, there is nothing to prevent the district court in Alabama from independently considering a motion to retransfer.") Also, this court has considerable discretion in deciding whether to transfer a case in the interest of justice. Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 435 (2nd Cir. 2005) citing Phillips v. Seiter, 173 F.3d 609, 610 (7th Cir. 1999).

As explained in detail below, the present case should be transferred because the § 146 action was first properly brought in the District Court for the Central District of California, and was improperly transferred to this Court based on an erroneous interpretation of 35 U.S.C. § 146. Moreover, both the private and public interest factors weigh heavily in favor of transferring the case back to California. The Central District of California was Tannas' initial forum choice. The dispute concerns an invention that, at least with respect to the activities of Mr. Tannas, was conceived and later reduced to practice in California. In addition, Mr. Tannas, his attorneys,[4] and most of his anticipated witnesses reside in Southern California. Importantly, not a single

---

[3] It should be noted that traditionally, "federal courts accord considerable deference to the plaintiffs choice of forum." S.L. Sakansky & Assoc. v. Allied Amer. Adjusting Co. of Fla., U.S. Dist. LEXIS 22167, *15 (M.D. Fla. 2006) citing In re RICOH Corp., 870 F.2d 570, 573 (11th Cir. 1989).
[4] In addition to Mr. Tannas' California counsel, Mr. Tannas has had to hire local D.C. counsel to appear in this action.

witness who testified during the Board proceedings resides within the District of Columbia. In addition, some of Mr. Tannas' witnesses are likely not willing or able to testify at a trial held in the District of Columbia. Any uncooperative witnesses, however, may be compelled to testify, for example, by trial subpoena should the case be transferred back to California.

With respect to the public interest factors, judges within the Central District of California are well equipped to deal with the patent law issues implicated in a § 146 proceeding. <u>Plumley v. Mockett</u>, 1998 U.S. Dist. LEXIS 23501 (C.D. Cal. 1998) (court reviewed decision by Board of Patent Appeals and Interference in an interference proceeding) (amended by, remanded by <u>Plumley v. Mockett</u>, 1999 U.S. Dist. LEXIS 23308 (C.D. Cal. 1999)); <u>Slip Track Sys. v. Metal Lite, Inc.</u>, 2003 U.S. Dist. LEXIS 26098 (C.D. Cal. 2003)(judgment entered on patent interference)(motion for new trial denied <u>Sliptrack Sys. v. Metal Lite, Inc.</u>, 2003 U.S. Dist. LEXIS 26099 (C.D. Cal. 2003)); also see "Something Old Or Something New. But How New?", American Bar Association, Business Law Today, Vol. 12, No. 4, Mar/Apr. 2003, http://www.abanet.org/buslaw/blt/2003-03-04/pooley.html (stating that the Central District of California has developed "special expertise over the years in handling patent claims" and is one of five district courts handling most patent cases). Finally, California has a strong interest in protecting the inventions of its residents.

Finally, the only reason this action is currently pending in this Court is because the California court improperly transferred it here based upon an erroneous interpretation of 35 U.S.C. § 146. Presuming personal jurisdiction was proper in California, there is no basis for this action to have been transferred here in the first place. Yet Tannas has no remedy of appeal, reconsideration, or anything else in California, because procedurally the action was, in fact, transferred here to this Court. Tannas' remedy is thus to seek relief from this Court to have the case transferred back to the Central District of California where it was properly brought by

6

Tannas. Even if personal jurisdiction was not proper in California, that determination should have been made by the California court, not by this Court.

III.    THE § 146 CAUSE OF ACTION WAS PROPERLY BROUGHT IN THE DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA.

    A.    35 U.S.C. § 146 Permits the District Court for the Central District of California to Review the Board's Decision.

        A party like Tannas who is dissatisfied with a decision rendered by the Board in an Interference proceeding can have that decision reviewed by a district court. 35 U.S.C. § 146. When the party in position of defendant is foreign-based, 35 U.S.C. § 146 is clear and unambiguous.[5] It authorizes "jurisdiction;" it does not mandate "exclusive jurisdiction."[6] This Court has recognized this, stating that § 146 provides this Court with "special long-arm jurisdiction beyond that conferred by the D.C. Code." See Eastman Kodak Co. v. Duracell, Inc., 1998 U.S. Dist. LEXIS 17623; 48 U.S.P.Q.2d 1061 (D. D.C. 1998) (citing Standard Oil Co. v. Montecatini Edison S.A., 342 F. Supp. 125, 132 (D. Del. 1972)). That is not to say, however, that a § 146 action involving a foreign party in the position of defendant **must** be brought within the District Court for the District of Columbia. Instead, as this Court has recently recognized in Cell Genesys, 35 U.S.C. § 146 "simply ensures that a forum is available . . . where one party is a resident of a foreign country." Id. at *10. Consequently, as acknowledged by this Court, an action brought pursuant to § 146 against a foreign defendant "does ***not*** require that [it] be filed in the District of Columbia." Id. (emphasis added).

---

[5] 35 U.S.C. § 146 states that "Any party to an interference dissatisfied with the decision of the Board of Patent Appeals and Interferences may have remedy by civil action . . . . If there be adverse parties residing in a plurality of districts not embraced within the same state, or an adverse party residing in a foreign country, the United States District Court for the District of Columbia shall have jurisdiction and may issue summons against the adverse parties directed to the marshal of any district in which any adverse party resides."

[6] See, e.g., 28 U.S.C. § 1338(a), which clearly distinguishes between "jurisdiction" and "exclusive jurisdiction" ["The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases. "

7

Furthermore, this previous interpretation of § 146 by this Court comports with the views of other District Courts on this subject. For example, in <u>Standard Oil</u>, the Delaware District Court reviewed the statutory language of § 146, its legislative history, and cases decided under its provisions and concluded that that there was no support for the notion that § 146 conferred *exclusive* subject matter jurisdiction upon the District of Columbia Court. <u>Standard Oil</u>, at 129. In <u>Standard Oil</u>, Montecatini, a foreign corporation, argued that the review of the Board's decision pursuant to § 146 was exclusively vested in the District Court for the District Court of Columbia. <u>Id.</u> at 129. Similar arguments were made with respect to venue. <u>Id.</u> at 131. After an exhaustive review of § 146 and its subsequent history, the District Court rejected both contentions. <u>Id.</u> at 131, 133. Simply put, 35 U.S.C. § 146 was never intended to circumscribe the jurisdiction of district courts over civil actions arising under U.S. patent laws. <u>Id.</u> at 131 (stating § 146 does not constrict the grant of subject matter jurisdiction of district courts over civil actions under the patent laws as conferred by 35 U.S.C. § 1338(a)).

Consequently, the District Court for the Central District of California, like every other district court in this country, is vested with authority to review the adverse decision rendered by the Board under 35 U.S.C. § 146. To the extent that other district courts have come to the opposite conclusion, they are flatly wrong, and have generally done so without the detailed analysis of § 146, its legislative history, and subsequent cases. <u>See e.g.</u>, <u>Conversion Chemical Corp. v. Gottschalk</u>, 341 F. Supp. 754, 174 U.S.P.Q. 346 (D. Conn. 1972) (stating in a footnote that because the adverse party is a resident of a foreign country, venue is proper only in U.S. District Court of the District of Columbia). As recently as 2005, however, this Court has interpreted that § 146 grants **any** district court jurisdiction over a foreign defendant. <u>See</u> <u>Cell Genesys</u> at *10. Thus, when Tannas filed the current § 146 cause of action in the District Court

for the Central District of California, subject matter jurisdiction was proper. The California

court's transfer of this action to this Court was based upon an erroneous interpretation of § 146.

      B.     <u>BAE Systems is Subject to Personal Jurisdiction Within the Central District of California</u>.

First and foremost, Tannas submits that the underlying question of personal jurisdiction

should be decided by the California court. This Court should not be burdened with making such

a determination when the only reason this action is in this Court now is because the California

court improperly transferred it here based upon an erroneous legal conclusion that there was no

subject matter jurisdiction.

However, if this Court does decide the issue of personal jurisdiction in California, the

starting point in determining whether the Central District of California had personal jurisdiction

over the BAE Systems entities at the time the action was filed, is the California long-arm statute.

<u>Glencore Grain Rotterdam v. Shivnath Rai Harnarain Co.</u>, 284 F.3d 1114, 1123 (9th Cir. 2002).

California's long-arm statute permits the exercise of personal jurisdiction to the limits of due

process. California Civil Procedure Code § 410.10. Due process is satisfied when a nonresident

defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit

does not offend 'traditional notions of fair play and substantial justice.'" <u>Glencore</u>, 284 F.3d at

1123, quoting <u>International Shoe Co. v. Washington</u>, 326 U.S. 310 (1945). A federal court may

have general or specific jurisdiction over the defendant, depending upon the nature of the foreign

defendant's contacts with the jurisdiction. <u>Glencore</u>, 284 F.3d at 1123.

In the present case, the District Court of the Central District of California could have

properly exercised personal jurisdiction over the BAE Systems entities because their contacts

were and are substantial, continuous, and systematic, warranting general jurisdiction over the

BAE Systems entities. Alternatively, as explained below, the District Court of the Central

9

District of California had personal jurisdiction over BAE Systems, based upon either specific

jurisdiction or based upon the admission by BAE Avionics to jurisdiction in California.

    1.  BAE Systems is Subject to Personal Jurisdiction in the Central District of California Because its Agent, BAE Avionics, Admitted to Jurisdiction.

As a general rule, under California law, a parent-subsidiary relationship alone is

insufficient to attribute the contacts of the subsidiary to the parent for jurisdictional purposes.

Harris Rutsky & Co. Insurance Services, Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1134 (9th

Cir. 2003).  However, the Ninth Circuit recognizes two exceptions to this rule.  A subsidiary's

contacts may be imputed to the parent (1) where the subsidiary is the parent's alter ego, or (2)

where the subsidiary acts as the general agent of the parent.  Id. at 1134.

Here, after initial resistance, BAE Avionics ultimately did not contest jurisdiction in the

Central District of California.  English Decl. ¶ 20.  Up until April 29, 2005, BAE Avionics was

the record owner of the Watson application, based upon assignments recorded with the US

Patent Office.  English Decl. ¶¶ 3, 19, 34.  However, in a brief filed on September 28, 2004 in

the Interference, counsel for BAE Avionics admitted that they represented "the real party in

interest in this interference, namely BAE Systems, PLC (BAES)."  English Decl. ¶ 4.  Based

upon this admission, BAE Avionics clearly was acting as BAE Systems' agent or alter ego in the

Interference, which is the very subject matter of the present action.

Further, BAE Avionics was merged on April 29, 2005 to form a new entity, Selex

Sensors and Airborne Systems, into which the assets of BAE Avionics were transferred.  English

Decl. ¶ 8, 34-36.  Shortly before this dissolution occurred, specifically on April 14, 2005, the

Watson application was assigned to BAE Systems, rather than transferred to Selex.  English

Decl. ¶ 3.  This further supports that BAE Avionics was acting as the agent or alter ego for BAE

Systems, since the Watson application was transferred separately to BAE Systems, rather than to

10

the new entity, Selex, with the other assets of BAE Avionics. Further, since BAE Avionics was the record assignee of the Watson application from the beginning of the Interference until shortly before the final decision by the Board, BAE Avionics clearly was BAE Systems' agent or alter ego.

Finally, on June 8, 2005, when counsel for BAE Avionics admitted that BAE Avionics did not contest jurisdiction in California, BAE Avionics no longer existed. English Decl. ¶ 8. Thus, unless this admission by BAE Avionics is attributed to the real party in interest, BAE Systems, the admission was a sham. Since BAE Avionics no longer existed, the admission could only have been part of a bait-and-switch, in which the Watson application was transferred from the admitting party to another party, namely the admitting party's own parent corporation. Such evasive gamesmanship should not be permitted to avoid personal jurisdiction in California.

For these reasons alone, BAE Systems should be subject to personal jurisdiction in the Central District of California.

> 2. BAE Systems is Subject to Personal Jurisdiction in the Central District of California Based on General Jurisdiction.

A district court may have general jurisdiction over a foreign defendant if the foreign defendant's contacts are substantial, continuous, and systematic, even if the suit concerns matters not arising out of such contacts with the forum. Glencore, 284 F.3d at 1123, citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415 n. 9 (1984). In this case, BAE Systems has engaged in substantial, continuous, and systematic contacts in California that establish general jurisdiction in California. Such contacts include:

- BAE Systems has engaged in substantial business activity and teamed with California-based companies to carry out various U.S. and international projects. English Decl. ¶¶ 21-24.

11

- BAE Systems has engaged in a lease agreement to use California real property to support company operations.  English Decl. ¶¶ 25-26.

- BAE Systems has a California team to collaborate with other U.S. companies, including a company headquartered in California, on a major U.S. Department of Defense project, for which many of the project's activities occur in California. English Decl. ¶¶ 27-29.

- BAE Systems has made approximately twenty million dollars ($20,000,000) of sales in California, an amount that BAE Avionics describes as "miniscule." English Decl. ¶ 30.

- BAE Systems has held career and open-house events in Los Angeles and San Diego, California as part of its job recruiting efforts.  English Decl. ¶30.

All of these references demonstrate BAE Systems' extensive business activity in California. Furthermore, these activities are attributable to BAE Systems and not to any subsidiary or affiliate of BAE Systems.

To the extent that BAE Systems attempts to pawn these activities off to corporate subsidiaries, these contacts can be imputed to the corporate parent, BAE Systems.  As explained above, a parent-subsidiary relationship alone is insufficient to attribute the contacts of the subsidiary to the parent for jurisdictional purposes.  <u>Harris Rutsky & Co. Insurance Services, Inc. v. Bell & Clements Ltd.</u>, 328 F.3d 1122, 1134 (9th Cir. 2003).  However, this case falls within one of two exceptions recognized by the Ninth Circuit:  (1) where the subsidiary is the parent's alter ego, or (2) where the subsidiary acts as the general agent of the parent.  <u>Id.</u> at 1134.

Here, the alleged subsidiaries, BAE Avionics in particular, of BAE Systems are acting as agents of the parent BAE Systems.  The agency test is satisfied if it is shown that the subsidiary represents the parent corporation by performing services "sufficiently important to the [parent]

12

corporation that if it did not have a representative to perform them, the [parent] corporation …
would undertake to perform substantially similar services." Id. at 1135, quoting Chan v. Society
Expeditions, Inc., 39 F.3d 1398, 1405-06 (9th Cir. 1994). On its corporate website, BAE Systems
describes itself as follows: "*BAE Systems* is an international company engaged in the
development, delivery and support of advanced defence and aerospace systems in the air, on
land, at sea and in space." (Italics added.) English Decl. ¶ 32. Furthermore, BAE Systems holds
itself out to the public as a single entity, "BAE Systems," issuing a single Annual Report on
behalf of all of its entities. English Decl. ¶¶ 8, 21-29, 31, 32.

Regarding agency theory, all of the business activity that BAE Systems conducts in
California, as shown above, is sufficiently important to BAE Systems in that the activity
concerns BAE Systems' core business, namely, the development and sale of defense and
aerospace systems used in commercial and military applications. English Decl. ¶ 8. These
services are "sufficiently important" to BAE Systems, because they all relate to BAE Systems'
core business function. Furthermore, if BAE Systems did not have the alleged subsidiaries
performing these services, BAE Systems would likely be performing these services itself, just as
it performs these services "in some 130 countries" with annual "sales of over £15 billion."
English Decl. ¶¶ 8, 32. Therefore, BAE Systems cannot avoid personal jurisdiction with its
subsidiary assertions, when its subsidiaries are the *de facto* agents of BAE Systems.

   3. BAE Systems is Subject to Personal Jurisdiction in the Central District of California
      Based on Specific Jurisdiction.

Even if BAE Systems is not subject to general jurisdiction, at a minimum, BAE Systems
is subject to specific jurisdiction in California. A district court may have specific jurisdiction
over a foreign defendant if the cause of action arises out of or has a substantial connection to the
foreign defendant's contacts with the forum. Glencore, 284 F.3d at 1123. In the Ninth Circuit, a

three-part test is used to determine specific jurisdiction: (1) whether the defendant purposefully availed himself of the privileges of conducting activities in the forum, (2) whether the claim arises out of or results from the defendant's forum-related activities, and (3) whether the exercise of jurisdiction is reasonable. Id. citing Myers v. Bennett Law Offices, 238 F.3d 1068, 1072 (9th Cir. 2001).

Beginning with the purposeful availment test, "The purposeful availment requirement is met if the defendant 'performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state.'" Harris Rutsky & Co. v. Bell & Clements Ltd., 328 F.3d 1122, 1130 (9th Cir. 2003), quoting Sher v. Johnson, 911 F.2d 1357, 1362 (9th Cir. 1990). Also, as BAE Systems is a foreign defendant, exercise of jurisdiction over a foreign defendant is allowed if the defendant's contact is the purposeful direction of a foreign act having effect in the forum state. Id., citing Haisten v. Grass Valley Medical Reimbursement Fund Ltd., 784 F.2d 1392, 1397 (9th Cir. 1986). BAE Systems' purported business transactions in California involving California real property and directed to California businesses, as described above, show that BAE Systems has purposefully availed itself of the privilege of conducting activities in California and has conducted these transactions with the purposeful direction of having effect in California. English Decl. ¶¶ 8, 21-32.

Regarding whether the claim arises out of or results from BAE Systems' forum-related activities, a "but for" test is applied. Here, Tannas must show that it would not have been injured but for BAE Systems' contacts with California. Glencore, 284 F.3d at 1123. In this case, one factual matter of paramount significance is the fact that the vast majority of BAE Systems' business activities in California involve aircraft equipment and operations. English Decl. ¶¶ 23-29. The Tannas patents involved in the Interference and this action relate to methods used to provide avionics components and systems used for both commercial and military aircraft.

14

Specifically, the Tannas patents relate to a process for resizing LCDs, which can be used to replace displays in airplane cockpits, as discussed in the Tannas patents.

Not only are BAE Systems' California business activities in the same field as the Tannas patents, but BAE Systems has conducted specific activity in California, in particular within Orange County, California, that directly relate to products produced using the resizing process at issue. Such activities include:

- BAE Systems sold re-sized LCDs to a Southern California-based company, Symbolic Displays, Inc. ("SDI"), on at least two occasions in 2001. English Decl. ¶ 33.

- On another occasion, BAE Systems purchased commercial LCDs, resized them as requested by SDI, and shipped the resized LCDs to SDI's Santa Ana, California facilities. English Decl. ¶ 33.

- On yet another occasion, SDI purchased LCDs and shipped the LCDs to BAE Systems in Scotland, upon which BAE Systems resized the LCDs and shipped them back to SDI in California. English Decl. ¶ 33.

- BAE Systems attended a conference in 2001 in Long Beach, California for LCD technologists, where agents of BAE Systems met with SDI employees and promoted their LCD resizing technology that is now part of the subject interference. English Decl. ¶ 33.

These activities conducted in or directed to California all involve BAE Systems promoting and applying LCD resizing technology that BAE Systems alleges to be its own technology. However, these activities have interfered with the patent rights previously granted to Tannas, thus leading to the Interference.[7]

---

[7] Additionally, the threatening letter forming the basis of the other original causes of action no longer pending, was sent to Mr. Tannas in California, and thus is a further factor supporting that specific personal jurisdiction existed over the original action, as filed, in California. English Decl. ¶ 7.

The final part of the specific jurisdiction test - whether exercising jurisdiction over BAE Systems is reasonable - is also readily satisfied. BAE Systems describes itself on its website as an international company with a large worldwide presence, including operations in over 130 countries and a major presence in the United States. English Decl. ¶¶ 8, 32. BAE Systems is also a multi-billion dollar business, having over £15 billion in annual sales, including an ***increase*** in US sales of $2.6 billion expected for 2006. English Decl. ¶¶ 8, 32. BAE Systems also has vast resources, including over 100,000 employees, that enable it to sell its products and services all over the world. English Decl. ¶¶ 8, 32. BAE Avionics has even admitted that it alone has reaped the benefit of twenty million dollars in sales in California alone. English Decl. ¶ 30.


IV.    PRIVATE AND PUBLIC INTERESTS FAVOR TRANSFERRING THE § 146
       ACTION TO THE CENTRAL DISTRICT OF CALIFORNIA.

       A.    Significant Deference Should be Given to Tannas' Choice to Litigate the § 146
             Cause of Action in the Central District of California.

Significant deference should be given to Tannas' choice to have the § 146 dispute litigated in California as this was his initial forum of choice. See e.g., Thayer/Patricof Educ. Funding, 196 F. Supp. 2d at 31; Trout Unlimited v. United States Dep't of Agric., 944 F. Supp. 13, 17 (D. D.C. 1996). As explained above, Tannas sought to add the § 146 cause of action to a case then-pending in the District Court for the Central District of California. English Decl. ¶ 7. The Central District of California was chosen by Tannas for obvious reasons – Mr. Tannas, his company, and his lawyers are based in Southern California. Tannas Decl. ¶¶ 2, 3, 6. Most of the witnesses that offered testimony in support of Mr. Tannas during the Interference reside in or near Southern California. English Decl. ¶ 9. The District Court for the Central District of California was thus the most convenient forum for him and his attorneys, as well as most of the witnesses that would be anticipated to give testimony in the § 146 action. Tannas' initial choice

16

of filing the § 146 cause of action weighs heavily in favor of transferring the case back to California, especially since the action was transferred to this Court only based on an erroneous interpretation of 35 U.S.C. § 146.

B.    The Inventive Acts on the Part of Mr. Tannas Occurred Within the Central District of California.

At least as early as May 22, 1993, Mr. Tannas conceived of a process for changing the size of LCDs or other electronic displays. Tannas Decl. ¶ 9. The process was conceived at his home and place of business in Orange, California, which is located within the Central District of California. Id. On or around February 18, 1998, Mr. Tannas successfully performed and reduced to practice the LCD resizing process in his place of business in Orange, California. Tannas Decl. ¶ 12.

During the Interference, Tannas was required to establish that he was reasonably diligent (or excused from doing so) in reducing his invention to practice from a time period just before Watson's purported conception date (May 23, 1997) until Mr. Tannas' successful reduction to practice (February 18, 1998). 35 U.S.C. § 135; see also English Decl. ¶¶ 5, 13. Most of these acts of diligence (as well as excuses from diligence) took place within the Central District of California. Tannas Decl. ¶¶ 9-12. For example, during this time period, Mr. Tannas, with the aid of Michael B. Farmer, investigated proper methods for cutting glass and adhesive materials needed to resize LCDs in Orange County, California. Tannas Decl. ¶ 10. In its broadest sense, the § 146 cause of action thus arose from activities that took place within California, because all of these acts of diligence (or excuse) will necessarily be relevant in the § 146 action. The same cannot be said with respect to the District of Columbia. Thus, this factor weighs in favor of transfer back to California.

C.     The Central District of California is More Convenient For Mr. Tannas.

A civil action under § 146 is a "hybrid of an appeal and trial *de novo*." See Winner Int'l

Royalty Corp. v. Wang, 202 F.3d 1340, 1347-48 (Fed. Cir. 2000).  To this end, the district court

conducts a *de novo* trial, including *de novo* factual findings, when live testimony is admitted on

an issue, and the record before the Board is treated as if it were produced in the action before the

district court.  Id.  Mr. Tannas and his business reside in Orange, California, a city located within

the Central District of California.  Tannas Decl. ¶¶ 2, 3.  It is anticipated that Mr. Tannas will

provide live testimony to the Court regarding a number of issues including, for example, events

surrounding the conception and reduction to practice of the LCD resizing process.  Likewise, Mr.

Tannas is expected to testify on his efforts to diligently reduce the invention to practice.  Finally,

Mr. Tannas' testimony regarding the "best mode" will be necessary to address that aspect of the

Board's decision.

Because Mr. Tannas' live testimony on a number of issues will be necessary in the § 146

action, it is considerably more convenient for Mr. Tannas to have the trial held in the Central

District of California, where it was originally brought.  Tannas Decl. ¶¶ 6, 7.  Transfer of this

action back to California, particularly to the Southern Division, would avoid the significant

travel and lodging expenses necessarily incurred to travel to the District of Columbia to provide

such testimony, as well as extra legal fees for Mr. Tannas' California counsel to travel, and extra

legal fees for local counsel required to appear in this Court.

Mr. Tannas' business also requires his full time and attention and traveling back and forth

between California and Washington, D.C. would pose a significant disruption.  Tannas Decl. ¶ 7.

Moreover, Carol A. Tannas, Mr. Tannas' wife suffers from a chronic anxiety disorder, which

requires a considerable amount of time and attention on the part of Mr. Tannas.  Tannas Decl. ¶

18

8. For these reasons, the Central District of California is clearly the most convenient forum for

Tannas to litigate the present dispute. This factor strongly supports transfer back to California.

        D.     <u>The Central District of California is More Convenient for Most of the Anticipated</u>
               <u>Witnesses</u>.

        During the Interference proceedings before the Board, Mr. Tannas relied on the testimony

of at least eleven witnesses. English Decl. ¶ 9. Of these eleven witnesses, seven reside in

California – with six being located within the Central District of California. <u>Id.</u> Other witnesses

are located in Hilo, Hawaii and Phoenix, Arizona, which obviously are closer to California than

to Washington, D.C. <u>Id.</u> The two remaining witnesses, John Doyle and Bill Doane reside in

Pennsylvania and Ohio, respectively. <u>Id.</u> It is not anticipated, however, that these last two

witnesses will be called in the § 146 action.

        With respect to the witnesses who gave testimony before the Board for BAE Systems,

nearly all resided in the United Kingdom. English Decl. ¶ 12. Only one of BAE Systems'

witnesses, Albert H. Lyter III, resided in the United States (North Carolina). English Decl. ¶ 12.

It is important to note that not a single witness in the Interference was a resident of the District of

Columbia. Many of Mr. Tannas' witnesses are again expected to testify in the § 146 action.

English Decl. ¶ 10.[8] Clearly, the District Court for the Central District of California is a much

more convenient forum than the District of Columbia for the anticipated witnesses. To the extent

that BAE Systems' U.K.-based witnesses will also testify in the § 146 action, the additional

distance of traveling to California versus Washington, D.C. is not a substantial burden,

particularly when one considers the enormous resources that BAE Systems has at its disposal. In

either instance, the witnesses will have to make a trans-Atlantic flight to the United States.

---

[8] In addition, additional witnesses who reside in California are expected, including doctors or other medical care providers who treated Mrs. Tannas or Mr. Tannas' parents. English Decl. ¶ 10.

Carol Tannas is also likely to give live testimony in the § 146 case. She is an important corroborating witness to Mr. Tannas' conception and subsequent reduction to practice of the invention. Tannas Decl. ¶ 8. However, her anxiety disorder and other medical conditions may preclude her from traveling to Washington, D.C. Tannas Decl. ¶¶ 5, 6. In contrast, Carol Tannas would be able to give live testimony if the case were transferred back to Southern California. In addition, the facts raised by Mr. Tannas for excusing any lack of diligence during the critical period involve caring for his wife and parents, all of which also occurred in California.[9]

Thus, transfer of the case to California would be much more convenient for the majority of witnesses. This weighs heavily in favor of transferring the § 146 case back to California.

      E.     <u>Several of Mr. Tannas' Witnesses May Be Unable to Testify Should The Case Remain in the District of Columbia.</u>

Apart from the inability of Mrs. Tannas to attend trial in Washington, D.C., several other witnesses with information supporting Mr. Tannas' positions might be unavailable to testify should the case remain in Washington, D.C. As this Court is well aware, Mr. Tannas may be unable to compel the attendance of non-party witnesses residing in California (or elsewhere) to a trial held in Washington, D.C. <u>See</u> Fed. R. Civ. Pro. 45 (c)(3)(B)(iii). For example, both Mr. Rogerson and Mr. Mathews have expressed their unwillingness to get further involved in the case. English Decl. ¶ 9. These witnesses have important information relevant to Mr. Tannas' acts of diligence in reducing the invention to practice. Should the case be transferred back to California, however, their attendance may be compelled via trial subpoena. This factor weighs in favor of transfer back to California.

---

[9] Tannas anticipates presenting additional witness, including physicians who cared for Mr. Tannas' wife and parents, to support the statements made by Mr. and Mrs. Tannas related to the obligations Mr. Tannas had during the critical period that excuse any lack of diligence. These physicians reside in the Central District of California.

20

F.    Ease of Access to Proof Does Not Weigh For or Against Transfer.

The location of documents or other evidence is a factor to consider in deciding whether

or not to transfer.  Southern Utah Wilderness Alliance v. Gale Norton, 315 F. Supp. 2d 82, 85

(D. D.C. 2004).  In the present dispute, the review of the Board's decision will be decided to a

large extent, on the record developed before the Board.  Both parties have access to this record

and it can be delivered to this Court or the Central District of California just as easily.  Moreover,

given modern technology, the location of documents is less important in determining the

convenience of the parties.  Thayer at 36, citing, Air Line Pilots Ass'n v. Eastern Air Lines, 672

F. Supp. 525, 527 (D. D.C. 1987).

Section 146 does permit the parties to take additional testimony and submit additional

documentary evidence on issues raised in the interference being appealed. However, as explained

above, none of the potential witnesses resides within this District.  Similarly, Mr. Tannas is not

aware of and does not foresee any documents that would be relevant to the issues in this case that

would be located within this District.  Accordingly, the ease of access to proof does not weigh

for or against transfer.

G.    The Central District of California is Well-Equipped to Review the Board's
       Decision.

Although this Court is likely one of the most experienced district courts when it comes to

patent matters, the Central District of California has the expertise to handle the patent issues

surrounding a § 146 action.  The issues of priority of invention and derivation have previously

been addressed by Courts within the Central District of California.  See e.g., Plumley v. Mockett,

1998 U.S. Dist LEXIS 23501 (C.D. Cal. 1998) (overturning Board's decision on derivation of

invention in subsequent § 146 action), affd., Plumley v. Mockett, 2005 U.S. App. LEXIS 23085

(Fed. Cir. 2005).  Similarly, the Central District of California has experience in analyzing

whether or not a patentee has complied with the "best mode" requirement found in 35 U.S.C. § 112, ¶1. See, e.g., Wang Lab. v. Mitsubishi Elecs. Am., 1994 U.S. Dist. LEXIS 17749 (C.D. Cal. 1994); Automotive Products v. Tilton Engineering, 1994 U.S. Dist. LEXIS 21642 (C.D. Cal. 1994) (summary judgment denied in part, granted in part on different grounds, Automotive Products v. Tilton Engineering, 1994 U.S. Dist. LEXIS 21645 (C.D. Cal. 1994)). Thus, this factor also supports transfer of the § 146 case back to California.

        H.    California Has a Strong Interest in Protecting California Inventors.

Finally, California has a strong interest in protecting the inventions of its residents. As stated above, Mr. Tannas conceived and reduced the invention to practice in California. The people of California have an interest in ensuring that inventive activities taking place within its borders are given adequate consideration by the Board. Moreover, the process of resizing LCD displays is being practiced by others within the State of California. Tannas Decl. ¶ 13. The people of California thus have an interest in determining not only who owns the underlying technology but also whether such claims are patentable and applicable to the LCD resizing process. Such "local interest" in the current case favors transfer back to California. See Southern Utah Wilderness Alliance v. Gale Norton, at 86.


V.     CONCLUSION.

Tannas initially chose to appeal the adverse decision by the Board to the District Court for the Central District of California. The court in the California case transferred this action to this Court based upon an erroneous interpretation of 35 U.S.C. § 146. When a foreign entity, such as BAE Systems, PLC is a party to a § 146 action, the District Court for the District of Columbia is the court of last resort. A party like Tannas, however, is able to choose an alternative forum provided that chosen court has personal jurisdiction over the foreign entity.

A transfer of venue is warranted in this case as nearly all of the relevant factors weigh in favor of transfer back to the District Court for the Central District of California. A transfer of this case would respect Tannas' initial choice of forum. Transfer of the case back to California will be more convenient for Mr. Tannas, as well as for his anticipated witnesses – the majority of whom reside in Southern California. Similarly, there is a strong possibility that some of Mr. Tannas' anticipated witnesses will not be available to provide live testimony should the case be held in the District of Columbia, severely prejudicing Mr. Tannas' case. Furthermore, judges within the Central District of California are well-equipped to deal with the patent law issues are implicated in a § 146 proceeding. Finally, California has a strong interest in sorting out the ownership interests of an invention that was conceived in California and subsequently licensed to California-based entities. For these reasons, the current case should be transferred back to the District Court for the Central District of California.

Respectfully submitted,

Birch, Stewart, Kolasch & Birch, LLP

Date: August 25, 2006          By:     /s/ Quentin R. Corrie_____
                                       QUENTIN R. CORRIE
                                       DC Bar #224469
                                       8110 Gatehouse Road
                                       Suite 100 East
                                       Falls Church, Virginia 22040-0747
                                       Phone: (703) 205-8000
                                       Fax: (703) 205-8050


                               By:     /s/ William A. English_____
                                       William A. English(Admitted *Pro Hac Vice*)
                                       Vista IP Law Group LLP
                                       2040 Main Street, 9th Floor
                                       Irvine, California 92614
                                       Telephone:  (949) 724-1849
                                       Facsimile:  (949) 625-8955
                                       ATTORNEYS FOR PLAINTIFFS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 25th day of August 2006, a copy of the foregoing was mailed, via First Class mail, postage prepaid to:

Kent Dale Brostrom, Esq.
1601 Research Boulevard
Rockville, MD  20817

Scott J. Ferrell, Esq.
David R. Sugden, Esq.
610 Newport Center Drive, Suite 700
Newport Beach, CA  92660


                                        /s/ Quentin R. Corrie_____
                                        Quentin R. Corrie