**THE ORIGINAL OF THE ENCLOSED DECLARATION OF LAWRENCE E. TANNAS JR. IS BEING SIGNED N CHINA AND WILL BE PROVIDED TO THE COURT WHEN RECEIVED**

# UNITED STATES DISTRICT COURT

# DISTRICT OF COLUMBIA

| | |
|---|---|
| Lawrence E. Tannas, Jr., an individual dba Tannas Electronics; Tannas Electronic Displays, Inc., a California corporation<br><br>　　　　　　Plaintiffs,<br>　　　v.<br>BAE Systems Avionics Limited, a British Corporation; BAE Systems Electronics Limited, a British corporation<br><br>　　　　　　Defendants. | Case No. 05-1866 (RWR)<br><br>**DECLARATION OF LAWRENCE E. TANNAS, JR. IN SUPPORT OF TANNAS MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(a)**<br><br>**Hon. Richard W. Roberts** |

I, Lawrence E. Tannas, Jr., make this Declaration pursuant to 28 U.S.C. § 1746.

1.　Both I and my company, Tannas Electronic Displays, Inc., are Plaintiffs in this lawsuit. I have personal knowledge of the facts stated herein and, if called upon as a witness, I could and would testify competently thereto.

2.　I am a citizen of the United States of America, residing at 1426 Dana Place, Orange, California 92866. My residence is within the judicial district encompassed by the District Court for the Central District of California.

3.　I am doing business as Tannas Electronics, and am president of Tannas Electronic Displays, Inc., having its principal place of business at 1426 Dana Place, Orange, California 92866. My business also resides within the judicial district encompassed by the District Court for the Central District of California.

4.     I am the named inventor of U.S. Patent Nos. 6,204,906 ("the '906 patent") and 6,380,999 ("the '999 patent," together "the Tannas patents") that were the subject of the Interference No. 105,096 and the present civil action under 35 U.S.C. § 146.

5.     After the Board of Patent Appeals and Interferences issued its final decision on priority of invention and patentability, I decided to file an appeal under 35 U.S.C. § 146 in the District Court for the Central District of California. The District Court for the Central District of California was my forum of choice.

6.     It would be more convenient for me and my business to have the case proceed in Southern California near where my home and business are located. It is my understanding that live testimony will likely be needed in the § 146 case. Because most of the witnesses expected to testify on my behalf are located within Southern California, the District Court for the Central District of California would be the most convenient forum given its close proximity. Moreover, my attorneys, who are intimately aware of the facts and issues surrounding the § 146 case are located in Irvine, California, a city within the Central District of California.

7.     Tannas Electronic Displays, Inc. is a relatively small company and does not have the financial means to reimburse witnesses for their travel, lodging, and other incidental costs associated with traveling to this Court in Washington, D.C. In addition, my business requires my full time attention and traveling back and forth between Southern California and Washington, D.C. would pose a significant disruption to my business. For this reason, the Central District of California is a more convenient forum than the District of Columbia.

8.  A significant amount of my time is spent caring for my wife, Carol A. Tannas.  She is an important corroborating witness to my conception and subsequent reduction to practice of the invention.  In August 1997, Carol was hospitalized and diagnosed with a chronic anxiety disorder.  To date, Carol's condition has not been remedied.  Her anxiety-related health concerns have taken up a considerable amount of my time and attention since Carol first began experiencing symptoms.  The Central District of California is a more convenient forum for both me and Carol given her health problems.  Should I need to travel to Washington, D.C. to give testimony in the current appeal, her anxiety disorder and other medical conditions may preclude her from traveling to Washington, D.C.  She will not have anyone to look after her during this period.  If the case were to proceed in Southern California, however, this problem would be avoided.

9.  At least as early as May 22, 1993, I conceived of a process for changing the size of liquid crystal displays ("LCDs") or other electronic displays.  I conceived of the process while I was at my home/place of business in Orange, California.  This method for "resizing" included cutting a display along a target dimension to separate a target portion from an unused portion, and applying a first seal along the exposed edge of the target portion.  It is this method of "resizing" that was the subject of the Interference and the present § 146 appeal.

10. In early 1997, I began to work earnestly to develop a working process for producing resized LCDs.  To do so, I experimented with the procedures and equipment needed to cut glass, a necessary step in the resizing process.  I also experimented with various adhesives, which are needed to reseal the cut glass.  In these endeavors, I used the

4

technical know how and experience of Michael B. Farmer, who was then a tenant of one of the properties that I own in Anaheim, California. Much of this work took place in my laboratory located in Orange, California.

11. During the period between February 1997 and February 1998, a significant amount of my time was spent in Southern California working on reducing my invention to practice. I also spent a significant portion of my time caring for my wife and parents, for whom I was the sole caregiver. Neither my mother nor my father could drive a car. I frequently had to take them shopping and run other errands for them. Because of my mother's failing health, I also had to take her to her physician and druggist multiple times each month. My father also required visits at least monthly to his physician.

12. On or around February 18, 1998, with the assistance of a technician, Phillip Joujon-Roche, I was able to resize and test three LCDs. I personally cut the glass of the LCD displays using a scribing and breaking technique. The LCDs were cut along a target dimension to separate a target portion from an unused portion, and a seal was applied along the exposed edge of the target portion. These acts took place in my laboratory in Orange, California.

13. As part of my business, I license the subject matter of the Tannas patents to third parties. The license agreements permit the licensees to utilize my process without infringing on the Tannas patents. Several of these licensees are located within California. The Interference and present § 146 appeal, however, have been an impediment to getting additional third parties to license the Tannas patents. Some potential and actual licensees are reluctant to enter into long-term license agreements while the current dispute over ownership of the LCD resizing process is pending.

  I declare under penalty of perjury that the foregoing is true and correct. Executed this ___ day of August 2006 at Orange, California.

                       _____
                       Lawrence E. Tannas, Jr.