UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

| | |
|---|---|
| Lawrence E. Tannas, Jr., an individual dba Tannas Electronics; Tannas Electronic Displays, Inc., a California corporation<br><br>Plaintiffs,<br><br>v.<br><br>BAE Systems Avionics Limited, a British Corporation; BAE Systems Electronics Limited, a British corporation<br><br>Defendants. | Case No. 05-1866 (RWR)<br><br>**DECLARATION OF WILLIAM A. ENGLISH IN SUPPORT OF TANNAS MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(a)**<br><br>**Hon. Richard W. Roberts** |

I, William A. English, make this Declaration pursuant to 28 U.S.C. § 1746.

1.    I am an attorney with the law firm Vista IP Law Group LLP, in Irvine, California, attorneys for Lawrence E. Tannas, Jr. ("Mr. Tannas") and Tannas Electronic Displays, Inc., the Plaintiffs in this lawsuit. I have personal knowledge of the facts stated herein and, if called upon as a witness, I could and would testify competently thereto.

2.    I represented Mr. Tannas in Interference No. 105,096, which involved two patents, U.S. Patent Nos. 6,204,906 and 6,380,999, which name Mr. Tannas as the inventor, and a patent application, US Application Serial No. 09/529,201, which name David S. Watson as the inventor ("the Watson Application").

3.    During the Interference, the record owner of the Watson Application was initially BAE Systems Avionics Limited, until April 2005, when the Watson Application was assigned to BAE Systems, PLC. Attached as Exhibit K hereto is a true and correct copy of an assignment

1

from BAE Systems Avionics Limited to BAE System, PLC, which indicates that the assignment was executed on April 14, 2005.

4.      During the Interference, in the Statement of Interest included in the Watson Priority and Derivation Principal Brief filed on or about September 28, 2004, BAE Systems, PLC identified itself as "the real party in interest in this interference." Attached as Exhibit A hereto is true and correct copy of page 2 (and cover page) of the Watson Priority and Derivation Principal Brief.

5.      In a Final Decision dated May 9, 2005, the Board of Patent Appeals and Interferences ("the Board") determined that Mr. Tannas failed to demonstrate sufficiently that he was diligent in reducing the invention to practice (i.e., carrying out the resizing process). Attached as Exhibit B hereto is a copy of page 22 (and cover page) of the Final Decision, which includes the Board's decision.

6.      Before issuing its Final Decision, the Board held that certain claims contained in Mr. Tannas' patents were unpatentable for failing to comply with the "best mode" requirement found in 35 U.S.C. § 112, ¶1. Attached as Exhibit C hereto is copy of page 62 (and cover page) of that decision.

7.      While the Interference was pending before the Board, Mr. Tannas and his company, Tannas Electronic Displays, Inc. filed a civil action in the District Court for the Central District of California, Case No. CV-03-5889 RJK (FMOx), ("the California case") against, among other entities, BAE Systems, PLC – the admitted real party in interest to the Watson patent application. The California case sought, among other things, declaratory relief that Mr. Tannas did not breach any contract or misappropriate any trade secrets from BAE Systems, PLC or its related entities. On May 19, 2005, Mr. Tannas timely amended his

2

complaint in the California case to include a cause of action under 35 U.S.C. § 146, *inter alia*, to overturn the Board's decision on priority of invention and patentability. The California court later transferred the § 146 cause of action to this Court. Attached as Exhibit D hereto is a true and correct copy of the California court's decision. The California courts' decision was based upon the court's view that any a civil action brought under 35 U.S.C. § 146 against a foreign defendant (i.e., BAE Systems Avionics Limited or BAE Systems, PLC) must be filed in the District Court for the District of Columbia. Exhibit D, p. 20. The other causes of action were dismissed without prejudice, *inter alia*, because Tannas had failed to make a prima facie showing of personal jurisdiction, but with leave to amend to plead additional bases for personal jurisdiction over the BAE Systems entities. Exhibit D, p. 13. The case was settled and dismissed before the issue of personal jurisdiction was ultimately decided.

8.      Attached as Exhibit E hereto is a true and correct copy of excerpts from the 2005 Annual Report of BAE Systems, PLC. Page 1 of the Annual Report states that "BAE Systems is an international company. . . . BAE Systems has major operations across five continents and customers in some 130 countries. The company employs approximately 100,000 people and generates annual sales in excess of £15 billion through its wholly-owned and equity accounted investment operations. Page 22 states that "In the summer of 2005, BAE systems completed the acquisition of United Defense, growing the US business base by $2.6bn in annual sales and 8,000 additional employees. Page 101 states that "On 29 April 2005, the Group announced the completion of the Eurosystems transaction with Finmeccanica SpA. The Eurosystems transaction comprised the sale of BAE Systems Avionics Limited. . . . BAE Systems Avionics Limited and Galileo Avionica SpA merged to form a new Avionics business owned 75% by Finmeccanica and 25% by BAE Systems.

9.      During the Interference, Mr. Tannas relied on the testimony of a number of witnesses. These included: Lawrence E. Tannas Jr., Carol A. Tannas, Phillip J. Joujon-Roche, Michael B. Farmer, H. Cannon Mathews, Michael J. Rogerson, Roger Gottfried, Terry J. Scheffer, James L. Fergason, John Doyle, and Bill Doane. Both Mr. Tannas and his wife Carol Tannas are residents of Orange, California. Orange, California falls within the boundaries of the District Court for the Central District of California. Mr. Joujon-Roche and Mr. Farmer currently reside in Anaheim, California – a city also within the boundaries of the District Court for the Central District of California. Based on information and belief, Mr. Mathews and Mr. Rogerson currently reside within the Central District of California. Mr. Gottfried currently resides in Newport Beach, California, a city located within the Central District of California. Terry J. Scheffer is currently a resident of Hilo, Hawaii. James L. Fergason is currently a resident of Menlo Park, California. John Doyle is a resident of Pennsylvania while Bill Doane is a resident of Ohio.

10.     It is anticipated that in the present § 146 case, the following witnesses will need to testify to overturn the Board's decision on priority of invention and patentability: Lawrence E. Tannas Jr., Carol A. Tannas, Phillip J. Joujon-Roche, Michael B. Farmer, H. Cannon Mathews, Michael J. Rogerson, Roger Gottfried, Terry J. Scheffer, James L. Fergason, and various doctors or other medical care providers treating Mrs. Tannas or Mr. Tannas' parents.

11.     Two of the witnesses who provided testimony before the Board, Mr. Rogerson and Mr. Mathews, have expressed their unwillingness to get further involved in the case.

12.     During the Interference, BAE Systems Avionics Limited relied on the testimony of the following witnesses: Stewart Miller, Brian Todd, David Reeves, Alexander O. Sutherland, David S. Watson, and Albert H. Lyter, III. All except Albert H. Lyter, III are residents of the

United Kingdom. Albert H. Lyter, III resides in North Carolina. Not a single witness in the Interference was a resident of the District of Columbia.

13.    During the Interference, Mr. Tannas was required to establish that he was reasonably diligent (or excused from doing so) in reducing his invention to practice from a time period just prior to Watson's purported conception date (May 23, 1997) until Mr. Tannas' successful reduction to practice (February 18, 1998).

14.    Attached as Exhibit F hereto is a true and correct copy of Defendant BAE Systems Avionics Limited's Supplemental Responses to Plaintiff Tannas' First Set of Interrogatories, dated May 5, 2005, which were served on Tannas in the California case.

15.    Attached as Exhibit G hereto is a true and correct copy of a Stipulation and Order issued the Court in the California case on December 1, 2004 on Plaintiff's Motion to Compel and First Amended Complaint, ordering the Defendants "BAE Systems Avionics Limited, et al." to provide revised responses to Tannas' discovery requests by no later than January 3, 2005.

16.    Attached as Exhibit H hereto is a true and correct copy of a letter dated January 3, 2005 from BAE Avionics' counsel Scott J. Ferrell to Tannas' counsel Neal M. Cohen regarding the court order on Plaintiff's Motion to Compel and First Amended Complaint, issued December 1, 2004, and providing conditions for responding to Tannas' interrogatories.

17.    Attached as Exhibit I hereto is a true and correct copy of an Order issued in the California case on April 5, 2005 on Plaintiff's Motion to Compel Discovery, ordering the Defendants "BAE Systems Avionics Limited, et al." to provide verified supplemental responses to Plaintiffs' Special Interrogatories Nos. 1-25 by May 5, 2005.

18.    Attached as Exhibit J hereto is a true and correct copy of a letter dated October 15, 2004 from Tannas' counsel Neal M. Cohen to BAE Avionics' counsel David R. Sugden commenting on BAE Avionics' deficient responses to Tannas' interrogatories.

19.    Attached as Exhibit K hereto is a true and correct copy of a Terminal Disclaimer and Patent Application Assignment filed with the United States Patent and Trademark Office on behalf of BAE Systems, PLC, which assigned the Watson application, as well as US application Serial No. 10/250,242, from BAE Systems Avionics Limited to BAE Systems, PLC.  The assignment is dated April 14, 2005.

20.    Attached as Exhibit L hereto is a true and correct copy of pages 2 and 3 (and cover page) of a document entitled "Notice of Motion and Motion of Defendants BAE Systems Avionics Limited, BAE Systems Electronics Limited, and BAE Systems PLC. to Dismiss Plaintiffs' Complaint Under FRCP 12(b)(2) or 12(b)(6), or in the Alternative for a Motion to Dismiss or Transfer of Plaintiffs' Sixth Cause of Action" filed on or about June 13,2005 by counsel for BAE Systems Avionics Limited admitting that "[BAE Systems] Avionics [Limited] no longer contests personal jurisdiction [in California]."

21.    Attached as Exhibit M hereto is true and correct copy of an annotated hardcopy printout of an Internet web-page (http://www.baesystems.com/newsroom/2005/jun/130605news24.htm) including a BAE press release describing the collaboration of "BAE Systems" with a California-based company on a U.S. government project.

22.    Attached as Exhibit N hereto is a true and correct copy of an annotated hardcopy printout of an Internet web-page (http://www.baesystems.com/newsroom/2005/apr/110405news1.htm) including a BAE press

release from Los Angeles, CA describing "BAE Systems" as supplying equipment to a U.S.

company with a large operations base in Southern California.

23.    Attached as Exhibit O hereto is a true and correct copy of an annotated hardcopy

printout of an Internet web-page (http://www.windriver.com/news/press/pr.html?ID=2281)

including a press release from a California-based company describing "BAE Systems" selecting

the company as a supplier for an aircraft radar program.

24.    Attached as Exhibit P hereto is a true and correct copy of an annotated hardcopy

printout of an Internet web-page

(http://www.boeing.com/companyoffices/doingbiz/psc/pscsilv.htm) from, Boeing, a U.S.

company with a large operations base in Southern California showing "BAE SYSTEMS, PLC"

as a "Silver Supplier" to the company.

25.    Attached as Exhibit Q hereto is a true and correct copy of an annotated hardcopy

printout of an Internet web-page (http://www.desertdispatch.com/2001-

2003/100143325780800.html) including a news article describing "BAE Systems Flight

Systems" entering a lease agreement involving a Southern California airport, in order to use the

property as an aircraft maintenance hub.

26.    Attached as Exhibit R hereto are true and correct copies of annotated hardcopy

printouts of Internet web-pages (http://www.spacewar.com/news/uav-05zzzy.html;

http://www.avionicsmagazine.com/cgi/av/show_mag.cgi?pub=av&mon=1005&file=scan.htm)

including news articles describing "BAE Systems" having a successful test flight of an aerial

vehicle at its Southern California flight test facility.

27.    Attached as Exhibit S hereto is a true and correct copy of an annotated hardcopy

printout of an Internet web-page (http://www.airforce-technology.com/projects/jsf/) including a

news article describing "BAE Systems" collaborating with a U.S. company in El Segundo, California, along with another U.S. company, on a major U.S. Department of Defense project for which testing is to be conducted in California.

28.     Attached as Exhibit T hereto is a true and correct copy of an annotated hardcopy printout of an Internet web-page (http://www.avionicsmagazine.com/cgi/av/show_mag.cgi?pub=av&mon=1005&file=scan.htm) including a news article describing "BAE Systems" testing equipment, as part of its role in a major U.S. Department of Defense project, at a military base in California (page 3 of 7).

29.     Attached as Exhibit U hereto is a true and correct copy of an annotated hardcopy printout of an Internet web-page (http://www.lockheedmartin.co.uk/news/35.html) including a press release from a U.S. company describing "BAE Systems" collaborating on a test flight for a major U.S. Department of Defense project held in California, and also describing "BAE Systems" as having a team working on the project in California.

30.     Attached as Exhibit V hereto is a true and correct copy of an annotated portion of BAE Avionics' supplemental responses to Tannas' interrogatories, dated June 30, 2005, disclosing that BAE Avionics' sales in California since January 2002 have amounted to $20,000,000 or less.

31.     Attached as Exhibit W hereto are true and correct copies of hardcopy printouts of Internet web-pages (http://www.baesystemsevents.com/; www.baesystemsevents.com/SanDiego.html) describing career events held by "BAE Systems" in Los Angeles and San Diego, California.

32.     Attached as Exhibit X hereto are true and correct copies of annotated hardcopy printouts of Internet web-pages (http://www.baesystems.com/aboutus/index.htm;

http://www.baesystems.com/facts/plc.htm) from a "BAE Systems" website providing a general overview of "BAE Systems," including their international operations, employment, and sales information.

33.     Attached as Exhibit Y hereto are true and correct copies of annotated transcript selections from the deposition of Mr. Stewart Miller, an employee of BAE Systems, taken January 11, 2005, in which Mr. Stewart provides testimony concerning BAE Systems' business contacts in California.  These contacts included:  a) BAE Systems sold re-sized LCDs to a Southern California-based company, Symbolic Displays, Inc. ("SDI"), on at least two occasions in 2001; b) BAE Systems purchased commercial LCDs, resized them as requested by SDI, and shipped the resized LCDs to SDI's Santa Ana, California facilities; c) SDI purchased LCDs and shipped the LCDs to BAE Systems in Scotland, upon which BAE Systems resized the LCDs and shipped them back to SDI in California, and d) BAE Systems attended a conference in 2001 in Long Beach, California for LCD technologists, where agents of BAE Systems met with SDI employees and promoted their LCD resizing technology that is now part of the subject interference.

34.     Attached as Exhibit Z hereto is a true and correct copy of a "Patent Assignment Abstract of Title" from the United States Patent and Trademark Office ("USPTO") website, which indicates that the assignment of US application Serial No. 10/250,242 (a continuation of the Watson application) from BAE Systems Avionics Limited to BAE Systems, PLC was recorded with the USPTO on April 22, 2005.

35.     Attached as Exhibit AA hereto is a true and correct copy of a web page from BAE Systems' website, http://www.baesystems.com/facts/operational/intpartners/selex.htm,

identifying SELEX Sensors and Airborne Systems as a company owned 75% by Finmeccanica

and 25% owned by BAE Systems.

36.    Attached as Exhibit BB hereto is a true and correct copy of a web page including

a press release dated 22 May 2005, found at

http://business.scotsman.com/topics.cfm?tid=740&id=558582005, which indicates that BAE

Systems former avionics arm (BAE Systems Avionics Limited) was merged with

Finmeccanica's defence electronics business to create Finmeccanica's new defence electronics

division – Selex.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this

23rd day of August, 2006 at Irvine, California.

William A. English