Paper No. _____

BOX INTERFERENCE
Filed on behalf of Party David S. WATSON
By:  Leonard C. Mitchard, Esq.
    Stanley C. Spooner, Esq.
    NIXON & VANDERHYE, P.C.
    1100 North Glebe Road, 8th Floor
    Arlington, VA 22201-4714
    Telephone: (703) 816-4000
    Facsimile:  (703) 816-4100

UNITED STATES PATENT AND TRADEMARK OFFICE

―――――――――

BEFORE THE BOARD OF PATENT APPEALS
AND INTERFERENCES
(Administrative Patent Judge Sally C. Medley)

―――――――――

LAWRENCE E. TANNAS, JR.

Junior Party
(Patents 6,204,906 and 6,380,999),

v.

DAVID S. WATSON
Senior Party
(Application 09/529,201).

―――――――――

Patent Interference No. 105,096

―――――――――

**WATSON PRIORITY AND DERIVATION PRINCIPAL BRIEF**

- 1 -

880829

EXH. A

I.    **WATSON STATEMENT OF INTEREST**

Pursuant to 37 CFR § 1.656(b)(1), the attorneys and law form identified on the face of the

present Brief, including lead counsel Leonard C. Mitchard (Registration No. 29,009) and backup

counsel, Stanley C. Spooner, (Registration No. 27,393) represent the Senior party David S.

Watson in this interference and the real party in interest in this interference, namely BAE

Systems PLC (BAES).

880829

EXH. A
- 2 -

The opinion in support of the decision being
entered today is <u>not</u> binding precedent of the Board.

Filed by: Trial Section Merits Panel[1]
Mail Stop Interference
P.O. Box 1450
Alexandria, VA  22313-1450
Tel: 571-272-9797
Fax: 571-273-0042

Paper 214

Filed
9 May 2005

UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE BOARD OF PATENT APPEALS
AND INTERFERENCES

MAILED
MAY 9 – 2005
PAT & TM OFFICE
BOARD OF PATENT APPEALS
AND INTERFERENCES

LAWRENCE E. **TANNAS**, JR.
Junior Party,
(Patents 6,204,906 and 6,380,999),

v.

DAVID S. **WATSON**
Senior Party,
(Application 09/529,201).

Patent Interference No. 105,096

Before SCHAFER, LEE, and MEDLEY, <u>Administrative Patent Judges</u>.

MEDLEY, <u>Administrative Patent Judge</u>.

<u>**Decision - Priority - Bd. R. 125(a)**</u>

---

[1]      As part of Board efforts under the Government Paperwork Elimination Act,
signatures on papers originating from the Board are being phased out in favor of a completely
electronic record. Consequently, subsequent papers in this case originating at the Board will not
have signatures. The signature requirements for the parties have not changed. See, e.g., 37 C.F.R.
§ 10.18

appellant is attempting to use those principles as substitutes for record evidence, of which there is very little").

For these additional reasons, Tannas has failed to sufficiently show that it was diligent during the critical period. The reasonable diligence standard "balances the interest in rewarding and encouraging invention with the public's interest in the earliest possible disclosure of innovation." Griffith v. Kanamaru, 816 F.2d 624, 626, 2 USPQ2d 1361, 1362 (Fed. Cir. 1987). Here, Tannas has failed to sufficiently demonstrate that it was reasonably diligent such as to provide the public with the earliest possible disclosure of its invention. Where the first to conceive has failed to demonstrate that it was reasonably diligent during the critical period, there is no reason, or justification, to allow it to prevail over another who is the second to conceive but who has made prompt disclosure by the filing of a patent application.

For the above reasons, Tannas has failed to demonstrate, by a preponderance of the evidence, priority of invention. Accordingly, Watson opposition (Paper 167), Tannas reply (Paper 176), Watson priority and derivation brief (Paper 163), and those briefs associated therewith (Papers 176 and 180) need not and have not been considered.

Watson preliminary motion 9

Watson filed a preliminary motion 9 for inequitable conduct against Tannas (Paper 164). Since judgment is entered against Tannas there is no occasion to consider Watson preliminary motion 9. Watson preliminary motion 9 is dismissed. Bd. R. 125(a).

EXH. B
-4-

The opinion in support of the decision being
entered today is <u>not</u> binding precedent of the Board.

Filed by: Trial Section Merits Panel
    Mail Stop Interference
    P.O. Box 1450
    Alexandria, Va. 22313-1450
    Tel: 703-308-9797
    Fax: 703-305-0942

Paper 141

Filed
24 June 2004

## UNITED STATES PATENT AND TRADEMARK OFFICE

---

## BEFORE THE BOARD OF PATENT APPEALS AND INTERFERENCES

---

LAWRENCE E. TANNAS, JR.

Junior Party,
(Patents 6,204,906 and 6,380,999),

v.

DAVID S. WATSON
Senior Party,
(Application 09/529,201).

```
┌─────────────────────────────┐
│         MAILED              │
│                             │
│      JUN 2 4 2004           │
│                             │
│      PAT & T.M  OFFICE      │
│  BOARD OF PATENT APPEALS    │
│    AND INTERFERENCES        │
└─────────────────────────────┘
```

---

Patent Interference No. 105,096

---

Before SCHAFER, MEDLEY, and POTEATE, <u>Administrative Patent Judges</u>.

MEDLEY, <u>Administrative Patent Judge</u>.

## <u>DECISION ON PRELIMINARY MOTIONS</u>

### A. Introduction

This interference was declared on 14 April 2003. Watson filed a preliminary motion to

add claims 103 and 104 to its application (Watson preliminary motion 1), to designate claim 103

to count 1 (Watson preliminary motion 3), to designate claim 104 to count 2 (Watson preliminary

account of events. Cf. Cooper v. Goldfarb, 154 F.3d 1321, 47 USPQ2d 1896 (Fed. Cir. 1998) (Inventor testimony must be corroborated by independent evidence). Furthermore, statements submitted in support of Tannas' preliminary statement contradict Tannas' assertions as discussed above. For these reasons, we do not credit Mr. Tannas' subsequent declaration made in support of Tannas opposition 8, and thus Tannas opposition 8 necessarily fails.

Since Tannas has failed to sufficiently rebut Watson preliminary motion 8, we need not and have not considered Watson reply 8. For the above reasons, Watson preliminary motion 8, is granted-in-part. Tannas '906 claims 1, 26, 29-32 and 36-43 and Tannas '999 claims 1-7 are unpatentable for failing to comply with the best mode requirement of 35 U.S.C. § 112, ¶1.

Since Watson preliminary motion 8 is granted with respect to best mode, thereby rendering all of the involved Tannas '906 and '999 patent claims unpatentable, there is no occasion for us to additionally decide whether Tannas' involved claims are not enabled. Accordingly, that portion of Watson preliminary motion 8 moving for judgment on the basis that Tannas' claims are not enabled is dismissed.

Tannas' motions to suppress

In its first motion to suppress, Tannas moves to suppress Watson exhibits 1026-1029 and portions of Watson replies 1 and 2. Watson apparently relies on exhibits 1026-1029 in connection with its replies 1 and 2. Watson preliminary motions 1 and 2 were dismissed. Accordingly, there was no occasion to consider Tannas' oppositions 1 and 2, Watson's replies 1 and 2, or Watson exhibits 1026-1029. Thus, we find it unnecessary to consider the specific objections with respect to Watson exhibits 1026-1029, or to Watson replies 1 and 2.



THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP. RULE 77(d).

Priority
Send
Enter
Closed
JS-5/JS-6 ____
JS-2/JS-3 ____
Scan Only____

FILED
CLERK, U.S. DISTRICT COURT

SEP 2 2005

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

ENTERED
CLERK, U.S. DISTRICT COURT

SEP 2 2005

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LAWRENCE E. TANNAS, JR., an individual dba as TANNAS ELECTRONS; TANNAS ELECTRONIC DISPLAYS, INC., a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>BAE SYSTEMS AVIONICS LIMITED, a British corporation; BAE SYSTEMS ELECTRONICS LIMITED, a British corporation; BAE SYSTEMS, PLC, a British corporation,<br><br>Defendants. | Case No. CV 03-5889 RJK (FMOx)<br><br>**ORDER GRANTING DEFENDANTS BAE SYSTEMS AVIONICS LIMITED, BAE SYSTEMS ELECTRONICS LIMITED, AND BAE SYSTEMS, PLC'S MOTION TO DISMISS WITHOUT PREJUDICE AND TO TRANSFER THE SIXTH CAUSE OF ACTION** |

Defendants BAE Systems Avionics Limited (" BAE Avionics"), BAE Systems Electronics Limited ("BAE Electronics"), and BAE Systems, Plc. ("BAE Systems") (collectively "Defendants") seek to dismiss Plaintiffs Lawrence E. Tannas, Jr. and Tannas Electronic Displays, Inc.'s (collectively "Plaintiffs") first five causes of action of the First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6) for failure to state a claim upon which

1

44

EX4. D
-7-

1  relief can be granted.  Defendants BAE Systems and BAE Electronics seek to

2  dismiss Plaintiffs' FAC under FRCP 12(b)(2) for lack of personal jurisdiction.

3  Finally, Defendant BAE Systems seeks dismissal from the instant case and

4  dismissal or transfer of venue of the Sixth Cause of Action pursuant to FRCP

5  12(b)(3) and 28 U.S.C. § 1406(a).[1]  After reviewing the papers submitted by the

6  parties, and the arguments contained therein, the Court hereby **GRANTS**

7  Defendants' motion to dismiss without prejudice and 30 days leave to amend.  The

8  Court further **GRANTS** Defendant BAE System's motion to transfer Plaintiffs'

9  Sixth Cause of Action.

## I. BACKGROUND

11 **A.    Procedural History**

12      On August 19, 2003, Plaintiffs Lawrence E. Tannas, Jr. and Tannas

13 Electronic Displays, Inc. filed a Complaint that alleged the following causes of

14 action: (1) declaratory judgment that no contract was entered between Plaintiffs

15 and Defendants, and no breach of contract by Plaintiffs; (2) declaratory judgment

16 that Plaintiffs did not engage in trade secret misappropriation; (3) declaratory

17 judgment that Plaintiffs did not engage in unfair competition; (4) interference with

18 prospective economic advantage; and (5) unfair competition.  On May 25, 2005,

19 the Court accepted Plaintiffs' untimely filing of their First Amended Complaint

20 ("FAC") to add Defendant BAE Systems, Plc and allege a sixth cause of action

21 under 35 U.S.C. § 146.

---

24 [1] The Court notes that Plaintiffs' First Amended Complaint ("Pls.' FAC")
generically refer to all "Defendants" for all causes of action.  However, upon
25 further review, the FAC makes clear that the only proper defendant for the Sixth
26 Cause of Action is BAE Systems, Plc.  Specifically, the Sixth Cause of Action
states, in pertinent part, ". . . Defendants' counsel admitted that *BAE Systems, Plc*
27 *is the real party in interest in the Interference.*"  (Pls.' FAC ¶ 45) (emphasis
added).

EXH. D
-8-

1   Plaintiff Lawrence E. Tannas, Jr. resides in Orange, California.  Plaintiff

2   Tannas Electronic Displays, Inc. is a California corporation with its principal place

3   of business in Orange, California.  Defendants are British corporations with

4   offices located in Farnborough, Hampshire, and the United Kingdom.[2]

5   **B.    Factual Summary**

6   Plaintiffs invented a process for resizing commercial off-the-shelf liquid

7   crystal displays ("LCDs") and filed patent applications, U.S. Patent Nos.

8   6,204,906 and 6,380,999 ("Plaintiffs' patents").[3]  On or about April 14, 2003, the

9   United States Patent and Trademark Office ("USPTO") declared an interference

10  between Plaintiffs' patents and another patent application naming David Watson

11  as inventor  (Interference No. 105,096)("the Watson application").[4]  Plaintiffs

12  allege that the Watson application is owned by Defendants.[5]  Subsequently, on

13  May 9, 2005, the USPTO entered judgment against Plaintiffs' patent application,

14  declaring the patent "unpatentable."[6]

15

16  [2] Pls.' FAC ¶ 3.

17

18  [3] Pls.' FAC ¶ 5.

19  [4] Id. at ¶ 6.

20  [5] Id.

21

22  [6] Defendants request that the Court take judicial notice of the authenticity of
    the judgment and order of the USPTO as against Plaintiff Lawrence E. Tannas, Jr.,

23  Patent Interference Number 105,096. (Defs.' Req. for Judicial Notice in Supp. of
    Mot. to Dismiss ("Defs.' Req. for Judicial Notice") 1:24-2:6, Exs. A, B).

24  According to Federal Rule of Evidence 201, this Court, upon request, must take

25  judicial notice of facts that are not subject to reasonable dispute.  A fact is

26  considered not reasonably in dispute when it is readily accurately determined by
    "resort to sources whose accuracy cannot reasonably be questioned."  Fed. R.

27  Evid. 201(b).  Here, Defendants provide copies of the Judgment-Rule 127and

28  Decision-Priority-Bd.R. 125(a) from the USPTO authenticating and confirming

3

1    Plaintiffs aver that Defendants sold resized LCDs to Symbolic Displays,

2    Inc. ("SDI") on at least two occasions in 2001.[7]  On one of those occasions,

3    Defendants purchased commercial LCDs, resized them into the configuration

4    requested by SDI, and shipped them to SDI's facilities in Santa Ana, California.[8]

5    On a second occasion, SDI shipped LCDs to Defendants in Edinburg, Scotland for

6    resizing.[9]  As well, subsequent to January 2002, Defendants also shipped products

7    into California related to United States and British military activities.  Plaintiffs

8    allege that these products included resized LCDs.[10]

9    Moreover, Plaintiffs contend that Defendants attended a conference at the

10   Society for Information Displays ("SID") in Long Beach, California in May 2000,

11   whereby employees and agents of Defendants invited SDI employees to a

12   hospitality suite at the Queen Mary.[11]

13   On or about June 4, 2003, Plaintiffs contend that they received a letter

14   stating that Defendants were contemplating filing a lawsuit for breach of

15   confidentiality against Plaintiffs.[12]  On July 18, 2003, a second letter was sent to

16   Plaintiffs indicating that Defendants were contemplating filing a lawsuit against

17

18   _____

19   the facts.  Because the source appears reasonably reliable, a point that Plaintiffs do

20   not dispute, this Court takes notice of these facts insofar as they apply to the
     instant Motion.

21

22   [7] Pls.' FAC at ¶ 16.

23   [8] Id.

24   [9] Id.

25   [10] Id. at 18.

26

27   [11] Id. at 17.

28   [12] Id. at ¶ 7.

4

EXH. D
-10-

1  Plaintiffs for misappropriation of trade secrets.[13]  On or about August 12, 2003,

2  Plaintiffs received a draft complaint from Defendants.[14]

3     Furthermore, Plaintiffs allege that Defendants have made false statements to

4  third parties that it owns worldwide patents directed to resizing LCDs, in an

5  attempt to gain the business of these third parties and to disrupt and cause harm to

6  Plaintiffs' business.[15]

7

8                              **II. DISCUSSION**

9  **A.    Standard of Law**

10        1.    Personal Jurisdiction

11        In a Rule 12(b)(2) motion to dismiss, the plaintiff has the burden of

12  establishing personal jurisdiction over the defendant.  Ziegler v. Indian River

13  County, 64 F.3d 470, 473 (9th Cir. 1995).  The existence of personal jurisdiction is

14  determined at the time the suit commences.  Steel v. United States, 813 F.2d 1545,

15  1549 (9th Cir. 1987).  When a court rules on the basis of affidavits or affidavits

16  and discovery materials, plaintiff's burden is met with a prima facie showing of

17  personal jurisdiction.  Fields v. Sedgwick Associated Risks, Ltd., 796 F.2d 299,

18  301 (9th Cir. 1986); Data Disc, Inc. v. Sys. Tech. Assoc., Inc., 557 F.2d 1280,

19  1285 (9th Cir. 1977) .  A prima facie showing is made if Plaintiff's written

20  materials "demonstrate facts which support a finding of jurisdiction."  Data Disc.,

21  557 F.2d at 1285.  Uncontroverted allegations in the complaint must be taken as

22  true and "'conflicts between the facts contained in the parties' affidavits must be

23  resolved in [the plaintiff's] favor[.]"  AT& T Co. v. Compagnie Bruxelles

24

25  ───────────────

26        [13] Id. at ¶ 8.

27        [14] Id. at ¶ 9.

28        [15] Id. at ¶¶ 11-13.

5

1 | Lambert, 94 F.3d 586, 588 (9th Cir. 1996).

2 | In order to show personal jurisdiction over the defendant, the plaintiff must

3 | show that the long arm statute of the forum state, in this case California, confers

4 | jurisdiction, and that the exercise of personal jurisdiction over the nonresident

5 | accords with federal constitutional principles of due process. Lake v. Lake, 817

6 | F.2d 1416, 1421 (9th Cir. 1987). "California's long-arm statute permits a court to

7 | exercise personal jurisdiction over a defendant to the extent permitted by the Due

8 | Process Clause of the Constitution." Panavision Int'l., L.P. v. Toeppen, 141 F.3d

9 | 1316, 1320 (9th Cir. 1998); See also Cal. Civ. Proc. Code § 410.10. Thus, the

10 | relevant inquiry concerns whether the exercise of jurisdiction would comport with

11 | the requirements of due process. Due process requires that the non-resident

12 | defendant has "certain minimum contacts with [the forum state] such that the

13 | maintenance of the suit does not offend 'traditional notions of fair play and

14 | substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

15 | There are two recognized bases for personal jurisdiction over non-resident

16 | defendants: general and specific. General jurisdiction exists if the non-resident

17 | defendant's contacts with the forum state are continuous and systematic enough to

18 | justify the exercise of jurisdiction over the defendant in all matters. See Ziegler,

19 | 64 F.3d at 473. Specific jurisdiction exists when the claims against the non-

20 | resident defendant "arise out of" or are related to the defendant's activities within

21 | the forum state. See Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408,

22 | 414-16 (1984); Panavision, 141 F.3d at 1320.

23 | 2.  Dismissal For Failure To State A Claim Under FRCP 12(b)(6)

24 | A complaint may be dismissed under FRCP 12(b)(6) for failure to state a

25 | claim upon which relief can be granted where the plaintiff cannot prove a

26 | cognizable legal theory or fails to allege sufficient facts under a cognizable legal

27 | theory which would entitle him to relief. Balistreri v. Pacifica Police Dept., 901

28 | F.2d 696, 699 (9th Cir. 1990). The question presented by a motion to dismiss is

1  not whether a plaintiff will prevail in the action, but whether a plaintiff is entitled

2  to offer evidence in support of his claim.  Carbo Distrib. Co. v. Brady, 821 F.

3  Supp. 601, 608 (N.D. Cal. 1992).  While brevity is required in the pleading, it is

4  not sufficient to simply allege a wrong has been committed and demand relief; the

5  underlying requirement is that a pleading give "fair notice" of the claim being

6  asserted and the "grounds upon which it rests."  Conley v. Gibson, 355 U.S. 41,

7  47-48 (1957).  In testing the sufficiency of a complaint, the court must assume all

8  allegations of material fact are taken as true and construed in the light most

9  favorable to the nonmoving party.  Nat'l Wildlife Fed'n v. Espy, 45 F.3d 1337,

10  1340 (9th Cir. 1995).

11        Generally, orders granting motions to dismiss are without prejudice unless

12  "allegations of other facts consistent with the challenged pleading could not

13  possibly cure the defect."  Schreiber Dist. v. Serv-Well Furniture, 806 F.2d 1393,

14  1401 (9th Cir. 1986).

15        3.    Venue And Transfer

16        Venue is proper over federal diversity claims in a "judicial district in which

17  a substantial part of the events or omissions giving rise to the claim occurred."  28

18  U.S.C. 1391(a)(2).  Pursuant to Federal Rule of Civil Procedure 12(b)(3),

19  defendant may move to dismiss for improper venue.  In the Ninth Circuit, "it is not

20  clear which party bears the burden of proving that a substantial part of the events

21  occurred (or did not occur) in [the] district."  Carolina Cas. Co. v. Date Broad.

22  Corp., 158 F. Supp 2d 1044, 1047 (N.D. Cal. 2001).  Where venue is directly

23  challenged, the burden has been placed upon the plaintiff to respond to the basis of

24  the challenge.  See Whiteman v. Grand Wailea Resort, 1999 WL 163044 (N.D.

25  Cal. Mar. 17, 1999).  On the other hand, where defendant's challenge is

26  ambiguous, the court finds that the moving party owns the burden to show that the

27  venue is improper.  Carolina Cas. Co., 158 F. Supp. 2d at 1047.

28        In deciding whether to grant a motion to transfer pursuant to Section

1    1406(a), "[t]he district court of a district in which is filed a case laying venue in

2    the wrong division or district shall dismiss, or if it be in the interest of justice,

3    transfer such case to any district or division in which it could have been brought."

4    See 28 U.S.C. § 1406(a).

5

6    **B.    Local Rule 7-3**

7            As an initial matter, Plaintiffs request the Court to deny Defendants' motion

8    to dismiss for failure to comply with Local Rule 7-3, alleging Defendants' failure

9    to meet and confer "at least five (5) days prior to the last day for filing the

10   motion." Plaintiffs contend that the deadline for a meet and confer was June 1,

11   2005, yet, Defendants did not request a meet and confer until June 7, 2005.[16]

12   Defendants, however, argue that meet and confer efforts were initiated as early as

13   May 12, 2005, which also entailed several meet and confer letters, emails, and a

14   personal visit to Plaintiffs' counsel's office to discuss the merit of the case.[17] In

15   the meet and confer letters and email dated May 12, 2005, May 16, 2005, and May

16   17, 2005, respectively, Defendants clearly informed Plaintiffs of their intention to

17   meet and confer, which also included proposed dates to do so.[18]

18           Moreover, Defendants' discovery obligations as set forth in the Court's

19   December 1, 2004 Order to allow Plaintiffs an opportunity to allege new grounds

20   _____

21           [16] Pls.' Opp'n to Defs' Mot. to Dismiss ("Pls.' Opp'n") 4:5-26.

22           [17] Defendants' counsel aver that on May 12, 2005 and May 16, 2005, meet

23   and confer letters were sent to Plaintiffs' counsel. After receiving no response

24   from Plaintiffs' counsel, an email was sent on May 17, 2005. Further, on May 18,

25   2005, a two hour meeting took place between the parties' counsel at Plaintiffs'

26   counsel's office. Defs.' Reply to Defs.' Mot. to Dismiss Pls.' Compl. ("Defs.'

     Reply") 3:12- 4:17; Declaration of David R. Sugden in Supp. of Defs.' Mot. to

27   Dismiss Pls.' Compl. ("Sugden Decl.") ¶¶ 4-8.

28           [18] Sugden Decl., Exs. D, E, F.

1    for Defendants' minimum contacts, were moot, following Plaintiffs' filing of its

2    FAC nearly three (3) months beyond the deadline set forth in the Order.  Even if

3    the Court accepted the contention that Defendants failed to comply with Local

4    Rule 7-3, the Court concludes that Plaintiffs did not suffer any prejudice or undue

5    delay based upon Defendants' failure to meet-and-confer until five (5) days after

6    the required deadline upon service of Plaintiffs' untimely submitted FAC.  The

7    Court therefore, declines to deny Defendants' motion on those grounds.

8    **C.    Personal Jurisdiction**

9       1.    General Jurisdiction

10    Defendants BAE Systems and BAE Electronics move to dismiss Plaintiffs'

11    FAC for lack of personal jurisdiction.  However, it is Plaintiffs' burden to show

12    Defendants BAE Systems and BAE Electronics' contacts with California are

13    systematic, continuous, and substantial enough to subject them to general personal

14    jurisdiction.  See Ballard, 65 F.3d at 1498.  Plaintiffs have not made this showing.

15    Defendants BAE Systems and BAE Electronics are neither residents of nor

16    incorporated in the State of California.[19]  They have never been involved in any

17    litigation in California during the period of January 30, 2002 to the present.[20]

18    Moreover, Defendants do not maintain a place of business, pay taxes, or have an

19    agent for service of process in California.[21]  Indeed, no defendant owns or leases

20    any property, offices, equipment, or employees in California.[22]  Further,

21    Defendants do not maintain a bank account, agent, distributor or sales

---

23    [19] Defs.' Mot. to Dismiss Pls.' Compl. ("Defs.' Mot.") 5:6-7; Declaration of

24    David Parkes in Supp. of Defs.' Mot. to Dismiss Pls.' Compl. ("Parkes Decl.") ¶ 2.

25    [20] Defs.' Mot. 5:7-8; Parkes Decl. ¶ 3.

26

27    [21] Defs.' Mot. 5:10-11; Parkes Decl. ¶ 4.

28    [22] Defs.' Mot. 5:11-12; Parkes Decl. ¶ 4.

1  representative in California to conduct or obtain business.[23]  Further, Defendants

2  do not manufacture any products, materials, components, equipment or machinery

3  in California.[24]

4      Additionally, Plaintiffs failed to discuss how the Court might have general

5  jurisdiction over Defendants BAE Systems and BAE Electronics.  Rather,

6  Plaintiffs conclusively allege that Defendants' cease-and-desist letter sent into this

7  District with a draft Complaint gives rise to general personal jurisdiction.[25]

8  Plaintiffs further assert, without providing any legal authority, that Defendants'

9  attendance at a conference and their sales of LCDs in California are both sufficient

10  for the Court to exercise general jurisdiction over Defendants.[26]

11      Likewise unpersuasive is Plaintiffs contention that general jurisdiction

12  exists over Defendant BAE Systems because "it is one of the largest aerospace

13  companies in the world."[27]  Plaintiffs further aver that information about BAE

14  Systems could be easily found on its website, which states that BAE Systems has

15  "'more than 90,000' employees worldwide . . . and a 'major presence

16  internationally, particularly in Europe and the United States.'"[28]  The Court finds

17

18      [23] The Court finds Plaintiffs' contention that Defendants' answers to

19  Interrogatory No. 5 are "wholly inadequate, evasive, and non-responsive" is

20  without merit.  Defendants' answer states that they "[do] not 'own' any such
    properties."  Defendants cannot be any more responsive if, in fact, they do not own

21  these properties.  (Defs.' Mot. 5:12-14; Parkes Decl. ¶ 4.)

22      [24] Defs.' Mot. 5:14-15; Parkes Decl. ¶ 4.

23

24      [25] Pls.' Opp'n 7:15-19;

25      [26] Pls.' Opp'n 8:2-19.

26      [27] Pls.' Opp'n 9:9-11; Declaration of Neal M. Cohen in Supp. of Tannas'

27  Opp'n ("Cohen Decl.") ¶ 9, Ex. 4.

28      [28] Pls.' Opp'n 9:18-20; Cohen Decl. ¶ 9, Ex. 4.

1   Plaintiffs' assertions unconvincing. The Ninth Circuit has held that a passive

2   internet website does not constitute sufficient contacts with any state to allow a

3   forum state to find general personal jurisdiction over the website's owner.

4   Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998). In dicta,

5   Amoco Egypt Oil Co. v. Leonis Navigation Co., 1 F.3d 848, 851 n.3 (9th Cir.

6   1993), suggests that a defendant which lacks "incorporation, license or

7   authorization to do business, offices, property, employees, payment of taxes,

8   advertising, solicitation or sales [in the forum state]" will not be subject to general

9   jurisdiction. The Ninth Circuit has regularly "declined to find general jurisdiction

10  even where the contacts are quite extensive." Id.

11      As affirmed in Cybersell, here, the Court agrees that posting a web site on

12  the Internet is not sufficient to subject a party domiciled in one state to jurisdiction

13  in another. Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 418 (9th Cir. 1997).

14  There must be "something more" to demonstrate that Defendants directed their

15  activities toward the forum state. Id. In the instant matter, that has not been

16  shown.

17      Plaintiffs have therefore failed to demonstrate facts to support general

18  jurisdiction over Defendants BAE Systems and BAE Electronics. Accordingly,

19  the evidence shows Defendants do not have regular business dealings with

20  California and their contacts with California residents are not substantial,

21  systematic or continuous.

22      2.    Specific Jurisdiction

23      The Ninth Circuit utilizes a three-part test to determine the propriety of

24  exercising specific jurisdiction:

25      (1)   the non-resident defendant must perform some act by which he
             purposefully avails himself of the privilege of conducting activities in
26           the forum, thereby invoking the benefits and protections of the
             forum's laws;
27
        (2)   the plaintiff's claim arise out of or result from the non-resident
28            defendant's forum-related activities; and

11

(3)    the exercise of jurisdiction must be reasonable.

Panavision, 141 F.3d at 1316. A plaintiff must satisfy all three parts of the test to establish specific personal jurisdiction over a non-resident defendant. McGlinchy v. Shell Chem. Co., 845 F.2d 802, 817-18 n. 10 (9th Cir. 1988). Here, because the evidence show Plaintiffs cannot satisfy the forum-related activities prong, the Court need not address the first and third prong of the specific jurisdiction test.

The second prong for specific, personal jurisdiction is that the claim asserted in the litigation arises out of the defendant's forum related activities. Ziegler, 64 F.3d at 474. In evaluating whether a cause of action arises out of the directed activities, the Court looks to the law of forum state. California applies a broad standard, using a "'but for' test to determine whether a particular claim arises out of forum-related activities." Ballard, 65 F.3d at 1500. We must determine if Plaintiffs would not have been injured "but for" Defendants' conduct directed toward Plaintiffs in California. Id.

In the instant case, Plaintiffs contend that the following activities, which caused them to suffer harm in California, establishes personal jurisdiction: (1) Defendants' cease-and-desist letter sent to Plaintiffs with a draft Complaint; (2) Defendants' sales of resized LCDs to Symbolic Displays, Inc. ("SDI") in California; (3) Defendants' sales of products to the United States military in California; and (4) Defendants' attendance at a conference at the Queen Mary with employees of SDI.[29] Plaintiffs' contentions are unpersuasive.

First, Plaintiffs cannot rely on Defendants' production of the cease-and-desist letter and draft Complaint addressed to Plaintiffs as a basis for establishing that the causes of action before the Court arises from Defendants' forum-related activities. Indeed, Defendants did not commence any action in California, and to

---

[29] Pls.' Opp'n 7:15-19; 8:2-9.

12

Exh. D
-18-

1  the contrary, the letter and draft Complaint articulated that the lawsuit was to be

2  filed in Virginia, not California.[30] No authority supports Plaintiffs' argument that

3  "but for" Defendants' contemplation to file a lawsuit in *Virginia*, Plaintiffs would

4  not have been injured in California (emphasis added).

5       Second, the fact that Defendants sold resized LCDs to SDI and the United

6  States military in 2000 and 2001 is insufficient to demonstrate that Plaintiffs'

7  claims are a result of Defendants' California-related conduct directed towards

8  Plaintiffs. Even if Defendants' conduct in this regard constitutes a deliberate act

9  aimed at California and Plaintiffs, Defendants' transactions with SDI and the

10  United States military were wholly unrelated to Plaintiffs and the present case.

11  Those transactions involved Defendants and third parties. In fact, Plaintiffs' FAC

12  acknowledged that the parties did not enter into any contract or business

13  relationship in California.[31] Indeed, the FAC sought relief from this Court that "no

14  contract exists between Plaintiffs and Defendants."[32] Because the evidence shows

15  Defendants never entered into a contractual relationship with Plaintiffs in

16  California, jurisdiction cannot be predicated on Defendants' contacts with SDI or

17  the United States military to establish the "but for" test.

18       Accordingly, the Court concludes that Plaintiff has failed to make a <u>prima</u>

19  <u>facie</u> showing that Plaintiffs' claims arise out of or result from Defendants'

20  California-related activities. Therefore, the Court cannot exercise personal

21  specific jurisdiction over Defendants BAE Systems and BAE Electronics.

22  **D.**    **Dismissal Of Plaintiff's First Five Causes Of Action Is Warranted**

23       As set forth above, in light of the Court's decision to grant Defendants BAE

24

25

26     [30] Defs.' Mot. 8:17-21; Sugden Decl. ¶ 4.

27     [31] Pls.' FAC ¶ 20; Defs.' Mot. 4:15-18.

28     [32] <u>Id</u>.

EXH. D
- 19 -

1  Systems and BAE Electronics' motion to dismiss for lack of personal jurisdiction,

2  the only remaining defendant seeking to dismiss Plaintiffs' first five causes of

3  action is BAE Avionics.

4          Defendant BAE Avionics argues that dismissal is proper under Fed. R. Civ.

5  P. 12(b)(6) because the FAC demonstrates that no valid claims can be brought

6  under the facts pled in the first five causes of action for: (1) declaratory judgment

7  of no breach of contract; (2) declaratory judgment of no trade secret

8  misappropriation; (3) declaratory judgment of no unfair competition;

9  (4) interference with prospective economic advantage; and (5) unfair

10  competition.[33]  Specifically, BAE Avionics claims that the FAC contains no

11  factual allegations sufficient to satisfy the requirement of Fed. R. Civ. P. 8(a).[34]

12  On the contrary, Plaintiffs allege that the FAC is pled with sufficient particularity

13  to support their claims for relief.[35]  For the reasons discussed below, the Court

14  finds Defendant BAE Avionics' contentions convincing.

15          1.    <u>Plaintiffs' Have Not Pled Sufficient Facts To Support Their First,</u>

16                <u>Second, And Third Causes of Action</u>

17          Under the liberal pleading requirements of Fed. R. Civ. P. 8(a)(2), Plaintiffs

18  need only make a short and plain statement of the claim showing that Plaintiffs are

19  entitled to relief.  <u>See</u> Fed. R. Civ. P. 8(a)(2).  The pleading must, in other words,

20  give fair notice and state the elements of the claim plainly and succinctly.  <u>See</u>

21  <u>Jones v. Cmty. Redevelopment Agency</u>, 733 F.2d 646, 649 (9th Cir. 1984);

22  <u>Conley</u>, 355 U.S. at 47 ("all the Rule [Fed. R. Civ. P. 8(a)(2)] requires is 'a short

23  and plain statement of the claim' that will give the defendant fair notice of what

24

25  _____

26  [33] Pls.' FAC ¶¶ 19-38.

27  [34] Defs.' Mot. 10:7-8; Defs.' Reply 10:11-15.

28  [35] Pls.' Opp'n 12:26; 13:9-28; 14:1-5.

14

1    the plaintiff's claim is and the grounds upon which it rests").

2    BAE Avionics assert that Plaintiffs' first, second, and third causes of action

3    fail to assert an "actual controversy" as required under 28 U.S.C. § 2201(a).[36]

4    Section 2201(a) states, in pertinent parts, "[i]n a case of actual controversy within

5    its jurisdiction . . . any court of the United States, upon the filing of an appropriate

6    pleading, may declare the rights and other legal relations of any interested party

7    seeking such declaration, whether or not further relief is or could be sought." See

8    28 U.S.C. § 2201(a).  As such, a "substantial controversy" of "sufficient

9    immediacy and reality" which has "crystallized to the point that there is a specific

10   need for a declaratory judgment" is required.  Xerox Corp. v. Apple Computer,

11   Inc., 734 F. Supp. 1542, 1546 (N.D. Cal. 1990).

12   Here, the FAC makes the conclusory allegation that Plaintiffs are entitled to

13   declaratory judgment because an actual case or controversy exists between the

14   parties.[37]  However, even if the Court accepts these allegations as true, it does not

15   appear that an "actual controversy" requiring declaratory relief exists.  In fact,

16   Plaintiffs' first cause of action seeks declaratory judgment that "no contract exists

17   between Plaintiffs and Defendants, and consequently, Plaintiffs have not breached

18   any such contract."[38]  Moreover, while Plaintiffs allege that Defendants had

19   threatened them with suit in 2003, Defendants have filed no such suit two years

20   later.[39]

21   Furthermore, in opposition to Defendants' motion to dismiss the first three

22   causes of action, Plaintiffs merely assert that the FAC clearly contains "specific

23

24   [36] Defs.' Mot. 10:22-26.

25   [37] Pls.' FAC ¶¶ 19-24.

26

27   [38] Pls.' FAC ¶ 20.

28   [39] Pls.' FAC ¶¶ 7-9.

1  threats made by defendants against Plaintiff, which threats were included in a

2  letter and an attached draft Complaint."[40]  Again, these allegations are merely

3  conclusory as to the behavior of Defendant BAE Avionics which gives rise to

4  these three claims.  The FAC must also allege the underlying facts which support

5  the conclusions in order for this cause of action to be pled with sufficient

6  particularity.  Accordingly, the Court grants Defendant BAE Avionic's motion to

7  dismiss the First, Second, and Third causes of action without prejudice and with

8  30 days leave to amend.

9       2.    <u>Plaintiffs' Have Not Pled Sufficient Facts To Support Their Fourth</u>

10              <u>Cause of Action</u>

11      Plaintiffs have not sufficiently pled their fourth cause of action for

12  intentional interference with prospective economic advantage.  There are five

13  elements of this tort:  (1) an economic relationship between plaintiff and another

14  party, containing a probable future economic advantage to plaintiff; (2)

15  defendant's knowledge of the existence of the relationship; (3) defendant's

16  intentional conduct designed to interfere with or disrupt the relationship; (4) actual

17  disruption; and (5) damage to the plaintiff as a result of defendant's acts.  <u>See</u>

18  <u>Marin Tug & Barge v. Westport Petroleum</u>, 271 F.3d 825, 831 n.8 (9th Cir. 2001)

19  (quoting <u>Della Penna v. Toyota Motor Sales, U.S.A., Inc.</u>, 11 Cal. 4th 376, 380 n.1

20  (1995)).  Furthermore, Plaintiffs must prove Defendants' interference was

21  wrongful "by some measure beyond the fact of the interference itself."  <u>Della</u>

22  <u>Penna</u>, 11 Cal. 4th at 392-93.  However, the Supreme Court of California has not

23  defined the precise scope of "wrongfulness" necessary to trigger liability for

24  intentional interference with prospective economic advantage.  <u>See</u> <u>Marin Tug &</u>

25

26  _____

27      [40] Pls.' Opp'n 12:26-28; 13:2-3.  The Court notes that Plaintiffs did not
    attach the letter and the draft Complaint with the FAC as stated in the language of

28  the FAC.

16

1    Barge, 271 F.3d at 831.  Thus, it remains an unresolved question of law in

2    California.  See id.

3         In this case, Plaintiffs have not sufficiently alleged each element of this tort.

4    On the face of the FAC, Plaintiffs' allegations sets forth the essential elements of a

5    cognizable legal claim for interference with prospective economic advantage, but

6    the FAC fail to allege sufficient facts under that cognizable legal theory.  Balistreri

7    v. Pacifica Police Dep't, 901 F.2d at 699 ("[d]ismissal can be based on . . . the

8    absence of sufficient facts alleged under a cognizable legal theory").

9         Moreover, Plaintiffs' FAC fails to assert that Defendants' interference was

10   wrongful "beyond the fact of the interference itself."  Della Penna, 11 Cal. 4th at

11   392-93.  On the face of the FAC, the independent wrong alleged by Plaintiffs is a

12   defamation claim that Defendants "made false statements to third parties [and

13   White Industries] that Defendants [had] worldwide patents directed to resizing

14   LCDs."[41]  Under both federal and state law, a defamation claim has to be pled with

15   specificity: ". . . where a plaintiff seeks damage for conduct which is prima facie

16   protected by the First Amendment, the danger that the mere pendency of the action

17   will chill the exercise of First Amendment rights requires more specific allegations

18   than are otherwise required."  Flowers v. Carville, 310 F.3d 1118, 1130 (9th Cir.

19   2002).  As such, merely asserting that Defendants made "false statements to third

20   parties" falls short of the specificity requirement.

21        In addition, in opposition to Defendants' motion to dismiss, Plaintiffs make

22   the conclusory contention that "Plaintiffs clearly set forth sufficient allegations to

23   support this [interference with prospective economic advantage] cause of

24   action."[42]  Again, the pleadings are devoid of substance and wholly conclusory.

25   Therefore, Plaintiffs' FAC, which contains only conclusory allegations that have

26

27        [41] Pls.' FAC ¶¶ 11, 12.

28        [42] Pls.' Opp'n 13:13-14.

1   no facts alleged under the theory for interference with prospective economic

2   advantage, warrant dismissal. In re Party City Sec. Litig., 147 F. Supp. 2d 282,

3   297 (D.N.J. 2001) ("a court need not credit a complaint's 'bald assertions' or

4   'legal conclusions' when deciding a motion to dismiss").

5       3.    Plaintiffs' Have Not Pled Sufficient Facts To Support Their Fifth

6             Cause Of Action

7       Plaintiffs have also failed to pled sufficient facts supporting their fifth cause

8   of action for unfair competition and injurious falsehood.

9       According to Cal. Bus. & Prof. C. § 17200, unfair competition includes

10  "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. C.

11  § 17200. Its broad coverage embraces "anything that can properly be called a

12  business practice and that at the same time is forbidden by law." Schnall v. Hertz

13  Corp., 78 Cal. App. 4th 1144, 1153 (2000). Since this statute is written in the

14  disjunctive, it establishes three varieties of unfair competition: acts or practices

15  which are (1) unlawful, (2) unfair or (3) fraudulent. See id. Thus, under the

16  statute, a business practice can be prohibited as unfair or deceptive, even if it is

17  not unlawful. See id.

18      Furthermore, even a single act of unfair business practice may be enough to

19  support a claim under § 17200. See Solomon v. N. Am. Life & Cas., 151 F.3d

20  1132, 1139 (9th Cir. 1998). To establish an "unlawful" practice, a plaintiff must

21  point to a specific provision of law that has been violated. When alleging unfair

22  business practices under California's unfair competition statute, Plaintiffs must

23  state with reasonable particularity facts supporting the statutory elements of the

24  violation. See Globespan, Inc. v. O'Neill, 151 F. Supp. 2d 1229, 1235 (C.D. Cal.

25  2001) (citing Silicon Knights, Inc. v. Crystal Dynamics, Inc., 983 F. Supp. 1303,

26  1316 (N.D. Cal. 1997)).

27      Assuming Plaintiffs' allegations are true and construing Plaintiffs' FAC in

28  the most favorable light, the FAC identifies no particular section of the statutory

18

1  scheme which was violated and fails to describe with any reasonable particularity

2  the facts demonstrating Defendants have engaged in unfair business practices

3  violating Cal. Bus. & Prof. C. § 17200.  For example, the FAC refers to an effect

4  of "misleading" and "deceiv[ing]" Plaintiffs' potential customers, but the facts

5  clearly do not involve deceptive advertising.  See Cal. Bus. & Prof. C. §§ 17200

6  (holding that unfair competition includes deceptive or misleading advertising);

7  17500 et seq. (specific false advertising practices).  The facts also do not explain

8  the manner in which Defendants misled or deceived customers.  Compare Comm.

9  on Children's Television, Inc. v. Gen. Foods Corp., 35 Cal. 3d 197, 213- 214

10  (1993) (complaint described effect of cereal maker's advertising on young

11  children).  Also, the FAC does not describe the manner in which Defendants'

12  practice is "unlawful."  Id. at 209- 210.

13       In conclusion, Plaintiffs baldly assert that Defendant BAE Avionic's false

14  and misleading statements to third parties and potential customers in which

15  Defendants have worldwide patents on resizing LCDs are deceptive and injurious

16  to Plaintiffs.[43]  Again, these conclusory allegations, which lack "reasonable

17  particularity" fail to support a cause of action for unfair business practices.

18  **E.**    **Transfer of Venue**

19      1.    Dismissal For Improper Venue Is Warranted

20       Defendant BAE Systems argues that this Court is an inappropriate venue for

21  Plaintiffs' sixth cause of action for patent interference under 35 U.S.C. § 146

22  because the claim must be brought in the District of Columbia.[44]  For reasons

23  discussed below, the Court agrees.

24       Section 146 states, in relevant parts, that "[i]f there be . . . an adverse party

25  residing in a foreign country, the United States District Court for the District of

---

27     [43]  Pls.' FAC ¶¶ 31-38.

28     [44]  Defs.' Mot. 18:22-25.

EXH. D
-25-

1  Columbia *shall* have jurisdiction . . . ." 35 U.S.C. § 146; see also Conversion
2  Chem. Corp. v. Gottschalk, 341 F. Supp. 754, 756 n.2 (D. Conn. 1972) (emphasis
3  added).  The language of the statute unambiguously designates the District of
4  Columbia as having exclusive jurisdiction for Section 146 claims.  Thus, this
5  Court concludes that Plaintiffs' Sixth Cause of Action completely bars California
6  as a proper venue.

7       2.       The Present Action Is Properly Transferred To The District Of
8                Columbia

9        Additionally, Defendants request, in the alternative, that the Court transfer
10  the action to the United States District Court for the District of Columbia.
11  Pursuant to Section 1406(a), "[t]he district court of a district in which is filed a
12  case laying venue in the wrong division or district shall dismiss, or if it be in the
13  interest of justice, transfer such case to any district or division in which it could
14  have been brought."  See 28 U.S.C. § 1406(a).  There is no dispute that this action
15  "could have been brought" in the District of Columbia.  In fact, under Section 146,
16  venue is properly laid only in the United States District Court for the District of
17  Columbia.  Accordingly, the Court need not address whether transfer is proper
18  under Belzberg in determining if transfer is necessary in the interest of justice and
19  for the convenience of the witnesses and litigants.  Lou v. Belzberg, 834 F.2d 730,
20  739 (9th Cir. 1987); cert. denied, 486 U.S. 993 (988).

21       Therefore, for the reasons discussed above, the Court concludes that
22  transferring this action to the United States District Court for the District of
23  Columbia is warranted.

24
25
26
27
28

EXH. D
-26-

1

2                                **III. CONCLUSION**

3          For all of the foregoing reasons, the Court hereby **GRANTS** Defendants

4    BAE Electronics and BAE System's  motion to dismiss without prejudice and 30

5    days leave to amend, Plaintiffs' FAC for lack of personal jurisdiction and

6    additionally **GRANTS** Defendant BAE Avionic's motion to dismiss without

7    prejudice and 30 days leave to amend, Plaintiff's first five causes of action for

8    failure to state a claim upon which relief may be granted.  Moreover, the Court

9    hereby **GRANTS** Defendant BAE System's motion to transfer Plaintiffs' Sixth

10   Cause of Action.

11

12   IT IS SO ORDERED.

13

14   DATED:    August 31, 2005.

15
                                            ROBERT J. KELLEHER
16                                          United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

                                            21

EX4. D
-27-

**Annual Report** 2005



# Delivering real advantage

**BAE SYSTEMS**

EXH. E -28-

Operating and financial review

# BAE Systems at a glance

BAE Systems is the premier transatlantic defence and aerospace company delivering a full range of products and services for air, land and naval forces as well as advanced electronics, information technology solutions and customer support services.



|  | Electronics, Intelligence & Support | Land & Armaments | Programmes |
|---|---|---|---|
| **Principal operations** | An industry leader in a variety of military communications, electronic identification, navigation and guidance systems, and a provider of network centric warfare solutions and a broad range of support solutions, including major ship repair activities for the US Navy. | A global leader in the design, development, production and through-life service support of armoured combat vehicles, major and minor calibre naval guns, missile launchers, canisters, artillery systems and intelligent munitions. | Comprises the Company's air systems, naval ships and submarines activities together with the Company's participation in the UK's Future Carrier programme. |
| **Main operating regions** | US, UK/Europe | US, UK, Sweden, South Africa | UK |
| **Major markets** | US, Global | US, UK/Europe | UK |
| **Contribution to 2005 Group sales** | 23% | 8%  *includes six months of United Defense* | 18% |
| **Key points from 2005** | - Sustained leadership positions in electronic warfare and military communications – secured US Air Force mission planning contract<br>- Acquisition of largest US non-nuclear ship repair business<br>- Successful integration of 2004 acquisitions<br>- Successful flight test of infrared missile countermeasures system for commercial airliners | - Transatlantic growth with acquisition of United Defense Industries<br>- Global land systems business established<br>- Key contracts secured – Bradley reset and upgrade – Danish CV90, US RG-31, M777<br>- UK Future Rapid Effect System (FRES) demonstrator award<br>- UK cost base being addressed | - 37 Typhoon aircraft delivered in the year (12 to UK RAF)<br>- First flight of UK Hawk Advanced Jet Trainer aircraft achieved early<br>- Successful delivery of F-35 JSF airframe assemblies<br>- Type 45 first of class launched in February 2006<br>- Landing Ship Dock (Auxiliary) first ship delivered |
| **Location in this report** | page 24-25 | page 26-27 | page 28-29 |

EXH. E
– 29 –

BAE Systems is an international company engaged in the development, delivery and support of advanced defence and aerospace systems in the air, on land, at sea and in space. The Company designs, manufactures and supports military aircraft, surface ships, submarines, combat vehicles, radar, avionics, communications, electronics and guided weapon systems. It is a pioneer in technology with a heritage stretching back hundreds of years. It is at the forefront of innovation, working to develop the next generation of intelligent defence and security systems.

BAE Systems has major operations across five continents and customers in some 130 countries. The Company employs approximately 100,000[1] people and generates annual sales in excess of £15 billion through its wholly-owned and equity accounted investment operations.

[1] including share of employees of equity accounted investments

## CONTENTS

| | |
|---|---|
| About BAE Systems | 1 |
| Highlights and Outlook | 2 |
| Results in brief | 3 |
| Chairman's letter | 4 |
| Chief Executive's review | 6 |
| Market overview | 8 |
| Group strategy framework | 10 |
| Embed a high performance culture across the Company | 12 |
| Win profitable new business and optimise value from our order book | 14 |
| Grow our export business from a strong transatlantic business base | 16 |
| Increase UK/US industrial technology sharing | 18 |
| Optimise our business portfolio | 20 |
| Business portfolio actions | 22 |
| Electronics, Intelligence & Support | 24 |
| Land & Armaments | 26 |
| Programmes | 28 |
| Customer Solutions & Support | 30 |
| Integrated Systems & Partnerships | 32 |
| Commercial Aerospace | 34 |
| Financial review | 36 |
| Corporate responsibility | 42 |
| Board of directors | 46 |
| Corporate Governance including Statement of directors' responsibilities | 48 |
| Remuneration report | 57 |
| Directors' report | 75 |
| Index to the accounts | 78 |
| Independent auditors' report | 79 |
| Consolidated income statement | 80 |
| Consolidated balance sheet | 81 |
| Consolidated cash flow statement | 82 |
| Consolidated statement of recognised income and expense | 83 |
| Notes to the group accounts | 84 |
| Company balance sheet | 146 |
| Notes to the company accounts | 147 |
| Five year summary | 158 |
| Shareholder information | 160 |
| Glossary | 162 |
| Shareholder feedback | 163 |

EXH. e
-30-

Operating and financial review

# Highlights, outlook and results in brief

## Highlights

- Delivering US growth strategy
- Global land systems business established
- Programmes business profitability and risk profile improved
- Growth from UK MoD partnered support
- European business portfolio restructuring
- Strong Airbus order intake
- Strong operating cash flow
- Underlying earnings per share[4] up 29.3% at 22.5p
- Dividend increased 8.4% to 10.3p per share for the year

## Outlook

Looking forward to 2006, we anticipate an improved performance from our defence businesses with modest organic growth and a full year contribution from the former United Defense activities. We also anticipate an increased contribution from the commercial aerospace sector.

We expect to translate operating profit into operating cash flow, other than some small utilisation of customer advances. We intend to make one-off cash contributions to the pension schemes in 2006.

## Results in brief

| Results from continuing operations | 2005 | 2004[1] |
|---|---|---|
| Sales[2] | **£15,411m** | £13,222m |
| EBITA[3] | **£1,182m** | £1,016m |
| Operating profit | **£900m** | £774m |
| Underlying earnings per share[4] | **22.5p** | 17.4p |
| Basic earnings per share[5] | **18.3p** | 14.2p |

| Other results including discontinued operations | | |
|---|---|---|
| Dividend per share | **10.3p** | 9.5p |
| Cash inflow from operating activities | **£2,099m** | £2,350m |
| Net debt as defined by the Group | **£1,277m** | £668m |
| Order book[6] | **£59.8bn** | £50.1bn |

[1] as restated under International Financial Reporting Standards
[2] including share of equity accounted investments' sales
[3] earnings before amortisation and impairment of intangible assets, finance costs and taxation expense
[4] earnings per share excluding amortisation and impairment of intangible assets, non-cash finance movements on pensions and financial derivatives, and uplift on acquired inventories (see note 10 to the Group accounts)
[5] basic earnings per share in accordance with International Accounting Standard 33
[6] including share of equity accounted investments' order books and after the elimination of intra-group orders of £0.9bn (2004 £2.6bn)

EXHI. E
–32–

**Operating and financial review**

# Market overview

New threats and conflict arenas are placing
unprecedented demands on military forces and
presenting BAE Systems with new challenges
and opportunities to assist those forces in
meeting changing defence and security needs.

**2006 forecast defence procurement**
(US$ billions in constant 2006 prices)



● Rest of world
● Europe
◉ US
Source: BAE Systems internal analysis

The US accounts for approximately 40% of
forecast total global procurement in 2006.

**Forecast defence budget by major region**
(US$ billions in constant 2006 prices)



● Rest of world
● Europe
◉ US
Source: BAE Systems internal analysis

The US represents over 45% of the total forecast
global defence spend (including equipment,
personnel and operating costs) to 2010.

**Defence**

Global defence spending grew by eight
percent in 2004 among the fifteen largest
military nations. With major operations
on five continents and defence customers
in some 130 nations, BAE Systems is well
placed to use its strong UK and enhanced
US presence as a springboard for further
growth in both new and established
defence markets.

BAE Systems is heavily reliant upon
the levels of funding committed by the
domestic governments where the
Company's operations are based,
principally the US and UK. In addition,
export markets are defined and regulated
by our domestic governments.

Although defence spending in some
western European nations is static, the
region still offers significant opportunities
for BAE Systems. As has been the case
for a number of years, central European
countries are investing in their armed
forces as they move from Warsaw Pact
to NATO standard equipment.

The Kingdom of Saudi Arabia is another
major market with the Company serving
as prime contractor for the UK government-
to-government agreement. BAE Systems
provides support to the Royal Saudi Air
Force, the Kingdom's ground defence
infrastructure and naval minehunters.
Saudi Arabia maintains one of the largest
defence budgets in the world. In late
December 2005, the governments of
the Kingdom of Saudi Arabia and the
UK signed an Understanding Document
intended to establish a greater partnership
in modernising the Saudi Arabian
Armed Forces.

**Group sales by market**



● Commercial        21%
  Aerospace
● Defence          79%

The above chart shows the percentage
contribution to 2005 Group sales from the
Defence and Commercial Aerospace markets.

Operating and financial review

# Business portfolio actions

  

The business portfolio actions are championed by relevant Executive Committee members and are delivered either separately or jointly by the business groups.

### Grow our business in the United States

In the summer of 2005, BAE Systems completed the acquisition of United Defense, growing the US business base by $2.6bn in annual sales and 8,000 additional employees. This acquisition established BAE Systems as a major land systems prime contractor with a strong position in support of the US Department of Defense's requirements for force sustainment and affordable transformation. The acquisition provides new opportunities in land vehicle and naval gun programmes. It also broadens our access to platforms, supporting our customers with enhanced solutions including new target acquisition, communications and networked awareness systems, and diversifies our business base with the US Army.

In addition, the existing US business is achieving organic growth across its established businesses with key successes in electronic warfare, tactical communications, intelligence systems, information technology, and customer support.

### Establish in the UK sustainably profitable through-life businesses in air, land and sea

Good progress continues to be made across all major platform programmes. In 2005, the financial performance of the Programmes business group benefited both from improved project execution and agreement on the way forward on the Typhoon programme made in December 2004.

In December 2005, the UK MoD published its Defence Industrial Strategy (DIS). This strategy will shape the future of the UK defence industrial base and recognises the need to sustain in the UK the highest system integration skills and capabilities across air, land and sea domains. The DIS also emphasises the importance of a through-life capability approach and envisages long-term partnering agreements within each of the key sectors of air, land and sea. Successful implementation of this strategy will create a positive investment environment. The Company will work closely with the MoD to help them realise the DIS intent.

The enduring requirement for retaining an on-shore, through-life, prime systems integration capability across air, land and sea presents BAE Systems with opportunities to sustain its UK business base.

### Grow our global land systems business

Following the successful completion of the acquisition of Alvis in 2004 and United Defense in 2005, BAE Systems has established a major land systems position, with home markets in the US, Sweden, South Africa and the UK. The formation of the Land & Armaments business group in June 2005 brought BAE Systems' existing land systems activities together with those of United Defense, to create a global leader in armoured combat vehicles and armaments.

These integrated capabilities, our position on future programmes and our extensive installed base of legacy systems provides BAE Systems with a platform from which it can develop its global land systems business. We shall capitalise on the reset and modularity priorities of the US Army to restore battle-worn equipment and to convert active and reserve units to standardised expeditionary organisations. The next generation of combat systems will be rapidly deployable, lethal, survivable and networked. We have an integral role in the UK's Future Rapid Effect System programme, the US Army's Future Combat Systems programme and the Swedish SEP future ground systems programmes.

In the UK land support arena the award of the AS90 equipment support contract was an excellent first step as we enter a long-term partnering arrangement with the MoD to support the UK armoured fighting vehicle fleet.

EXH. 5
-34-

## 8 Tax continued

| | At 1 January 2004 £m | Exchange movements £m | Other movements £m | Recognised in income[1] £m | Recognised in equity £m | At 31 December 2004 £m |
|---|---|---|---|---|---|---|
| Property, plant and equipment | (23) | (1) | – | (25) | – | (49) |
| Intangible assets | (1) | – | (47) | 4 | – | (44) |
| Provisions | 227 | (11) | 11 | (55) | – | 172 |
| Goodwill | – | (1) | 39 | (22) | – | 16 |
| Pension/retirement plans | 781 | (15) | (3) | (28) | 275 | 1,010 |
| Share-based payments | 1 | – | (6) | 9 | 2 | 6 |
| Other items | 20 | (2) | (34) | (23) | 4 | (35) |
| Rolled over capital gains | (26) | – | – | (3) | – | (29) |
| Capital losses carried forward | 26 | – | – | 3 | – | 29 |
| | 1,005 | (30) | (40) | (140) | 281 | 1,076 |

[1] includes £7m relating to discontinued operations

### Unrecognised deferred tax assets

Deferred tax assets have not been recognised in respect of the following items:

| | 2005 £m | 2004 £m |
|---|---|---|
| Deductible temporary differences | 13 | 7 |
| Capital losses carried forward | 29 | 161 |
| Trading and other losses carried forward | 148 | 170 |
| | 190 | 338 |

These assets have not been recognised as the precise incidence of future profits in the relevant countries and legal entities cannot be sufficiently accurately predicted at this time.

The aggregate temporary differences associated with investments in subsidiaries, branches, associates and joint ventures for which deferred tax liabilities have not been recognised is £414m (2004 £203m).

## 9 Discontinued operations

### Eurosystems

On 29 April 2005, the Group announced the completion of the Eurosystems transaction with Finmeccanica SpA.

The Eurosystems transaction comprised the sale of BAE Systems Avionics Limited and the UK communications business, and the dissolution of AMS, the 50/50 joint venture of BAE Systems and Finmeccanica. BAE Systems Avionics Limited represented substantially all of the previously reported Avionics business group.

BAE Systems Avionics Limited and Galileo Avionica SpA merged to form a new Avionics business owned 75% by Finmeccanica and 25% by BAE Systems. The Group's 25% interest in the newly merged business is subject to a put option exercisable by BAE Systems in the three month period from the beginning of June 2007 and a call option by Finmeccanica at any time to August 2007. At completion, BAE Systems received net consideration of £374m, plus an £89m working capital adjustment. BAE Systems will receive a further amount of £268m upon the exercise of either the put or call option over the remaining 25% stake. Accordingly, the Group is treating the remaining amount of £233m, after discounting to the balance sheet date, as deferred consideration as it does not exercise any control or significant influence over the new Avionics business.

BAE Systems sold its UK communications business to Selenia Communications Limited, a wholly owned subsidiary of Finmeccanica, for £25m in cash.