1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LAWRENCE TANNAS, et al.,          )
                                  )
        Plaintiffs,               )   Docket No. CA 0-1866
                                  )
    v.                            )
                                  )
BAE SYSTEMS AVIONICS, LTD.,       )   Washington, D.C.
et al.,                           )   Wednesday, August 2, 2006
                                  )   12:30 p.m.
        Defendants.               )

TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE RICHARD W. ROBERTS,
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiffs:    BIRCH, STEWART, KOLASCH, LLP
                       Mark J. Nuell, Ph.D.
                       Quentin Corrie, Esq.
                       8110 Gatehouse Road
                       Suite 100 East
                       P.O. Box 747
                       Falls Church, VA  22040
                       703.205.8000

                       VISTA IP LAW GROUP
                       William A. English, Esq.
                       2040 Main Street, 9th Floor
                       Irvine, CA  92614
                       949.724.1849

For the Defendants:    CALL, JENSEN & FERRELL
                       Dave R. Sugden, Esq.
                       610 Newport Center Drive
                       Suite 700
                       Newport Beach, CA  92660
                       949.717.3000

2

Court Reporter:     Scott L. Wallace, RDR, CRR
                    Official Court Reporter
                    Room 6814, U.S. Courthouse
                    Washington, D.C. 20001
                    202.326.0566

Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.

3

WEDNESDAY MORNING SESSION, AUGUST 2, 2006

12:55PM 1

12:55PM 2    THE DEPUTY CLERK:  Civil Action 057-1866 Lawrence Tannas,

12:55PM 3    et al. versus BAE Systems Avionic, Limited, et al.

12:55PM 4        Counsel, please approach and state your names and who you

12:55PM 5    represent for the record at the podium.

12:55PM 6        MR. SUGDEN:  Good afternoon, Your Honor.  David Sugden on

12:55PM 7    behalf of Defendant BAE Systems, PLC.

12:55PM 8        THE COURT:  All right.  Good afternoon.

12:55PM 9        MR. CORRIE:  Good afternoon, Your Honor.  My name is

12:55PM 10   Quentin Corrie.  I represent the plaintiff.  I would like to

12:55PM 11   introduce to the Court William English, whose pro hac vice is

12:55PM 12   pending.  I have an additional copy.  He's in good standing, but

12:55PM 13   Your Honor has not yet ruled, and I would like permission

12:55PM 14   ultimately for him to be the one to speak.  And also Mr. Mark

12:55PM 15   Nuell, who is an attorney pro hac vice also, but he does not

12:55PM 16   intend to speak.

12:55PM 17       THE COURT:  I do have Mr. Nuell's application.  I may have

12:56PM 18   to go back and see Mr. English's because that's not in front of

12:56PM 19   me.

12:58PM 20       MR. CORRIE:  I can tender a copy.

12:56PM 21       THE COURT:  Unless there's any objection to granting the

12:56PM 22   pro hac vice for Mr. Nuell, I'll go ahead and grant that

12:56PM 23   application, and that's --

12:56PM 24       MR. SUGDEN:  No objection.

12:56PM 25       THE COURT:  All right.  Ms. Romero, that will be docket

4

12:58PM 1    number 8.  That's a motion for admission of Mr. Nuell pro hoc,

12:58PM 2    and I'm granting that docket number 8 motion.

12:58PM 3        MR. SUGDEN:  Thank you, Your Honor.

12:58PM 4        MR. CORRIE:  And it's Mr. William English, who is also

12:58PM 5    pending, Your Honor, and he's the one I would actually ask the

12:58PM 6    Court to allow him to speak.  His is pending.

12:58PM 7        THE COURT:  I'll allow him to speak for purposes of this

12:56PM 8    hearing, and then I'll look at the application and rule on that

12:56PM 9    because I'm not sure I brought that in here.

12:56PM 10       MR. CORRIE:  Yes, sir.

12:56PM 11       THE COURT:  All right.  Go ahead.

12:56PM 12       MR. ENGLISH:  Good afternoon, Your Honor, William English

12:58PM 13   for Lawrence Tannas.

12:58PM 14       THE COURT:  All right, good afternoon.

12:58PM 15       MR. NUELL:  Good afternoon, Your Honor.  I'm Mark Nuell

12:56PM 16   for plaintiff.

12:58PM 17       THE COURT:  All right.  Good afternoon.

12:56PM 18       All right.  Counsel, who will be speaking for the parties,

12:56PM 19   come on up to the podium there.  I did review the Rule 16.3

12:57PM 20   report.  My first question to you regards your representation

12:57PM 21   that this case may well profit from some early alternative

12:57PM 22   dispute resolution.  What I suspect I would ask of you is, does

12:57PM 23   it make sense at this point to refer you to some mediator or

12:57PM 24   early neutral evaluator first before the discovery clock starts

12:57PM 25   ticking and so forth to see if you all can make some progress on

EXHIBIT A

**5**

12:57PM 1 the outstanding issues before you start spinning the billable
12:57PM 2 hour clock on researching, writing and discovery and depositions
12:57PM 3 and so on?
12:57PM 4     MR. SUGDEN: Your Honor, this is Mr. Sugden on behalf of
12:57PM 5 BAE. I think it would be --
12:57PM 6     THE COURT: Come a little closer to the mic.
12:57PM 7     MR. SUGDEN: I think it would be premature to refer us
12:57PM 8 out. We have settled the case, except for this one 146 cause of
12:58PM 9 action, and the parties have worked in good faith to get as close
12:58PM 10 to settlement of the entire resolution. And then once the case
12:58PM 11 was transferred to this Court, I don't think there's much the
12:58PM 12 parties can do further to agree on before we engage in discovery.
12:58PM 13 Things may change later on, but I don't think anything has
12:58PM 14 changed that will make mediation or referral to an ADR fruitful
12:58PM 15 at this time.
12:58PM 16     MR. ENGLISH: Your Honor --
12:58PM 17     THE COURT: Are you representing the plaintiff?
12:58PM 18     MR. ENGLISH: Yes, I am, Your Honor.
12:58PM 19     THE COURT: Okay.
12:58PM 20     MR. ENGLISH: Actually -- in the joint report that we
12:58PM 21 submitted, one of the things that we actually said is the
12:58PM 22 plaintiff actually intends to file a motion to transfer under 20
12:58PM 23 U.S.C. 1404 to transfer the case to the Southern Division of the
12:58PM 24 Central District of California.
12:58PM 25     THE COURT: Is that the division and district from which

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

**6**

12:58PM 1 the case came to me?
12:58PM 2     MR. ENGLISH: It's the district but not the division. It
12:58PM 3 was actually in Los Angeles. I don't know if that's northern or
12:58PM 4 western, what it is in Los Angeles. And so I don't know if you
12:59PM 5 would want to consider that motion before we did either some sort
12:59PM 6 of neutral evaluation or set any discovery, but if the case
12:59PM 7 doesn't get transferred, then -- the plaintiff's position is we
12:59PM 8 would be open to having some type of neutral evaluation or
12:59PM 9 something like that. The parties did try to settle the case.
12:59PM 10 The person who is acting in the role of mediator was actually a
12:59PM 11 person from one of the related companies of the defendant. So I
12:59PM 12 don't know if that would be -- from our perspective we think it
12:59PM 13 would be helpful, but I know the defendant, apparently, doesn't
12:59PM 14 agree with us on that. So --
12:59PM 15     THE COURT: Well, I started out with that only because the
12:59PM 16 parties in their joint statement said they believed they could
12:59PM 17 benefit from ADR procedures and were receptive to possible early
12:59PM 18 neutral evaluation. Maybe I'm misreading that, but does that
12:59PM 19 mean that neither side wants at this point to go forward with
12:59PM 20 possible early neutral evaluation?
12:59PM 21     MR. SUGDEN: Yes, Your Honor. The plaintiff as --
01:00PM 22     THE COURT: So what does this mean?
01:00PM 23     MR. SUGDEN: The plaintiff had proposed mediation in the
01:00PM 24 report. I asked that it be taken out, and then it was left as
01:00PM 25 is. I looked at it remotely and didn't have a chance to look at

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

**7**

01:00PM 1 it as close as I should have. So it's a bit misleading with
01:00PM 2 respect to early neutral evaluation.
01:00PM 3     THE COURT: What is your response, then, to the proposal
01:00PM 4 that we set deadlines for briefing on the motion to retransfer?
01:00PM 5     MR. SUGDEN: We'll be opposing the motion, but I have no
01:00PM 6 objection to the deadline as to when it be filed.
01:00PM 7     THE COURT: Well, does it make sense to go ahead and start
01:00PM 8 the discovery clock now and let the parties file whatever motions
01:00PM 9 they want rather than delaying discovery uncertain about whether
01:00PM 10 we're going to ping-pong the case back to California from whence
01:00PM 11 it came?
01:00PM 12     MR. SUGDEN: I think discovery isn't necessary at this
01:00PM 13 time. I think the only issue that the plaintiff would want
01:00PM 14 discovery on is the issue of personal jurisdiction in California.
01:00PM 15 BAE's position is that they've already conducted discovery in
01:01PM 16 California. They brought a motion for further discovery, it was
01:01PM 17 denied. They then filed a first amended complaint; BAE Systems
01:01PM 18 opposed the -- filed an FRCP 12(b)(2) motion to dismiss. It was
01:01PM 19 then granted. So now they're going to ask this Court to
01:01PM 20 retransfer the case back by arguing, number 1, it belongs not in
01:01PM 21 this Court but in the court in California. Quite interesting that
01:01PM 22 argument is the fact that the California court can exercise
01:01PM 23 personal jurisdiction over BAE Systems, PLC, and our response is
01:01PM 24 they've already decided that personal jurisdiction is improper.
01:01PM 25 And so I think it would be inappropriate to have another court

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

**8**

01:01PM 1 review the issue of personal jurisdiction over BAE Systems, PLC
01:01PM 2 when the California court has already decided that it cannot
01:01PM 3 exercise personal jurisdiction over that BAE entity. BAE Systems
01:02PM 4 in this case has answered the complaint, thereby surrendering
01:02PM 5 personal jurisdiction. So I'm not sure what they want discovery
01:02PM 6 on.
01:02PM 7     The footnote in the joint report articulated that they
01:02PM 8 wanted to have early discovery on the issue of personal
01:02PM 9 jurisdiction, and BAE would oppose that.
01:02PM 10     THE COURT: Well, do you have any authority for the
01:02PM 11 proposition that -- and it's an interesting question -- a
01:02PM 12 transferring district decision that there is no jurisdiction --
01:02PM 13 Was the basis for the transfer a question on personal
01:02PM 14 jurisdiction over the defendant? One's shaking the head no;
01:02PM 15 one's nodding yes.
01:02PM 16     MR. ENGLISH: The basis of the motion in the Court's
01:02PM 17 decision, Your Honor, was an interpretation of the statute under
01:02PM 18 which the cause of action lies, which is 35 U.S.C. 146. The
01:02PM 19 Court in Los Angeles relied on a Connecticut District Court case
01:02PM 20 from 1972 stating that that 146 statute gave exclusive
01:02PM 21 jurisdiction over foreign defendants to the District of Columbia.
01:03PM 22 There are several cases, including a District of Columbia case
01:03PM 23 from 2005, which basically said that that provision is a
01:03PM 24 plaintiff's provision. It's like a last report for plaintiffs.
01:03PM 25 If you can't get jurisdiction over a foreign defendant anywhere

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

EXHIBIT A

**9**

01:03PM 1  else, you can at least get them in D.C., Your Honor, and so --
01:03PM 2  But based upon its misinterpretation, the Court transferred that
01:03PM 3  cause of action to D.C. because it believed that D.C. had
01:03PM 4  exclusive jurisdiction over that cause of action, not because of
01:03PM 5  personal jurisdiction. The Court did not decide the issue of
01:03PM 6  personal jurisdiction.
01:03PM 7      THE COURT: You're saying that it was a subject matter
01:03PM 8  jurisdiction issue?
01:03PM 9      MR. ENGLISH: Yes, Your Honor.
01:03PM 10     THE COURT: Or perhaps really a venue one?
01:03PM 11     MR. ENGLISH: Um-hmm.
01:03PM 12     THE COURT: Was it a venue issue? I mean, if there's a
01:03PM 13 subject matter jurisdiction -- let me just ask. Was it a venue
01:03PM 14 decision or was it that subject matter jurisdiction was vested in
01:03PM 15 the United States District Court solely for the District of
01:03PM 16 Columbia and no other District Court?
01:03PM 17     MR. ENGLISH: Correct, it was the latter, Your Honor.
01:03PM 18 That was the Los Angeles Court's interpretation of the statute.
01:04PM 19     MR. SUGDEN: Mr. English's articulation of the order is
01:04PM 20 correct, but I think it's incomplete. The first part of the
01:04PM 21 Court's order analyzes personal jurisdiction. And there were
01:04PM 22 three entities involved. There was BAE Electronics, BAE Systems,
01:04PM 23 the entity in this case, and BAE Avionics. Avionics did not
01:04PM 24 contest personal jurisdiction, but the other two BAE entities
01:04PM 25 did, one of which is the one in this case. And the Court -- I'm

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

**11**

01:06PM 1  clock for purposes of resolving any issues about where this case
01:06PM 2  is going to be?
01:06PM 3      That's really what I'm asking. That's all I want to know.
01:06PM 4  We can set up a -- we can set up the schedule now, a scheduling
01:06PM 5  order now that says file your motions whenever you want to file
01:06PM 6  them, but the discovery clock starts today for whatever discovery
01:06PM 7  has to be had and you're on a dual track. Or if there's some
01:07PM 8  reason to think that a resolution of a motion to retransfer or
01:07PM 9  to -- whatever you want to call it -- will have more of an impact
01:07PM 10 to advance or potentially resolve earlier the case without you
01:07PM 11 all spinning discovery wheels. That's something different and
01:07PM 12 that's really what I'm trying to find out your judgment about.
01:07PM 13     MR. CORRIE: I don't have a problem with either. If the
01:07PM 14 Court would rather have a schedule set so the Court knows if the
01:07PM 15 case isn't transferred it knows how it's going to impact it's
01:07PM 16 over cases, then I would be willing to go ahead and parallel. I
01:07PM 17 would expect to file the motion to transfer very shortly, within
01:07PM 18 the next week or two. So then, of course, there will be time for
01:07PM 19 the opposition and that before we go to the actual hearing. So
01:07PM 20 if the Court would prefer to do that so it doesn't have to call
01:07PM 21 us back in for another scheduling hearing. If for some
01:07PM 22 unforeseen reason it denies our motion --
01:07PM 23     THE COURT: Slow down just a little so we can keep up with
01:07PM 24 you.
01:07PM 25     MR. ENGLISH: Then I would be open to doing that now if

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

**10**

01:04PM 1  almost positive the Court ruled on BAE System's motion to dismiss
01:04PM 2  for lack of personal jurisdiction. And so once BAE Systems'
01:04PM 3  argument that personal jurisdiction did not exist, the Court then
01:04PM 4  looked at the Section 146 issue, and it said venue is proper in
01:04PM 5  the District of Columbia. Implicit in the Court's order is "it's
01:05PM 6  proper in the District of Columbia because it's improper in
01:05PM 7  California," and the reason why it's improper is because there's
01:05PM 8  no personal jurisdiction over that entity.
01:05PM 9      THE COURT: Well, obviously there's going to be some
01:05PM 10 briefing at some point. I would be very interested, when you all
01:05PM 11 conduct the briefing, in the general question about the ping-pong
01:05PM 12 of venue transfers, if a transferring court decides that venue is
01:05PM 13 improper in its district and transfers based on its analysis to
01:05PM 14 another district for venue analysis, I would be interested in any
01:05PM 15 authority that that is the law of the case and the recipient
01:05PM 16 district would be without authority to then transfer back, if
01:05PM 17 anybody's arguing that.
01:05PM 18     Now, that's sort of a venue specific analysis. If there
01:05PM 19 is questions of subject matter jurisdiction that arise under the
01:06PM 20 statute that make this not a pure venue analysis issue, then I
01:06PM 21 guess I would need to hear from you about that. But where I
01:06PM 22 started was scheduling. And I wanted to -- obviously you all are
01:06PM 23 not ready to go to alternative dispute resolution. So, the
01:06PM 24 question now is, do we set up a schedule for briefing that
01:06PM 25 includes the discovery clock running or that tolls the discovery

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

**12**

01:07PM 1  that would be more convenient for the Court and then you'll at
01:08PM 2  least know what our schedule is if the case remains.
01:08PM 3      MR. SUGDEN: I would have no objection to putting in a
01:08PM 4  scheduling conference -- I'm sorry, scheduling order today. I
01:08PM 5  would oppose discovery starting today. I think it would be much
01:08PM 6  more efficient to have the plaintiff file its motion to have the
01:08PM 7  case transferred back, allow BAE an opportunity to oppose it, the
01:08PM 8  Court can then decide the issue. And if the Court decides
01:08PM 9  transferring it back, any discovery that had started here would
01:08PM 10 be meaningless, and if the --
01:08PM 11     THE COURT: Well, why?
01:08PM 12     MR. SUGDEN: Because I think -- well, I guess --
01:08PM 13     THE COURT: I don't know that the discovery is going to be
01:08PM 14 limited to just the issues about the transfer. You all have
01:08PM 15 suggested that the discovery ought to go forward over a period of
01:08PM 16 10 or 11 months or something, which is another issue I'll get to.
01:08PM 17     MR. SUGDEN: Sure. I think just for -- if nothing else,
01:08PM 18 the pragmatic reason of saving costs. I think we should at least
01:09PM 19 have the issue decided here with respect to venue and then allow
01:09PM 20 the Court to decide where it will proceed and then commence
01:09PM 21 discovery.
01:09PM 22     THE COURT: Is there discovery that you all anticipated
01:09PM 23 during this ten-month period that would be discovery beyond
01:09PM 24 merely the discovery concerning the transfer or venue issues?
01:09PM 25 Are there substantive discovery issues?

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

**EXHIBIT A**

13

01:09PM 1    MR. SUGDEN: I'll defer to the plaintiff on that. I don't
01:09PM 2    know the answer to that. BAE doesn't have an intent to do much
01:09PM 3    discovery. BAE's concern is that the discovery that the
01:09PM 4    plaintiff wants to start now is geared towards personal
01:09PM 5    jurisdiction discovery, and we don't think that's appropriate for
01:09PM 6    this motion. And therefore --
01:09PM 7        THE COURT: Only because you say that the personal
01:09PM 8    discovery issue has already been resolved?
01:09PM 9        MR. SUGDEN: Yes, and in addition, from Mr. English's
01:09PM 10   comments a moment ago, it looks like he's saying the argument
01:09PM 11   hinges on the interpretation of a statute. And so therefore, if
01:09PM 12   it's not a personal jurisdiction issue, he surely doesn't need
01:09PM 13   discovery on the personal jurisdiction issue.
01:09PM 14       THE COURT: Well, let me ask both of you, then. You all
01:09PM 15   agree to have, I think, a ten-month period for discovery. What
01:10PM 16   were you anticipating doing?
01:10PM 17       MR. ENGLISH: Plaintiff does have discovery -- it's own
01:10PM 18   on-going investigations for its own case as well as discovery
01:10PM 19   that it will be taking against some of the issues that were
01:10PM 20   raised during the interference regarding the defendant, so we
01:10PM 21   would actually -- I mean, that discovery period is,
01:10PM 22   I think, sufficiently long that if the case is not transferred,
01:10PM 23   if we set it at that date now, I don't think the motion to
01:10PM 24   transfer is going to impact, you know, the ability to finish
01:10PM 25   discovery in the time we've already proposed.

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

14

01:10PM 1        THE COURT: Now, tell me why I should fix discovery for a
01:10PM 2    ten-month period instead of the presumptive four months or even
01:10PM 3    six months for complex cases? I am not inclined to put a
01:10PM 4    deadline at 10 months out.
01:10PM 5        MR. SUGDEN: We have no objection to shortening the time.
01:11PM 6        MR. ENGLISH: I guess plaintiff wouldn't either. The only
01:11PM 7    question I suppose, then, is the scheduling for the motion to
01:11PM 8    transfer, if the discovery schedule is set today at four months
01:11PM 9    from today and unfortunately we get two months before we get a
01:11PM 10   decision on the motion to transfer, that might impact. So, if
01:11PM 11   the Court wanted to shorten the discovery schedule, then perhaps
01:11PM 12   we would need to, you know, toll setting the schedule then......
01:11PM 13   unless it's not too much shorter than what it's already set at.
01:11PM 14       THE COURT: I'm not sure I followed what you were saying,
01:11PM 15   but my proposal, then, since there's nothing before me that
01:11PM 16   suggests that this ought to be set on what my initial scheduling
01:11PM 17   order appendix suggested would be a complex case track, I would
01:11PM 18   want to put this on a discovery schedule that a standard case
01:11PM 19   would have, so that discovery would close 120 days from today.
01:11PM 20   Do you have that, Ms. Romero?
01:11PM 21       THE DEPUTY CLERK: Yes, Your Honor. 120 days from today
01:11PM 22   is November 30th.
01:11PM 23       THE COURT: Have all discovery close around November 30th,
01:12PM 24   and then have you come back shortly after that for a
01:12PM 25   post-discovery status conference. When, if at all, you file a

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

15

01:12PM 1    motion for transferring in the interim is up to you all. So
01:12PM 2    that's what I'm expecting to do unless you have anything further
01:12PM 3    to say on that.
01:12PM 4        MR. ENGLISH: No, Your Honor.
01:12PM 5        THE COURT: All right. Well, I'll adopt your proposal to
01:12PM 6    have the initial disclosures due on August 31st, 2006. We'll
01:12PM 7    have the deadline be September 29th, 2006 for amending the
01:12PM 8    complaint or joining any parties.
01:12PM 9        Now, your expert witness designations, I think, had been
01:12PM 10   proposed for -- in contemplation of some ten-month discovery
01:12PM 11   schedule, but we'll make the plaintiff's expert witness
01:12PM 12   designations be due no later than 60 days from today. Do you
01:12PM 13   have that?
01:12PM 14       THE DEPUTY CLERK: Yes. October 3rd.
01:12PM 15       THE COURT: That will be October 3rd, 2006. And the
01:13PM 16   defendant's expert witness designations would be 90 days from
01:13PM 17   today.
01:13PM 18       THE DEPUTY CLERK: October 31st.
01:13PM 19       THE COURT: That will be October 31st, 2006. And we'll
01:13PM 20   close discovery -- what did you say 120 days was?
01:13PM 21       THE DEPUTY CLERK: November 30th.
01:13PM 22       THE COURT: That will be November 30th, 2006 for the close
01:13PM 23   of discovery.
01:13PM 24       And I'd ask you all to come back in for a post-discovery
01:13PM 25   status conference on the 1st of December. Can you come in then?

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

16

01:13PM 1        MR. SUGDEN: Yes, Your Honor.
01:13PM 2        THE COURT: All right. We'll have that on the 1st of
01:13PM 3    December.
01:13PM 4        MR. SUGDEN: At what time, Your Honor?
01:14PM 5        THE COURT: And that will be at 10:30 a.m. And we'll have
01:14PM 6    the deadline for dispositive motions, since that winter break
01:14PM 7    comes in right after that, I'll carry it over into January.
01:14PM 8    We'll make it January 3rd, 2007. And we'll adopt the suggested
01:14PM 9    limits of five depositions and 25 interrogatories.
01:14PM 10       All right. Anything else we should take up this morning?
01:14PM 11   If not, then thank you very much for coming in. You may be
01:14PM 12   excused. We'll get this scheduling order out electronically.
01:14PM 13       MR. SUGDEN: Thank you, Your Honor.
01:14PM 14       (Proceedings adjourned at 1:14 p.m.)
15
16       **C E R T I F I C A T E**

17           I, Scott L. Wallace, RDR-CRR, certify that the
     foregoing is a correct transcript from the record of proceedings
18   in the above-entitled matter.

19       ---------------------------
     **Scott L. Wallace, RDR, CRR**
20       **Official Court Reporter**
21
22
23
24
25

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

**EXHIBIT A**

**0**

0-1866 [1] - 1:4
057-1866 [1] - 3:2

**1**

1 [1] - 7:20
10 [2] - 12:16, 14:4
100 [1] - 1:15
10:30 [1] - 16:5
11 [1] - 12:16
12(b)(2 [1] - 7:18
120 [3] - 14:19, 14:21, 15:20
12:30 [1] - 1:7
1404 [1] - 5:23
146 [4] - 5:8, 8:18, 8:20, 10:4
16.3 [1] - 4:19
1972 [1] - 8:20
1:14 [1] - 16:14
1st [2] - 15:25, 16:2

**2**

2 [2] - 1:7, 3:1
20 [1] - 5:22
20001 [1] - 2:2
2005 [1] - 8:23
2006 [7] - 1:7, 3:1, 15:6, 15:7, 15:15, 15:19, 15:22
2007 [1] - 16:8
202.326.0566 [1] - 2:3
2040 [1] - 1:18
22040 [1] - 1:16
25 [1] - 16:9
29th [1] - 15:7

**3**

30th [4] - 14:22, 14:23, 15:21, 15:22
31st [3] - 15:6, 15:18, 15:19
35 [1] - 8:18
3rd [3] - 15:14, 15:15, 16:8

**6**

60 [1] - 15:12
610 [1] - 1:21
6814 [1] - 2:2

**7**

700 [1] - 1:22

**703.205.8000** [1] - 1:16
**747** [1] - 1:15

**8**

8 [2] - 4:1, 4:2
8110 [1] - 1:14

**9**

90 [1] - 15:16
92614 [1] - 1:19
92660 [1] - 1:22
949.717.3000 [1] - 1:23
949.724.1849 [1] - 1:19
9th [1] - 1:18

**A**

a.m [1] - 16:5
ability [1] - 13:24
above-entitled [1] - 16:18
acting [1] - 6:10
Action [1] - 3:2
action [4] - 5:9, 8:18, 9:3, 9:4
actual [1] - 11:19
addition [1] - 13:9
additional [1] - 3:12
adjourned [1] - 16:14
admission [1] - 4:1
adopt [2] - 15:5, 16:8
ADR [2] - 5:14, 6:17
advance [1] - 11:10
afternoon [7] - 3:6, 3:8, 3:9, 4:12, 4:14, 4:15, 4:17
ago [1] - 13:10
agree [3] - 5:12, 6:14, 13:15
ahead [4] - 3:22, 4:11, 7:7, 11:16
aided [1] - 2:5
al [4] - 1:3, 1:7, 3:3
allow [4] - 4:6, 4:7, 12:7, 12:19
almost [1] - 10:1
alternative [2] - 4:21, 10:23
amended [1] - 7:17
amending [1] - 15:7
analysis [4] - 10:13, 10:14, 10:18, 10:20
analyzes [1] - 9:21
Angeles [4] - 6:3,

6:4, 8:19, 9:18
answer [1] - 1:22
answered [1] - 8:4
anticipated [1] - 12:22
anticipating [1] - 13:16
APPEARANCES [1] - 1:12
appendix [1] - 14:17
application [3] - 3:17, 3:23, 4:8
approach [1] - 3:4
appropriate [1] - 13:5
arguing [2] - 7:20, 10:17
argument [3] - 7:22, 10:3, 13:10
arise [1] - 10:19
articulated [1] - 8:7
articulation [1] - 9:19
attorney [1] - 3:15
AUGUST [1] - 3:1
August [2] - 1:7, 15:6
authority [3] - 8:10, 10:15, 10:16
Avionic [1] - 3:3
Avionics [2] - 9:23
AVIONICS [1] - 1:6

**B**

BAE [18] - 1:6, 3:3, 3:7, 5:5, 7:17, 7:23, 8:1, 8:3, 8:9, 9:22, 9:23, 9:24, 10:1, 10:2, 12:7, 13:2
BAE's [2] - 7:15, 13:3
based [2] - 9:2, 10:13
basis [2] - 8:13, 8:16
Beach [1] - 1:22
BEFORE [1] - 1:10
behalf [2] - 3:7, 5:4
belongs [1] - 7:20
benefit [1] - 6:17
beyond [1] - 12:23
billable [1] - 5:1
BIRCH [1] - 1:13
bit [1] - 7:1
Box [1] - 1:15
break [1] - 16:6
briefing [4] - 7:4, 10:10, 10:11, 10:24
brought [2] - 4:9, 7:16

**C**

CA [3] - 1:4, 1:19, 1:22
California [8] - 5:24, 7:10, 7:14, 7:16, 7:21, 7:22, 8:2, 10:7
CALL [1] - 1:20
cannot [1] - 8:2
carry [1] - 16:7
case [24] - 4:21, 5:8, 5:10, 5:23, 6:1, 6:6, 6:9, 7:10, 7:20, 8:4, 8:19, 8:22, 9:23, 9:25, 10:15, 11:1, 11:10, 11:15, 12:2, 12:7, 13:18, 13:22, 14:17, 14:18
cases [3] - 8:22, 11:16, 14:3
Center [1] - 1:21
Central [1] - 5:24
certify [1] - 16:17
chance [1] - 6:25
change [1] - 5:13
changed [1] - 5:14
Church [1] - 1:16
Civil [1] - 3:2
CLERK [5] - 3:2, 14:21, 15:14, 15:18, 15:21
clock [6] - 4:24, 5:2, 7:8, 10:25, 11:1, 11:6
close [6] - 5:9, 7:1, 14:19, 14:23, 15:20, 15:22
closer [1] - 5:6
Columbia [5] - 8:21, 8:22, 9:16, 10:5, 10:6
COLUMBIA [1] - 1:2
coming [1] - 16:11
commence [1] - 12:20
comments [1] - 13:10
companies [1] - 6:11
complaint [3] - 7:17, 8:4, 15:8
complex [2] - 14:3, 14:17
computer [1] - 2:5
computer-aided [1] - 2:5
concern [1] - 13:3
concerning [1] - 12:24
conduct [1] - 10:11
conducted [1] - 7:15
CONFERENCE [1] - 1:9

conference [3] - 12:4, 14:25, 15:25
Connecticut [1] - 8:19
consider [1] - 6:5
contemplation [1] - 15:10
contest [1] - 9:24
convenient [1] - 12:1
copy [2] - 3:12, 3:20
Correct [1] - 9:17
correct [2] - 9:20, 16:17
Corrie [1] - 1:14, 3:10
CORRIE [5] - 3:9, 3:20, 4:4, 4:10, 11:13
costs [1] - 12:18
Counsel [2] - 3:4, 4:18
course [1] - 11:18
COURT [37] - 1:1, 3:8, 3:17, 3:21, 3:25, 4:7, 4:11, 4:14, 4:17, 5:6, 5:17, 5:19, 5:25, 6:15, 6:22, 7:3, 7:7, 8:10, 9:7, 9:10, 9:12, 10:9, 11:23, 12:11, 12:13, 12:22, 13:7, 13:14, 14:1, 14:14, 14:23, 15:5, 15:15, 15:19, 15:22, 16:2, 16:5
court [5] - 7:21, 7:22, 7:25, 8:2, 10:12
Court [25] - 2:1, 2:1, 3:11, 4:6, 5:11, 7:19, 7:21, 8:19, 9:2, 9:5, 9:15, 9:16, 9:25, 10:1, 10:3, 11:14, 11:20, 12:1, 12:8, 12:20, 14:11, 16:20
Court's [4] - 8:16, 9:18, 9:21, 10:5
Courthouse [1] - 2:2
CRR [3] - 2:1, 16:17, 16:19

**D**

D.C [5] - 1:6, 2:2, 9:1, 9:3
date [1] - 13:23
Dave [1] - 1:21
David [1] - 3:6
days [4] - 14:19, 14:21, 15:12, 15:16, 15:20
deadline [4] - 7:6, 14:4, 15:7, 16:6

deadlines [1] - 7:4
December [2] - 15:25, 16:3
decide [3] - 9:5, 12:8, 12:20
decided [3] - 7:24, 8:2, 12:19
decides [2] - 10:12, 12:8
decision [4] - 8:12, 8:17, 9:14, 14:10
Defendant [1] - 3:7
defendant [5] - 6:11, 6:13, 8:14, 8:25, 13:20
defendant's [1] - 15:16
Defendants [2] - 1:8, 1:20
defendants [1] - 8:21
defer [1] - 13:1
delaying [1] - 7:9
denied [1] - 7:17
denies [1] - 11:22
depositions [2] - 5:2, 16:9
DEPUTY [5] - 3:2, 14:21, 15:14, 15:18, 15:21
designations [3] - 15:9, 15:12, 15:16
different [1] - 11:11
disclosures [1] - 15:6
discovery [47] - 4:24, 5:2, 5:12, 6:6, 7:8, 7:9, 7:12, 7:14, 7:15, 7:16, 8:5, 8:8, 10:25, 11:6, 11:11, 12:5, 12:9, 12:13, 12:15, 12:21, 12:22, 12:23, 12:24, 12:25, 13:3, 13:5, 13:8, 13:13, 13:15, 13:17, 13:18, 13:21, 13:25, 14:1, 14:8, 14:11, 14:18, 14:19, 14:23, 14:25, 15:10, 15:20, 15:23, 15:24
dismiss [2] - 7:18, 10:1
dispositive [1] - 16:6
dispute [2] - 4:22, 10:23
District [9] - 5:24, 8:19, 8:21, 8:22, 9:15, 9:16, 10:5, 10:6
DISTRICT [3] - 1:1, 1:2, 1:10
district [8] - 5:25,

6:2, 8:12, 10:13, 10:14, 10:16
Division [1] - 5:23
division [2] - 5:25, 6:2
docket [2] - 3:25, 4:2
Docket [1] - 1:4
down [1] - 11:23
Drive [1] - 1:21
dual [1] - 11:7
due [2] - 15:6, 15:12
during [2] - 12:23, 13:20

### E

early [6] - 4:21, 4:24, 6:17, 6:20, 7:2, 8:8
East [1] - 1:15
efficient [1] - 12:6
either [3] - 6:5, 11:13, 14:6
electronically [1] - 16:12
Electronics [1] - 9:22
engage [1] - 5:12
ENGLISH [13] - 4:12, 5:16, 5:18, 5:20, 6:2, 8:16, 9:9, 9:11, 9:17, 11:25, 13:17, 14:6, 15:4
English [1] - 1:18, 3:11, 4:4, 4:12
English's [3] - 3:18, 13:19
entire [1] - 5:10
entities [2] - 9:22, 9:24
entitled [1] - 16:18
entity [3] - 8:3, 9:23, 10:8
Esq [3] - 1:14, 1:18, 1:21
et [4] - 1:3, 1:7, 3:3
evaluation [5] - 6:6, 6:8, 6:18, 6:20, 7:2
evaluator [1] - 4:24
except [1] - 5:8
exclusive [2] - 8:20, 9:4
excused [1] - 16:12
exercise [2] - 7:22, 8:3
exist [1] - 10:3
expect [1] - 11:17
expecting [1] - 15:2
expert [3] - 15:9, 15:11, 15:16

### F

fact [1] - 7:22
faith [1] - 16:3
Falls [1] - 1:16
FERRELL [1] - 1:20
file [7] - 5:22, 7:8, 11:5, 11:17, 12:6, 14:25
filed [3] - 7:6, 7:17, 7:18
finish [1] - 13:24
first [4] - 4:20, 4:24, 7:17, 9:20
five [1] - 16:9
fix [1] - 14:1
Floor [1] - 1:18
followed [1] - 14:14
footnote [1] - 8:7
FOR [1] - 1:2
foregoing [1] - 16:17
foreign [2] - 8:21, 8:25
forth [1] - 4:25
forward [2] - 6:19, 12:15
four [2] - 14:2, 14:8
FRCP [1] - 7:18
front [1] - 3:18
fruitful [1] - 5:14

### G

Gatehouse [1] - 1:14
geared [1] - 13:4
general [1] - 10:11
grant [1] - 3:22
granted [1] - 7:19
granting [2] - 3:21, 4:2
GROUP [1] - 1:17
guess [3] - 10:21, 12:12, 14:6

### H

hac [3] - 3:11, 3:15, 3:22
head [1] - 8:14
hear [1] - 10:21
hearing [3] - 4:8, 11:19, 11:21
helpful [1] - 6:13
hinges [1] - 13:11
hmm [1] - 9:11
hoc [1] - 4:1
Honor [20] - 3:6, 3:9, 3:13, 4:3, 4:5, 4:12, 4:15, 5:4, 5:16, 5:18, 6:21, 8:17, 9:1, 9:9,

9:17, 14:21, 15:4, 16:1, 16:4, 16:13
HONORABLE [1] - 1:10
hour [1] - 5:2

### I

impact [4] - 11:9, 11:15, 13:24, 14:10
Implicit [1] - 10:5
improper [4] - 7:24, 10:6, 10:7, 10:13
inappropriate [1] - 7:25
inclined [1] - 14:3
includes [1] - 10:25
including [1] - 8:22
incomplete [1] - 9:20
initial [2] - 14:16, 15:6
instead [1] - 14:2
intend [1] - 3:16
intends [1] - 5:22
intent [1] - 13:2
interested [2] - 10:10, 10:14
interesting [1] - 8:11
interference [1] - 13:20
interim [1] - 15:1
interpretation [3] - 8:17, 9:18, 13:11
interrogatories [1] - 16:9
introduce [1] - 3:11
investigations [1] - 13:18
involved [1] - 9:22
IP [1] - 1:17
Irvine [1] - 1:19
issue [15] - 7:13, 7:14, 8:1, 8:8, 9:5, 9:8, 9:12, 10:4, 10:20, 12:8, 12:16, 12:19, 13:8, 13:12, 13:13
issues [6] - 5:1, 11:1, 11:12, 12:24, 12:25, 13:19

### J

January [2] - 16:7, 16:8
JENSEN [1] - 1:20
joining [1] - 15:8
joint [3] - 5:20, 6:16, 8:7
JUDGE [1] - 1:10
judgment [1] - 11:12

jurisdiction [26] - 7:14, 7:23, 7:24, 8:1, 8:3, 8:5, 8:9, 8:12, 8:14, 8:21, 8:25, 9:4, 9:5, 9:6, 9:8, 9:13, 9:14, 9:21, 9:24, 10:2, 10:3, 10:8, 10:19, 13:5, 13:12, 13:13

### K

keep [1] - 11:23
knows [2] - 11:14, 11:15
KOLASCH [1] - 1:13

### L

lack [1] - 10:2
last [1] - 8:24
latter [1] - 9:17
LAW [1] - 1:17
law [1] - 10:15
LAWRENCE [1] - 1:3
Lawrence [2] - 3:2, 4:13
least [3] - 9:1, 12:2, 12:18
left [1] - 6:24
lies [1] - 8:18
limited [1] - 12:14
Limited [1] - 3:3
limits [1] - 16:9
LLP [1] - 1:13
look [2] - 4:8, 6:25
looked [2] - 6:25, 10:4
looks [1] - 13:10
Los [4] - 6:3, 6:4, 8:19, 9:18
LTD [1] - 1:6

### M

machine [1] - 2:4
Main [1] - 1:18
Mark [3] - 1:13, 3:14, 4:15
matter [5] - 9:7, 9:13, 9:14, 10:19, 16:18
mean [4] - 6:19, 6:22, 9:12, 13:21
meaningless [1] - 12:10
mediation [2] - 5:14, 6:23
mediator [2] - 4:23, 6:10
merely [1] - 12:24
mic [1] - 5:6

**might** [1] - 14:10
**misinterpretation** [1] - 9:2
**misleading** [1] - 7:1
**misreading** [1] - 6:18
**moment** [1] - 13:10
**month** [4] - 12:23, 13:15, 14:2, 15:10
**months** [6] - 12:16, 14:2, 14:3, 14:4, 14:8, 14:9
**morning** [1] - 16:10
**MORNING** [1] - 3:1
**motion** [19] - 4:1, 4:2, 5:22, 6:5, 7:4, 7:5, 7:16, 7:18, 8:16, 10:1, 11:8, 11:17, 11:22, 12:6, 13:6, 13:23, 14:7, 14:10, 15:1
**motions** [3] - 7:8, 11:5, 16:6
**MR** [38] - 3:6, 3:9, 3:20, 3:24, 4:3, 4:4, 4:10, 4:12, 4:15, 5:4, 5:7, 5:16, 5:18, 5:20, 6:2, 6:21, 6:23, 7:5, 7:12, 8:16, 9:9, 9:11, 9:17, 9:19, 11:13, 11:25, 12:3, 12:12, 12:17, 13:1, 13:9, 13:17, 14:5, 14:6, 15:4, 16:1, 16:4, 16:13

**N**

**name** [1] - 3:9
**names** [1] - 3:4
**necessary** [1] - 7:12
**need** [3] - 10:21, 13:12, 14:12
**neutral** [6] - 4:24, 6:6, 6:8, 6:18, 6:20, 7:2
**Newport** [2] - 1:21, 1:22
**next** [1] - 11:18
**northern** [1] - 6:3
**nothing** [2] - 12:17, 14:15
**November** [4] - 14:22, 14:23, 15:21, 15:22
**Nuell** [5] - 1:13, 3:15, 3:22, 4:1, 4:15
**NUELL** [1] - 4:15
**Nuell's** [1] - 3:17
**number** [3] - 4:1, 4:2, 7:20

**O**

**objection** [5] - 3:21, 3:24, 7:6, 12:3, 14:5
**obviously** [2] - 10:9, 10:22
**October** [4] - 15:14, 15:15, 15:18, 15:19
**OF** [2] - 1:2, 1:9
**Official** [2] - 2:1, 16:20
**on-going** [1] - 13:18
**once** [2] - 5:10, 10:2
**one** [8] - 3:14, 4:5, 5:8, 5:21, 6:11, 9:10, 9:25
**One's** [1] - 8:14
**one's** [1] - 8:15
**open** [2] - 6:8, 11:25
**opportunity** [1] - 12:7
**oppose** [2] - 8:9, 12:5, 12:7
**opposed** [1] - 7:18
**opposing** [1] - 7:5
**opposition** [1] - 11:19
**order** [7] - 9:19, 9:21, 10:5, 11:15, 12:4, 14:17, 16:12
**ought** [2] - 12:15, 14:16
**outstanding** [1] - 5:1
**own** [2] - 13:17, 13:18

**P**

**p.m** [2] - 1:7, 16:14
**P.O** [1] - 1:15
**parallel** [1] - 11:16
**part** [1] - 9:20
**parties** [7] - 4:18, 5:9, 5:12, 6:9, 6:16, 7:8, 15:8
**pending** [3] - 3:12, 4:5, 4:6
**perhaps** [2] - 9:10, 14:11
**period** [5] - 12:15, 12:23, 13:15, 13:21, 14:2
**permission** [1] - 3:13
**person** [2] - 6:10, 6:11
**personal** [7] - 7:14, 7:23, 7:24, 8:1, 8:3, 8:5, 8:8, 8:13, 9:5, 9:6, 9:21, 9:24, 10:2, 10:3, 10:8, 13:4, 13:7,
13:12, 13:13
**perspective** [1] - 6:12
**Ph.D** [1] - 1:13
**ping** [2] - 7:10, 10:11
**ping-pong** [2] - 7:10, 10:11
**plaintiff** [11] - 3:10, 4:16, 5:17, 5:22, 6:21, 6:23, 7:13, 12:6, 13:1, 13:4, 14:6
**Plaintiff** [1] - 13:17
**plaintiff's** [3] - 6:7, 8:24, 15:11
**plaintiffs** [1] - 8:24
**Plaintiffs** [2] - 1:4, 1:13
**PLC** [3] - 3:7, 7:23, 8:1
**podium** [2] - 3:5, 4:19
**point** [3] - 4:23, 6:19, 10:10
**pong** [2] - 7:10, 10:11
**position** [2] - 6:7, 7:15
**positive** [1] - 10:1
**possible** [2] - 6:17, 6:20
**post** [2] - 14:25, 15:24
**post-discovery** [2] - 14:25, 15:24
**potentially** [1] - 11:10
**pragmatic** [1] - 12:18
**prefer** [1] - 11:20
**premature** [1] - 5:7
**presumptive** [1] - 14:2
**pro** [4] - 3:11, 3:15, 3:22, 4:1
**problem** [1] - 11:13
**procedures** [1] - 6:17
**proceed** [1] - 12:20
**proceedings** [1] - 16:17
**Proceedings** [2] - 2:4, 16:14
**produced** [1] - 2:4
**profit** [1] - 4:21
**progress** [1] - 4:25
**proper** [2] - 10:4, 10:6
**proposal** [3] - 7:3, 14:15, 15:5
**proposed** [2] - 6:23, 13:25, 15:10

**proposition** [1] - 8:11
**provision** [2] - 8:23, 8:24
**pure** [1] - 10:20
**purposes** [2] - 4:7, 11:1
**put** [2] - 14:3, 14:18
**putting** [1] - 12:3

**Q**

**Quentin** [2] - 1:14, 3:10
**questions** [1] - 10:19

**R**

**raised** [1] - 13:20
**rather** [2] - 7:9, 11:14
**RDR** [3] - 2:1, 16:17, 16:19
**RDR-CRR** [1] - 16:17
**ready** [1] - 10:23
**really** [3] - 9:10, 11:3, 11:12
**reason** [4] - 10:7, 11:8, 11:22, 12:18
**receptive** [1] - 6:17
**recipient** [1] - 10:15
**record** [2] - 3:5, 16:17
**refer** [2] - 4:23, 5:7
**referral** [1] - 5:14
**regarding** [1] - 13:20
**regards** [1] - 4:20
**related** [1] - 6:11
**relied** [1] - 8:19
**remains** [1] - 12:2
**remotely** [1] - 6:25
**report** [5] - 4:20, 5:20, 6:24, 8:7, 8:24
**reported** [1] - 2:4
**Reporter** [3] - 2:1, 2:1, 16:20
**represent** [2] - 3:5, 3:10
**representation** [1] - 4:20
**representing** [1] - 5:17
**researching** [1] - 5:2
**resolution** [4] - 4:22, 5:10, 10:23, 11:8
**resolve** [1] - 11:10
**resolved** [1] - 13:8
**resolving** [1] - 11:1
**respect** [2] - 7:2, 12:19
**response** [2] - 7:3,

7:23
**retransfer** [3] - 7:4, 7:20, 11:8
**review** [2] - 4:19, 8:1
**RICHARD** [1] - 1:10
**Road** [1] - 1:14
**ROBERTS** [1] - 1:10
**role** [1] - 6:10
**Romero** [2] - 3:25, 14:20
**Room** [1] - 2:2
**rule** [1] - 4:8
**Rule** [1] - 4:19
**ruled** [2] - 3:13, 10:1
**running** [1] - 10:25

**S**

**saving** [1] - 12:18
**schedule** [9] - 10:24, 11:4, 11:14, 12:2, 14:8, 14:11, 14:12, 14:18, 15:11
**scheduling** [8] - 10:22, 11:4, 11:21, 12:4, 14:7, 14:16, 16:12
**Scott** [3] - 2:1, 16:17, 16:19
**Section** [1] - 10:4
**see** [2] - 3:18, 4:25
**sense** [2] - 4:23, 7:7
**September** [1] - 15:7
**SESSION** [1] - 3:1
**set** [10] - 6:6, 7:4, 10:24, 11:4, 11:14, 13:23, 14:8, 14:13, 14:16
**setting** [1] - 14:12
**settle** [1] - 6:9
**settled** [1] - 5:8
**settlement** [1] - 5:10
**several** [1] - 8:22
**shaking** [1] - 8:14
**shorten** [1] - 14:11
**shortening** [1] - 14:5
**shorter** [1] - 14:13
**shorthand** [1] - 2:4
**shortly** [2] - 11:17, 14:24
**side** [1] - 6:19
**six** [1] - 14:3
**Slow** [1] - 11:23
**solely** [1] - 9:15
**sorry** [1] - 12:4
**sort** [2] - 6:5, 10:18
**Southern** [1] - 5:23
**speaking** [1] - 4:18
**specific** [1] - 10:18
**spinning** [2] - 5:1,

Scott L. Wallace, RDR, CRR
Official Court Reporter

**EXHIBIT A**

11:11
**standard** [1] - 14:18
**standing** [1] - 3:12
**start** [3] - 5:1, 7:7, 13:4
**started** [3] - 6:15, 10:22, 12:9
**starting** [1] - 12:5
**starts** [2] - 4:24, 11:6
**state** [1] - 3:4
**statement** [1] - 6:16
**States** [1] - 9:15
**STATES** [2] - 1:1, 1:10
**stating** [1] - 8:20
**STATUS** [1] - 1:9
**status** [2] - 14:25, 15:25
**statute** [5] - 8:17, 8:20, 9:18, 10:20, 13:11
**STEWART** [1] - 1:13
**Street** [1] - 1:18
**subject** [4] - 9:7, 9:13, 9:14, 10:19
**submitted** [1] - 5:21
**substantive** [1] - 12:25
**sufficiently** [1] - 13:22
**SUGDEN** [19] - 3:6, 3:24, 4:3, 5:4, 5:7, 6:21, 6:23, 7:5, 7:12, 9:19, 12:3, 12:12, 12:17, 13:1, 13:9, 14:5, 16:1, 16:4, 16:13
**Sugden** [3] - 1:21, 3:6, 5:4
**suggested** [3] - 12:15, 14:17, 16:8
**suggests** [1] - 14:16
**Suite** [2] - 1:15, 1:22
**suppose** [1] - 14:7
**surely** [1] - 13:12
**surrendering** [1] - 8:4
**suspect** [1] - 4:22
**System's** [1] - 10:1
**Systems** [7] - 3:3, 3:7, 7:17, 7:23, 8:1, 8:3, 9:22
**SYSTEMS** [1] - 1:6
**Systems'** [1] - 10:2

## T

**TANNAS** [1] - 1:3
**Tannas** [2] - 3:2, 4:13

**ten** [4] - 12:23, 13:15, 14:2, 15:10
**ten-month** [4] - 12:23, 13:15, 14:2, 15:10
**tender** [1] - 3:20
**THE** [43] - 1:2, 1:10, 3:2, 3:8, 3:17, 3:21, 3:25, 4:7, 4:11, 4:14, 4:17, 5:6, 5:17, 5:19, 5:25, 6:15, 6:22, 7:3, 7:7, 8:10, 9:7, 9:10, 9:12, 10:9, 11:23, 12:11, 12:13, 12:22, 13:7, 13:14, 14:1, 14:14, 14:21, 14:23, 15:5, 15:14, 15:15, 15:18, 15:19, 15:21, 15:22, 16:2, 16:5
**then.....** [1] - 14:12
**thereby** [1] - 8:4
**therefore** [2] - 13:6, 13:11
**they've** [2] - 7:15, 7:24
**three** [1] - 9:22
**ticking** [1] - 4:25
**today** [9] - 11:6, 12:4, 12:5, 14:8, 14:9, 14:19, 14:21, 15:12, 15:17
**toll** [1] - 14:12
**tolls** [1] - 10:25
**towards** [1] - 13:4
**track** [2] - 11:7, 14:17
**transcript** [2] - 2:4, 16:17
**TRANSCRIPT** [1] - 1:9
**transcription** [1] - 2:5
**transfer** [10] - 5:22, 5:23, 8:13, 10:16, 11:17, 12:14, 12:24, 13:24, 14:8, 14:10
**transferred** [6] - 5:11, 6:7, 9:2, 11:15, 12:7, 13:22
**transferring** [4] - 8:12, 10:12, 12:9, 15:1
**transfers** [2] - 10:12, 10:13
**try** [1] - 6:9
**trying** [1] - 11:12
**two** [3] - 9:24, 11:18, 14:9
**type** [1] - 6:8

## U

**U.S** [1] - 2:2
**U.S.C** [2] - 5:23, 8:18
**ultimately** [1] - 3:14
**Um-hmm** [1] - 9:11
**uncertain** [1] - 7:9
**under** [3] - 5:22, 8:17, 10:19
**underlying** [1] - 7:21
**unforeseen** [1] - 11:22
**unfortunately** [1] - 14:9
**United** [1] - 9:15
**UNITED** [2] - 1:1, 1:10
**Unless** [1] - 3:21
**unless** [2] - 14:13, 15:2
**up** [7] - 4:19, 10:24, 11:4, 11:23, 15:1, 16:10

## V

**VA** [1] - 1:16
**venue** [11] - 9:10, 9:12, 9:13, 10:4, 10:12, 10:14, 10:18, 10:20, 12:19, 12:24
**versus** [1] - 3:3
**vested** [1] - 9:14
**vice** [3] - 3:11, 3:15, 3:22
**VISTA** [1] - 1:17

## W

**Wallace** [3] - 2:1, 16:17, 16:19
**wants** [2] - 6:19, 13:4
**Washington** [2] - 1:6, 2:2
**WEDNESDAY** [1] - 3:1
**Wednesday** [1] - 1:7
**week** [1] - 11:18
**western** [1] - 6:4
**wheels** [1] - 11:11
**whence** [1] - 7:10
**William** [4] - 1:18, 3:11, 4:4, 4:12
**willing** [1] - 11:16
**winter** [1] - 16:6
**witness** [3] - 15:9, 15:11, 15:16
**writing** [1] - 5:2

*Scott L. Wallace, RDR, CRR*
*Official Court Reporter*

**EXHIBIT A**

ORIGINAL UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA *P. Serd*

## CIVIL MINUTES - GENERAL

Case No.  CV 03-5889 RJK                                    Date   May 25, 2005

Title     Lawrence E. Tannas, Jr. et al. v. BAE System Avionics Limited, et al.

---

Present: The Honorable  **ROBERT J. KELLEHER, JUDGE**

| Debra O'Neill | None Present | None |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:              Attorneys Present for Defendants:

      None Present                                    None Present

**Proceedings:**      **Order on Motion to Dismiss** (In Chambers)

        On July 9, 2004 Defendants filed a Motion to Dismiss Plaintiffs' Complaint ("Motion to
Dismiss") (docket #13).  The Court heard oral arguments on August 23, 2004 and took the Motion to
Dismiss under submission to allow Plaintiffs to conduct further discovery on minimum contacts (docket
#22).

        On December 1, 2004, the parties lodged and the Court signed a Stipulation and Order Re:
Motion to Compel and First Amended Complaint ("December 1, 2004 Order") (docket #27) which set
forth the following specific deadlines:

    4.    Any motion by Plaintiffs to compel discovery responses related to the Court's November
          15, 2004 Order shall be filed (and served on opposing counsel) no later than January 31,
          2005.
    5.    Absent the filing of such a motion, Plaintiffs shall file (and serve on opposing counsel) a
          First Amended Complaint alleging new grounds for Defendants' minimum contacts, no
          later than January 31, 2005.
    6     If Plaintiffs do not file any such discovery motion by said date and do not file a First
          Amended Complaint by said date, then the Court may issue an Order granting
          Defendants' motion to dismiss for lack of personal jurisdiction.

        Thereafter, Plaintiffs timely filed a Joint Stipulation regarding Motion to Compel on January 31,
2005 (docket #28).  The Court ordered, among other things, that Defendants provide  responses to
special interrogatories nos. 1-25 only (docket #30).

DOCKETED ON CM
MAY 2 5 2005
006

(32

EXHIBIT B

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

Case No.   CV 03-5889 RJK                                    Date   May 25, 2005.

Title      Lawrence E. Tannas, Jr. et al. v. BAE System Avionics Limited, et al.

On May 19, 2005, Plaintiffs filed their First Amended Complaint for Declaratory Judgment; and for Relief under 35 U.S.C. § 146 To Set Aside Judgment of Patent Office in Interference 105,096 ("FAC") (docket #31), adding Defendant, BAE Systems, Plc, as well as Count 6, for Civil Action under 35 U.S.C. § 146.

The Court notes that Plaintiffs filed the FAC nearly three months beyond the deadline set forth in the Court's December 1, 2004 Order and that Plaintiffs' FAC goes beyond the scope of the Court's December 1, 2004 Order, which only allowed Plaintiffs to allege new grounds for Defendants' minimum contacts.

Nevertheless, the Court accepts the FAC as filed. Counsel for both parties are warned to follow all schedules and deadlines set forth by the Court either by direct Order or by Stipulation. Defendants' Motion To Dismiss is hereby deemed moot in light of Plaintiffs' filing of the FAC.


**IT IS SO ORDERED.**


Initials of Preparer    _Bn_

**EXHIBIT B**



THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP. RULE 77(d).

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

FILED
CLERK, U.S. DISTRICT COURT
SEP 2 2005
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

SCANNED

ENTERED
CLERK, U.S. DISTRICT COURT
SEP 2 2005
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LAWRENCE E. TANNAS, JR., an individual dba as TANNAS ELECTRONICS; TANNAS ELECTRONIC DISPLAYS, INC., a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>BAE SYSTEMS AVIONICS LIMITED, a British corporation; BAE SYSTEMS ELECTRONICS LIMITED, a British corporation; BAE SYSTEMS, PLC, a British corporation,<br><br>Defendants. | Case No. CV 03-5889 RJK (FMOx)<br><br>**ORDER GRANTING DEFENDANTS BAE SYSTEMS AVIONICS LIMITED, BAE SYSTEMS ELECTRONICS LIMITED, AND BAE SYSTEMS, PLC'S MOTION TO DISMISS WITHOUT PREJUDICE AND TO TRANSFER THE SIXTH CAUSE OF ACTION** |

Defendants BAE Systems Avionics Limited (" BAE Avionics"), BAE Systems Electronics Limited ("BAE Electronics"), and BAE Systems, Plc. ("BAE Systems") (collectively "Defendants") seek to dismiss Plaintiffs Lawrence E. Tannas, Jr. and Tannas Electronic Displays, Inc.'s (collectively "Plaintiffs") first five causes of action of the First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6) for failure to state a claim upon which

1

44

EXHIBIT C

1  relief can be granted.  Defendants BAE Systems and BAE Electronics seek to

2  dismiss Plaintiffs' FAC under FRCP 12(b)(2) for lack of personal jurisdiction.

3  Finally, Defendant BAE Systems seeks dismissal from the instant case and

4  dismissal or transfer of venue of the Sixth Cause of Action pursuant to FRCP

5  12(b)(3) and 28 U.S.C. § 1406(a).[1]  After reviewing the papers submitted by the

6  parties, and the arguments contained therein, the Court hereby **GRANTS**

7  Defendants' motion to dismiss without prejudice and 30 days leave to amend.  The

8  Court further **GRANTS** Defendant BAE System's motion to transfer Plaintiffs'

9  Sixth Cause of Action.

10  

**I. BACKGROUND**

11  **A.    Procedural History**

12         On August 19, 2003, Plaintiffs Lawrence E. Tannas, Jr. and Tannas

13  Electronic Displays, Inc. filed a Complaint that alleged the following causes of

14  action: (1) declaratory judgment that no contract was entered between Plaintiffs

15  and Defendants, and no breach of contract by Plaintiffs; (2) declaratory judgment

16  that Plaintiffs did not engage in trade secret misappropriation; (3) declaratory

17  judgment that Plaintiffs did not engage in unfair competition; (4) interference with

18  prospective economic advantage; and (5) unfair competition.  On May 25, 2005,

19  the Court accepted Plaintiffs' untimely filing of their First Amended Complaint

20  ("FAC") to add Defendant BAE Systems, Plc and allege a sixth cause of action

21  under 35 U.S.C. § 146.

22

23  ───────────────────

24  [1] The Court notes that Plaintiffs' First Amended Complaint ("Pls.' FAC")
generically refer to all "Defendants" for all causes of action.  However, upon

25  further review, the FAC makes clear that the only proper defendant for the Sixth

26  Cause of Action is BAE Systems, Plc.  Specifically, the Sixth Cause of Action
states, in pertinent part, ". . . Defendants' counsel admitted that *BAE Systems, Plc*

27  is the real party in interest in the Interference." (Pls.' FAC ¶ 45) (emphasis

28  added).

2

EXHIBIT C

1    Plaintiff Lawrence E. Tannas, Jr. resides in Orange, California.  Plaintiff

2    Tannas Electronic Displays, Inc. is a California corporation with its principal place

3    of business in Orange, California.  Defendants are British corporations with

4    offices located in Farnborough, Hampshire, and the United Kingdom.[2]

5    **B.    Factual Summary**

6        Plaintiffs invented a process for resizing commercial off-the-shelf liquid

7    crystal displays ("LCDs") and filed patent applications, U.S. Patent Nos.

8    6,204,906 and 6,380,999 ("Plaintiffs' patents").[3]  On or about April 14, 2003, the

9    United States Patent and Trademark Office ("USPTO") declared an interference

10   between Plaintiffs' patents and another patent application naming David Watson

11   as inventor  (Interference No. 105,096)("the Watson application").[4]  Plaintiffs

12   allege that the Watson application is owned by Defendants.[5]  Subsequently, on

13   May 9, 2005, the USPTO entered judgment against Plaintiffs' patent application,

14   declaring the patent "unpatentable."[6]

15

16       [2] Pls.' FAC ¶ 3.

17

18       [3] Pls.' FAC ¶ 5.

19       [4] Id. at ¶ 6.

20       [5] Id.

21       [6] Defendants request that the Court take judicial notice of the authenticity of

22   the judgment and order of the USPTO as against Plaintiff Lawrence E. Tannas, Jr.,

23   Patent Interference Number 105,096.  (Defs.' Req. for Judicial Notice in Supp. of

24   Mot. to Dismiss ("Defs.' Req. for Judicial Notice") 1:24-2:6, Exs. A, B).

     According to Federal Rule of Evidence 201, this Court, upon request, must take

25   judicial notice of facts that are not subject to reasonable dispute.  A fact is

26   considered not reasonably in dispute when it is readily accurately determined by

27   "resort to sources whose accuracy cannot reasonably be questioned."  Fed. R.

     Evid. 201(b).  Here, Defendants provide copies of the Judgment-Rule 127and

28   Decision-Priority-Bd.R. 125(a) from the USPTO authenticating and confirming

3

EXHIBIT C

1    Plaintiffs aver that Defendants sold resized LCDs to Symbolic Displays,

2  Inc. ("SDI") on at least two occasions in 2001.[7]  On one of those occasions,

3  Defendants purchased commercial LCDs, resized them into the configuration

4  requested by SDI, and shipped them to SDI's facilities in Santa Ana, California.[8]

5  On a second occasion, SDI shipped LCDs to Defendants in Edinburg, Scotland for

6  resizing.[9]  As well, subsequent to January 2002, Defendants also shipped products

7  into California related to United States and British military activities.  Plaintiffs

8  allege that these products included resized LCDs.[10]

9    Moreover, Plaintiffs contend that Defendants attended a conference at the

10  Society for Information Displays ("SID") in Long Beach, California in May 2000,

11  whereby employees and agents of Defendants invited SDI employees to a

12  hospitality suite at the Queen Mary.[11]

13    On or about June 4, 2003, Plaintiffs contend that they received a letter

14  stating that Defendants were contemplating filing a lawsuit for breach of

15  confidentiality against Plaintiffs.[12]  On July 18, 2003, a second letter was sent to

16  Plaintiffs indicating that Defendants were contemplating filing a lawsuit against

17

18  _____

19  the facts.  Because the source appears reasonably reliable, a point that Plaintiffs do

20  not dispute, this Court takes notice of these facts insofar as they apply to the

21  instant Motion.

22    [7] Pls.' FAC at ¶ 16.

23    [8] Id.

24    [9] Id.

25    [10] Id. at 18.

26

27    [11] Id. at 17.

28    [12] Id. at ¶ 7.

EXHIBIT C

1  Plaintiffs for misappropriation of trade secrets.[13] On or about August 12, 2003,

2  Plaintiffs received a draft complaint from Defendants.[14]

3      Furthermore, Plaintiffs allege that Defendants have made false statements to

4  third parties that it owns worldwide patents directed to resizing LCDs, in an

5  attempt to gain the business of these third parties and to disrupt and cause harm to

6  Plaintiffs' business.[15]

7

8              **II. DISCUSSION**

9  **A.    Standard of Law**

10     1.    Personal Jurisdiction

11     In a Rule 12(b)(2) motion to dismiss, the plaintiff has the burden of

12 establishing personal jurisdiction over the defendant. Ziegler v. Indian River

13 County, 64 F.3d 470, 473 (9th Cir. 1995). The existence of personal jurisdiction is

14 determined at the time the suit commences. Steel v. United States, 813 F.2d 1545,

15 1549 (9th Cir. 1987). When a court rules on the basis of affidavits or affidavits

16 and discovery materials, plaintiff's burden is met with a prima facie showing of

17 personal jurisdiction. Fields v. Sedgwick Associated Risks, Ltd., 796 F.2d 299,

18 301 (9th Cir. 1986); Data Disc, Inc. v. Sys. Tech. Assoc., Inc., 557 F.2d 1280,

19 1285 (9th Cir. 1977) . A prima facie showing is made if Plaintiff's written

20 materials "demonstrate facts which support a finding of jurisdiction." Data Disc,

21 557 F.2d at·1285. Uncontroverted allegations in the complaint must be taken as

22 true and "'conflicts between the facts contained in the parties' affidavits must be

23 resolved in [the plaintiff's] favor[.]'" AT& T Co. v. Compagnie Bruxelles

24

25    _____

26    [13] Id. at ¶ 8.

27    [14] Id. at ¶ 9.

28    [15] Id. at ¶¶ 11-13.

                          5

EXHIBIT C

1  Lambert, 94 F.3d 586, 588 (9th Cir. 1996).

2      In order to show personal jurisdiction over the defendant, the plaintiff must

3  show that the long arm statute of the forum state, in this case California, confers

4  jurisdiction, and that the exercise of personal jurisdiction over the nonresident

5  accords with federal constitutional principles of due process.  Lake v. Lake, 817

6  F.2d 1416, 1421 (9th Cir. 1987).  "California's long-arm statute permits a court to

7  exercise personal jurisdiction over a defendant to the extent permitted by the Due

8  Process Clause of the Constitution."  Panavision Int'l., L.P. v. Toeppen, 141 F.3d

9  1316, 1320 (9th Cir. 1998); See also Cal. Civ. Proc. Code § 410.10.  Thus, the

10  relevant inquiry concerns whether the exercise of jurisdiction would comport with

11  the requirements of due process.  Due process requires that the non-resident

12  defendant has "certain minimum contacts with [the forum state] such that the

13  maintenance of the suit does not offend 'traditional notions of fair play and

14  substantial justice.'"  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

15      There are two recognized bases for personal jurisdiction over non-resident

16  defendants:  general and specific.  General jurisdiction exists if the non-resident

17  defendant's contacts with the forum state are continuous and systematic enough to

18  justify the exercise of jurisdiction over the defendant in all matters.  See Ziegler,

19  64 F.3d at 473.  Specific jurisdiction exists when the claims against the non-

20  resident defendant "arise out of" or are related to the defendant's activities within

21  the forum state.  See Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408,

22  414-16 (1984); Panavision, 141 F.3d at 1320.

23      2.    Dismissal For Failure To State A Claim Under FRCP 12(b)(6)

24      A complaint may be dismissed under FRCP 12(b)(6) for failure to state a

25  claim upon which relief can be granted where the plaintiff cannot prove a

26  cognizable legal theory or fails to allege sufficient facts under a cognizable legal

27  theory which would entitle him to relief.  Balistreri v. Pacifica Police Dept., 901

28  F.2d 696, 699 (9th Cir. 1990).  The question presented by a motion to dismiss is

EXHIBIT C

1   not whether a plaintiff will prevail in the action, but whether a plaintiff is entitled

2   to offer evidence in support of his claim. Carbo Distrib. Co. v. Brady, 821 F.

3   Supp. 601, 608 (N.D. Cal. 1992). While brevity is required in the pleading, it is

4   not sufficient to simply allege a wrong has been committed and demand relief; the

5   underlying requirement is that a pleading give "fair notice" of the claim being

6   asserted and the "grounds upon which it rests." Conley v. Gibson, 355 U.S. 41,

7   47-48 (1957). In testing the sufficiency of a complaint, the court must assume all

8   allegations of material fact are taken as true and construed in the light most

9   favorable to the nonmoving party. Nat'l Wildlife Fed'n v. Espy, 45 F.3d 1337,

10  1340 (9th Cir. 1995).

11       Generally, orders granting motions to dismiss are without prejudice unless

12  "allegations of other facts consistent with the challenged pleading could not

13  possibly cure the defect." Schreiber Dist. v. Serv-Well Furniture, 806 F.2d 1393,

14  1401 (9th Cir. 1986).

15       3.    Venue And Transfer

16       Venue is proper over federal diversity claims in a "judicial district in which

17  a substantial part of the events or omissions giving rise to the claim occurred." 28

18  U.S.C. 1391(a)(2). Pursuant to Federal Rule of Civil Procedure 12(b)(3),

19  defendant may move to dismiss for improper venue. In the Ninth Circuit, "it is not

20  clear which party bears the burden of proving that a substantial part of the events

21  occurred (or did not occur) in [the] district." Carolina Cas. Co. v. Date Broad.

22  Corp., 158 F. Supp 2d 1044, 1047 (N.D. Cal. 2001). Where venue is directly

23  challenged, the burden has been placed upon the plaintiff to respond to the basis of

24  the challenge. See Whiteman v. Grand Wailea Resort, 1999 WL 163044 (N.D.

25  Cal. Mar. 17, 1999). On the other hand, where defendant's challenge is

26  ambiguous, the court finds that the moving party owns the burden to show that the

27  venue is improper. Carolina Cas. Co., 158 F. Supp. 2d at 1047.

28       In deciding whether to grant a motion to transfer pursuant to Section

7

EXHIBIT C

1  1406(a), "[t]he district court of a district in which is filed a case laying venue in

2  the wrong division or district shall dismiss, or if it be in the interest of justice,

3  transfer such case to any district or division in which it could have been brought."

4  See 28 U.S.C. § 1406(a).

5

6  **B.    Local Rule 7-3**

7          As an initial matter, Plaintiffs request the Court to deny Defendants' motion

8  to dismiss for failure to comply with Local Rule 7-3, alleging Defendants' failure

9  to meet and confer "at least five (5) days prior to the last day for filing the

10 motion."  Plaintiffs contend that the deadline for a meet and confer was June 1,

11 2005, yet, Defendants did not request a meet and confer until June 7, 2005.[16]

12 Defendants, however, argue that meet and confer efforts were initiated as early as

13 May 12, 2005, which also entailed several meet and confer letters, emails, and a

14 personal visit to Plaintiffs' counsel's office to discuss the merit of the case.[17]  In

15 the meet and confer letters and email dated May 12, 2005, May 16, 2005, and May

16 17, 2005, respectively, Defendants clearly informed Plaintiffs of their intention to

17 meet and confer, which also included proposed dates to do so.[18]

18         Moreover, Defendants' discovery obligations as set forth in the Court's

19 December 1, 2004 Order to allow Plaintiffs an opportunity to allege new grounds

20

21         [16] Pls.' Opp'n to Defs' Mot. to Dismiss ("Pls.' Opp'n") 4:5-26.

22         [17] Defendants' counsel aver that on May 12, 2005 and May 16, 2005, meet
23 and confer letters were sent to Plaintiffs' counsel.  After receiving no response
24 from Plaintiffs' counsel, an email was sent on May 17, 2005.  Further, on May 18,
   2005, a two hour meeting took place between the parties' counsel at Plaintiffs'
25 counsel's office.  Defs.' Reply to Defs.' Mot. to Dismiss Pls.' Compl. ("Defs.'
26 Reply") 3:12- 4:17; Declaration of David R. Sugden in Supp. of Defs.' Mot. to
27 Dismiss Pls.' Compl. ("Sugden Decl.") ¶¶ 4-8.

28         [18] Sugden Decl., Exs. D, E, F.

8

EXHIBIT C

1  for Defendants' minimum contacts, were moot, following Plaintiffs' filing of its

2  FAC nearly three (3) months beyond the deadline set forth in the Order.  Even if

3  the Court accepted the contention that Defendants failed to comply with Local

4  Rule 7-3, the Court concludes that Plaintiffs did not suffer any prejudice or undue

5  delay based upon Defendants' failure to meet-and-confer until five (5) days after

6  the required deadline upon service of Plaintiffs' untimely submitted FAC.  The

7  Court therefore, declines to deny Defendants' motion on those grounds.

8  **C.    Personal Jurisdiction**

9      1.    General Jurisdiction

10        Defendants BAE Systems and BAE Electronics move to dismiss Plaintiffs'

11  FAC for lack of personal jurisdiction.  However, it is Plaintiffs' burden to show

12  Defendants BAE Systems and BAE Electronics' contacts with California are

13  systematic, continuous, and substantial enough to subject them to general personal

14  jurisdiction.  See Ballard, 65 F.3d at 1498.  Plaintiffs have not made this showing.

15        Defendants BAE Systems and BAE Electronics are neither residents of nor

16  incorporated in the State of California.[19]  They have never been involved in any

17  litigation in California during the period of January 30, 2002 to the present.[20]

18  Moreover, Defendants do not maintain a place of business, pay taxes, or have an

19  agent for service of process in California.[21]  Indeed, no defendant owns or leases

20  any property, offices, equipment, or employees in California.[22]  Further,

21  Defendants do not maintain a bank account, agent, distributor or sales

22

23        [19] Defs.' Mot. to Dismiss Pls.' Compl. ("Defs.' Mot.") 5:6-7; Declaration of

24  David Parkes in Supp. of Defs.' Mot. to Dismiss Pls.' Compl. ("Parkes Decl.") ¶ 2.

25        [20] Defs.' Mot. 5:7-8; Parkes Decl. ¶ 3.

26

27        [21] Defs.' Mot. 5:10-11; Parkes Decl. ¶ 4.

28        [22] Defs.' Mot. 5:11-12; Parkes Decl. ¶ 4.

EXHIBIT C

1  representative in California to conduct or obtain business.[23]  Further, Defendants
2  do not manufacture any products, materials, components, equipment or machinery
3  in California.[24]

4      Additionally, Plaintiffs failed to discuss how the Court might have general
5  jurisdiction over Defendants BAE Systems and BAE Electronics.  Rather,
6  Plaintiffs conclusively allege that Defendants' cease-and-desist letter sent into this
7  District with a draft Complaint gives rise to general personal jurisdiction.[25]
8  Plaintiffs further assert, without providing any legal authority, that Defendants'
9  attendance at a conference and their sales of LCDs in California are both sufficient
10  for the Court to exercise general jurisdiction over Defendants.[26]

11      Likewise unpersuasive is Plaintiffs contention that general jurisdiction
12  exists over Defendant BAE Systems because "it is one of the largest aerospace
13  companies in the world."[27]  Plaintiffs further aver that information about BAE
14  Systems could be easily found on its website, which states that BAE Systems has
15  "'more than 90,000' employees worldwide . . . and a 'major presence
16  internationally, particularly in Europe and the United States.'"[28]  The Court finds

17  _____

18  [23] The Court finds Plaintiffs' contention that Defendants' answers to
19  Interrogatory No. 5 are "wholly inadequate, evasive, and non-responsive" is
    without merit.  Defendants' answer states that they "[do] not 'own' any such
20  properties."  Defendants cannot be any more responsive if, in fact, they do not own
21  these properties.  (Defs.' Mot. 5:12-14; Parkes Decl. ¶ 4.)

22  [24] Defs.' Mot. 5:14-15; Parkes Decl. ¶ 4.
23
    [25] Pls.' Opp'n 7:15-19;
24
    [26] Pls.' Opp'n 8:2-19.
25
26  [27] Pls.' Opp'n 9:9-11; Declaration of Neal M. Cohen in Supp. of Tannas'
27  Opp'n ("Cohen Decl.") ¶ 9, Ex. 4.

28  [28] Pls.' Opp'n 9:18-20; Cohen Decl. ¶ 9, Ex. 4.

EXHIBIT C

1   Plaintiffs' assertions unconvincing. The Ninth Circuit has held that a passive

2   internet website does not constitute sufficient contacts with any state to allow a

3   forum state to find general personal jurisdiction over the website's owner.

4   Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998). In dicta,

5   Amoco Egypt Oil Co. v. Leonis Navigation Co., 1 F.3d 848, 851 n.3 (9th Cir.

6   1993), suggests that a defendant which lacks "incorporation, license or

7   authorization to do business, offices, property, employees, payment of taxes,

8   advertising, solicitation or sales [in the forum state]" will not be subject to general

9   jurisdiction. The Ninth Circuit has regularly "declined to find general jurisdiction

10  even where the contacts are quite extensive." Id.

11        As affirmed in Cybersell, here, the Court agrees that posting a web site on

12  the Internet is not sufficient to subject a party domiciled in one state to jurisdiction

13  in another. Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 418 (9th Cir. 1997).

14  There must be "something more" to demonstrate that Defendants directed their

15  activities toward the forum state. Id. In the instant matter, that has not been

16  shown.

17        Plaintiffs have therefore failed to demonstrate facts to support general

18  jurisdiction over Defendants BAE Systems and BAE Electronics. Accordingly,

19  the evidence shows Defendants do not have regular business dealings with

20  California and their contacts with California residents are not substantial,

21  systematic or continuous.

22        2.    Specific Jurisdiction

23        The Ninth Circuit utilizes a three-part test to determine the propriety of

24  exercising specific jurisdiction:

25        (1)   the non-resident defendant must perform some act by which he
              purposefully avails himself of the privilege of conducting activities in
26            the forum, thereby invoking the benefits and protections of the
              forum's laws;

27        (2)   the plaintiff's claim arise out of or result from the non-resident
28            defendant's forum-related activities; and

11

EXHIBIT C

1

2          (3)    the exercise of jurisdiction must be reasonable.

3   <u>Panavision</u>, 141 F.3d at 1316.  A plaintiff must satisfy all three parts of the test to

4   establish specific personal jurisdiction over a non-resident defendant.  <u>McGlinchy</u>

5   <u>v. Shell Chem. Co.</u>, 845 F.2d 802, 817-18 n. 10 (9th Cir. 1988).  Here, because the

6   evidence show Plaintiffs cannot satisfy the forum-related activities prong, the

7   Court need not address the first and third prong of the specific jurisdiction test.

8          The second prong for specific, personal jurisdiction is that the claim

9   asserted in the litigation arises out of the defendant's forum related activities.

10  <u>Ziegler</u>, 64 F.3d at 474.  In evaluating whether a cause of action arises out of the

11  directed activities, the Court looks to the law of forum state.  California applies a

12  broad standard, using a "'but for' test to determine whether a particular claim

13  arises out of forum-related activities." <u>Ballard</u>, 65 F.3d at 1500.  We must

14  determine if Plaintiffs would not have been injured "but for" Defendants' conduct

15  directed toward Plaintiffs in California. <u>Id</u>.

16         In the instant case, Plaintiffs contend that the following activities, which

17  caused them to suffer harm in California, establishes personal jurisdiction:

18  (1) Defendants' cease-and-desist letter sent to Plaintiffs with a draft Complaint;

19  (2) Defendants' sales of resized LCDs to Symbolic Displays, Inc. ("SDI") in

20  California; (3) Defendants' sales of products to the United States military in

21  California; and (4) Defendants' attendance at a conference at the Queen Mary with

22  employees of SDI.[29]  Plaintiffs' contentions are unpersuasive.

23         First, Plaintiffs cannot rely on Defendants' production of the cease-and-

24  desist letter and draft Complaint addressed to Plaintiffs as a basis for establishing

25  that the causes of action before the Court arises from Defendants' forum-related

26  activities.  Indeed, Defendants did not commence any action in California, and to

27  _____

28         [29] Pls.' Opp'n 7:15-19; 8:2-9.

                                     12

EXHIBIT C

1 | the contrary, the letter and draft Complaint articulated that the lawsuit was to be
2 | filed in Virginia, not California.[30] No authority supports Plaintiffs' argument that
3 | "but for" Defendants' contemplation to file a lawsuit in *Virginia*, Plaintiffs would
4 | not have been injured in California (emphasis added).

5 |     Second, the fact that Defendants sold resized LCDs to SDI and the United
6 | States military in 2000 and 2001 is insufficient to demonstrate that Plaintiffs'
7 | claims are a result of Defendants' California-related conduct directed towards
8 | Plaintiffs. Even if Defendants' conduct in this regard constitutes a deliberate act
9 | aimed at California and Plaintiffs, Defendants' transactions with SDI and the
10 | United States military were wholly unrelated to Plaintiffs and the present case.
11 | Those transactions involved Defendants and third parties. In fact, Plaintiffs' FAC
12 | acknowledged that the parties did not enter into any contract or business
13 | relationship in California.[31] Indeed, the FAC sought relief from this Court that "no
14 | contract exists between Plaintiffs and Defendants."[32] Because the evidence shows
15 | Defendants never entered into a contractual relationship with Plaintiffs in
16 | California, jurisdiction cannot be predicated on Defendants' contacts with SDI or
17 | the United States military to establish the "but for" test.

18 |     Accordingly, the Court concludes that Plaintiff has failed to make a <u>prima</u>
19 | <u>facie</u> showing that Plaintiffs' claims arise out of or result from Defendants'
20 | California-related activities. Therefore, the Court cannot exercise personal
21 | specific jurisdiction over Defendants BAE Systems and BAE Electronics.

22 | **D.   Dismissal Of Plaintiff's First Five Causes Of Action Is Warranted**
23 |     As set forth above, in light of the Court's decision to grant Defendants BAE

---

[30] Defs.' Mot. 8:17-21; Sugden Decl. ¶ 4.

[31] Pls.' FAC ¶ 20; Defs.' Mot. 4:15-18.

[32] <u>Id</u>.

13

EXHIBIT C

1   Systems and BAE Electronics' motion to dismiss for lack of personal jurisdiction,

2   the only remaining defendant seeking to dismiss Plaintiffs' first five causes of

3   action is BAE Avionics.

4        Defendant BAE Avionics argues that dismissal is proper under Fed. R. Civ.

5   P. 12(b)(6) because the FAC demonstrates that no valid claims can be brought

6   under the facts pled in the first five causes of action for:  (1) declaratory judgment

7   of no breach of contract; (2) declaratory judgment of no trade secret

8   misappropriation; (3) declaratory judgment of no unfair competition;

9   (4) interference with prospective economic advantage; and (5) unfair

10  competition.[33]  Specifically, BAE Avionics claims that the FAC contains no

11  factual allegations sufficient to satisfy the requirement of Fed. R. Civ. P. 8(a).[34]

12  On the contrary, Plaintiffs allege that the FAC is pled with sufficient particularity

13  to support their claims for relief.[35]  For the reasons discussed below, the Court

14  finds Defendant BAE Avionics' contentions convincing.

15       1.    Plaintiffs' Have Not Pled Sufficient Facts To Support Their First,

16             Second, And Third Causes of Action

17       Under the liberal pleading requirements of Fed. R. Civ. P. 8(a)(2), Plaintiffs

18  need only make a short and plain statement of the claim showing that Plaintiffs are

19  entitled to relief.  See Fed. R. Civ. P. 8(a)(2).  The pleading must, in other words,

20  give fair notice and state the elements of the claim plainly and succinctly.  See

21  Jones v. Cmty. Redevelopment Agency, 733 F.2d 646, 649 (9th Cir. 1984);

22  Conley, 355 U.S. at 47 ("all the Rule [Fed. R. Civ. P. 8(a)(2)] requires is 'a short

23  and plain statement of the claim' that will give the defendant fair notice of what

24

25  _____

    [33] Pls.' FAC ¶¶ 19-38.

26

27  [34] Defs.' Mot. 10:7-8; Defs.' Reply 10:11-15.

28  [35] Pls.' Opp'n 12:26; 13:9-28; 14:1-5.

EXHIBIT C

1   the plaintiff's claim is and the grounds upon which it rests").

2        BAE Avionics assert that Plaintiffs' first, second, and third causes of action

3   fail to assert an "actual controversy" as required under 28 U.S.C. § 2201(a).[36]

4   Section 2201(a) states, in pertinent parts, "[i]n a case of actual controversy within

5   its jurisdiction . . . any court of the United States, upon the filing of an appropriate

6   pleading, may declare the rights and other legal relations of any interested party

7   seeking such declaration, whether or not further relief is or could be sought." See

8   28 U.S.C. § 2201(a).  As such, a "substantial controversy" of "sufficient

9   immediacy and reality" which has "crystallized to the point that there is a specific

10  need for a declaratory judgment" is required.  Xerox Corp. v. Apple Computer,

11  Inc., 734 F. Supp. 1542, 1546 (N.D. Cal. 1990).

12       Here, the FAC makes the conclusory allegation that Plaintiffs are entitled to

13  declaratory judgment because an actual case or controversy exists between the

14  parties.[37]  However, even if the Court accepts these allegations as true, it does not

15  appear that an "actual controversy" requiring declaratory relief exists.  In fact,

16  Plaintiffs' first cause of action seeks declaratory judgment that "no contract exists

17  between Plaintiffs and Defendants, and consequently, Plaintiffs have not breached

18  any such contract."[38]  Moreover, while Plaintiffs allege that Defendants had

19  threatened them with suit in 2003, Defendants have filed no such suit two years

20  later.[39]

21       Furthermore, in opposition to Defendants' motion to dismiss the first three

22  causes of action, Plaintiffs merely assert that the FAC clearly contains "specific

23

24    [36] Defs.' Mot. 10:22-26.

25
26    [37] Pls.' FAC ¶¶ 19-24.

27    [38] Pls.' FAC ¶ 20.

28    [39] Pls.' FAC ¶¶ 7-9.

EXHIBIT C

1  threats made by defendants against Plaintiff, which threats were included in a

2  letter and an attached draft Complaint."[40]  Again, these allegations are merely

3  conclusory as to the behavior of Defendant BAE Avionics which gives rise to

4  these three claims.  The FAC must also allege the underlying facts which support

5  the conclusions in order for this cause of action to be pled with sufficient

6  particularity.  Accordingly, the Court grants Defendant BAE Avionic's motion to

7  dismiss the First, Second, and Third causes of action without prejudice and with

8  30 days leave to amend.

9      2.    Plaintiffs' Have Not Pled Sufficient Facts To Support Their Fourth

10            Cause of Action

11      Plaintiffs have not sufficiently pled their fourth cause of action for

12  intentional interference with prospective economic advantage.  There are five

13  elements of this tort:  (1) an economic relationship between plaintiff and another

14  party, containing a probable future economic advantage to plaintiff; (2)

15  defendant's knowledge of the existence of the relationship; (3) defendant's

16  intentional conduct designed to interfere with or disrupt the relationship; (4) actual

17  disruption; and (5) damage to the plaintiff as a result of defendant's acts.  See

18  Marin Tug & Barge v. Westport Petroleum, 271 F.3d 825, 831 n.8 (9th Cir. 2001)

19  (quoting Della Penna v. Toyota Motor Sales, U.S.A., Inc., 11 Cal. 4th 376, 380 n.1

20  (1995)).  Furthermore, Plaintiffs must prove Defendants' interference was

21  wrongful "by some measure beyond the fact of the interference itself."  Della

22  Penna, 11 Cal. 4th at 392-93.  However, the Supreme Court of California has not

23  defined the precise scope of "wrongfulness" necessary to trigger liability for

24  intentional interference with prospective economic advantage.  See Marin Tug &

25

26  ─────────────────

27  [40] Pls.' Opp'n 12:26-28; 13:2-3.  The Court notes that Plaintiffs did not
    attach the letter and the draft Complaint with the FAC as stated in the language of

28  the FAC.

16

EXHIBIT C

1 | Barge, 271 F.3d at 831.  Thus, it remains an unresolved question of law in

2 | California.  See id.

3 |      In this case, Plaintiffs have not sufficiently alleged each element of this tort.

4 | On the face of the FAC, Plaintiffs' allegations sets forth the essential elements of a

5 | cognizable legal claim for interference with prospective economic advantage, but

6 | the FAC fail to allege sufficient facts under that cognizable legal theory.  Balistreri

7 | v. Pacifica Police Dep't, 901 F.2d at 699 ("[d]ismissal can be based on . . . the

8 | absence of sufficient facts alleged under a cognizable legal theory").

9 |      Moreover, Plaintiffs' FAC fails to assert that Defendants' interference was

10 | wrongful "beyond the fact of the interference itself."  Della Penna, 11 Cal. 4th at

11 | 392-93.  On the face of the FAC, the independent wrong alleged by Plaintiffs is a

12 | defamation claim that Defendants "made false statements to third parties [and

13 | White Industries] that Defendants [had] worldwide patents directed to resizing

14 | LCDs."[41]  Under both federal and state law, a defamation claim has to be pled with

15 | specificity: ". . . where a plaintiff seeks damage for conduct which is prima facie

16 | protected by the First Amendment, the danger that the mere pendency of the action

17 | will chill the exercise of First Amendment rights requires more specific allegations

18 | than are otherwise required."  Flowers v. Carville, 310 F.3d 1118, 1130 (9th Cir.

19 | 2002).  As such, merely asserting that Defendants made "false statements to third

20 | parties" falls short of the specificity requirement.

21 |      In addition, in opposition to Defendants' motion to dismiss, Plaintiffs make

22 | the conclusory contention that "Plaintiffs clearly set forth sufficient allegations to

23 | support this [interference with prospective economic advantage] cause of

24 | action."[42]  Again, the pleadings are devoid of substance and wholly conclusory.

25 | Therefore, Plaintiffs' FAC, which contains only conclusory allegations that have

26 |

27 |     [41] Pls.' FAC ¶¶ 11, 12.

28 |     [42] Pls.' Opp'n 13:13-14.

17

EXHIBIT C

1  no facts alleged under the theory for interference with prospective economic

2  advantage, warrant dismissal. In re Party City Sec. Litig., 147 F. Supp. 2d 282,

3  297 (D.N.J. 2001) ("a court need not credit a complaint's 'bald assertions' or

4  'legal conclusions' when deciding a motion to dismiss").

5         3.   Plaintiffs' Have Not Pled Sufficient Facts To Support Their Fifth

6              Cause Of Action

7       Plaintiffs have also failed to pled sufficient facts supporting their fifth cause

8  of action for unfair competition and injurious falsehood.

9       According to Cal. Bus. & Prof. C. § 17200, unfair competition includes

10  "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. C.

11  § 17200. Its broad coverage embraces "anything that can properly be called a

12  business practice and that at the same time is forbidden by law." Schnall v. Hertz

13  Corp., 78 Cal. App. 4th 1144, 1153 (2000). Since this statute is written in the

14  disjunctive, it establishes three varieties of unfair competition: acts or practices

15  which are (1) unlawful, (2) unfair or (3) fraudulent. See id. Thus, under the

16  statute, a business practice can be prohibited as unfair or deceptive, even if it is

17  not unlawful. See id.

18       Furthermore, even a single act of unfair business practice may be enough to

19  support a claim under § 17200. See Solomon v. N. Am. Life & Cas., 151 F.3d

20  1132, 1139 (9th Cir. 1998). To establish an "unlawful" practice, a plaintiff must

21  point to a specific provision of law that has been violated. When alleging unfair

22  business practices under California's unfair competition statute, Plaintiffs must

23  state with reasonable particularity facts supporting the statutory elements of the

24  violation. See Globespan, Inc. v. O'Neill, 151 F. Supp. 2d 1229, 1235 (C.D. Cal.

25  2001) (citing Silicon Knights, Inc. v. Crystal Dynamics, Inc., 983 F. Supp. 1303,

26  1316 (N.D. Cal. 1997)).

27       Assuming Plaintiffs' allegations are true and construing Plaintiffs' FAC in

28  the most favorable light, the FAC identifies no particular section of the statutory

EXHIBIT C

1   scheme which was violated and fails to describe with any reasonable particularity

2   the facts demonstrating Defendants have engaged in unfair business practices

3   violating Cal. Bus. & Prof. C. § 17200.  For example, the FAC refers to an effect

4   of "misleading" and "deceiv[ing]" Plaintiffs' potential customers, but the facts

5   clearly do not involve deceptive advertising.  <u>See</u> Cal. Bus. & Prof. C. §§ 17200

6   (holding that unfair competition includes deceptive or misleading advertising);

7   17500 *et seq*. (specific false advertising practices).  The facts also do not explain

8   the manner in which Defendants misled or deceived customers.  <u>Compare</u> <u>Comm.</u>

9   <u>on Children's Television, Inc. v. Gen. Foods Corp.</u>, 35 Cal. 3d 197, 213- 214

10  (1993) (complaint described effect of cereal maker's advertising on young

11  children).  Also, the FAC does not describe the manner in which Defendants'

12  practice is "unlawful." <u>Id</u>. at 209- 210.

13       In conclusion, Plaintiffs baldly assert that Defendant BAE Avionic's false

14  and misleading statements to third parties and potential customers in which

15  Defendants have worldwide patents on resizing LCDs are deceptive and injurious

16  to Plaintiffs.[43]  Again, these conclusory allegations, which lack "reasonable

17  particularity" fail to support a cause of action for unfair business practices.

18  **E.      Transfer of Venue**

19       1.     <u>Dismissal For Improper Venue Is Warranted</u>

20       Defendant BAE Systems argues that this Court is an inappropriate venue for

21  Plaintiffs' sixth cause of action for patent interference under 35 U.S.C. § 146

22  because the claim must be brought in the District of Columbia.[44]  For reasons

23  discussed below, the Court agrees.

24       Section 146 states, in relevant parts, that "[i]f there be . . . an adverse party

25  residing in a foreign country, the United States District Court for the District of

26  _____

27      [43]  Pls.' FAC ¶¶ 31-38.

28      [44]  Defs.' Mot. 18:22-25.

EXHIBIT C

1   Columbia *shall* have jurisdiction . . . ." 35 U.S.C. § 146; see also Conversion

2   Chem. Corp. v. Gottschalk, 341 F. Supp. 754, 756 n.2 (D. Conn. 1972) (emphasis

3   added).  The language of the statute unambiguously designates the District of

4   Columbia as having exclusive jurisdiction for Section 146 claims.  Thus, this

5   Court concludes that Plaintiffs' Sixth Cause of Action completely bars California

6   as a proper venue.

7       2.   The Present Action Is Properly Transferred To The District Of

8             Columbia

9         Additionally, Defendants request, in the alternative, that the Court transfer

10  the action to the United States District Court for the District of Columbia.

11  Pursuant to Section 1406(a), "[t]he district court of a district in which is filed a

12  case laying venue in the wrong division or district shall dismiss, or if it be in the

13  interest of justice, transfer such case to any district or division in which it could

14  have been brought."  See 28 U.S.C. § 1406(a).  There is no dispute that this action

15  "could have been brought" in the District of Columbia.  In fact, under Section 146,

16  venue is properly laid only in the United States District Court for the District of

17  Columbia.  Accordingly, the Court need not address whether transfer is proper

18  under Belzberg in determining if transfer is necessary in the interest of justice and

19  for the convenience of the witnesses and litigants.  Lou v. Belzberg, 834 F.2d 730,

20  739 (9th Cir. 1987); cert. denied, 486 U.S. 993 (988).

21        Therefore, for the reasons discussed above, the Court concludes that

22  transferring this action to the United States District Court for the District of

23  Columbia is warranted.

24

25

26

27

28

20

EXHIBIT C

1

2                      **III. CONCLUSION**

3        For all of the foregoing reasons, the Court hereby **GRANTS** Defendants

4    BAE Electronics and BAE System's  motion to dismiss without prejudice and 30

5    days leave to amend, Plaintiffs' FAC for lack of personal jurisdiction and

6    additionally **GRANTS** Defendant BAE Avionic's motion to dismiss without

7    prejudice and 30 days leave to amend, Plaintiff's first five causes of action for

8    failure to state a claim upon which relief may be granted.  Moreover, the Court

9    hereby **GRANTS** Defendant BAE System's motion to transfer Plaintiffs' Sixth

10   Cause of Action.

11

12   IT IS SO ORDERED.

13

14   DATED:     August 31, 2005.

15                                              _____

16                                              ROBERT J. KELLEHER
                                                United States District Judge
17

18

19

20

21

22

23

24

25

26

27

28

                                    21

EXHIBIT C