FILED

2005 JUN 13 PM 2:50

CLERK U.S. DISTRICT COURT
LOS ANGELES

BY _____

1  SCOTT J. FERRELL, Bar No. 202091
   DAVID R. SUGDEN, Bar No. 218465
2  CALL, JENSEN & FERRELL
   A Professional Corporation
3  610 Newport Center Drive, Suite 700
   Newport Beach, CA  92660
4  (949) 717-3000 (Phone)
   (949) 717-3100 (Fax)
5  sferrell@calljensen.com
   dsugden@calljensen.com
6
7
   Attorneys for Defendants BAE Systems Avionics Limited,
8  BAE Systems Electronics Limited, and BAE Systems, Plc.

9                  UNITED STATES DISTRICT COURT

10                 CENTRAL DISTRICT OF CALIFORNIA

11

12  Lawrence E. Tannas, Jr., an individual dba      Case No.  CV-03-5889 RJK (FMOx)
    as Tannas Electronics; Tannas Electronic
13  Displays, Inc., a California corporation,       NOTICE OF MOTION AND MOTION
                                                    OF DEFENDANTS BAE SYSTEMS
14              Plaintiffs,                          AVIONICS LIMITED, BAE SYSTEMS
                                                    ELECTRONICS LIMITED, AND BAE
15         vs.                                       SYSTEMS PLC. TO DISMISS
                                                    PLAINTIFFS' COMPLAINT UNDER
16  BAE Systems Avionics Limited, a British         FRCP 12(b)(2) OR 12(b)(6), OR IN
    corporation; BAE Systems Electronics           THE ALTERNATIVE FOR A
17  Limited, a British corporation,                 MOTION TO DISMISS OR
                                                    TRANSFER VENUE OF PLAINTIFFS'
18              Defendants.                          SIXTH CAUSE OF ACTION

19                                                  Date:  July 11, 2005
                                                    Time:  10:00 a.m.
20                                                  Place: Courtroom 1439, Roybal Building

21

22

23

24                                                 Complaint Filed:  August 19, 2003
                                                   Trial Date:        None Set
25

26

27

28

L, JENSEN &
FERRELL
OFESSIONAL
RPORATION

NOTICE OF MOTION AND MOTION OF DEFENDANTS TO DISMISS PLAINTIFFS'
COMPLAINT UNDER FRCP 12(b)(2) OR 12(b)(6)

EXHIBIT D

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................. 3

II.  MEMORANDUM OF POINTS AND AUTHORITIES ......................................... 5

    A.  EXERCISE OF PERSONAL JURISDICTION OVER
        ELECTRONICS AND SYSTEMS WOULD OFFEND
        DUE PROCESS. ......................................................................... 5

        1.  THERE IS NO BASIS FOR PERSONAL
            JURISDICTION OVER DEFENDANTS. ................................. 6

        A.  PERSONAL JURISDICTION CANNOT BE
            ESTABLISHED THROUGH SERVICE,
            DOMICILE OR CONSENT. ................................................ 7

        B.  PERSONAL JURISDICTION CANNOT BE
            ESTABLISHED THROUGH THE "MINIMUM
            CONTACTS" DOCTRINE. ................................................. 8

    B.  EVEN ASSUMING PERSONAL JURISDICTION EXISTS
        OVER ALL DEFENDANTS, PLAINTIFFS' FAC FAILS
        TO STATE A CLAIM AGAINST DEFENDANTS. ..................................... 11

        1.  PLAINTIFF'S DECLARATORY RELIEF CAUSES
            OF ACTION ARE FATALLY FLAWED. ............................... 11

        2.  PLAINTIFF'S CAUSE OF ACTION FOR
            INTENTIONAL INTERFERENCE WITH
            PROSPECTIVE ECONOMIC ADVANTAGE
            FAILS.......................................................................... 12

        3.  PLAINTIFFS' FIFTH CAUSE OF ACTION FOR
            "UNFAIR COMPETITION/INJURIOUS
            FALSEHOOD" FAILS TO STATE A CLAIM. ......................... 15

        B.  PLAINTIFFS HAVE NOT PROPERLY STATED A
            STATE LAW CLAIM FOR UNFAIR
            COMPETITION............................................................... 16

        C.  PLAINTIFFS HAVE NOT STATED A CLAIM
            UNDER THE LANHAM ACT. ............................................ 17

        4.  PLAINTIFFS' SIXTH CLAIM UNDER 35 U.S.C. §
            146 FAILS..................................................................... 18

III. CONCLUSION................................................................................... 20

JENSEN &
ERRELL
FESSIONAL
PORATION

BRI03-01:154114_1:6-13-05

- i -

EXHIBIT D

## TABLE OF AUTHORITIES

Page

### FEDERAL CASES

*Accuimage Diagnostics Corp v. Terarecon, Inc.*, 260 F. Supp. 2d 941
    (N.D. Cal. 2003) ...................................................................................13

*Adam v. Saenger*, 303 U.S. 59 (1938) ...........................................................9

*American Telegraph & Telegraph Co. v. Compagnie Bruxelles Lambert*,
    94 F.3d 586 (9th Cir. 1996) .................................................................10

*Amoco Egypt Oil Co. v. Leonis Navigation Co., Inc.*, 1 F.3d 848 (9th Cir.
    1993) ......................................................................................................8

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ..................................9

*Burnham v. Superior Court*, 495 U.S. 604 (1990) .........................................7

*Conversion Chemical Corporation v. Gottschalk*, 341 F. Supp. 754 (D.
    Conn. 1972) ..........................................................................................20

*Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482 (9th Cir. 1993).......10

*Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269 (6th Cir. 1998)..................10

*Flowers v. Carville*, 310 F.3d 1118 (9th Cir.2002) ......................................14

*Hargrave v. Fibreboard Corp.*, 710 F.2d 1154 (5th Cir. 1983)....................10

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945)......................6, 8

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984) ..............................10

*Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196 (8th Cir. 1990)................7

*Leonard v. USA Petroleum Corp.*, 829 F. Supp. 882 (S.D. Tx. 1993)............7

*National Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311 (1964)....................7

*Pennoyer v. Neff*, 95 U.S. 714 (1877)............................................................6

*Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952) ..............8

*Posner v. Essex Insurance Co., Ltd.*, 178 F.3d 1209 (11th Cir. 1999)..........19

*Standard Oil Company v. Montecatini Edison*, 342 F. Supp. 125 (D. Del.
    1972) ....................................................................................................20

*Swanson v. United States Forest Service*, 87 F.3d 339 (9th Cir. 1996) ........ 19

*Trans World Airlines, Inc. v. Mattox*, 897 F.2d 773 (5th Cir. 1990) .............. 7

*Western Mining Council v. Watt*, 643 F.2d 618 (9th Cir.1981), ................. 12

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) ............... 8

*Xerox Corp. v. Apple Computer, Inc.*, 734 F. Supp. 1542

(N.D. Cal. 1990) ................................................................................ 12, 18

## STATE CASES

*Carlisle v. Fawcett Publications, Inc.*, 201 Cal. App. 2d 733 (1960) ........... 15

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376 (1995) .... 13

*J'Aire Corp. v. Gregory*, 24 Cal. 3d 799 (1979) ............................................ 13

*Kahn v. Bower*, 232 Cal. App. 3d 1599 (1991) ............................................. 14

*National Medical Transportation Network v. Deloitte & Touche*, 62 Cal.

App. 4th 412 (1998) ................................................................... 13

## FEDERAL STATUTES

5 U.S.C. § 146 ................................................................................. 18

15 U.S.C. § 1125(a). ....................................................................... 4

15 U.S.C. § 1125(a)(1)(B) .............................................................. 17

28 U.S.C. § 1391 ............................................................................. 20

28 U.S.C. § 1406(a) ............................................................... 1, 3, 5, 20

28 U.S.C. § 2201(a) ........................................................................ 11

35 U.S.C. § 146 ............................................................... 5, 18, 19

## STATE STATUTES

California Business & Professions Code § 17200 ................... 4, 15, 16, 17

LL, JENSEN &
FERRELL
ROFESSIONAL
RPORATION

TABLE OF AUTHORITIES                    EXHIBIT D

1    **TO PLAINTIFFS AND TO THEIR ATTORNEYS OF RECORD HEREIN:**

2    **PLEASE TAKE NOTICE** that on July 11, 2005 at 10:00 a.m., before the

3    Honorable Robert J. Kelleher of the United States District Court, Central District of

4    California, located at 255 E. Temple Street, Los Angeles, California, Defendants BAE

5    Systems Avionics Limited, BAE Systems Electronics Limited, and BAE Systems, Plc.

6    ("Defendants") will, and hereby do, move the Court to (1) pursuant to FRCP 12(b)(2) to

7    dismiss BAE Systems Electronics Limited, and BAE Systems, Plc. because personal

8    jurisdiction does not exist over these defendants; (2) on behalf of all Defendants dismiss

9    the first five causes of action pursuant to FRCP 12(b)(6); (3) dismiss BAE Systems Plc.

10   and the sixth cause of action because (a) the Court did not allow this new party or cause

11   of action to be added to Plaintiffs' First Amended Complaint, and (b) pursuant to FRCP

12   12(b)(3) venue is improper for Plaintiffs' sixth cause of action (in the alternative,

13   Defendants request that the Court transfer Plaintiffs' sixth cause of action to the proper

14   venue pursuant to 28 U.S.C. § 1406(a)).

15

16   **GROUNDS FOR MOTION:**  This Motion is brought on the grounds that:  (1)

17   this Court lacks personal jurisdiction over BAE Systems Electronics Limited and BAE

18   Systems, Plc.; (2) the First Amended Complaint fails to state a claim upon which relief

19   can be granted; (3) the First Amended Complaint goes beyond the scope of the Court's

20   December 1, 2004 Order, which only allowed Plaintiffs to allege new grounds for

21   Defendants' minimum contacts, and (4) venue is improper with respect to the sixth

22   cause of action.

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

BRI03-01:154114_1:6-13-05                                - 1 -

NOTICE OF MOTION AND MOTION OF DEFENDANTS TO DISMISS PLAINTIFFS'
COMPLAINT UNDER FRCP 12(b)(2) OR 12(b)(6)                    **EXHIBIT D**

1    **BASIS FOR MOTION:**  This Motion is based upon this Notice of Motion and

2    Motion, the attached Memorandum of Points and Authorities, the Declaration of David

3    R. Sugden and David Parkes filed concurrently herewith, the records on file herein, all

4    evidence and argument to be presented at the hearing on this matter, and such other

5    matters of which the Court may take judicial notice prior to or at the hearing.  As set

6    forth in more detail in the Declaration of David R. Sugden, this Motion is made

7    following a meet and confer conference (and additional efforts to further meet and

8    confer) as required under Local Rule 7-3.  This Motion is made following the efforts of

9    counsel to conduct a meet and confer conference as required under Local Rule 7-3.

10

11   Dated:  June 13, 2005                          CALL, JENSEN & FERRELL

12                                                  A Professional Corporation
                                                    SCOTT J. FERRELL
13                                                  DAVID R. SUGDEN

14

15                                                  By: _____

16                                                       David R. Sugden

17                                                  Attorneys for Defendants BAE Systems
                                                    Avionics Limited, BAE Systems Electronics
18                                                  Limited, and BAE Systems, Plc.

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION OF DEFENDANTS TO DISMISS PLAINTIFFS'
COMPLAINT UNDER FRCP 12(b)(2) OR 12(b)(6)              **EXHIBIT D**

# I.    INTRODUCTION

On July 9, 2004, Defendants filed a Motion to Dismiss Plaintiffs' Complaint and, on August 23, 2004, the Court heard oral arguments and took Defendants' Motion under submission to allow Plaintiffs to conduct further discovery on minimum contacts.

On December 1, 2004, the parties lodged and the Court signed a Stipulation and Order Re: Motion to Compel and First Amended Complaint which stated Plaintiffs would either (1) file a motion to compel discovery responses on January 31, 2005, or (2) file a First Amended Complaint "alleging new grounds for Defendants' minimum contacts, no later than January 31, 2005."

On May 19, 2005, Plaintiffs filed its First Amended Complaint ("FAC"). However, as the Court noted in its May 25 Order, "Plaintiffs' FAC goes beyond the scope of the Court's December 1, 2004 Order, which only allowed Plaintiffs to allege new grounds for Defendants' minimum contacts."

Defendants now bring this Motion to: (1) dismiss BAE Systems Electronics Limited ("Electronics") and BAE Systems, Plc. ("Systems") pursuant to FRCP 12(b)(2) because personal jurisdiction does not exist over these defendants; (2) dismiss the first five causes of action pursuant to FRCP 12(b)(6); (3) dismiss Systems and the sixth cause of action because (a) the Court did not allow this new party or cause of action to be added to Plaintiffs' FAC, and (b) pursuant to FRCP 12(b)(3) venue is improper for Plaintiffs' sixth cause of action (in the alternative, Defendants request that the Court transfer Plaintiffs' sixth cause of action to the proper venue pursuant to 28 U.S.C. § 1406(a)).

With respect to personal jurisdiction, while Avionics no longer contests personal jurisdiction, personal jurisdiction does not exist for Electronics or Systems. As the FAC

L, JENSEN &
FERRELL
OFESSIONAL
RPORATION
BRI03-01:154114_1:6-13-05                    - 2 -
NOTICE OF MOTION AND MOTION OF DEFENDANTS TO DISMISS PLAINTIFFS'
COMPLAINT UNDER FRCP 12(b)(2) OR 12(b)(6)                    EXHIBIT D

admits, both defendants are British corporations with their offices in the United Kingdom.  In addition, the FAC does not contain allegations sufficient to warrant the exercise of personal jurisdiction over Electronics or Systems.  Indeed, as explained in greater detail below, neither defendant has sufficient contacts with the State of California to warrant personal jurisdiction.

Even assuming personal jurisdiction exists over all Defendants, the Complaint is still defective.  There is still a fatal disconnect between the factual allegations that purport to support the first five causes of action in the FAC and the claims asserted therein.  The first three causes of action for declaratory judgment, for example, are deficient because the FAC does not allege a sufficient controversy between the parties.

The fourth cause of action meanwhile, for interference with prospective economic advantage, fails to allege any facts to make Plaintiffs' pleading sufficient.  In the *original* complaint, this cause of action contained specific allegations that were unequivocally barred by the statute of limitations.  Plaintiffs, in their FAC, have tried to cure this problem by simply removing all factual allegations and making vague and ambiguous claims about alleged statements made to "third parties."

It is difficult even to ascertain whether Plaintiff's fifth cause of action is one for defamation, for violation of California Business & Professions Code Section 17200, *et seq.*, or for violation of the Lanham Act (15 U.S.C. Section 1125(a)).  Regardless, the cause of action fails under any of these theories because the statements upon which the claim is based are uncertain and because Plaintiffs nowhere allege any facts that would constitute defamation or any facts that establish the likelihood of confusion required in a Lanham Act claim.

/ / /

/ / /

BRI03-01:154114_1:6-13-05                          - 3 -

NOTICE OF MOTION AND MOTION OF DEFENDANTS TO DISMISS PLAINTIFFS'
COMPLAINT UNDER FRCP 12(b)(2) OR 12(b)(6)          EXHIBIT D

1    With respect to the sixth claim under 35 U.S.C. § 146, it fails for a number of

2  reasons.  As an initial matter, Plaintiffs failed altogether to explain this claim was added

3  without seeking leave of Court.  Moreover, the venue is improper.  While Section 146

4  allows an appeal to a District Court, the proper venue – when an adverse party resides

5  in "a foreign country," as Defendants[1] do here –is the District Court in the District of

6  Columbia.   Accordingly, Defendants request that this cause of action be dismissed

7  pursuant to FRCP 12(b)(3) or transferred to the correct district pursuant to 28 U.S.C. §

8  1406(a)).

9

10    ## II.    MEMORANDUM OF POINTS AND AUTHORITIES

11  **A.    Exercise Of Personal Jurisdiction Over Electronics And Systems Would**

12  **Offend Due Process.**

13    As Plaintiffs' FAC acknowledges, Electronics and Systems are British

14  Corporations with their offices located in Farnborough, Hampshire, United Kingdom.

15  *[FAC, ¶ 3]*.  Plaintiffs further acknowledge that Defendants did not enter into any

16  contract or business relationship with Plaintiffs in California or to be performed in

17  California.  Plaintiffs actually allege the opposite: Plaintiffs seek a declaration from this

18  Court that "*no contract exists* between Plaintiffs and Defendants." *[FAC, ¶ 20]*.

19

20    Plaintiff's FAC only makes three allegations in an effort to establish personal

21  jurisdiction:  **First**, Plaintiffs' allege that on "two occasions in **2001**," Defendants sold

22  resized LCDs to a company (SDI) that is in no way related to the present case.  *[FAC, ¶*

23  *16]*.  **Second**, Plaintiffs allege that Defendants met with employees for the Society for

24  Information Displays ("SID") at the Queen Mary in **2000**.  *[FAC, ¶ 17]*.  And, since

25

26

27  [1] While Plaintiffs generically refer to "Defendants" throughout, the FAC makes clear that the only proper defendant for the sixth cause of action is Systems.  *[FAC, ¶ 45]*.  Accordingly, the motion to have this cause of action dismissed and/or transferred is brought by Systems.

28

.L, JENSEN &
FERRELL
OFESSIONAL
RPORATION

BRJ03-01:154114_1:6-13-05                      - 4 -

2002, Defendants[2] have shipped products into California related to U.S. and British military engagements, and have made sales and offers for sale of products in California. *[FAC, ¶ 18]*.    Again, these shipped products have nothing to do with the present dispute.

Meanwhile, Defendants are not, and never have been, registered to do business in California.    Declaration of David Parkes ("Parkes Decl."), ¶ 2.    Defendants have not commenced or entered into any form of appearance in any lawsuit in California during the period of January 30, 2002 to the present.    Parkes Decl., ¶ 3.    In addition, Defendants do not (1) maintain a place of business in California; (2) pay taxes in California; (3) have an agent for service of process in California; (4) own or lease any real or personal property situated in California; (5) maintain a bank account in California; (6) maintain any agent, distributor or sales representative in California to conduct or obtain business in California; or (7) manufacture any products, materials, components, equipment or machinery in California.    Parkes Decl., ¶ 4.

### 1.    There Is No Basis For Personal Jurisdiction Over Defendants.

Due process requires an adequate basis for jurisdiction over the party sought to be bound by the Court's judgment or decree.    The bases for exercise of personal jurisdiction are:  (1) service within the state; (2) domicile; (3) consent; or (4) minimum contacts.  *See Pennoyer v. Neff*, 95 U.S. 714, 722 (1877); *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). In the present case, none of the bases exist, and Plaintiffs' complaint should be dismissed.

---

[2] This assertion can only be with respect to Electronics because this information was disclosed in discovery provided by Electronics.  However, Systems was not an original defendant and Plaintiffs did not propound any discovery with respect to Systems.  And, as articulated in Mr. Parkes' declaration, Systems does not have sufficient contacts to warrant personal jurisdiction in California.

NOTICE OF MOTION AND MOTION OF DEFENDANTS TO DISMISS PLAINTIFFS' COMPLAINT UNDER FRCP 12(b)(2) OR 12(b)(6)    EXHIBIT D

L, JENSEN &
ERRELL
OFESSIONAL
IPORATION

1        a.    *Personal Jurisdiction Cannot Be Established Through Service,*
2              *Domicile or Consent.*

3        A defendant served when voluntarily present within the forum state becomes

4   subject to personal jurisdiction "without regard to whether the defendant was only

5   briefly in the State or whether the cause of action was related to his activities there."

6   (*Burnham v. Superior Court*, 495 U.S. 604, 629 (1990)).  In the present case, however,

7   Defendants were not served in California in the case at bar.  To the contrary, Plaintiffs'

8   served Defendants' Secretary in London, England, on May 17, 2004.[3]

9

10       Defendants are not domiciled in California either.    As already articulated,

11  Defendants have no presence in California.

12

13       Finally, Defendants did not consent to personal jurisdiction in the present case.

14  Defendants have not voluntarily appeared in the action.  *See Trans World Airlines, Inc.*

15  *v. Mattox*, 897 F. 2d 773, 786 (5th Cir. 1990).  The parties do not have a contract with a

16  forum selection clause designating California as the appropriate forum.   *See e.g.,*

17  *National Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316 (1964).  Finally, while there

18  is a split of authority as to whether designating an agent for service of process

19  constitutes consent to jurisdiction, Defendants have never designated a local agent for

20  service of process in California.  *See e.g., Knowlton v. Allied Van Lines, Inc.*, 900 F. 2d

21  1196, 1199 (8th Cir. 1990) (upholding personal jurisdiction based on designation of

22  agent); *Leonard v. USA Petroleum Corp.*, 829 F. Supp. 882, 888-891 (S.D. Tx. 1993)

23  (rejecting personal jurisdiction based on designation of agent).

24
_____
25  [3] Systems was not formally served.  Given that Plaintiffs filed the original Complaint on August 19, 2003 and were unable
    to formally serve the original defendants until May 17, 2004, counsel for Defendants (as a courtesy to Plaintiffs' counsel
26  and at the request of Plaintiffs' counsel) agreed to waive formal service requirements and accept the FAC on all
    Defendants' behalf.  Axiomatically, accepting the FAC on Systems' behalf so Plaintiffs could avoid the time and expense
27  of formal service in the UK is insufficient to establish personal jurisdiction.  *See e.g.,* FRCP 4(d)(1) ("A defendant who
    waives service of summons does not thereby waive any objection to the venue or to the jurisdiction of the court over the
28  person of the defendant.").

        NOTICE OF MOTION AND MOTION OF DEFENDANTS TO DISMISS PLAINTIFFS'
        COMPLAINT UNDER FRCP 12(b)(2) OR 12(b)(6)            **EXHIBIT D**

.L, JENSEN &
FERRELL
OFESSIONAL
RPORATION

1            b.    *Personal Jurisdiction Cannot Be Established Through the*

2            *"Minimum Contacts" Doctrine.*

3            Absent one of the traditional bases for jurisdiction above (presence, domicile, or

4    consent), due process requires that the defendant have "certain minimum contacts with

5    [the forum state] such that the maintenance of the suit does not offend traditional

6    notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326

7    U.S. 310, 316 (1945).   The purpose of the minimum contacts doctrine is to (1) protect

8    the defendant against the burdens of litigating at a distant or inconvenient forum; and

9    (2) ensure that states do not reach out beyond the limits of their sovereignty imposed by

10   their status in a federal system.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S.

11   286, 291 (1980).   When challenged, the plaintiff bears the burden of proving that the

12   nonresident's contacts are sufficient to establish *general* personal jurisdiction or *limited*

13   personal jurisdiction.

14

15           If a defendant's activities are "substantial, continuous and systematic," a federal

16   court can exercise jurisdiction to any cause of action – even if unrelated to the

17   defendant's activities in the state.  *Perkins v. Benguet Consolidated Mining Co.*, 342

18   U.S. 437, 445 (1952).   Because of the higher level of "contacts" required for this

19   "general" jurisdiction, it is usually limited to large companies doing a *large amount of*

20   *business locally on a regular basis.  See Amoco Egypt Oil Co. v. Leonis Navigation Co.,*

21   *Inc.*, 1 F. 3d 848, 851, fn. 3 (9th Cir. 1993) (noting that the Ninth Circuit has "regularly .

22   . . declined to find general jurisdiction even where the contacts were quite extensive").

23   Plaintiffs' complaint does not allege any regular activity by Defendants.   To the

24   contrary, Plaintiffs' FAC only points to (1) two sales to an unrelated company in 2001,

25   (2) a "conference" at the Queen Mary with employees of SDI, and (3) the delivery of

26   products into California related to U.S. and British military engagements.   The

27   foregoing clearly does not establish general jurisdiction.

28   / / /

L, JENSEN &
ERRELL
OFESSIONAL
IPORATION

NOTICE OF MOTION AND MOTION OF DEFENDANTS TO DISMISS PLAINTIFFS'
COMPLAINT UNDER FRCP 12(b)(2) OR 12(b)(6)              EXHIBIT D

1    When general jurisdiction is unavailable, a plaintiff is left to argue that the Court

2    should exercise "limited" or "special" jurisdiction, which may provide jurisdiction on

3    claims related to a defendant's activities or contacts in the forum state.  Such limited

4    jurisdiction requires a showing that:  (1) the out-of-state defendant purposefully directed

5    its activities towards residents of the forum state or otherwise established contacts with

6    the forum state; (2) the plaintiff's cause of action arises out of or results from the

7    defendant's forum-related contacts; and (3) the forum's exercise of personal jurisdiction

8    in the particular case must be reasonable – i.e., comports with "fair play and substantial

9    justice."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477-478 (1985).

10

11    Plaintiffs' complaint fails to make any allegations that any of Plaintiffs' causes of

12    action arise out of any California-related conduct.  To illustrate, Plaintiffs allege that

13    Defendants' attorneys sent Plaintiffs' attorneys correspondence that stated they were

14    contemplating  filing  a  lawsuit  alleging  breach  of  confidentiality  and  for

15    misappropriation of trade secrets.  *[FAC 7]*  While *commencing* an action in California

16    by filing a complaint would have been sufficient to warrant jurisdiction over Defendants

17    (*Adam v. Saenger*, 303 U.S. 59, 67-68 (1938)), Defendants not only did *not* commence

18    any action in California, but they did not even *threaten* to commence an action in

19    California.  To the contrary, the correspondence and contemplated complaint articulated

20    that the lawsuit was to be filed in *Virginia*.  Declaration of David R. Sugden ("Sugden

21    Decl."), ¶ 4.

22

23    Moreover, Plaintiffs' allegations that Defendants made two sales of LCDs in

24    2001, attended a conference in 2000, and sold other products to California related to

25    military engagements are unrelated to Plaintiffs' claims.  Accordingly, there is no

26    "limited" or "special" jurisdiction.

27    / / /

28    / / /

L. JENSEN &
ERRELL
OFESSIONAL
PORATION

BRI03-01:154114_1:6-13-05                    - 8 -

NOTICE OF MOTION AND MOTION OF DEFENDANTS TO DISMISS PLAINTIFFS'
COMPLAINT UNDER FRCP 12(b)(2) OR 12(b)(6)                    EXHIBIT D

1    Neither Plaintiffs' allegations nor Defendants' conduct provides a basis to
2    exercise personal jurisdiction over Defendants. Therefore, there is no need to analyze
3    whether the exercise of personal jurisdiction would offend the Constitutional
4    requirement of "traditional notions of fair play and substantial justice." Even if the
5    Court were to analyze the fairness factors, which include the burden on defendant, the
6    interests of the forum state, and the existence of an alternate forum, exercising
7    jurisdiction over Defendants would be improper. *See e.g., Core-Vent Corp. v. Nobel*
8    *Industries AB*, 11 F. 3d 1482, 1490 (9th Cir. 1993). (Requiring defendants to submit to
9    California jurisdiction would impose substantial and unfair burdens).

10

11    Finally, it must be noted that federal courts reject any attempt to use jurisdictional
12    contacts of a corporation's parent or subsidiary to establish jurisdiction. *See e.g., Keeton*
13    *v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984); *American Tel. & Tel. Co. v.*
14    *Compagnie Bruxelles Lambert*, 94 F. 3d 586, 591 (9th Cir. 1996); *Dean v. Motel 6*
15    *Operating L.P.*, 134 F. 3d 1269, 1273 (6th Cir. 1998) ("[A] company does not
16    purposefully avail itself merely by owning all or some of a corporation subject to
17    jurisdiction"). So long as the parent and subsidiary are separate and distinct corporate
18    entities, the presence of one in the forum state may not be attributed to the other for
19    jurisdictional purposes. *Hargrave v. Fibreboard Corp.*, 710 F. 2d 1154, 1159 (5th Cir.
20    1983). Therefore, any attempts by Plaintiffs to avoid dismissal by relying on the
21    conduct of Defendants' parent or subsidiaries must be disregarded.

22

23    Defendants have no presence in California. Plaintiffs' FAC does not make
24    allegations sufficient to establish personal jurisdiction over Defendants. It alleges no
25    contract with Plaintiffs. It alleges no act by Defendants that would subject them to
26    California's jurisdiction. For the reasons stated above, Plaintiffs' motion to dismiss for
27    want of personal jurisdiction with respect to Electronics and Systems should be granted.
28    / / /

L, JENSEN &
ERRELL
OFFESSIONAL
RPORATION

NOTICE OF MOTION AND MOTION OF DEFENDANTS TO DISMISS PLAINTIFFS'
COMPLAINT UNDER FRCP 12(b)(2) OR 12(b)(6)

EXHIBIT D

**B.    Even Assuming Personal Jurisdiction Exists Over All Defendants, Plaintiffs'
FAC Fails To State A Claim Against Defendants.**

**1.    Plaintiff's Declaratory Relief Causes Of Action Are Fatally Flawed.**

Under their first three claims, Plaintiffs seek a declaratory judgment from the Court that they:    (1) have not breached an unspecified contract, (2) have not misappropriated unspecified trade secrets; and (3) have not committed unspecified acts of unfair competition.    *[FAC ¶¶ 19 – 24]*.    Indisputably, no factual allegations supporting Plaintiffs' claims are included under the claims themselves - - such allegations are presumably included under the "Common Allegations" section of the Complaint and incorporated by reference under each of the three declaratory judgment claims.

In the Common Allegations section of the Complaint, however, Plaintiffs make no mention of a claim by Defendants as to the existence of a contract between Plaintiffs and Defendants.    In fact, the "controversy" allegation in support of each of Plaintiffs' declaratory judgment counts consists of nothing more than an allegation that counsel for Defendants threatened to file a lawsuit in 2003.    *[FAC ¶¶ 7-9]*.    Of course, it is now June 2005 and Defendants have filed no such lawsuit.    Still, Plaintiff makes the conclusory allegation that "an actual controversy exists between Plaintiffs and Defendants." *[FAC ¶¶ 19, 21, 23]*.

United States Code Section 2201(a), on which Plaintiffs purport to base their declaratory judgment claims, requires the existence of an "actual controversy" between the plaintiff and the defendant.    28 U.S.C. § 2201(a).    "The 'actual controversy' requirement under 28 U.S.C. § 2201(a) is the same as the 'case or controversy' requirement under Article III of the Constitution. In general, there must be a 'substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality,' which has 'crystallized to the point that there is a specific need for a declaratory

NOTICE OF MOTION AND MOTION OF DEFENDANTS TO DISMISS PLAINTIFFS'
COMPLAINT UNDER FRCP 12(b)(2) OR 12(b)(6)                **EXHIBIT D**

1  judgment.'" *Xerox Corp. v. Apple Computer, Inc.*, 734 F. Supp. 1542, 1546 (N.D. Cal.

2  1990) (citations omitted).  While the Court must accept as true the material allegations

3  in the complaint, it need not accept conclusory allegations, nor unreasonable inferences

4  or unwarranted deductions of fact. *Western Mining Council v. Watt,* 643 F.2d 618, 624

5  (9th Cir.1981), *cert. denied,* 454 U.S. 1031, (1981).

6

7      Plaintiffs' allegations fall far short of establishing a "substantial controversy" of

8  "sufficient immediacy and reality" which has "crystallized to the point that there is a

9  specific need for declaratory judgment."  *See Xerox Corp.*, at 1542.  Thus, Plaintiffs'

10  first through third causes of action for declaratory judgment must fail.

11

12      **2.    Plaintiff's  Cause  Of  Action  For  Intentional  Interference  With**

13          **Prospective Economic Advantage Fails.**

14      In Plaintiffs' *original* complaint, the fourth cause of action was supported with

15  the allegation that Plaintiffs had "prospective business relationships with third parties,

16  including Thomas Electronics."  *[Complaint, ¶ 26]*    Such relationships, they allege,

17  were disrupted by certain unspecified statements made by unspecified persons on behalf

18  of Defendants.  In Defendants' initial motion to dismiss, Defendants pointed out that

19  Plaintiffs' interference claim was:  (1) barred by the applicable two-year statute of

20  limitations period;  and (2) untenable because Plaintiffs had failed to allege an

21  independent wrong in support of their interference claim.

22

23      Plaintiffs agreed with Defendants' position and removed all references to Thomas

24  Electronics in its FAC.  Instead of dismissing the cause of action entirely, however,

25  Plaintiffs have tried to avoid the statute of limitations problems by *omitting* any

26  reference to dates and by replacing "Thomas Electronics" with a generic reference to

27  "third parties" and "White Industries."  *[FAC, ¶ 25]*.  These new facts do not rescue this

28  cause of action from dismissal.  To the contrary, this cause of action fails because

L. JENSEN &
'ERRELL
.PORATION

BRI03-01:154114_1:6-13-05                          - 11 -
NOTICE OF MOTION AND MOTION OF DEFENDANTS TO DISMISS PLAINTIFFS'
COMPLAINT UNDER FRCP 12(b)(2) OR 12(b)(6)          EXHIBIT D

1  Plaintiffs' interference claim still fails to assert an independent wrong, and because

2  Plaintiff cannot avoid the statute of limitations by making allegations that are

3  impermissibly vague and devoid of substance.

4

5           a.    *Plaintiffs Fail To Allege An Independent Wrong.*

6     To illustrate, in order to assert an interference with prospective economic

7  advantage claim, whether intentional or negligent,[4] a plaintiff has the burden of

8  pleading and proving that the defendant's interference was wrongful "by some measure

9  beyond the fact of the interference itself." *Della Penna v. Toyota Motor Sales, U.S.A.,*

10 *Inc.*, 11 Cal. 4th 376, 392-393 (1995); *National Medical Transportation Network v.*

11 *Deloitte & Touche*, 62 Cal. App. 4th 412, 439-440 (1998) (the independently wrongful

12 requirement applies to negligent interference claims).   And, to state a claim for

13 *negligent* interference with economic advantage, a plaintiff must also allege defendant

14 owed plaintiff a duty of care in addition to the elements required to state a cause of

15 action for intentional interference with economic advantage. *J'Aire Corp. v. Gregory*,

16 24 Cal.3d 799, 803-04 (1979); *Accuimage Diagnostics Corp v. Terarecon, Inc.*, 260

17 F.Supp.2d 941, 957 (N.D. Cal. 2003).[5]

18

19     Under their interference claim, Plaintiffs have not sufficiently alleged an

20 independent wrong by Defendants.   While the independent wrong *appears* to be the

21 allegation that Defendants have somehow defamed Plaintiffs, the FAC does not

22 sufficiently allege defamation.   Under both federal and state law, a defamation claim

23 has to be *specifically* pleaded: "[W]here a plaintiff seeks damages for conduct which is

---

[4] In the present case, it is unclear whether Plaintiff's cause of action is for *intentional* or *negligent* interference with prospective economic advantage.   The cause of action is simply described as "Interference With Prospective Economic Advantage," and in Paragraph 29 of the FAC, Plaintiffs alleged that the "aforementioned statements were made *negligently and with the intent* to disrupt the relationship between Plaintiffs and third parties . . . ." (Emphasis added).  Accordingly, this Motion addresses both causes of action (i.e., negligent and intentional interference with prospective economic advantage).

[5] Nowhere do Plaintiffs allege, nor could they allege, that Defendants owed a duty of care to Plaintiffs.   Accordingly, Plaintiffs cannot sustain a cause of action for negligent interference with prospective economic advantage.

LL, JENSEN &
FERRELL
IOFESSIONAL
RPORATION

NOTICE OF MOTION AND MOTION OF DEFENDANTS TO DISMISS PLAINTIFFS'
COMPLAINT UNDER FRCP 12(b)(2) OR 12(b)(6)        **EXHIBIT D**

1   prima facie protected by the First Amendment, the danger that the mere pendency of the

2   action will chill the exercise of First Amendment rights requires *more specific*

3   *allegations* than are otherwise required." *Flowers v. Carville,* 310 F.3d 1118, 1130 (9th

4   Cir.2002) (Emphasis added).    Similarly under state law, the words constituting an

5   alleged libel must be specifically identified, if not pleaded verbatim. *Kahn v. Bower*,

6   232 Cal. App. 3d 1599, 1612 (1991).

7

8       In the present case, Plaintiffs merely allege that Defendants "made false

9   statements to *third parties*." *[FAC, ¶ 27]*.    Merely alleging that at some time,

10  somewhere, Defendants made false and defamatory statements to "third parties" falls

11  fatally short of the requisite pleading requirement.

12

13      Plaintiffs may argue that they have met the pleading requirement because it

14  mentioned a "prospective business relationship[] with . . . White Industries." *[FAC, ¶*

15  *25]*.    This does not cure the FAC's defects because Plaintiffs simply conclude that,

16  sometime, somewhere Defendants made a statement to a "representative of White

17  Industries, disparaging Plaintiffs and Plaintiffs' activities related to resizing LCDs . . ."

18  *[FAC, ¶ 12]*.    Nowhere do Plaintiffs describe the substance of what statements were

19  said about Plaintiffs (beyond the conclusion that such statements were "disparaging")

20  and whether such statements were even *false*.

21

22      The only allegedly "false statements" that are described with any particularity in

23  the FAC are not defamatory as a matter of fact or law.    To illustrate, Plaintiff alleges

24  that "Defendants . . . have made false statements to third parties that Defendants have

25  worldwide patents directed to resizing LCDs." *[FAC, ¶ 11]*.    Even if this allegation

26  were true, it cannot constitute defamation because the statement is in no way directed

27  towards Plaintiff.    It is hornbook law that, for a statement to be defamatory, it must be a

28  false statement *of and concerning the plaintiff*.    If the foregoing statement is indeed

., JENSEN &
ERRELL
OFESSIONAL
PORATION

BRI03-01:154114_1:6-13-05                        - 13 -

EXHIBIT D

1  false, the statement is *about Defendants – not plaintiff. See e.g., Carlisle v. Fawcett*

2  *Publications, Inc.*, 201 Cal. App. 2d 733, 741 (1960) (the plaintiff must sustain the

3  *pleading and proof* that the defamatory statement attached to the plaintiff).

4

5  To make matters worse for Plaintiffs, the USPTO recently ruled against them in

6  the patent interference proceeding.  Specifically, the USPTO entered "judgment . . .

7  against junior party Tannas." *See* Judgment attached to Defendants' Request for

8  Judicial Notice.  Specifically, the USPTO concluded that Tannas' claims on his patents

9  identified in the FAC (patents 6,204,906 and 6,380,999) "are *unpatentable*."  Id.

10  (emphasis added).  As a result, Plaintiffs can no longer allege (1) that Mr. Tannas has

11  obtained patents that are directed to resizing LCDs, and (2) that Defendants' statements

12  that they have world wide patents are false and made "with no reasonable basis for

13  believing same." *[FAC, ¶ 12]*.  To the extent the independent wrong to support

14  Plaintiffs' interference cause of action is defamation, Plaintiffs' have fallen fatally short

15  and the claim should be dismissed.

16

17      **3.    Plaintiffs' Fifth Cause Of Action For "Unfair Competition/Injurious**

18            **Falsehood" Fails To State A Claim.**

19      The very title of Plaintiffs' cause of action for "Unfair Competition/Injurious

20  Falsehood," foreshadows the uncertainty that lies ahead.  In their fifth purported claim,

21  Plaintiffs have tried to include every conceivable claim:   (1) there is a hint at a

22  defamation claim *[FAC, ¶ 32]*; (2) a state law claim for unfair competition under

23  Business and Professions Code Section 17200, et seq. *[FAC, ¶ 38]*; and (3) a federal

24  law claim under the Lanham Act 15 U.S.C. §1125(a) *[FAC, ¶ 37]*.  All of these possible

25  claims are based upon Plaintiffs' allegation that unspecified persons on behalf of

26  Defendants, at unspecified times, have made statements to unspecified persons, in

27  which they have (1) accused Plaintiffs of committing fraud against Defendants, and (2)

28  have stated that they have worldwide patents directed to resizing LCDs. *[FAC, ¶¶ 31,*

.L, JENSEN &
FERRELL
ROFESSIONAL
RPORATION

BRI03-01:154114_1:6-13-05                     - 14 -

NOTICE OF MOTION AND MOTION OF DEFENDANTS TO DISMISS PLAINTIFFS'
COMPLAINT UNDER FRCP 12(b)(2) OR 12(b)(6)

EXHIBIT D

32] None of the possible claims that Plaintiffs may be trying to assert under their final claim is legally tenable as against Defendants.

### a.    Plaintiffs Have Not Properly Pleaded Defamation.

To the extent that Plaintiffs' last claim is one for defamation, it is patently deficient.  As already explained, a defamation claim has to be specifically pleaded.  There mere *conclusion* that Defendants made "false and misleading statements" to "third parties" falls fatally short of the pleading requirement.  To the extent that the last claim is one for defamation, it must be dismissed.

### b.    Plaintiffs Have Not Properly Stated A State Law Claim for Unfair Competition.

Plaintiffs' Section 17200 cause of action is deficient in that Plaintiffs have not asserted any "unlawful" or "unfair" conduct that meets the statutory requirement.  In general, Section 17200, et seq., prohibits unfair competition, including unfair, unlawful, or fraudulent business acts.  Calif. Bus. & Prof. Code §§ 17200, et seq.  To establish an "unlawful" practice, a plaintiff must point to a specific provision of law that has been violated.  With respect to showing whether a business practice is "unfair," the Supreme Court established the following test in *Cel-Tech Communications*:

> When a plaintiff who claims to have suffered injury from a direct competitor's 'unfair' act or practice invokes [Business and Professions Code] section 17200, the word 'unfair' in that section means *conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.*

*Id.* at 187 (Emphasis added).

/ / /

L, JENSEN &
FERRELL
OFESSIONAL
RPORATION

BRI03-01:154114_1:6-13-05                    - 15 -

NOTICE OF MOTION AND MOTION OF DEFENDANTS TO DISMISS PLAINTIFFS'
COMPLAINT UNDER FRCP 12(b)(2) OR 12(b)(6)                    EXHIBIT D

1    In setting this standard for unfairness, the California Supreme Court was driven

2  by the concern to "protect competition, not competitors." *Id.* at 186.  Thus, rather than

3  focusing on protecting an individual business, the laws are aimed at making sure that

4  competition in general is protected. *Id.*

5

6    Needless to say, Plaintiffs have done nothing to satisfy the stringent standards of

7  Section 17200.  In fact, they have not alleged with any degree of specificity the conduct

8  that they contend constitutes "unfair" competition.

9

10        c.    *Plaintiffs Have Not Stated A Claim Under the Lanham Act.*

11    Among Plaintiffs' conclusory allegations under their fifth claim are that "[t]he

12  conduct as alleged herein constitutes unfair competition in violation of 15 U.S.C. §

13  1125(a)." *[FAC, ¶ 37]*   Section 1125(a) in pertinent part provides:

14      (1) Any person who, on or in connection with any goods or services, or any

15      container for goods, uses in commerce any word, term, name, symbol, or

16      device, or any combination thereof, or any false designation of origin, false

17      or misleading description of fact, or false or misleading representation of

18      fact, which -

19          (A) is likely to cause confusion, or to cause mistake, or to deceive as

20          to the affiliation, connection, or association of such person with

21          another person, or as to the origin, sponsorship, or approval of his or

22          her goods, services, or commercial activities by another person, or

23          (B) in commercial advertising or promotion . . ., [6] shall be liable in a

24          civil action by any person who believes that he or she is or is likely to

25          be damaged by such act.

26

27  ────────────────

   [6]  No amount of digging in the Complaint yields an allegation of "commercial advertising or
28  promotion" required in support of a claim under 15 U.S.C. 1125(a)(1)(B).

NOTICE OF MOTION AND MOTION OF DEFENDANTS TO DISMISS PLAINTIFFS'
COMPLAINT UNDER FRCP 12(b)(2) OR 12(b)(6)          EXHIBIT D

1       Plaintiffs have not alleged any facts that would even remotely tend to show a

2  likelihood of confusion by any member of the public as to anything.  *See e.g., Xerox*

3  *Corp. v. Apple Computer, Inc.*, 743 F. Supp. 1542 (N.D. Cal. 1990) ("The test of

4  liability is the likelihood of confusion: Whether we call the violation [trademark]

5  infringement, unfair competition or false designation of origin, the ultimate test is

6  identical--is there a 'likelihood of confusion'?").

7

8      **4.**     **Plaintiffs' Sixth Claim Under 35 U.S.C. § 146 Fails.**

9       As the Court noted in its May 25 Order, Plaintiffs' FAC goes beyond the scope of

10  the Court's December 1, 2004 Order, which only allowed Plaintiffs to allege new

11  grounds for Defendants' minimum contacts.  Indeed, in violation of the Court's Order,

12  Plaintiffs unilaterally added a new cause of action under 35 U.S.C. § 146 to appeal

13  virtually every adverse finding made against Plaintiffs by the USPTO in Virginia on

14  May 9, 2005.  In addition to the fact that the cause of action should be dismissed for

15  Plaintiffs' failure to seek leave of Court before adding this cause of action, the cause of

16  action should be dismissed because it was filed in the improper venue as a matter of

17  law.

18      *a.*    *Plaintiffs' Section 146 Cause Of Action Should Be Dismissed Because*

19            *Plaintiffs Unilaterally Added The Cause Of Action And Defendant Without*

20            *Leave Of Court.*

21       Plaintiff unilaterally added (1) a new defendant, and (2) a new cause of action.

22  The new defendant, Systems, is identified as "the real party in interest in the

23  Interference" that Plaintiff seeks to appeal in its 35 U.S.C. § 146 cause of action.

24  Because Plaintiff did not seek judicial permission before making either addition to its

25  complaint, both Systems and the Section 146 cause of action are subject to dismissal.

26

27       After the time to amend a complaint as a matter of right, which is the case here, a

28  party wishing to amend a pleading must do so by stipulation or by filing a motion to

L., JENSEN &
FERRELL
PROFESSIONAL
RPORATION

BRI03-01:154114_1:6-13-05                    - 17 -

NOTICE OF MOTION AND MOTION OF DEFENDANTS TO DISMISS PLAINTIFFS'
COMPLAINT UNDER FRCP 12(b)(2) OR 12(b)(6)      **EXHIBIT D**

1  amend.   The motion must set forth the ground of the amendment and the relief

2  requested.  FRCP 7(b).  *Posner v. Essex Ins. Co., Ltd.*, 178 F. 3d 1209, 1222 (11th Cir.

3  1999).   Typically, the grounds for the motion are discovery of additional information,

4  correction or a misnomer or other error, or to cure a defect in the original pleading.

5  SCHWARZER, TASHIMA & WAGSTAFFE, FED. CIV. PROC. BEFORE TRIAL ¶ 8:409 at 8-128

6  (2004).   In addition, the Central District of California's Local Rules provide that the

7  original and one copy of the proposed amended pleading must be lodged with the court

8  as a separate document along with the notice of motion or with any stipulation to amend

9  the pleading.  CD CA Rule 15-1.

10

11      Plaintiff disregarded all of the foregoing authority and simply filed its FAC with

12  new facts, a new party and a new cause of action.   Because Plaintiff disregarded the

13  Court's Order, the District's procedural mandate, and failed to provide any justification

14  for why such relief should be granted, Systems and Plaintiffs' sixth cause of action

15  under 35 U.S.C. § 146 should be dismissed.  *See e.g., Swanson v. United States Forest*

16  *Service*, 87 F. 3d 339, 343 (9th Cir. 1996) (Even when plaintiff follows the proper

17  procedure, the trial court has the "sound discretion" to deny a requested leave to

18  amend).

19

20      *b.     Venue For Plaintiffs' Section 146 Action Is Proper In The United States*

21          *District Court For The District Of Columbia.*

22      Even if Plaintiff had properly requested permission to add Systems and its sixth

23  cause of action, venue for this defendant and cause of action is improper.  As already

24  articulated, personal jurisdiction does not exist for Systems.  Systems, according to

25  Plaintiffs' FAC, ". . . is the real party in interest in the Interference."  *[FAC, ¶ 45]*.

26  Even if personal jurisdiction were proper over Systems, however, venue is not

27  appropriate for Plaintiffs' Section 146 cause of action.  As Section 146 provides: "If

28  there be . . . an adverse party residing in a foreign country, the United States District

BRI03-01:154114_1:6-13-05                    - 18 -

NOTICE OF MOTION AND MOTION OF DEFENDANTS TO DISMISS PLAINTIFFS'
COMPLAINT UNDER FRCP 12(b)(2) OR 12(b)(6)          **EXHIBIT D**

1  Court for the District of Columbia *shall* have jurisdiction . . . ." *See also Conversion*

2  *Chemical Corporation v. Gottschalk*, 341 F. Supp. 754, 756 fn. 3 (D. Conn. 1972)

3  ("[S]ince the adverse party Korpium et al. is a resident of a foreign country, venue is

4  properly laid *only* in the United States District Court of the District of Columbia."); *see*

5  *also* 60 Am. Jur. 2d *Patents* § 629 (2004)("[T]he District of Columbia is the *exclusive*

6  *forum* for venue purposes where the adverse party resides in a foreign country.")

7  (Emphasis added).[7]  Since Systems is a resident of a foreign county *[FAC, ¶ 4]*, venue

8  for Plaintiffs' Section 146 cause of action belongs in the District of Columbia.

9

10      Accordingly, the cause of action should either be dismissed or transferred to that

11  District pursuant to 28 U.S.C. § 1406(a).

12

13                        **III.   CONCLUSION**

14      Defendants respectfully request that the Court grant Defendants' motion to

15  dismiss Plaintiffs' FAC for the reasons articulated herein.

16

17  Dated: June 13, 2005                    CALL, JENSEN & FERRELL
                                            A Professional Corporation
18                                          SCOTT J. FERRELL
                                            DAVID R. SUGDEN
19

20

21                                          By: _____

22                                              David R. Sugden

23                                          Attorneys for Defendants BAE Systems
                                            Avionics Limited, BAE Systems Electronics
                                            Limited, and BAE Systems, Plc
24

---

25  [7] While one court has held that venue may be proper if, pursuant to Section 1391, it would otherwise be proper (*Standard Oil Company v. Montecatini Edison*, 342 F. Supp. 125 (D. Del. 1972)), such an analysis is not necessary in the present case

26  because, in addition to there not being personal jurisdiction over Systems, venue would not be proper either because, for example: (1) Systems is not a resident in the Central District (i.e., it is not subject to personal jurisdiction (28 U.S.C. §

27  1391)); (2) the "substantial part of the events or omissions" (i.e., the ruling by the USPTO) took place in Virginia – not California; (3) there is another district in which the action – not only may – but should be brought, and (4) it would be

28  inconvenient and prejudicial for force a non-resident defendant to litigate this cause of action. *See* 28 U.S.C. § 1391 *et seq*.

L, JENSEN &
ERRELL
OFESSIONAL
RPORATION

NOTICE OF MOTION AND MOTION OF DEFENDANTS TO DISMISS PLAINTIFFS'
COMPLAINT UNDER FRCP 12(b)(2) OR 12(b)(6)                **EXHIBIT D**

1

## PROOF OF SERVICE

2

STATE OF CALIFORNIA, COUNTY OF ORANGE

3

4

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 610 Newport Center Drive, Suite 700, Newport Beach, CA 92660.

5

6

7

8

9

On June 13, 2005, I served the foregoing document described as NOTICE OF MOTION AND MOTION OF DEFENDANTS BAE SYSTEMS AVIONICS LIMITED, BAE SYSTEMS ELECTRONICS LIMITED, AND BAE SYSTEMS PLC. TO DISMISS PLAINTIFFS' COMPLAINT UNDER FRCP 12(b)(2) OR 12(b)(6), OR IN THE ALTERNATIVE FOR A MOTION TO DISMISS OR TRANSFER VENUE OF PLAINTIFFS' SIXTH CAUSE OF ACTION on the following person(s) in the manner indicated:

10

### SEE ATTACHED SERVICE LIST

11

12

13

14

[ X ]  (BY MAIL) I am familiar with the practice of Call, Jensen & Ferrell for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business. On this date, a copy of said document was placed in a sealed envelope, with postage fully prepaid, addressed as set forth herein, and such envelope was placed for collection and mailing at Call, Jensen & Ferrell, Newport Beach, California, following ordinary business practices.

15

16

17

18

19

[ ]    (BY FEDEX)  I am familiar with the practice of Call, Jensen & Ferrell for collection and processing of correspondence for delivery by overnight courier. Correspondence so collected and processed is deposited in a box or other facility regularly maintained by FedEx that same day in the ordinary course of business. On this date, a copy of said document was placed in a sealed envelope designated by FedEx with delivery fees paid or provided for, addressed as set forth herein, and such envelope was placed for delivery by FedEx at Call, Jensen & Ferrell, Newport Beach, California, following ordinary business practices.

20

21

22

23

24

25

[ ]    (BY FACSIMILE TRANSMISSION)  On this date, at the time indicated on the transmittal sheet, attached hereto, I transmitted from a facsimile transmission machine, which telephone number is (949) 717-3100, the document described above and an unsigned copy of this declaration to the person, and at the facsimile transmission telephone numbers, set forth herein. The above-described transmission was reported as complete and without error by a properly issued transmission report issued by the facsimile transmission machine upon which the said transmission was made immediately following the transmission.

26

27

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on June 13, 2005, at Newport Beach, California.

28

Amy Egan

EXHIBIT D

1

**SERVICE LIST**

2

Neal M. Cohen, Esq.                    **Attorneys for Plaintiff**
Cohen Sakaguchi & English LLP

3

2040 Main Street, 9th Floor

4

Irvine, CA  92614
Fax No.:  (949) 625-8955

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

.L, JENSEN &
FERRELL
OFESSIONAL
RPORATION

EXHIBIT D



1  SCOTT J. FERRELL, Bar No. 202091
2  DAVID R. SUGDEN, Bar No. 218465
   CALL, JENSEN & FERRELL
3  A Professional Corporation
   610 Newport Center Drive, Suite 700
4  Newport Beach, CA 92660
   sferrell@calljensen.com
5  dsugden@calljensen.com
6  (949) 717-3000 (Phone)
   (949) 717-3100 (Fax)
7
   Attorneys for Defendants BAE Systems Avionics Limited
8    and BAE Systems Electronics Limited
9

10             UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12

| | |
|---|---|
| 13  Lawrence E. Tannas, Jr., an individual dba<br>14  as Tannas Electronics; Tannas Electronic<br>    Displays, Inc., a California corporation,<br>15<br>        Plaintiffs,<br>16<br>17        vs.<br>18  BAE Systems Avionics Limited, a British<br>    corporation; BAE Systems Electronics<br>19  Limited, a British corporation,<br>20        Defendants.<br>21 | Case No.  CV-03-5889 RJK (FMOx)<br><br>**DEFENDANTS' REQUEST FOR<br>JUDICIAL NOTICE IN SUPPORT OF<br>ITS MOTION TO DISMISS**<br><br>Date:  July 11, 2005<br>Time:  10:00 a.m.<br>Place: Courtroom 1439, Roybal Building |

22                                    Complaint Filed:  August 19, 2003
23                                    Trial Date:        None Set

24        Defendants BAE Systems Avionics Limited and BAE Systems Electronics

25  Limited (collectively referred herein as "Defendants") hereby request that, pursuant to

26  Evid. Code §452 and Civ. Proc. Code § 430.30(a), the Court judicially notices the

27  authenticity of the following case:

28  / / /

L. JENSEN &
FERRELL
OFESSIONAL
RPORATION

BRI03-01:154553_1:6-13-05          - 1 -
DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ITS MOTION TO DISMISS          EXHIBIT D

1.   *Lawrence E. Tannas, Jr. v. David S. Watson*, Patent Interference Number 105,096, Judgment-Rule 127 (mailed May 9, 2005), a copy of which is attached hereto as Exhibit "A"; and

2.   *Lawrence E. Tannas, Jr. v. David S. Watson*, Patent Interference Number 105,096, Decision – Priority – Bd.R.125(a) (mailed May 9, 2005), a copy of which is attached hereto as Exhibit "B."

Dated:  June 13, 2004

CALL, JENSEN & FERRELL
A Professional Corporation
SCOTT J. FERRELL
DAVID R. SUGDEN

By:_____
     David R. Sugden

Attorneys for Defendants BAE Systems Avionics
Limited and BAE Systems Electronics Limited

LL, JENSEN &
FERRELL
ROFESSIONAL
ORPORATION

DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ITS MOTION TO DISMISS

EXHIBIT D

The opinion in support of the decision being
entered today is not binding precedent of the Board.

Filed by: Trial Section Merits Panel
     Mail Stop Interference
     P.O. Box 1450
     Alexandria, VA 22313-1450
     Tel: 571-272-9797
     Fax: 571-273-0042

Paper 215

Filed:
9 May 2005

# UNITED STATES PATENT AND TRADEMARK OFFICE

## BEFORE THE BOARD OF PATENT APPEALS AND INTERFERENCES

LAWRENCE E. TANNAS, JR.
Junior Party,
(Patents 6,204,906 and 6,380,999),

v.

DAVID S. WATSON
Senior Party,
(Application 09/529,201).

Patent Interference No. 105,096

MAILED
MAY 9 – 2005
PAT. & TM. OFFICE
BOARD OF PATENT APPEALS
AND INTERFERENCES

Before SCHAFER, LEE, and MEDLEY, Administrative Patent Judges.

MEDLEY, Administrative Patent Judge.

## JUDGMENT-RULE 127

For the reasons given in the Decision on Preliminary Motions (Paper 141) and the Priority Decision (Paper 214), judgment is herein entered against junior party Tannas.

EXHIBIT A
EXHIBIT D

Accordingly, it is

ORDERED that claims 1, 26, 29-32 and 36-43 of Tannas Patent 6,204,906 and claims 1-7 of Tannas Patent 6,380,999 are unpatentable (see Decision on Preliminary Motions (Paper 141 at 62);

FURTHER ORDERED that judgment as to the subject matter of the count is herein entered against junior party LAWRENCE E. TANNAS, JR.;

FURTHER ORDERED that junior party LAWRENCE E. TANNAS, JR. is not entitled to claims 1, 29-32 and 36-38 of Tannas Patent 6,204,906 and claims 1 and 2 of Tannas Patent 6,380,999 which correspond to the Count 1, and claims 26 and 39-43 of Tannas Patent 6,204,906 and claims 3-7 of Tannas Patent 6,380,999 which correspond to Count 2 (see Redeclaration Paper 142);

FURTHER ORDERED that if there is a settlement agreement, the parties should note the requirements of 35 U.S.C. § 135(c) and 37 CFR § 41.205; and

FURTHER ORDERED that a copy of this judgment be filed in the respective involved applications of the parties.

EXHIBIT D

cc (via federal express):


Attorney for Tannas (real party in interest - Tannas):

William A. English, Esq. (lead counsel)
COHEN, SAKAGUCHI & ENGLISH, LLP
2040 Main Street, 9th Floor
Irvine, CA   92614

Tel: 562-665-3953
Fax: 949-625-8955


Attorney for Watson (real party in interest - Bae Systems Avionics Limited):

Leonard C. Mitchard, Esq. (lead counsel)
NIXON & VANDERHYE, P.C.
8th Floor
1100 North Glebe Road
Arlington, VA 22201-4714

Tel: 703-816-4005 (lead)
Fax: 703-816-4100

EXHIBIT D

The opinion in support of the decision being
entered today is not binding precedent of the Board.

Paper 214

Filed by: Trial Section Merits Panel[1]
   Mail Stop Interference
   P.O. Box 1450
   Alexandria, VA  22313-1450
   Tel: 571-272-9797
   Fax: 571-273-0042

Filed
9 May 2005

# UNITED STATES PATENT AND TRADEMARK OFFICE

## BEFORE THE BOARD OF PATENT APPEALS AND INTERFERENCES

LAWRENCE E. TANNAS, JR.
Junior Party,
(Patents 6,204,906 and 6,380,999),

v.

DAVID S. WATSON
Senior Party,
(Application 09/529,201).



Patent Interference No. 105,096

Before SCHAFER, LEE, and MEDLEY, <u>Administrative Patent Judges</u>.

MEDLEY, <u>Administrative Patent Judge</u>.

### <u>Decision - Priority - Bd. R. 125(a)</u>

---

[1]    As part of Board efforts under the Government Paperwork Elimination Act, signatures on papers originating from the Board are being phased out in favor of a completely electronic record. Consequently, subsequent papers in this case originating at the Board will not have signatures. The signature requirements for the parties have not changed. See, e.g., 37 C.F.R. § 10.18

EXHIBIT B
EXHIBIT D

## A. Introduction

The interference is before the board for a decision of priority. Tannas requested oral argument. The panel has determined that Oral argument is not necessary in this case.

For the reasons that follow, Tannas has failed to prove priority by a preponderance of the evidence. Watson preliminary motion 9 for inequitable conduct is dismissed. Tannas motions to suppress 8-13 are dismissed.

## B. Findings of fact[2]

1. Tannas is involved on the basis of Patent 6,204,906 ('906), granted 20 March 2001, based on application 09/274,427, filed 22 March 1999, and Patent 6,380,999 ('999), granted 30 April 2002, based on application 09/812,370, filed 16 March 2001.

2. Tannas has been accorded benefit for the purpose of priority of 6,204,906 ('906), granted 20 March 2001, based on application 09/274,427, filed 22 March 1999 for its involved '999 patent.

3. Watson is involved on the basis of application 09/529,201, filed 18 May 2000.

4. Watson has been accorded benefit for the purpose of priority of PCT/GB98/02586, filed 27 August 1998, GB 9721804.4, filed 15 October 1997, and GB 9814577.4, filed 7 July 1998.

5. Tannas real party in interest is Lawrence E. Tannas, Jr. (Paper 17).

6. Watson real party in interest is Bae Systems Avionics Limited (Paper 3).

---

[2] The following findings of fact as well as those contained elsewhere in this opinion are supported by a preponderance of the evidence.

- 2 -

EXHIBIT D

7. Count 1 is as follows:

Claim 96 of Application 09/529,201

or

Claim 1 of Patent No. 6,204,906

or

Claim 53 of Application 09/529,201

or

Claim 1 of Patent No. 6,380,999

8. Tannas '906 claim 1 is identical to Watson claim 53 and is as follows:

A method of changing the physical shape of an electronic display, wherein the display comprises a front plate, a back plate, and a perimeter seal spacing apart the plates, and wherein image-generating medium is sealed in an area between the plates and within the borders of the perimeter seal, the method comprising the steps of:

cutting the display along desired dimensions resulting in a target display portion and an excess display portion, thereby breaking the perimeter seal of the display; and

applying a first seal between the plates along an exposed edge of the target display portion, the first seal creating a barrier to prevent the image-generating medium from escaping out of the area between the plates, the first seal comprising an adhesive having mechanical properties for preserving cell spacing between the front and back plates.

9. Tannas '999 claim 1 is identical to Watson claim 96 and is as follows:

A method for changing the physical shape of an electronic display, wherein the display comprises a front plate, a back plate, and a perimeter seal spacing apart the plates, and wherein image-generating medium is sealed in an area between the plates and within the borders of the perimeter seal, the method comprising the steps of:

cutting the display along desired dimensions resulting in a target display portion and an excess display portion, thereby breaking the perimeter seal of the display; and

EXHIBIT D

applying a first seal along an exposed edge of the target display portion, the first seal creating a barrier to prevent the image-generating medium from escaping out of the area between the plates.

10. Count 2 is as follows:

Claim 100 of Application 09/529,201

or

Claim 26 of Patent No. 6,204,906

or

Claim 78 of Application 09/529,201

or

Claim 5 of Patent No. 6,380,999

11. Tannas '906 claim 26 is identical to Watson claim 78 and is as follows:

A method of changing the physical shape of an electronic display, wherein the display comprises a front plate, a back plate, and a perimeter seal spacing apart the plates, and wherein image-generating medium is contained in an area between the plates and within the borders of the perimeter seal, the display further comprising electronic circuits for operating the display, the method comprising the steps:

cutting the display along desired dimensions resulting in a target display portion and an excess display portion, thereby cutting at least some of the electronic circuits; and

applying a first seal between the plates along an exposed edge of the target display portion;

wherein the target display portion retains the basic functionality of the display.

12. Tannas '999 claim 5 is identical to Watson claim 100 and is as follows:

A method for changing the physical shape of an electronic display, wherein the display comprises a front plate, a back plate, and a perimeter seal spacing apart the plates, and wherein image-generating medium is sealed in an area between the plates and within the borders of the perimeter seal, the display further comprising electronic circuits for operating the display, the method comprising the steps:

- 4 -

EXHIBIT D

cutting the display along desired dimensions resulting in a target display portion and an excess display portion, thereby cutting at least some of the electronic circuits; and

applying a first seal along an exposed edge of the target display portion.

13. The claims of the parties are:

| | |
|---|---|
| Tannas '906: | 1-43 |
| Tannas '999: | 1-7 |
| Watson: | 53, 78, 88-92 and 94-102 |

14. The claims of the parties which correspond to Count 1 are:

| | |
|---|---|
| Tannas '906: | 1, 29-32 and 36-38 |
| Tannas '999: | 1 and 2 |
| Watson: | 53, 88-90, 96 and 97 |

15. The claims of the parties which correspond to Count 2 are:

| | |
|---|---|
| Tannas '906: | 26 and 39-43 |
| Tannas '999: | 3-7 |
| Watson: | 78, 91, 92, 94, 95 and 98-102 |

16. The claims of the parties which do not correspond to Count 1 or Count 2 are:

| | |
|---|---|
| Tannas '906: | 2-25, 27, 28 and 33-35 |
| Tannas '999: | none |
| Watson: | none |

17. The level of ordinary skill in the art is defined by the prior art of record.

## Tannas' priority brief

18. Tannas alleges a date of conception of Count 1 and Count 2 on 22 May 1993 (Paper 156 at 16).

19. Tannas alleges a date of actual reduction to practice of Count 1 and Count 2 on 18 February 1998 and in December 1998 (Paper 156 at 25-26).

- 5 -

EXHIBIT D

<u>Acts of diligence</u>

20.  Tannas alleges reasonable diligence toward reducing to practice the method of the Counts 1 and 2, from prior to Watson's 23 May 1997 alleged date of conception until Tannas' 18 February 1998 actual reduction to practice date (Paper 156 at 18).

21.  Watson's earliest accorded benefit date is 15 October 1997 (Paper 1).

22.  As the junior party, Tannas must show reasonable diligence from prior to 15 October 1997 until 18 February 1998, or from prior to 23 May 1997 until 18 February 1998 if Watson establishes a date of conception by 23 May 1997.

23.  Tannas' alleged reasonable diligence during the critical period is as follows (Paper 156 at 19-24):

A) In February 1997, Mr. Michael Farmer (Farmer) became a tenant of Mr. Tannas' (Ex. 2031 ¶ 41; Ex. 2039[3] ¶ 3).

B)  Farmer testified that at that time, he was in the automotive glass repair business, and was knowledgeable about glass cutting tools and procedures and adhesives used for sealing glass cracks and repairing automotive glass (Ex. 2039 ¶ 2).

C) From about February 1997 until the end of the summer 1997 Mr. Tannas frequently visited Farmer to discuss glass cutting, glass cutting tools, and adhesives, and to practice cutting glass and testing and applying adhesives (Ex. 2031 ¶ 44; Ex. 2039 ¶ 7).

D) Mr. Tannas' visits became less frequent after the summer of 1997, such that his visits for the following six months were "on average about once a month" (Ex. 2039 ¶ 12).

---

[3]  The original copy of Tannas exhibit 2039 was incomplete.  We rely on the resubmitted exhibit 2039 (Paper 213).

- 6 -

EXHIBIT D

E) Beginning in at least March of 1997 until at least February 18, 1998, Mr. Tannas is said to have frequently cut glass samples, and test and apply to glass various adhesives in his laboratory. Part of his experiments involved testing the environmental resistance of the adhesives (Ex. 2031 ¶ 45; Ex. 2032 ¶ 10).

F) Between February 1997 and February 1998 Mr. Tannas, during trade shows, would look for off-the-shelf displays that would be appropriate for the avionics market; a market in which Mr. Tannas believed to be the best opportunity for resized displays (Ex. 2031 ¶ 55).

G) Mr. Tannas recalls attending only two such trade shows during the critical period - one on January 14, 1998 and the other January 26-29, 1998 (Ex. 2031 ¶ 55).

H) Mr. Tannas testified that avionic off-the-shelf displays were very expensive and he could not afford to purchase them (Ex. 2031 ¶ 55).

I) Mr. Tannas also estimated $165,000 in costs associated with facilities and equipment necessary to produce actual resized LCDs and he was therefore unable to pursue resizing LCDs (Ex. 2031 ¶ 51).

J) On 18 February 1998, Mr. Tannas resized and tested three LCDs, by using a scribe and breaking the glass and associated circuits and then applying a seal (Ex. 2031 ¶ 50).

24. Tannas argues that it is excused from continuously being diligent during the critical period, since Mr. Tannas was busy with business affairs, taking care of his parents and wife, and traveling to various trade shows (Paper 156 at 22-24).

- 7 -

EXHIBIT D

25. The following allegedly "excused" activities, e.g., activities not related to reducing the inventions to practice, took place during the critical period. There is at least one specific date associated with the activities:

A) "Between October 5 and 17, 1997" Mr. Tannas presented three day classes in Stockholm, Sweden and London, England (Ex. 2031 ¶ 68).

B) On October 29, 1997, Mr. Tannas presented a seminar and paper on flat panel displays at the University of California, with approximately twenty hours of preparation time (Ex. 2031 ¶ 21).

C) From November 3-7, 1997, Mr. Tannas presented a course at UCLA, with approximately forty hours of preparation time (Ex. 2031 ¶ 22).

D) "Shortly after November 11, 1997" Mr. Tannas was retained as a consultant on a "Cockpit Lighting Trade-off Concept Study", which "took up a considerable amount of my [Mr. Tannas'] time." Associated with the consulting job Mr. Tannas went on a business trip February 2-4, 1998 and sometime in January (Ex. 2031 ¶47).

E) On November 15, 1997, Mr. Tannas gave a morning presentation, with approximately twenty hours of preparation time (Ex. 2031 ¶ 23).

F) "Between November 20-21, 1997, Mr. Tannas attended a Condex trade show in Las Vegas, Nevada (Ex. 2031 ¶ 68).

G) On January 7, 1998 Mr. Tannas presented a three hour lecture, which involved approximately twenty hours to prepare (Ex. 2031 ¶ 25).

- 8 -

EXHIBIT D

H) "Between January 8-9, 1998" Mr. Tannas attended a Consumer Electronics Show in Las Vegas, Nevada (Ex. 2031 ¶ 68).

I) On 14 January 1998, Mr. Tannas attended the AFCEA trade show in San Diego (Ex. 2031 ¶ 55).

J) "Between January 20-21, 1998", Mr. Tannas attended the Display Works show in San Jose, California (Ex. 2031 ¶ 69).

K) "Between January 26-28, 1998," Mr. Tannas attended the SPIE show in San Jose (Ex. 2031 ¶ 69).

L) "In January 1998" Tannas electronics was engaged by Leo Chen to measure the performance of LCDs in notebook personal computers. The tests were completed around February 17, 1998 (Ex. 2031 ¶ 49).

M) From February 5-6, 1998, Mr. Tannas presented a two day course in Corning, New York, which required approximately one week in preparation time (Ex. 2031 ¶ 26).

N) After the completion of the LCD project in February, Mr. Tannas was told he could keep the LCDs associated with the Chen project, and on February 18, 1998, Mr. Tannas successfully used three LCDs to test his resizing conception, by cutting, using a scribe, at times a wood vice and breaking the display, and then resealing the displays, which resulted in at least one of the displays having cracks along the edge (Ex. 2031 ¶ 50).

26. Tannas alleges in general, e.g., not specific as to dates or facts, the following:

A) "During 1997 and 1998" Mr. Tannas worked on a project for Alan Marr, an importer for Fujitsu, for which he received no compensation, but for which he committed approximately 120 hours during each year. (Ex. 2031 ¶ 65).

- 9 -

EXHIBIT D

B ) "From the summer of 1997 until March 1998" Mr. Tannas authored a manuscript for the John Wiley Encyclopedia of Electrical and Electronics Engineering.  (Ex. 2031 ¶ 20).

C) "From December 1997 through March 1998" Mr. Tannas was engaged as a consultant for Teltech resource Network Corporation, in which he attended two separate trade shows (in Los Angeless and Las Vegas) and generated reports, delivered in January 1998 (Ex. 2031 ¶ 24).

D) "From 1993 through 1998" part of Mr. Tannas' time was devoted to working as an unpaid consultant for the CIA (Ex.  2031 ¶ 36).

E) In 1997, Mr. Tannas logged fifty-two hours of flight time on his own private aircraft which he used in his consulting business and for which he was responsible for upkeep and maintenance (Ex. 2031 ¶ 37).

F) Between 1996 and 1998, Mr. Tannas was on the Board of Directors for the Orange County Rotary Club (Ex. 2031 ¶ 62).

G) Mr. Tannas' wife, Carol became incapacitated in late 1997 with an anxiety disorder, such that Mr. Tannas took over some of her secretarial tasks for his consulting business (Ex. 2031 ¶ 5).

H) Mr. Tannas was the sole caretaker of his parents from 1995 until 2000, managing both their personal and financial affairs.  Between February 1997 and February 1998, Mr. Tannas frequently drove his parents to the doctor, drug store, and to run other errands. He also managed their financial affairs  (Ex. 2031 ¶¶ 6-8).

EXHIBIT D

I) As is understood by Mr. Tannas' statements, in 1997 and 1998 he owned and was responsible for overseeing two industrial buildings, which were heavily mortgaged (Ex. 2031 ¶ 38).

J) Mr. Tannas estimates that in 1997 alone his personal and professional obligations occupied almost four thousand hours of his time (Ex. 2031 ¶ 72).

## C. Decision

Tannas has the burden of establishing priority with respect to Watson by a preponderance of the evidence. Bd.R. 207(a)(2).

Priority of invention belongs to the first party to reduce the invention to practice unless the other party can establish that it was the first to conceive the invention and that it exercised reasonable diligence in later reducing the invention to practice. Eaton v. Evans, 204 F.3d 1094, 1097, 53 USPQ2d 1696, 1698 (Fed. Cir. 2000). Tannas alleges an actual reduction to practice date of 18 February 1998. That date, however, is still subsequent to Watson's earliest effective filing date of 15 October 1997.

Tannas may prevail if Tannas can establish that it was the first to conceive the invention and that it exercised reasonable diligence from a time prior to Watson's conception until its own reduction to practice. 35 U.S.C. § 102(g); Eaton, 204 F.3d at 1097, 53 USPQ2d at 1698. Tannas seeks to establish that it conceived prior to Watson's alleged 23 May 1997 date of conception and that Tannas was reasonably diligent from a time prior to 23 May 1997 until Tannas' actual reduction to practice date of 18 February 1998 (FF[4] 20) .

---

[4] FF denotes finding of fact.

- 11 -

EXHIBIT D

Watson argues that Tannas has failed to prove conception or an actual reduction to practice of the invention by a preponderance of the evidence. Because Tannas has failed to sufficiently demonstrate that it was diligent in reducing its invention to practice, we have not and need not consider Watson's arguments regarding conception or actual reduction to practice. For purposes of this discussion, we assume without deciding, that Tannas has demonstrated conception of Counts 1 and 2 on 22 May 1993 and an actual reduction to practice of Counts 1 and 2 on 18 February 1998.

Diligence

Tannas alleges reasonable diligence from a time prior to 23 May 1997, Watson's alleged date of conception, until Tannas' alleged actual reduction to practice date of 18 February 1998. Watson's earliest accorded benefit date is 15 October 1997 (FF 21). For purposes of this discussion, we focus on the period from a time prior to Watson's 15 October 1997 benefit date until Tannas' alleged 18 February 1998 actual reduction to practice date, the "critical period." Unless Tannas demonstrates reasonable diligence during that critical period, there is no occasion to consider Watson's alleged earlier conception.

*Background*

In February 1997, Mr. Michael Farmer (Farmer) became a tenant of Mr. Tannas' (FF 23A). Farmer testified that at that time, he was in the automotive glass repair business, and was knowledgeable about glass cutting tools and procedures and adhesives used for sealing glass cracks and repairing automotive glass (FF 23B). Mr. Tannas made frequent visits to Farmer's shop from February 1997 through the summer of 1997. During those visits, as testified by both

- 12 -

EXHIBIT D

Farmer and Mr. Tannas, the two (1) discussed glass cutting tools and procedures used in the automotive glass industry, and (2) practiced glass cutting techniques on glass samples (FF 23C).

Also during the various visits between February 1997 through the summer of 1997, and according to both Farmer and Mr. Tannas, Farmer introduced Mr. Tannas to various adhesives used in the automotive industry, and gave Mr. Tannas samples from various suppliers, which Mr. Tannas applied to glass in Farmer's shop (FF 23C). Farmer testified that after the summer of 1997, Mr. Tannas' visits became less frequent, such that for the following six months, Mr. Tannas visited "on average about once a month" to conduct similar glass cutting and adhesive related activities (FF 23D).

Mr. Tannas and his wife testified that Mr. Tannas cut glass samples and experimented with various adhesives in Mr. Tannas' lab from at least March 1997 until 18 February 1998 (FF 23E). Mr. Tannas also testified that he looked for off-the-shelf displays between February 1997 and February 1998 that would be appropriate for the avionics market; a market in which Mr. Tannas believed to be the best opportunity for resized displays (FF 23F). Mr. Tannas testified that avionic off-the-shelf displays were very expensive and he could not afford to purchase them (FF 23H). Mr. Tannas also estimated that it would cost him $165,000 in facilities and equipment to produce actual resized LCDs and therefore, he was unable to pursue resizing LCDs (FF 23I).

Mr. Tannas' consulting firm was hired by a law firm sometime in January 1998 to test various laptop or notebook LCDs. The project was completed around 17 February 1998 (FF 25L). When Mr. Tannas inquired what he should do with the LCDs that he tested, a representative from the law firm told him that he could keep the LCDs. It was then on 18

- 13 -

EXHIBIT D

February 1998, that Mr. Tannas reduced to practice his invention by resizing three LCDS (FF 25N).

Tannas recognizes that there are gaps of inactivity during the critical period. The gaps, Tannas argues, are excusable under the rule of reason, due to Mr. Tannas' personal, and other work related constraints on both his time and money (Paper 156 at 21-24).

*Discussion*

To satisfy the reasonable diligence requirement, the work relied on must ordinarily be directly related to reduction to practice of the invention of the count at issue. <u>Naber v. Cricchi</u>, 567 F.2d 382, 384, 196 USPQ 294, 296 (CCPA 1977). As is explained in <u>Naber</u>, the work relied on must ordinarily be directly related to reduction to practice, but there are exceptions. There may be circumstances when an act is indirectly related to the reduction to practice, such as work in preparation for filing related patent applications, or work required to develop a first invention in order to develop or reduce to practice a second invention. Accordingly, Tannas must demonstrate that the acts performed were directly related, and if not, that the acts were indirectly related to reducing the invention to practice.

For the reasons that follow, Tannas has failed to sufficiently demonstrate that the work relied on: (1) discussing and practicing with Farmer techniques for cutting glass and available types of adhesives, (2) cutting various glass samples, (3) using various adhesives on glass samples, and (4) investigating avionic off-the-shelf displays were activities that were either directly or indirectly related to reducing to practice the invention of Counts 1 and 2.

Count 1 and Count 2 recite a method of changing the physical shape of an electronic display. Each alternative of Count 1 and Count 2 defines the display as comprising a front plate,

- 14 -

EXHIBIT D

e.g., glass, a back plate, e.g., glass, a seal spacing apart the plates, and an image-generating medium in between the plates (FF 7-12). Each alternative of Count 2 further includes, as part of the display, electronic circuits for operating the display (FF 11-12). Count 1 and Count 2 recite the steps of (a) cutting the display (and with respect to Count 2, some of the electronic circuits as well), and (b) applying a first seal along an exposed edge or in between the plates. As discussed in our decision on preliminary motions, the limitation of "a method for changing the physical shape of an electronic display" inherently requires that the electronic display remain operative once its physical shape has changed, which interpretation is consistent with the specifications of both parties (Paper 141 at 38).

An electronic display is more than a sheet of glass and in certain embodiments may not include glass. That simply cutting glass is not directly related to the subject matter of the count is self-evident. Why then are Tannas' extended efforts on practicing cutting glass and using adhesives on cut glass over a long period indirectly related to reducing to practice the invention of the counts? We don't know. Tannas made no explanation in that regard.

The acts of cutting various glass samples, using various techniques to cut glass samples, trying out different types of glass adhesives, and looking for avionic off-the-shelf displays that would be good candidates for a resizing project have not been shown by Tannas to be related, or precursors to reducing the invention to practice.

The difficulty with Tannas' diligence case is that there is no demonstration, supported by sufficient evidence, that Mr. Tannas was performing the tasks of cutting glass samples or experimenting with adhesives and looking for avionic off the shelf displays with the goal in mind of reducing the invention to practice.

- 15 -

EXHIBIT D

For example, the act of practicing cutting glass samples might be considered a reasonable step in preparing to cut an electronic display. However, we cannot assume that that is so. Tannas must explain the need for practicing cutting glass as well as the extent of the practice that would be needed. Here, Tannas has failed to explain why Mr. Tannas needed to practice cutting glass, what the goal was of such practice, or when the practice would be deemed successful and no longer needed. Mr. Tannas' activities of practicing cutting glass that spans a year without an explanation is dissatisfying. It leaves one to wonder why it was necessary for Mr. Tannas to practice cutting glass for so long. Mr. Tannas' practice runs, without any explanation, cannot be relied upon as an excuse for not taking other steps toward reduction to practice. Presumably, one practices and then one moves on to the main event, having had enough practice. Here, we do not know or have a story from Tannas as to what Mr. Tannas' goals were in practicing cutting glass and how those practice runs relate to reducing the invention to practice.

Mr. Tannas' acts of testing adhesives is also bothersome. At least some of the acts of testing adhesives involved testing various adhesives that could withstand extreme temperature variations, e.g., adhesives that could be used in an avionics display - the type of displays that would be the most marketable. Tannas has failed to sufficiently demonstrate that testing adhesives to come up with the best ones that would withstand extreme temperatures for avionic displays was a precursor or related to reduction to practice of the invention. As discussed below, the count is not limited to avionic displays, and being diligent towards reducing an invention to practice does not require an inventor to work toward commercialization of an invention.

We note that when Mr. Tannas actually reduced the invention to practice on 18 February 1998, he resized three LCDs using a scribe and breaking method to resize the displays, and

- 16 -

EXHIBIT D

applying a seal along the exposed edge. The act of reducing his invention to practice, as described by Mr. Tannas in his declaration appeared to be simple and rudimentary. Mr. Tannas does not specifically indicate that he relied on a particular method for cutting the displays that he had used for his practice runs of cutting automotive glass, or that he used a type of adhesive that he had previously tested. We further observe that at least one of the displays that Mr. Tannas cut had many cracks along the edge. This would lead one to believe that the practice runs of cutting glass were not precursors to reducing the invention to practice. If they were, one would expect Mr. Tannas to be able to cut the displays, such that the cut edges would not have cracks.

Moreover, Tannas provides no explanation as to why Mr. Tannas' acts of investigating avionic off the shelf displays was a necessary precursor or requirement for reducing the count(s) to practice. The claims which make up the count(s) do not require an avionics off the shelf display. We note that Tannas' alleged 18 February 1998 reduction to practice of the claimed inventions was performed using LCDs that were not of the avionics off the shelf display type, but were instead suitable for laptop or notebook computers (FF 25 J & L).

To the extent that Tannas excuses not reducing his invention to practice earlier, since he did not have the money to purchase an avionic off the shelf display, or because he did not have enough money for a facility and equipment to produce actual resized LCDs, those arguments are not persuasive. Being diligent towards reducing an invention to practice does not require an inventor to work toward commercialization of an invention. Fitzgerald v. Arbib, 268 F.2d 763, 122 USPQ 530 (CCPA 1959).

For example, it was not necessary that Mr. Tannas wait until he could afford to purchase only those types of displays where his invention would be the most profitable or marketable, e.g.,

- 17 -

EXHIBIT D

in the avionics market. Nor has Tannas explained why it was necessary to have a special facility and equipment that would cost $165,000 to reduce the invention to practice. We note, that Tannas' actual reduction to practice occurred using rudimentary equipment (a scribe and breaking the display) and apparently was not performed in any special facility with any special displays (FF 25L). Lastly, and based on the record before us, there is no explanation that Mr. Tannas could not afford the types of displays that he eventually used to reduce the invention to practice.

For the above reasons, Tannas has failed to sufficiently demonstrate that it was diligently performing acts that were related or precursors to reducing the invention to practice. Accordingly, Tannas was not diligent during the approximately four month critical period, and thus Tannas has not demonstrated, by a preponderance of the evidence, priority of invention.

Although not necessary to our decision, there are still other reasons why Tannas' diligence case is deemed not persuasive. Even if the acts discussed above, for the sake of argument, are considered to be related to, or precursors for reducing the invention to practice, Tannas fails to provide specific dates and facts as to its activities towards reducing the invention to practice.

Evidence of diligence must be specific as to dates and facts. Kendall v. Searles, 173 F.2d 986, 81 USPQ 363 (CCPA 1949). Mr. Tannas testified that from February 1997 up until at least February 1998 he frequently visited with Mr. Farmer, to discuss and practice glass cutting, glass cutting tools, and using adhesives to bond glass. Tannas argues in its brief (Paper 156 at 20), and Farmer testified, that after the summer of 1997 Mr. Tannas' visits became less frequent. Farmer

- 18 -

EXHIBIT D

testified that for "the following six months, he [Mr. Tannas] visited my shop on average about once a month" (FF 23D).

The terms "the following six months", "after the summer of 1997", "frequent", "less frequent" and "on average about once a month" are subject to various interpretations and are not specific. After the summer of 1997 can be interpreted to begin sometime in mid to late September, or anytime thereafter. The following six months may then be, from mid September or end of September, or anytime after until mid to late March, or anytime after. During that time, whatever time that may be, Mr. Tannas' visits, according to Farmer, were less frequent, and "on average about once a month." Less frequent is vague, especially when "frequent" was not defined in the first place. Furthermore, "on average about once a month" is certainly not specific, and does not indicate that Mr. Tannas even visited Farmer at all during the critical period. For example, Mr. Tannas could have visited Farmer two times in September 1997 and two times in March 1998 and no time in between, e.g., during the critical period, and may still be within "on average about once a month." The term "on average" is vague on its own. But, "on average about once a month" makes the time frame indiscernible. Accordingly, Tannas has failed to demonstrate, by a preponderance of the evidence that Tannas even visited Farmer during the critical period.

Tannas argues and Mr. Tannas testified that "beginning in February 1997 until at least February 18, 1998" that he frequently cut glass samples and conducted experiments with adhesives on his own (FF 23E). Tannas has failed to direct our attention to where in the record there are dates or an amount of time associated with the various experiments that Mr. Tannas testified that he performed. Based on the record before us, and as argued by Tannas, there is no

- 19 -

EXHIBIT D

indication as to whether the various experiments were done in one day over the four month critical period, or accomplished everyday during the four month critical period. Tannas provides no explanation, nor directs us to evidence of the record as to what experiments or activities Mr. Tannas performed on what specific dates, or even how long Mr. Tannas dedicated to the experiments and activities outlined by Tannas. Absent a detailed explanation of specific facts and dates, we decline to speculate or make any inferences.

Tannas' failure to account for dates and facts in specific detail of Mr. Tannas's activities of diligence towards reducing the invention to practice is only the tip of the iceberg. From that point on, Tannas' argument, that its inactivity between its active periods are excused due to Mr. Tannas' personal and professional obligations necessarily unravels. Without a starting point of when activities of diligence towards reducing the invention to practice were performed, there can be no review of any gaps of inactivity in the record. The gaps can be everywhere. And as with Tannas' acts of diligence, the other allegedly "excused" activities are not always specific as to dates and facts.

The following is illustrative of the problem. Tannas did provide some specific dates of lectures Mr. Tannas gave and of business obligations Mr. Tannas had during the critical period (FF 25). We assume, for the purpose of this discussion and without deciding, that those activities, on the specific dates given actually occurred. Even so, there are significant gaps of activity of any sort - either towards reducing the invention to practice or of "excused" activities in between the specific dates given.

For example, Tannas does not direct our attention to any specific evidence of any activity between 21 November 1997 and 7 January 1998 (FF 25). Based on the record before us, there

- 20 -

are no specific dates or specific facts of activity of any kind (e.g., towards reducing the invention

to practice or of "excused activities") for over a month during the critical period. During that

time, Mr. Tannas may have been busy working towards reducing the invention to practice, or

taking care of his parents, or his wife, or working on some project or lecture. However, absent a

detailed explanation, we decline to speculate or make any inferences.

It is not enough, for example, to argue that Mr. Tannas was a consultant for the CIA from

1993 through 1998 (FF 26D), and then have us assume that during the critical period, Mr. Tannas

was actually busy in his capacity as a CIA consultant. We will not make such assumptions. To

the extent that Mr. Tannas' declaration incorporates by reference any of the numerous memos or

project papers associated with Mr. Tannas' other activities, whereby Tannas may expect us to

sort through the information on our own to try and come up with a time line of specific dates of

activity, we will not do so. Tannas has failed to direct our attention to any of the numerous

project exhibits in its brief in the first place, and thus we need not consider them. Ernst Haas

Studio, Inc. v. Palm Press, Inc., 164 F.3d 110, 112, 49 USPQ2d 1377, 1379 (2d Cir. 1999)

(declining invitation to scour record to make out a party's case for it). "Judges are not like pigs,

hunting for truffles buried in briefs." United States v. Dunkel, 927 F.2d 955, 956 (7th Cir.

1991).

Tannas cannot excuse its lack of evidence under the rule of reason principles. As stated

by Judge Rich, speaking for our then reviewing court, the CCPA, in D'Amico v. Koike, 347

F.2d 867, 871, 146 USPQ 132, 135 (CCPA 1965), the principles behind the rule of reason is not

a substitute for record evidence ("We agree with the general principles which appellant seems to

be advocating, namely, that a rule of reason should be followed .... Nevertheless we think that

- 21 -

EXHIBIT D

appellant is attempting to use those principles as substitutes for record evidence, of which there is very little").

For these additional reasons, Tannas has failed to sufficiently show that it was diligent during the critical period. The reasonable diligence standard "balances the interest in rewarding and encouraging invention with the public's interest in the earliest possible disclosure of innovation." <u>Griffith v. Kanamaru</u>, 816 F.2d 624, 626, 2 USPQ2d 1361, 1362 (Fed. Cir. 1987). Here, Tannas has failed to sufficiently demonstrate that it was reasonably diligent such as to provide the public with the earliest possible disclosure of its invention. Where the first to conceive has failed to demonstrate that it was reasonably diligent during the critical period, there is no reason, or justification, to allow it to prevail over another who is the second to conceive but who has made prompt disclosure by the filing of a patent application.

For the above reasons, Tannas has failed to demonstrate, by a preponderance of the evidence, priority of invention. Accordingly, Watson opposition (Paper 167), Tannas reply (Paper 176), Watson priority and derivation brief (Paper 163), and those briefs associated therewith (Papers 176 and 180) need not and have not been considered.

<u>Watson preliminary motion 9</u>

Watson filed a preliminary motion 9 for inequitable conduct against Tannas (Paper 164). Since judgment is entered against Tannas there is no occasion to consider Watson preliminary motion 9. Watson preliminary motion 9 is <u>dismissed</u>. Bd. R. 125(a).

EXHIBIT D

Tannas motions 8-13 to suppress

Tannas moves to suppress certain evidence and those portions of Watson briefs where Watson relied upon the evidence in connection with Watson's priority brief, Watson opposition to Tannas priority brief and Watson preliminary motion 9 (Papers 195-200).

Since Tannas failed to sufficiently demonstrate priority of invention, by a preponderance of the evidence, there was no occasion to consider Watson priority brief, Watson opposition, or Watson preliminary motion 9.  Accordingly, Tannas motions to suppress 8-13 are dismissed.

Miscellaneous

Tannas Exhibit 2062 is apparently a copy of Mr. and Mrs. Tannas' 1040 (income tax return) for 1997.  Tannas failed to specifically direct our attention to this exhibit in connection with its priority brief, and thus the exhibit was apparently not relied on.  To the extent that the exhibit was referred to by Mr. Tannas in his declaration, neither Mr. Tannas, nor Tannas explain the significance of the exhibit, or how the exhibit relates to diligence activities during the critical period.  As this interference will eventually become open for public inspection (Bd. R. 41.6), and since Tannas may not have fully appreciated this fact, or the consequences of having the Tannas' income tax return within the public domain, exhibit 2062 is expunged from the record.   All copies of the exhibit are returned to the party Tannas.

**Judgment**

Judgment is entered against Tannas in a separate paper.

- 23 -

EXHIBIT D

cc (via federal express):

Attorney for Tannas (real party in interest - Tannas):

William A. English, Esq. (lead counsel)
COHEN, SAKAGUCHI & ENGLISH LLP
2040 Main Street, 9th Floor
Irvine, CA   92614

Tel: 562-665-3953
Fax: 949-625-8955


Attorney for Watson (real party in interest - Bae Systems Avionics Limited):

Leonard C. Mitchard (lead counsel)
NIXON & VANDERHYE, P.C.
8th Floor
1100 North Glebe Road
Arlington, VA 22201-4714

Tel: 703-816-4005 (lead)
Fax: 703-816-4100

EXHIBIT D

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 610 Newport Center Drive, Suite 700, Newport Beach, CA 92660.

On June 13, 2005, I served the foregoing document described as DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ITS MOTION TO DISMISS on the following person(s) in the manner indicated:

## SEE ATTACHED SERVICE LIST

[ X ]  (BY MAIL) I am familiar with the practice of Call, Jensen & Ferrell for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business. On this date, a copy of said document was placed in a sealed envelope, with postage fully prepaid, addressed as set forth herein, and such envelope was placed for collection and mailing at Call, Jensen & Ferrell, Newport Beach, California, following ordinary business practices.

[ ]  (BY FEDEX) I am familiar with the practice of Call, Jensen & Ferrell for collection and processing of correspondence for delivery by overnight courier. Correspondence so collected and processed is deposited in a box or other facility regularly maintained by FedEx that same day in the ordinary course of business. On this date, a copy of said document was placed in a sealed envelope designated by FedEx with delivery fees paid or provided for, addressed as set forth herein, and such envelope was placed for delivery by FedEx at Call, Jensen & Ferrell, Newport Beach, California, following ordinary business practices.

[ ]  (BY FACSIMILE TRANSMISSION) On this date, at the time indicated on the transmittal sheet, attached hereto, I transmitted from a facsimile transmission machine, which telephone number is (949) 717-3100, the document described above and an unsigned copy of this declaration to the person, and at the facsimile transmission telephone numbers, set forth herein. The above-described transmission was reported as complete and without error by a properly issued transmission report issued by the facsimile transmission machine upon which the said transmission was made immediately following the transmission.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on June 13, 2005, at Newport Beach, California.

_____
Amy Egan

EXHIBIT D

1

**SERVICE LIST**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Neal M. Cohen, Esq.                    **Attorneys for Plaintiff**
Cohen Sakaguchi & English LLP
2040 Main Street, 9th Floor
Irvine, CA  92614
Fax No.:  (949) 625-8955

, JENSEN &
ERRELL
OFESSIONAL
:PORATION

EXHIBIT D

1  SCOTT J. FERRELL, Bar No. 202091
2  DAVID R. SUGDEN, Bar No. 218465
   CALL, JENSEN & FERRELL
3  A Professional Corporation
   610 Newport Center Drive, Suite 700
4  Newport Beach, CA  92660
   sferrell@calljensen.com
5  dsugden@calljensen.com
6  (949) 717-3000 (Phone)
   (949) 717-3100 (Fax)
7
8  Attorneys for Defendants BAE Systems Avionics Limited
     and BAE Systems Electronics Limited
9

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12

13  Lawrence E. Tannas, Jr., an individual dba     Case No.  CV-03-5889 RJK (FMOx)
    as Tannas Electronics; Tannas Electronic
14  Displays, Inc., a California corporation,      **DECLARATION OF DAVID R.
                                                   SUGDEN**
15              Plaintiffs,

16              vs.

17
    BAE Systems Avionics Limited, a British
18  corporation; BAE Systems Electronics
    Limited, a British corporation,
19
                Defendants.
20

21

22                                                 Complaint Filed:  August 19, 2003
                                                   Trial Date:       None Set
23

24
        I, David R. Sugden, declare:
25

26      1.    I am an attorney, duly licensed and admitted to practice law in the State of

27  California.  I am an associate of the law firm of Call, Jensen & Ferrell, counsel of record

28  for Defendants BAE Systems Avionics Limited, and BAE Systems Electronics Limited

L, JENSEN &
FERRELL
OFESSIONAL
RPORATION

BRI03-01:154537_1:6-13-05                          - 1 -
                            DECLARATION OF DAVID R. SUGDEN          EXHIBIT D

1   ("Defendants"). I have personal knowledge of the facts set forth in this Declaration. If

2   called and sworn as a witness, I could and would competently testify to these facts.

4        2.    Normally, a brief statement explaining that a meet and confer conference

5   took place would be sufficient. However, Plaintiffs' counsel have taken the position that

6   (1) no meet and confer conference has ever taken place; and (2) BAE never requested a

7   meet and confer conference before June 7, 2005. *See* Email from Neal M. Cohen to

8   David Sugden (June 11, 2005) attached hereto as Exhibit "A." It is Defendants' position

9   that they have complied with Local Rule 7-3 and therefore offer a more detailed

10  recitation of the facts.

12       3.    On May 9, 2005, the United States Patent and Trademark Office (the

13  "USPTO") entered judgment against Lawrence E. Tannas, Jr. in his patent interference

14  action against Defendants. Specifically, the USPTO concluded that Tannas' claims on

15  his patents identified in the FAC (patents 6,204,906 and 6,380,999) "are *unpatentable*."

16  *See* Judgment and Decision of USPTO attached hereto as Exhibits "B" and "C."

18       4.    Because the ruling of the USPTO had an impact on the merits of Plaintiffs'

19  present case, Defendants counsel wrote to Plaintiffs' counsel on May 12, 2005. In that

20  correspondence, Defendants' counsel proposed "meeting and conferring [with Plaintiffs'

21  counsel] with respect to the Patent Board's May 9th ruling" and its impact on Plaintiffs'

22  case. *See* Letter from David R. Sugden to Neal M. Cohen (May 12, 2005) attached

23  hereto as Exhibit "D."

25       5.    In an effort to bolster the productivity of the parties' meet and confer

26  conference (which was also to discuss discovery responses), Defendants' counsel wrote

27  another letter on May 16 and articulated that, given the USPTO's ruling, Tannas' fourth

28  and fifth causes of action (for intentional interference with prospective economic

ALL, JENSEN &
FERRELL
PROFESSIONAL
CORPORATION

BRI03-01:154537_1:6-13-05                                   - 2 -

1  advantage and unfair competition) were devoid of merit.  In addition, Defendants counsel

2  explained that, unless Defendants brought a lawsuit for (1) breach of contract; (2)

3  misappropriation of trade secrets; and (3) unfair competition, Plaintiffs' first three causes

4  of action (for declaratory relief) were superfluous.  Given the foregoing, Defendants

5  offered to (1) release Plaintiffs from all claims if Plaintiffs would dismiss their complaint;

6  and (2) continue the parties' meet and confer conference (which was then scheduled for

7  May 18, 2005) so to allow Plaintiffs sufficient time to deliberate over Defendants offer.

8  *See* Letter from David R. Sugden to Neal M. Cohen (May 16, 2005) attached hereto as

9  "E."

10

11      6.      Plaintiffs' counsel did not respond to Defendants' counsel's fax.  Therefore,

12  Defendants' counsel emailed Plaintiffs' counsel to determine whether the Plaintiffs

13  wanted to reschedule the meet and confer conference.  Without explanation, Plaintiffs

14  refused and insisted that the parties meet and confer the next day.  *See* Email exchange

15  between Neal M. Cohen and David R. Sugden (May 17, 2005) attached hereto as Exhibit

16  "F."

17

18      7.      I therefore personally visited Plaintiffs' counsel's office on May 18, 2005

19  for approximately two hours.   In that discussion, we discussed issues relating to

20  discovery, issues relating to personal jurisdiction, and issues related to Plaintiffs'

21  anticipated First Amended Complaint.  Specifically, I explained that, by the following

22  week, Defendants would provide either (1) a stipulation that Defendants would be subject

23  to personal jurisdiction, or (2) verified supplemental discovery responses.  With respect

24  to Plaintiffs' anticipated First Amended Complaint, Plaintiffs stated that they would be

25  (1) dismissing their fourth cause of action; (2) possibly dismissing their fifth cause of

26  action; and (3) adding a cause of action pursuant to 35 U.S.C. § 146.  I explained that

27  Defendants would, setting personal jurisdiction issues aside, move to dismiss Plaintiffs'

28  cause of action for the same reasons articulated in Defendants' earlier FRCP 12(b)(6)

ALL, JENSEN &
FERRELL
PROFESSIONAL
ORPORATION

BRI03-01:154537_1:6-13-05                    - 3 -

DECLARATION OF DAVID R. SUGDEN                    EXHIBIT D

1  motion (since the Court never ruled on those issues at the first hearing) and that

2  Defendants did not believe that venue would be proper for Plaintiffs' Section 146 action.

3  Plaintiffs' counsel explained that all District Courts have jurisdiction over Section 146

4  actions.

5

6      8.      Rather than waiting for Defendants' stipulation or supplemental discovery

7  responses, Plaintiffs' counsel emailed Defendants' counsel the next day and explained

8  that they had filed a First Amended Complaint and, rather than dismiss their fourth or

9  fifth causes of action, they changed the factual allegations from the Original Complaint.

10  *See* Email from Neal M. Cohen to David R. Sugden (May 19, 2005) attached hereto as

11  Exhibit "G."

12

13     9.      Almost immediately after receiving the email from Plaintiffs' counsel, I

14  called Plaintiffs' counsel to discuss in greater detail the allegations in Plaintiffs'

15  complaint.   The conversation lasted approximately fifteen minutes and covered

16  essentially the same issues as already discussed.

17

18     10.     In addition to adding a new cause of action and new facts in Plaintiffs' First

19  Amended Complaint, Plaintiffs' also added a new party: BAE Systems, Plc.   As a

20  courtesy to Plaintiffs' counsel, I agreed to waive service of the First Amended Complaint

21  and calendared Defendants' responsive pleading date for June 13, 2004.

22

23     11.     On May 25, 2005, the Court, in its Order on Motion to Dismiss noted that

24  (1) Plaintiffs filed their FAC nearly three months beyond the deadline, and (2) Plaintiffs'

25  FAC went beyond the scope of the Court's previous Order, which only allowed Plaintiffs

26  to allege new grounds for Defendants' minimum contacts.

27  / / /

28  / / /

ALL, JENSEN &
FERRELL
PROFESSIONAL
CORPORATION

BRI03-01:154537_1:6-13-05                    - 4 -

DECLARATION OF DAVID R. SUGDEN                    EXHIBIT D

12.    On June 7, 2005, Defendants' counsel made another attempt to meet and confer to see if any of the issues in Plaintiffs' FAC could be resolved.  Specifically, Defendants' counsel wished to discuss "a proposed stipulation that Defendants intend to offer that may resolve certain personal jurisdiction issues."  *See* Letter from Scott J. Ferrell to Neal M. Cohen (June 7, 2005) attached hereto as Exhibit "H."

13.    On June 8, Plaintiffs' counsel wrote to Defendants' counsel and explained that (1) it was Plaintiffs' contention that June 7 was the deadline to file a response to the original complaint; and (2) that Defendants missed their "deadline to meet-and-confer . . . on June 2, 2005."  As a result, Plaintiffs stated that they would only meet and confer with respect to BAE Systems, Plc.  However, their availability to meet and confer was either (1) after 6:00 p.m. on June 9th or 10th, or (2) June 13th or June 14th.  *See* Letter from Neal M. Cohen to Scott J. Ferrell (June 8, 2005) attached hereto as Exhibit "I."

14.    Because June 13, 2005 was Defendants' last day to file a responsive pleading, Defendants' counsel proposed that either (1) I personally visit their offices after 6:00 p.m. (per their limited availability) on June 9th or 10th, or (2) the parties stipulate that Defendants respond to the First Amended Complaint on June 17 and that an additional meet and confer conference take place on June 13.  *See* Letter from David R. Sugden to Neal M. Cohen (June 8, 2005) attached hereto as Exhibit "J."

15.    On June 9, Plaintiffs' counsel responded to Defendants' counsel by (1) agreeing to meet and confer on June 13; and (2) requesting that BAE prepare a stipulation that articulates that it is Plaintiffs' "position that the original defendants have waived all 12b motions due to LR 7-3 and FRCivP 15(a)." *See* Email from Neal M. Cohen to David R. Sugden (June 9, 2005) attached hereto as Exhibit "K."

///

///

ALL, JENSEN &
FERRELL
PROFESSIONAL
ORPORATION

BRI03-01:154537_1:6-13-05                    - 5 -

DECLARATION OF DAVID R. SUGDEN        EXHIBIT D

16.    Using literally the same language as requested by Plaintiffs' counsel, Defendants' counsel prepared a draft stipulation that provided that (1) Defendants' responsive pleading would be filed on June 17; and (2) it was Plaintiffs' position that the original Defendants "have waived all FRCP 12(b) motions due to Local Rule 7-3 and FRCP 15." *See* Email from David R. Sugden to Neal M. Cohen with proposed stipulation attached (June 9, 2005) attached hereto as Exhibit "L."

17.    On Friday, June 10, Plaintiffs' counsel wrote Defendants' counsel an email explaining that Defendants' proposed stipulation "is unacceptable" and that "Tannas will not agree to extend the deadline for the original defendants to file any motions at this time." *See* Email from Neal M. Cohen to David R. Sugden (June 10, 2005) attached hereto as Exhibit "M."

18.    On Saturday, June 11, Defendants counsel wrote to Plaintiffs' counsel and explained that they could not understand why Plaintiffs' counsel was refusing to sign a stipulation that (1) afforded the parties time to meet and confer; and (2) expressly reserved Tannas' right to make the arguments previously articulated.    In addition, Plaintiffs' counsel's refusal to sign the proposed stipulation left Defendants no choice but to file their responsive pleading on Monday, June 13.    Nonetheless, in another proposal to meet and confer, Defendants proposed that Defendants file their motion on June 13 and then, at a later date ("after [Plaintiff has] had an opportunity to review [Defendants'] motions) to see if any of the issues can be eliminated or narrowed by stipulation." *See* Email from David R. Sugden to Neal M. Cohen (June 11, 2005) attached hereto as Exhibit "N."

19.    Plaintiff responded on June 11 with an email wherein Plaintiff "caution[ed] BAE against filing any motions which include any statement indicating or implying that we have had a meet-and-confer regarding the First Amended Complaint. We have not. I

DECLARATION OF DAVID R. SUGDEN    EXHIBIT D

1  further caution against filing any statement indicating that a meet-and-confer regarding

2  the First Amended Complaint was requested by BAE at any time prior to June 7, 2005. It

3  was not. I further caution BAE against filing any statement indicating that Tannas

4  refused to meet-and-confer with regard to BAE Systems, Plc. Tannas has not. Any of

5  the above types of statements would be false." *See* email from Neal M. Cohen to David

6  R. Sugden (June 11, 2005) attached hereto as Exhibit "O."

7

8      20.    Given the efforts to meet and confer, the letters going back and forth

9  between counsel since May and the personal meeting at Plaintiffs' counsel's offices,

10 Defendants cannot comprehend how Plaintiffs' counsel is taking the position that (1) no

11 meet and confer had taken place, or (2) no request for a meet and confer took place

12 before June 7. It is Defendants' position that Defendants have fulfilled their obligations

13 to meet and confer and, as has always been the case, Defendants' counsel are willing to

14 (1) meet and confer before the hearing, and (2) continue the hearing date if Plaintiffs'

15 counsel believe that additional time is needed to meet and confer.

16

17     I declare that the foregoing is true and correct to the best of my knowledge and

18 belief and that this document was executed on June 13, 2005, in Newport Beach,

19 California.

20

21

22                                  David R. Sugden

23

24

25

26

27

28

ALL, JENSEN &
FERRELL
PROFESSIONAL
CORPORATION

BRI03-01:154537_1:6-13-05                              - 7 -

DECLARATION OF DAVID R. SUGDEN          EXHIBIT D

## David R. Sugden

| | |
|---|---|
| **From:** | Neal M. Cohen [nmc@cohen-sak.com] |
| **Sent:** | Saturday, June 11, 2005 2:39 PM |
| **To:** | David R. Sugden; Scott J. Ferrell |
| **Cc:** | English, Bill |
| **Subject:** | Re: Tannas v BAE |

Mr. Sugden:

My understanding is that the deadline for BAE Systems, Plc to respond to the First Amended Complaint is Monday, June 13. As stated in my previous communications, Tannas is available to meet-and-confer regarding BAE Systems, Plc. To allow for the requested meet-and-confer, I can discuss with you Monday entering into a stipulation to extend the time for BAE Systems, Plc to respond to the First Amended Complaint. The extension would be about a week or two, and Tannas would require a statement that the extension was requested by BAE Systems Plc. However, the Court must approve any such stipulation.

Regarding the original named defendants, the First Amended Complaint was served on the original named defendants by mail to your office on May 19, 2005. My understanding is that the deadline for the original named defendants to respond to the First Amended Complaint was June 6, 2005. Is your understanding different? If so, then on what do you base that understanding? Under the Local Rules, a meet-and-confer would have been required 5 days before the deadline. Yet the first we heard from your office requesting a meet-and-confer was on June 7, 2005. That was not only after the deadline to request a meet-and-confer, but was after the deadline to actually conduct the meet-and-confer, and was even after the deadline to file the response to the First Amended Complaint. Is your understanding different? If so, then on what do you base that understanding?

Furthermore, I caution BAE against filing any such motions which include any statement indicating or implying that we have had a meet-and-confer regarding the First Amended Complaint. We have not. I further caution BAE against filing any statement indicating that a meet-and-confer regarding the First Amended Complaint was requested by BAE at any time prior to June 7, 2005. It was not. I further caution BAE against filing any statement indicating that Tannas refused to meet-and-confer with regard to BAE Systems, Plc. Tannas has not. Any of the above types of statements would be false.

Furthermore, if any 12b2 motion is filed on behalf of the original named defendants, Tannas will seek sanctions for their failure to provide the court-ordered verified responses to Tannas' interrogatories.

With all that said, if you can provide a sound legal and factual basis that BAE's June 7, 2005 request to meet-and-confer on behalf of the original named defendants regarding the First Amended Complaint was timely and in compliance with the F.R.Civ.P., the Local Rules, and the Court's recent Order, then Tannas will stipulate to reasonable extensions to allow the meet-and-confer to occur. Even if you cannot provide any such basis, Tannas will meet-and-confer regarding potential 12b motions from the original named defendants. But you should be clear that Tannas will not at this time stipulate to any retroactive extensions of time for BAE to file pleadings.

I am available this weekend by cell phone at 760 803-8271 if you would like to discuss this further.

Neal M. Cohen
Cohen Sakaguchi & English LLP
2040 Main Street, 9th Floor
Irvine, CA 92614
TEL (949) 724-1849
FAX (949) 625-8955
nmc@cohen-sak.com
http://www.cohen-sak.com

EXHIBIT D

**EXHIBIT A**

6/13/2005

```
==================================================================
```
----- Original Message -----
**From:** David R. Sugden
**To:** Neal M. Cohen ; Scott J. Ferrell
**Cc:** English, Bill
**Sent:** Saturday, June 11, 2005 12:38 PM
**Subject:** RE: Tannas v BAE

Neal,

I cannot understand why you are unwilling to sign a stipulation that (1) affords the parties time to meet and confer, and (2) expressly reserves Tannas' right to make the arguments articulated in your email below. Nonetheless, since you are unwilling, Defendants have no choice but to file their responsive pleadings on Monday. And, since Defendants must file their responsive pleadings on Monday, your offer to meet and confer on Monday does not make much sense. I think a better approach would be to meet and confer at a later date (after you have had an opportunity to review our motions) to see if any of the issues can be eliminated or narrowed by stipulation.

Please let me know if you have any questions or comments.

Dave

**David R. Sugden, Esq.**
**CALL, JENSEN & FERRELL**
610 NEWPORT CENTER DRIVE, SUITE 700
NEWPORT BEACH, CALIFORNIA 92660
TELEPHONE: (949) 717-3000
FACSIMILE: (949) 717-3100
dsugden@calljensen.com
www.calljensen.com

The preceding email message (including any attachments) contains information that may be confidential, protected by the attorney-client or other applicable privileges, or constitutes non-public information. It is intended to be conveyed only to the designated recipient(s). If you are not an intended recipient of this message, please notify the sender by replying to this message and then delete it from your system. Use, dissemination, or reproduction of this message by unintended recipients is not authorized and may be unlawful.

6/13/2005

EXHIBIT D

*The opinion in support of the decision being*
*entered today is not binding precedent of the Board.*

Filed by: Trial Section Merits Panel
    Mail Stop Interference
    P.O. Box 1450
    Alexandria, VA 22313-1450
    Tel: 571-272-9797
    Fax: 571-273-0042

Paper 215

Filed:
9 May 2005

## UNITED STATES PATENT AND TRADEMARK OFFICE

## BEFORE THE BOARD OF PATENT APPEALS AND INTERFERENCES

LAWRENCE E. TANNAS, JR.
Junior Party,
(Patents 6,204,906 and 6,380,999),

v.

DAVID S. WATSON
Senior Party,
(Application 09/529,201).

MAILED

MAY 9 – 2005

PAT. & TM. OFFICE
BOARD OF PATENT APPEALS
AND INTERFERENCES

Patent Interference No. 105,096

Before SCHAFER, LEE, and MEDLEY, Administrative Patent Judges.

MEDLEY, Administrative Patent Judge.

## JUDGMENT-RULE 127

For the reasons given in the Decision on Preliminary Motions (Paper 141) and the Priority

Decision (Paper 214), judgment is herein entered against junior party Tannas.

EXHIBIT D

**EXHIBIT B**

Accordingly, it is

ORDERED that claims 1, 26, 29-32 and 36-43 of Tannas Patent 6,204,906 and claims 1-7 of Tannas Patent 6,380,999 are unpatentable (see Decision on Preliminary Motions (Paper 141 at 62);

FURTHER ORDERED that judgment as to the subject matter of the count is herein entered against junior party LAWRENCE E. TANNAS, JR.;

FURTHER ORDERED that junior party LAWRENCE E. TANNAS, JR. is not entitled to claims 1, 29-32 and 36-38 of Tannas Patent 6,204,906 and claims 1 and 2 of Tannas Patent 6,380,999 which correspond to the Count 1, and claims 26 and 39-43 of Tannas Patent 6,204,906 and claims 3-7 of Tannas Patent 6,380,999 which correspond to Count 2 (see Redeclaration Paper 142);

FURTHER ORDERED that if there is a settlement agreement, the parties should note the requirements of 35 U.S.C. § 135(c) and 37 CFR § 41.205; and

FURTHER ORDERED that a copy of this judgment be filed in the respective involved applications of the parties.

EXHIBIT D

cc (via federal express):


Attorney for Tannas (real party in interest - Tannas):

William A. English, Esq. (lead counsel)
COHEN, SAKAGUCHI & ENGLISH, LLP
2040 Main Street, 9th Floor
Irvine, CA   92614


Tel: 562-665-3953
Fax: 949-625-8955


Attorney for Watson (real party in interest - Bae Systems Avionics Limited):

Leonard C. Mitchard, Esq. (lead counsel)
NIXON & VANDERHYE, P.C.
8th Floor
1100 North Glebe Road
Arlington, VA 22201-4714


Tel: 703-816-4005 (lead)
Fax: 703-816-4100


EXHIBIT D

The opinion in support of the decision being
entered today is <u>not</u> binding precedent of the Board.

Paper 214

Filed by: Trial Section Merits Panel[1]
    Mail Stop Interference
    P.O. Box 1450
    Alexandria, VA  22313-1450
    Tel: 571-272-9797
    Fax: 571-273-0042

Filed
9 May 2005

## UNITED STATES PATENT AND TRADEMARK OFFICE

---

## BEFORE THE BOARD OF PATENT APPEALS AND INTERFERENCES

---

### LAWRENCE E. TANNAS, JR.
Junior Party,
(Patents 6,204,906 and 6,380,999),

v.

### DAVID S. WATSON
Senior Party,
(Application 09/529,201).



MAILED
MAY 9 – 2005
PAT. & TM. OFFICE
BOARD OF PATENT APPEALS
AND INTERFERENCES

---

Patent Interference No. 105,096

---

Before SCHAFER, LEE, and MEDLEY, <u>Administrative Patent Judges</u>.

MEDLEY, <u>Administrative Patent Judge</u>.

### <u>Decision - Priority - Bd. R. 125(a)</u>

---

[1]    As part of Board efforts under the Government Paperwork Elimination Act, signatures on papers originating from the Board are being phased out in favor of a completely electronic record. Consequently, subsequent papers in this case originating at the Board will not have signatures. The signature requirements for the parties have not changed. See, e.g., 37 C.F.R. § 10.18

**EXHIBIT C**

EXHIBIT D

## A. Introduction

The interference is before the board for a decision of priority. Tannas requested oral argument. The panel has determined that Oral argument is not necessary in this case.

For the reasons that follow, Tannas has failed to prove priority by a preponderance of the evidence. Watson preliminary motion 9 for inequitable conduct is dismissed. Tannas motions to suppress 8-13 are dismissed.

## B. Findings of fact[2]

1. Tannas is involved on the basis of Patent 6,204,906 ('906), granted 20 March 2001, based on application 09/274,427, filed 22 March 1999, and Patent 6,380,999 ('999), granted 30 April 2002, based on application 09/812,370, filed 16 March 2001.

2. Tannas has been accorded benefit for the purpose of priority of 6,204,906 ('906), granted 20 March 2001, based on application 09/274,427, filed 22 March 1999 for its involved '999 patent.

3. Watson is involved on the basis of application 09/529,201, filed 18 May 2000.

4. Watson has been accorded benefit for the purpose of priority of PCT/GB98/02586, filed 27 August 1998, GB 9721804.4, filed 15 October 1997, and GB 9814577.4, filed 7 July 1998.

5. Tannas real party in interest is Lawrence E. Tannas, Jr. (Paper 17).

6. Watson real party in interest is Bae Systems Avionics Limited (Paper 3).

---

[2] The following findings of fact as well as those contained elsewhere in this opinion are supported by a preponderance of the evidence.

- 2 -

EXHIBIT D

7. Count 1 is as follows:

Claim 96 of Application 09/529,201

or

Claim 1 of Patent No. 6,204,906

or

Claim 53 of Application 09/529,201

or

Claim 1 of Patent No. 6,380,999

8. Tannas '906 claim 1 is identical to Watson claim 53 and is as follows:

A method of changing the physical shape of an electronic display, wherein the display comprises a front plate, a back plate, and a perimeter seal spacing apart the plates, and wherein image-generating medium is sealed in an area between the plates and within the borders of the perimeter seal, the method comprising the steps of:

cutting the display along desired dimensions resulting in a target display portion and an excess display portion, thereby breaking the perimeter seal of the display; and

applying a first seal between the plates along an exposed edge of the target display portion, the first seal creating a barrier to prevent the image-generating medium from escaping out of the area between the plates, the first seal comprising an adhesive having mechanical properties for preserving cell spacing between the front and back plates.

9. Tannas '999 claim 1 is identical to Watson claim 96 and is as follows:

A method for changing the physical shape of an electronic display, wherein the display comprises a front plate, a back plate, and a perimeter seal spacing apart the plates, and wherein image-generating medium is sealed in an area between the plates and within the borders of the perimeter seal, the method comprising the steps of:

cutting the display along desired dimensions resulting in a target display portion and an excess display portion, thereby breaking the perimeter seal of the display; and

- 3 -

EXHIBIT D

applying a first seal along an exposed edge of the target display portion, the first seal creating a barrier to prevent the image-generating medium from escaping out of the area between the plates.

10.  Count 2 is as follows:

Claim 100 of Application 09/529,201

or

Claim 26 of Patent No. 6,204,906

or

Claim 78 of Application 09/529,201

or

Claim 5 of Patent No. 6,380,999

11.  Tannas '906 claim 26 is identical to Watson claim 78 and is as follows:

A method of changing the physical shape of an electronic display, wherein the display comprises a front plate, a back plate, and a perimeter seal spacing apart the plates, and wherein image-generating medium is contained in an area between the plates and within the borders of the perimeter seal, the display further comprising electronic circuits for operating the display, the method comprising the steps:

cutting the display along desired dimensions resulting in a target display portion and an excess display portion, thereby cutting at least some of the electronic circuits; and

applying a first seal between the plates along an exposed edge of the target display portion;

wherein the target display portion retains the basic functionality of the display.

12.  Tannas '999 claim 5 is identical to Watson claim 100 and is as follows:

A method for changing the physical shape of an electronic display, wherein the display comprises a front plate, a back plate, and a perimeter seal spacing apart the plates, and wherein image-generating medium is sealed in an area between the plates and within the borders of the perimeter seal, the display further comprising electronic circuits for operating the display, the method comprising the steps:

- 4 -

EXHIBIT D

cutting the display along desired dimensions resulting in a target display portion and an excess display portion, thereby cutting at least some of the electronic circuits; and

applying a first seal along an exposed edge of the target display portion.

13. The claims of the parties are:

| | |
|---|---|
| Tannas '906: | 1-43 |
| Tannas '999: | 1-7 |
| Watson: | 53, 78, 88-92 and 94-102 |

14. The claims of the parties which correspond to Count 1 are:

| | |
|---|---|
| Tannas '906: | 1, 29-32 and 36-38 |
| Tannas '999: | 1 and 2 |
| Watson: | 53, 88-90, 96 and 97 |

15. The claims of the parties which correspond to Count 2 are:

| | |
|---|---|
| Tannas '906: | 26 and 39-43 |
| Tannas '999: | 3-7 |
| Watson: | 78, 91, 92, 94, 95 and 98-102 |

16. The claims of the parties which do not correspond to Count 1 or Count 2 are:

| | |
|---|---|
| Tannas '906: | 2-25, 27, 28 and 33-35 |
| Tannas '999: | none |
| Watson: | none |

17. The level of ordinary skill in the art is defined by the prior art of record.

<u>Tannas' priority brief</u>

18. Tannas alleges a date of conception of Count 1 and Count 2 on 22 May 1993 (Paper 156 at 16).

19. Tannas alleges a date of actual reduction to practice of Count 1 and Count 2 on 18 February 1998 and in December 1998 (Paper 156 at 25-26).

- 5 -

EXHIBIT D

## Acts of diligence

20.  Tannas alleges reasonable diligence toward reducing to practice the method of the Counts 1 and 2, from prior to Watson's 23 May 1997 alleged date of conception until Tannas' 18 February 1998 actual reduction to practice date (Paper 156 at 18).

21.  Watson's earliest accorded benefit date is 15 October 1997 (Paper 1).

22.  As the junior party, Tannas must show reasonable diligence from prior to 15 October 1997 until 18 February 1998, or from prior to 23 May 1997 until 18 February 1998 if Watson establishes a date of conception by 23 May 1997.

23.  Tannas' alleged reasonable diligence during the critical period is as follows (Paper 156 at 19-24):

A) In February 1997, Mr. Michael Farmer (Farmer) became a tenant of Mr. Tannas' (Ex. 2031 ¶ 41; Ex. 2039[3] ¶ 3).

B)  Farmer testified that at that time, he was in the automotive glass repair business, and was knowledgeable about glass cutting tools and procedures and adhesives used for sealing glass cracks and repairing automotive glass (Ex. 2039 ¶ 2).

C) From about February 1997 until the end of the summer 1997 Mr. Tannas frequently visited Farmer to discuss glass cutting, glass cutting tools, and adhesives, and to practice cutting glass and testing and applying adhesives (Ex. 2031 ¶ 44; Ex. 2039 ¶ 7).

D) Mr. Tannas' visits became less frequent after the summer of 1997, such that his visits for the following six months were "on average about once a month" (Ex. 2039 ¶ 12).

---

[3] The original copy of Tannas exhibit 2039 was incomplete.  We rely on the resubmitted exhibit 2039 (Paper 213).

EXHIBIT D

E) Beginning in at least March of 1997 until at least February 18, 1998, Mr. Tannas is said to have frequently cut glass samples, and test and apply to glass various adhesives in his laboratory. Part of his experiments involved testing the environmental resistance of the adhesives (Ex. 2031 ¶ 45; Ex. 2032 ¶ 10).

F) Between February 1997 and February 1998 Mr. Tannas, during trade shows, would look for off-the-shelf displays that would be appropriate for the avionics market; a market in which Mr. Tannas believed to be the best opportunity for resized displays (Ex. 2031 ¶ 55).

G) Mr. Tannas recalls attending only two such trade shows during the critical period - one on January 14, 1998 and the other January 26-29, 1998 (Ex. 2031 ¶ 55).

H) Mr. Tannas testified that avionic off-the-shelf displays were very expensive and he could not afford to purchase them (Ex. 2031 ¶ 55).

I) Mr. Tannas also estimated $165,000 in costs associated with facilities and equipment necessary to produce actual resized LCDs and he was therefore unable to pursue resizing LCDs (Ex. 2031 ¶ 51).

J) On 18 February 1998, Mr. Tannas resized and tested three LCDs, by using a scribe and breaking the glass and associated circuits and then applying a seal (Ex. 2031 ¶ 50).

24.  Tannas argues that it is excused from continuously being diligent during the critical period, since Mr. Tannas was busy with business affairs, taking care of his parents and wife, and traveling to various trade shows (Paper 156 at 22-24).

- 7 -

EXHIBIT D

25.  The following allegedly "excused" activities, e.g., activities not related to reducing the inventions to practice, took place during the critical period.  There is at least one specific date associated with the activities:

A) "Between October 5 and 17, 1997" Mr. Tannas presented three day classes in Stockholm, Sweden and London, England (Ex. 2031 ¶ 68).

B) On October 29, 1997, Mr. Tannas presented a seminar and paper on flat panel displays at the University of California, with approximately twenty hours of preparation time (Ex. 2031 ¶ 21).

C) From November 3-7, 1997, Mr. Tannas presented a course at UCLA, with approximately forty hours of preparation time (Ex. 2031 ¶ 22).

D) "Shortly after November 11, 1997" Mr. Tannas was retained as a consultant on a "Cockpit Lighting Trade-off Concept Study", which "took up a considerable amount of my [Mr. Tannas'] time."  Associated with the consulting job Mr. Tannas went on a business trip February 2-4, 1998 and sometime in January (Ex. 2031 ¶47).

E) On November 15, 1997, Mr. Tannas gave a morning presentation, with approximately twenty hours of preparation time (Ex. 2031 ¶ 23).

F) "Between November 20-21, 1997, Mr. Tannas attended a Condex trade show in Las Vegas, Nevada (Ex. 2031 ¶ 68).

G) On January 7, 1998 Mr. Tannas presented a three hour lecture, which involved approximately twenty hours to prepare (Ex. 2031 ¶ 25).

- 8 -

EXHIBIT D

H) "Between January 8-9, 1998" Mr. Tannas attended a Consumer Electronics Show in Las Vegas, Nevada (Ex. 2031 ¶ 68).

I) On 14 January 1998, Mr. Tannas attended the AFCEA trade show in San Diego (Ex. 2031 ¶ 55).

J) "Between January 20-21, 1998", Mr. Tannas attended the Display Works show in San Jose, California (Ex. 2031 ¶ 69).

K) "Between January 26-28, 1998," Mr. Tannas attended the SPIE show in San Jose (Ex. 2031 ¶ 69).

L) "In January 1998" Tannas electronics was engaged by Leo Chen to measure the performance of LCDs in notebook personal computers. The tests were completed around February 17, 1998 (Ex. 2031 ¶ 49).

M) From February 5-6, 1998, Mr. Tannas presented a two day course in Corning, New York, which required approximately one week in preparation time (Ex. 2031 ¶ 26).

N) After the completion of the LCD project in February, Mr. Tannas was told he could keep the LCDs associated with the Chen project, and on February 18, 1998, Mr. Tannas successfully used three LCDs to test his resizing conception, by cutting, using a scribe, at times a wood vice and breaking the display, and then resealing the displays, which resulted in at least one of the displays having cracks along the edge (Ex. 2031 ¶ 50).

26. Tannas alleges in general, e.g., not specific as to dates or facts, the following:

A) "During 1997 and 1998" Mr. Tannas worked on a project for Alan Marr, an importer for Fujitsu, for which he received no compensation, but for which he committed approximately 120 hours during each year. (Ex. 2031 ¶ 65).

- 9 -

EXHIBIT D

B ) "From the summer of 1997 until March 1998" Mr. Tannas authored a manuscript for the John Wiley Encyclopedia of Electrical and Electronics Engineering. (Ex. 2031 ¶ 20).

C) "From December 1997 through March 1998" Mr. Tannas was engaged as a consultant for Teltech resource Network Corporation, in which he attended two separate trade shows (in Los Angeless and Las Vegas) and generated reports, delivered in January 1998 (Ex. 2031 ¶ 24).

D) "From 1993 through 1998" part of Mr. Tannas' time was devoted to working as an unpaid consultant for the CIA (Ex. 2031 ¶ 36).

E) In 1997, Mr. Tannas logged fifty-two hours of flight time on his own private aircraft which he used in his consulting business and for which he was responsible for upkeep and maintenance (Ex. 2031 ¶ 37).

F) Between 1996 and 1998, Mr. Tannas was on the Board of Directors for the Orange County Rotary Club (Ex. 2031 ¶ 62).

G) Mr. Tannas' wife, Carol became incapacitated in late 1997 with an anxiety disorder, such that Mr. Tannas took over some of her secretarial tasks for his consulting business (Ex. 2031 ¶ 5).

H) Mr. Tannas was the sole caretaker of his parents from 1995 until 2000, managing both their personal and financial affairs. Between February 1997 and February 1998, Mr. Tannas frequently drove his parents to the doctor, drug store, and to run other errands. He also managed their financial affairs (Ex. 2031 ¶¶ 6-8).

- 10 -

EXHIBIT D

I) As is understood by Mr. Tannas' statements, in 1997 and 1998 he owned and was responsible for overseeing two industrial buildings, which were heavily mortgaged (Ex. 2031 ¶ 38).

J) Mr. Tannas estimates that in 1997 alone his personal and professional obligations occupied almost four thousand hours of his time (Ex. 2031 ¶ 72).

## C. Decision

Tannas has the burden of establishing priority with respect to Watson by a preponderance of the evidence. Bd.R. 207(a)(2).

Priority of invention belongs to the first party to reduce the invention to practice unless the other party can establish that it was the first to conceive the invention and that it exercised reasonable diligence in later reducing the invention to practice. Eaton v. Evans, 204 F.3d 1094, 1097, 53 USPQ2d 1696, 1698 (Fed. Cir. 2000). Tannas alleges an actual reduction to practice date of 18 February 1998. That date, however, is still subsequent to Watson's earliest effective filing date of 15 October 1997.

Tannas may prevail if Tannas can establish that it was the first to conceive the invention and that it exercised reasonable diligence from a time prior to Watson's conception until its own reduction to practice. 35 U.S.C. § 102(g); Eaton, 204 F.3d at 1097, 53 USPQ2d at 1698. Tannas seeks to establish that it conceived prior to Watson's alleged 23 May 1997 date of conception and that Tannas was reasonably diligent from a time prior to 23 May 1997 until Tannas' actual reduction to practice date of 18 February 1998 (FF[4] 20).

---

[4] FF denotes finding of fact.

EXHIBIT D

Watson argues that Tannas has failed to prove conception or an actual reduction to practice of the invention by a preponderance of the evidence. Because Tannas has failed to sufficiently demonstrate that it was diligent in reducing its invention to practice, we have not and need not consider Watson's arguments regarding conception or actual reduction to practice. For purposes of this discussion, we assume without deciding, that Tannas has demonstrated conception of Counts 1 and 2 on 22 May 1993 and an actual reduction to practice of Counts 1 and 2 on 18 February 1998.

Diligence

Tannas alleges reasonable diligence from a time prior to 23 May 1997, Watson's alleged date of conception, until Tannas' alleged actual reduction to practice date of 18 February 1998. Watson's earliest accorded benefit date is 15 October 1997 (FF 21). For purposes of this discussion, we focus on the period from a time prior to Watson's 15 October 1997 benefit date until Tannas' alleged 18 February 1998 actual reduction to practice date, the "critical period." Unless Tannas demonstrates reasonable diligence during that critical period, there is no occasion to consider Watson's alleged earlier conception.

*Background*

In February 1997, Mr. Michael Farmer (Farmer) became a tenant of Mr. Tannas' (FF 23A). Farmer testified that at that time, he was in the automotive glass repair business, and was knowledgeable about glass cutting tools and procedures and adhesives used for sealing glass cracks and repairing automotive glass (FF 23B). Mr. Tannas made frequent visits to Farmer's shop from February 1997 through the summer of 1997. During those visits, as testified by both

- 12 -

EXHIBIT D

Farmer and Mr. Tannas, the two (1) discussed glass cutting tools and procedures used in the
automotive glass industry, and (2) practiced glass cutting techniques on glass samples (FF 23C).

Also during the various visits between February 1997 through the summer of 1997, and
according to both Farmer and Mr. Tannas, Farmer introduced Mr. Tannas to various adhesives
used in the automotive industry, and gave Mr. Tannas samples from various suppliers, which Mr.
Tannas applied to glass in Farmer's shop (FF 23C). Farmer testified that after the summer of
1997, Mr. Tannas' visits became less frequent, such that for the following six months, Mr.
Tannas visited "on average about once a month" to conduct similar glass cutting and adhesive
related activities (FF 23D).

Mr. Tannas and his wife testified that Mr. Tannas cut glass samples and experimented
with various adhesives in Mr. Tannas' lab from at least March 1997 until 18 February 1998 (FF
23E). Mr. Tannas also testified that he looked for off-the-shelf displays between February 1997
and February 1998 that would be appropriate for the avionics market; a market in which Mr.
Tannas believed to be the best opportunity for resized displays (FF 23F). Mr. Tannas testified
that avionic off-the-shelf displays were very expensive and he could not afford to purchase them
(FF 23H). Mr. Tannas also estimated that it would cost him $165,000 in facilities and equipment
to produce actual resized LCDs and therefore, he was unable to pursue resizing LCDs (FF 23I).

Mr. Tannas' consulting firm was hired by a law firm sometime in January 1998 to test
various laptop or notebook LCDs. The project was completed around 17 February 1998 (FF
25L). When Mr. Tannas inquired what he should do with the LCDs that he tested, a
representative from the law firm told him that he could keep the LCDs. It was then on 18

- 13 -

EXHIBIT D

February 1998, that Mr. Tannas reduced to practice his invention by resizing three LCDS (FF 25N).

Tannas recognizes that there are gaps of inactivity during the critical period. The gaps, Tannas argues, are excusable under the rule of reason, due to Mr. Tannas' personal, and other work related constraints on both his time and money (Paper 156 at 21-24).

*Discussion*

To satisfy the reasonable diligence requirement, the work relied on must ordinarily be directly related to reduction to practice of the invention of the count at issue. Naber v. Cricchi, 567 F.2d 382, 384, 196 USPQ 294, 296 (CCPA 1977). As is explained in Naber, the work relied on must ordinarily be directly related to reduction to practice, but there are exceptions. There may be circumstances when an act is indirectly related to the reduction to practice, such as work in preparation for filing related patent applications, or work required to develop a first invention in order to develop or reduce to practice a second invention. Accordingly, Tannas must demonstrate that the acts performed were directly related, and if not, that the acts were indirectly related to reducing the invention to practice.

For the reasons that follow, Tannas has failed to sufficiently demonstrate that the work relied on: (1) discussing and practicing with Farmer techniques for cutting glass and available types of adhesives, (2) cutting various glass samples, (3) using various adhesives on glass samples, and (4) investigating avionic off-the-shelf displays were activities that were either directly or indirectly related to reducing to practice the invention of Counts 1 and 2.

Count 1 and Count 2 recite a method of changing the physical shape of an electronic display. Each alternative of Count 1 and Count 2 defines the display as comprising a front plate,

- 14 -

EXHIBIT D

e.g., glass, a back plate, e.g., glass, a seal spacing apart the plates, and an image-generating medium in between the plates (FF 7-12). Each alternative of Count 2 further includes, as part of the display, electronic circuits for operating the display (FF 11-12). Count 1 and Count 2 recite the steps of (a) cutting the display (and with respect to Count 2, some of the electronic circuits as well), and (b) applying a first seal along an exposed edge or in between the plates. As discussed in our decision on preliminary motions, the limitation of "a method for changing the physical shape of an electronic display" inherently requires that the electronic display remain operative once its physical shape has changed, which interpretation is consistent with the specifications of both parties (Paper 141 at 38).

An electronic display is more than a sheet of glass and in certain embodiments may not include glass. That simply cutting glass is not directly related to the subject matter of the count is self-evident. Why then are Tannas' extended efforts on practicing cutting glass and using adhesives on cut glass over a long period indirectly related to reducing to practice the invention of the counts? We don't know. Tannas made no explanation in that regard.

The acts of cutting various glass samples, using various techniques to cut glass samples, trying out different types of glass adhesives, and looking for avionic off-the-shelf displays that would be good candidates for a resizing project have not been shown by Tannas to be related, or precursors to reducing the invention to practice.

The difficulty with Tannas' diligence case is that there is no demonstration, supported by sufficient evidence, that Mr. Tannas was performing the tasks of cutting glass samples or experimenting with adhesives and looking for avionic off the shelf displays with the goal in mind of reducing the invention to practice.

- 15 -

EXHIBIT D

For example, the act of practicing cutting glass samples might be considered a reasonable step in preparing to cut an electronic display. However, we cannot assume that that is so. Tannas must explain the need for practicing cutting glass as well as the extent of the practice that would be needed. Here, Tannas has failed to explain why Mr. Tannas needed to practice cutting glass, what the goal was of such practice, or when the practice would be deemed successful and no longer needed. Mr. Tannas' activities of practicing cutting glass that spans a year without an explanation is dissatisfying. It leaves one to wonder why it was necessary for Mr. Tannas to practice cutting glass for so long. Mr. Tannas' practice runs, without any explanation, cannot be relied upon as an excuse for not taking other steps toward reduction to practice. Presumably, one practices and then one moves on to the main event, having had enough practice. Here, we do not know or have a story from Tannas as to what Mr. Tannas' goals were in practicing cutting glass and how those practice runs relate to reducing the invention to practice.

Mr. Tannas' acts of testing adhesives is also bothersome. At least some of the acts of testing adhesives involved testing various adhesives that could withstand extreme temperature variations, e.g., adhesives that could be used in an avionics display - the type of displays that would be the most marketable. Tannas has failed to sufficiently demonstrate that testing adhesives to come up with the best ones that would withstand extreme temperatures for avionic displays was a precursor or related to reduction to practice of the invention. As discussed below, the count is not limited to avionic displays, and being diligent towards reducing an invention to practice does not require an inventor to work toward commercialization of an invention.

We note that when Mr. Tannas actually reduced the invention to practice on 18 February 1998, he resized three LCDs using a scribe and breaking method to resize the displays, and

- 16 -

applying a seal along the exposed edge. The act of reducing his invention to practice, as described by Mr. Tannas in his declaration appeared to be simple and rudimentary. Mr. Tannas does not specifically indicate that he relied on a particular method for cutting the displays that he had used for his practice runs of cutting automotive glass, or that he used a type of adhesive that he had previously tested. We further observe that at least one of the displays that Mr. Tannas cut had many cracks along the edge. This would lead one to believe that the practice runs of cutting glass were not precursors to reducing the invention to practice. If they were, one would expect Mr. Tannas to be able to cut the displays, such that the cut edges would not have cracks.

Moreover, Tannas provides no explanation as to why Mr. Tannas' acts of investigating avionic off the shelf displays was a necessary precursor or requirement for reducing the count(s) to practice. The claims which make up the count(s) do not require an avionics off the shelf display. We note that Tannas' alleged 18 February 1998 reduction to practice of the claimed inventions was performed using LCDs that were not of the avionics off the shelf display type, but were instead suitable for laptop or notebook computers (FF 25 J & L).

To the extent that Tannas excuses not reducing his invention to practice earlier, since he did not have the money to purchase an avionic off the shelf display, or because he did not have enough money for a facility and equipment to produce actual resized LCDs, those arguments are not persuasive. Being diligent towards reducing an invention to practice does not require an inventor to work toward commercialization of an invention. Fitzgerald v. Arbib, 268 F.2d 763, 122 USPQ 530 (CCPA 1959).

For example, it was not necessary that Mr. Tannas wait until he could afford to purchase only those types of displays where his invention would be the most profitable or marketable, e.g.,

- 17 -

EXHIBIT D

in the avionics market. Nor has Tannas explained why it was necessary to have a special facility and equipment that would cost $165,000 to reduce the invention to practice. We note, that Tannas' actual reduction to practice occurred using rudimentary equipment (a scribe and breaking the display) and apparently was not performed in any special facility with any special displays (FF 25L). Lastly, and based on the record before us, there is no explanation that Mr. Tannas could not afford the types of displays that he eventually used to reduce the invention to practice.

For the above reasons, Tannas has failed to sufficiently demonstrate that it was diligently performing acts that were related or precursors to reducing the invention to practice. Accordingly, Tannas was not diligent during the approximately four month critical period, and thus Tannas has not demonstrated, by a preponderance of the evidence, priority of invention.

Although not necessary to our decision, there are still other reasons why Tannas' diligence case is deemed not persuasive. Even if the acts discussed above, for the sake of argument, are considered to be related to, or precursors for reducing the invention to practice, Tannas fails to provide specific dates and facts as to its activities towards reducing the invention to practice.

Evidence of diligence must be specific as to dates and facts. <u>Kendall v. Searles</u>, 173 F.2d 986, 81 USPQ 363 (CCPA 1949). Mr. Tannas testified that from February 1997 up until at least February 1998 he frequently visited with Mr. Farmer, to discuss and practice glass cutting, glass cutting tools, and using adhesives to bond glass. Tannas argues in its brief (Paper 156 at 20), and Farmer testified, that after the summer of 1997 Mr. Tannas' visits became less frequent. Farmer

- 18 -

testified that for "the following six months, he [Mr. Tannas] visited my shop on average about once a month" (FF 23D).

The terms "the following six months", "after the summer of 1997", "frequent", "less frequent" and "on average about once a month" are subject to various interpretations and are not specific. After the summer of 1997 can be interpreted to begin sometime in mid to late September, or anytime thereafter. The following six months may then be, from mid September or end of September, or anytime after until mid to late March, or anytime after. During that time, whatever time that may be, Mr. Tannas' visits, according to Farmer, were less frequent, and "on average about once a month." Less frequent is vague, especially when "frequent" was not defined in the first place. Furthermore, "on average about once a month" is certainly not specific, and does not indicate that Mr. Tannas even visited Farmer at all during the critical period. For example, Mr. Tannas could have visited Farmer two times in September 1997 and two times in March 1998 and no time in between, e.g., during the critical period, and may still be within "on average about once a month." The term "on average" is vague on its own. But, "on average about once a month" makes the time frame indiscernible. Accordingly, Tannas has failed to demonstrate, by a preponderance of the evidence that Tannas even visited Farmer during the critical period.

Tannas argues and Mr. Tannas testified that "beginning in February 1997 until at least February 18, 1998" that he frequently cut glass samples and conducted experiments with adhesives on his own (FF 23E). Tannas has failed to direct our attention to where in the record there are dates or an amount of time associated with the various experiments that Mr. Tannas testified that he performed. Based on the record before us, and as argued by Tannas, there is no

- 19 -

EXHIBIT D

indication as to whether the various experiments were done in one day over the four month critical period, or accomplished everyday during the four month critical period. Tannas provides no explanation, nor directs us to evidence of the record as to what experiments or activities Mr. Tannas performed on what specific dates, or even how long Mr. Tannas dedicated to the experiments and activities outlined by Tannas. Absent a detailed explanation of specific facts and dates, we decline to speculate or make any inferences.

Tannas' failure to account for dates and facts in specific detail of Mr. Tannas's activities of diligence towards reducing the invention to practice is only the tip of the iceberg. From that point on, Tannas' argument, that its inactivity between its active periods are excused due to Mr. Tannas' personal and professional obligations necessarily unravels. Without a starting point of when activities of diligence towards reducing the invention to practice were performed, there can be no review of any gaps of inactivity in the record. The gaps can be everywhere. And as with Tannas' acts of diligence, the other allegedly "excused" activities are not always specific as to dates and facts.

The following is illustrative of the problem. Tannas did provide some specific dates of lectures Mr. Tannas gave and of business obligations Mr. Tannas had during the critical period (FF 25). We assume, for the purpose of this discussion and without deciding, that those activities, on the specific dates given actually occurred. Even so, there are significant gaps of activity of any sort - either towards reducing the invention to practice or of "excused" activities in between the specific dates given.

For example, Tannas does not direct our attention to any specific evidence of any activity between 21 November 1997 and 7 January 1998 (FF 25). Based on the record before us, there

EXHIBIT D

are no specific dates or specific facts of activity of any kind (e.g., towards reducing the invention to practice or of "excused activities") for over a month during the critical period. During that time, Mr. Tannas may have been busy working towards reducing the invention to practice, or taking care of his parents, or his wife, or working on some project or lecture. However, absent a detailed explanation, we decline to speculate or make any inferences.

It is not enough, for example, to argue that Mr. Tannas was a consultant for the CIA from 1993 through 1998 (FF 26D), and then have us assume that during the critical period, Mr. Tannas was actually busy in his capacity as a CIA consultant. We will not make such assumptions. To the extent that Mr. Tannas' declaration incorporates by reference any of the numerous memos or project papers associated with Mr. Tannas' other activities, whereby Tannas may expect us to sort through the information on our own to try and come up with a time line of specific dates of activity, we will not do so. Tannas has failed to direct our attention to any of the numerous project exhibits in its brief in the first place, and thus we need not consider them. Ernst Haas Studio, Inc. v. Palm Press, Inc., 164 F.3d 110, 112, 49 USPQ2d 1377, 1379 (2d Cir. 1999) (declining invitation to scour record to make out a party's case for it). "Judges are not like pigs, hunting for truffles buried in briefs." United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991).

Tannas cannot excuse its lack of evidence under the rule of reason principles. As stated by Judge Rich, speaking for our then reviewing court, the CCPA, in D'Amico V. Koike, 347 F.2d 867, 871, 146 USPQ 132, 135 (CCPA 1965), the principles behind the rule of reason is not a substitute for record evidence ("We agree with the general principles which appellant seems to be advocating, namely, that a rule of reason should be followed .... Nevertheless we think that

- 21 -

EXHIBIT D

appellant is attempting to use those principles as substitutes for record evidence, of which there is very little").

For these additional reasons, Tannas has failed to sufficiently show that it was diligent during the critical period. The reasonable diligence standard "balances the interest in rewarding and encouraging invention with the public's interest in the earliest possible disclosure of innovation." Griffith v. Kanamaru, 816 F.2d 624, 626, 2 USPQ2d 1361, 1362 (Fed. Cir. 1987). Here, Tannas has failed to sufficiently demonstrate that it was reasonably diligent such as to provide the public with the earliest possible disclosure of its invention. Where the first to conceive has failed to demonstrate that it was reasonably diligent during the critical period, there is no reason, or justification, to allow it to prevail over another who is the second to conceive but who has made prompt disclosure by the filing of a patent application.

For the above reasons, Tannas has failed to demonstrate, by a preponderance of the evidence, priority of invention. Accordingly, Watson opposition (Paper 167), Tannas reply (Paper 176), Watson priority and derivation brief (Paper 163), and those briefs associated therewith (Papers 176 and 180) need not and have not been considered.

Watson preliminary motion 9

Watson filed a preliminary motion 9 for inequitable conduct against Tannas (Paper 164). Since judgment is entered against Tannas there is no occasion to consider Watson preliminary motion 9. Watson preliminary motion 9 is dismissed. Bd. R. 125(a).

EXHIBIT D

Tannas motions 8-13 to suppress

Tannas moves to suppress certain evidence and those portions of Watson briefs where Watson relied upon the evidence in connection with Watson's priority brief, Watson opposition to Tannas priority brief and Watson preliminary motion 9 (Papers 195-200).

Since Tannas failed to sufficiently demonstrate priority of invention, by a preponderance of the evidence, there was no occasion to consider Watson priority brief, Watson opposition, or Watson preliminary motion 9. Accordingly, Tannas motions to suppress 8-13 are dismissed.

Miscellaneous

Tannas Exhibit 2062 is apparently a copy of Mr. and Mrs. Tannas' 1040 (income tax return) for 1997. Tannas failed to specifically direct our attention to this exhibit in connection with its priority brief, and thus the exhibit was apparently not relied on. To the extent that the exhibit was referred to by Mr. Tannas in his declaration, neither Mr. Tannas, nor Tannas explain the significance of the exhibit, or how the exhibit relates to diligence activities during the critical period. As this interference will eventually become open for public inspection (Bd. R. 41.6), and since Tannas may not have fully appreciated this fact, or the consequences of having the Tannas' income tax return within the public domain, exhibit 2062 is expunged from the record. All copies of the exhibit are returned to the party Tannas.

**Judgment**

Judgment is entered against Tannas in a separate paper.

- 23 -

EXHIBIT D

cc (via federal express):

Attorney for Tannas (real party in interest - Tannas):

William A. English, Esq. (lead counsel)
COHEN, SAKAGUCHI & ENGLISH LLP
2040 Main Street, 9th Floor
Irvine, CA   92614

Tel: 562-665-3953
Fax: 949-625-8955


Attorney for Watson (real party in interest - Bae Systems Avionics Limited):

Leonard C. Mitchard (lead counsel)
NIXON & VANDERHYE, P.C.
8th Floor
1100 North Glebe Road
Arlington, VA 22201-4714

Tel: 703-816-4005 (lead)
Fax: 703-816-4100

- 24 -

EXHIBIT D

# CALL, JENSEN & FERRELL

A PROFESSIONAL CORPORATION

**LAWYERS**

610 NEWPORT CENTER DRIVE, SUITE 700
NEWPORT BEACH, CALIFORNIA 92660
TELEPHONE (949) 717-3000
FACSIMILE (949) 717-3100
www.calljensen.com

May 12, 2005

OUR FILE NUMBER
BRI03-01

**BY FAX AND FIRST CLASS MAIL**

Neal M. Cohen, Esq.
Cohen Sakaguchi & English LLP
2040 Main Street, 9th Floor
Irvine, CA 92614
Fax No.: (949) 625-8955

Re:  *Tannas v. BAE System Avionics Ltd, et. al*
     U.S.D.C. Central District, Case No. CV-03-5889 (RJK)

Dear Neal:

I am in receipt of your May 7th letter regarding BAE's supplemental discovery. I propose that we meet and confer sometime next week on Wednesday, Thursday or Friday. I also anticipate meeting and conferring with you with respect to the impact of the Patent Board's May 9th ruling concluding that Mr. Tannas' alleged process of resizing LCDs was "unpatentable" because "[Mr.] Tannas has failed to demonstrate, by a preponderance of the evidence, priority of invention." Please let me know your availability next week. In addition, I will try to send you a letter before the end of the week outlining BAE's position in advance of the parties' meet and confer conference.

If you have any additional questions or comments, please let me know.

Very truly yours,

David R. Sugden
For Call, Jensen & Ferrell
A Professional Corporation

DRS:ae

LITIGATION • REAL ESTATE • EMPLOYMENT • TECHNOLOGY • CORPORATE

**EXHIBIT D**

EXHIBIT D

Confirmation Report—Memory Send

```
                            Time    : May-12-2005  03:03pm
                            Tel line 1 : 9497173100
                            Name    : CALL, JENSEN & FERRELL
```

| | | |
|---|---|---|
| Job number | : | 609 |
| Date | : | May-12 03:01pm |
| To | : | 6258955-773 |
| Document Pages | : | 002 |
| Start time | : | May-12 03:01pm |
| End time | : | May-12 03:02pm |
| Pages sent | : | 002 |
| Status | : | OK |

Job number    : 609              *** SEND SUCCESSFUL ***

# CALL, JENSEN & FERRELL
### A PROFESSIONAL CORPORATION
#### LAWYERS
610 NEWPORT CENTER DRIVE, SUITE 700
NEWPORT BEACH, CALIFORNIA 92660
TELEPHONE (949) 717-3000
FACSIMILE (949) 717-3100
www.calljensen.com

## FACSIMILE COVER SHEET - PLEASE DELIVER IMMEDIATELY

| | |
|---|---|
| TO: | Neal M. Cohen, Esq. |
| FACSIMILE NO.: | (949) 625-8955 |
| FROM: | David R. Sugden, Esq. |
| DATE: | May 12, 2005 |
| NUMBER OF PAGES: (including cover) | 2 |
| CJ&F File No.: | BRI03-01 *Tannas v. BAE Systems Avionics Ltd., et al.* |
| MESSAGE: | |

If you do not receive the correct number of pages,
please call Amy Egan at (949) 717-3000.

THE INFORMATION CONTAINED IN THIS FACSIMILE IS CONFIDENTIAL IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHOM IT IS ADDRESSED, AND MAY ALSO BE SUBJECT TO THE ATTORNEY/CLIENT PRIVILEGE. IF YOU ARE NOT THE INTENDED RECIPIENT, OR THE AGENT OR EMPLOYEE RESPONSIBLE FOR DELIVERING IT TO THE INTENDED RECIPIENT, BE ADVISED THAT YOU HAVE RECEIVED THIS DOCUMENT IN ERROR AND THAT ANY USE, DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS FACSIMILE IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE, AND RETURN THE ORIGINAL FACSIMILE AND ANY COPIES TO US AT THE ADDRESS ABOVE VIA THE APPROPRIATE POSTAL SERVICE. WE WILL REIMBURSE ANY COSTS YOU INCUR IN NOTIFYING US AND RETURNING THE FACSIMILE TO US. THANK YOU.

EXHIBIT D

# CALL, JENSEN & FERRELL

### A PROFESSIONAL CORPORATION

### LAWYERS

610 NEWPORT CENTER DRIVE, SUITE 700
NEWPORT BEACH, CALIFORNIA 92660
TELEPHONE (949) 717-3000
FACSIMILE (949) 717-3100
www.calljensen.com

May 16, 2005

OUR FILE NUMBER
BRI03-01

## BY FAX AND FIRST CLASS MAIL

Neal M. Cohen, Esq.
Cohen Sakaguchi & English LLP
2040 Main Street, 9th Floor
Irvine, CA 92614
Fax No.: (949) 625-8955

Re:    *Tannas v. BAE System Avionics Ltd, et. al*
       U.S.D.C. Central District, Case No. CV-03-5889 (RJK)

Dear Neal:

In follow up to our recent correspondence and in anticipation of the parties' meet and confer conference, I am writing to discuss the impact of the May 9th Judgment by the Patent Board wherein it ruled that Mr. Tannas' alleged process of resizing LCDs was "unpatentable" because "[Mr.] Tannas has failed to demonstrate, by a preponderance of the evidence, priority of invention." *Decision*, pg. 22.

Because of the Board's ruling, Tannas can no longer argue that (1) he invented a process for resizing LCDs and obtained patents that are directed to resizing and manufacturing resized LCDs (Compl., ¶ 5); (2) letters sent to Tannas accusing him of misappropriating intellectual property were sent "with no reasonable basis" (Compl., ¶ 10); and (3) Defendants have made false statements that Defendants have worldwide patents directed to resizing LCDs. As a result, Mr. Tannas' only causes of action that can provide monetary relief (counts four and five) are devoid of merit. *See e.g., Grieve v. Tamerin*, 269 F. 3d. 149, 153 (2nd Cir. 2001) (factual and legal issues adjudicated in an earlier action are entitled to a preclusive effect in a later lawsuit). Indeed, it is BAE's position that maintaining these causes of action would constitute a violation of FRCP 11(b)(2) and (3).

Meanwhile, the remaining causes of action in Mr. Tannas' complaint merely ask for declaratory relief that Tannas did not breach a contract, misappropriate trade secrets, or engage in unfair competition. As such, until and unless BAE brings causes of action for breach of contract, misappropriation of trade secrets, or unfair competition, Mr. Tannas' first three causes of action are superfluous.

EXHIBIT D

LITIGATION • REAL ESTATE • EMPLOYMENT • TECHNOLOGY • CORPORATE

EXHIBIT E

Neal M. Cohen, Esq.
May 16, 2005
Page 2


        Based on the foregoing, it is BAE's position that Mr. Tannas has a legal obligation to immediately dismiss his fourth and fifth causes of action. And, if Mr. Tannas agrees to dismiss his entire complaint, BAE will agree to release Mr. Tannas and waive all claims for attorneys' fees, costs, malicious prosecution or abuse of process.

        In the event that Mr. Tannas does not agree to the foregoing proposal, please be advised that BAE will bring a motion to dismiss (in the event that personal jurisdiction is established) the entire complaint and, with respect to the fourth and fifth causes of action, and request an imposition of Rule 11 sanctions.

        With respect to discovery, BAE's supplemental discovery responses are only relevant to the extent that Mr. Tannas does not agree to dismiss his case. Therefore, in order to allow Mr. Tannas sufficient time to deliberate over BAE's offer, I propose that we reschedule the parties' meet and confer conference sometime next week.

        I look forward to hearing from you.

                                Very truly yours,


                                David R. Sugden
                                For Call, Jensen & Ferrell
                                A Professional Corporation

DRS:ae




                                                        EXHIBIT D

# Confirmation Report—Memory Send

|  |  |
|---|---|
| Time | : May-16-2005  10:52am |
| Tel line 1 | : 9497173100 |
| Name | : CALL, JENSEN & FERRELL |

| | | |
|---|---|---|
| Job number | : | 217 |
| Date | : | May-16 10:51am |
| To | : | 6258955-773 |
| Document Pages | : | 003 |
| Start time | : | May-16 10:51am |
| End time | : | May-16 10:52am |
| Pages sent | : | 003 |
| Status | : | OK |

Job number     : 217                    **\*\*\* SEND SUCCESSFUL \*\*\***

## CALL, JENSEN & FERRELL
### A PROFESSIONAL CORPORATION
### LAWYERS
610 NEWPORT CENTER DRIVE, SUITE 700
NEWPORT BEACH, CALIFORNIA 92660
TELEPHONE (949) 717-3000
FACSIMILE (949) 717-3100
www.calljensen.com

## FACSIMILE COVER SHEET – PLEASE DELIVER IMMEDIATELY

| | |
|---|---|
| TO: | Neal M. Cohen, Esq. |
| FACSIMILE NO.: | (949) 625-8955 |
| FROM: | David R. Sugden, Esq. |
| DATE: | May 16, 2005 |
| NUMBER OF PAGES: (including cover) | 3 |
| CJ&F File No.: | BRI03-01 |
| | *Tannas v. BAE Systems Avionics Ltd., et al.* |
| MESSAGE: | Please see correspondence attached. |

If you do not receive the correct number of pages,
please call Amy Egan at (949) 717-3000.

THE INFORMATION CONTAINED IN THIS FACSIMILE IS CONFIDENTIAL, IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHOM IT IS ADDRESSED, AND MAY ALSO BE SUBJECT TO THE ATTORNEY-CLIENT PRIVILEGE. IF YOU ARE NOT THE INTENDED RECIPIENT, OR THE AGENT OR EMPLOYEE RESPONSIBLE FOR DELIVERING IT TO THE INTENDED RECIPIENT, BE ADVISED THAT YOU HAVE RECEIVED THIS DOCUMENT IN ERROR AND THAT ANY USE, DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS FACSIMILE IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE, AND RETURN THE ORIGINAL FACSIMILE AND ANY COPIES TO US AT THE ADDRESS ABOVE, VIA THE APPROPRIATE POSTAL SERVICE. WE WILL REIMBURSE ANY COSTS YOU INCUR IN NOTIFYING US AND RETURNING THE FACSIMILE TO US. THANK YOU.

EXHIBIT D

## David R. Sugden

| | |
|---|---|
| **From:** | Neal M. Cohen [nmc@cohen-sak.com] |
| **Sent:** | Tuesday, May 17, 2005 3:52 PM |
| **To:** | David R. Sugden |
| **Subject:** | Re: Tannas v BAE |

Mr. Sugden:

I apologize for not getting back to you earlier today.  We do not want to postpone the meet-and-confer.  Let's still meet tomorrow (Wed) at my office at 10:00 am.  If you have any questions, please call.  Thank you.

Neal M. Cohen
Cohen Sakaguchi & English LLP
2040 Main Street, 9th Floor
Irvine, CA  92614
TEL (949) 724-1849
FAX (949) 625-8955
nmc@cohen-sak.com
http://www.cohen-sak.com

The information in this transmittal (including attachments, if any) is privileged and confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.
----- Original Message -----
**From:** David R. Sugden
**To:** Neal M. Cohen
**Sent:** Tuesday, May 17, 2005 3:46 PM
**Subject:** RE: Tannas v BAE

Neal:

I have not heard whether, per my letter, you would like to reschedule the parties' meet and confer conference so that your client can decide how he would like to proceed per my client's settlement offer.

Please let me know whether you would like to reschedule.

Thanks,

Dave


**David R. Sugden, Esq.**
**CALL, JENSEN & FERRELL**
610 NEWPORT CENTER DRIVE, SUITE 700
NEWPORT BEACH, CALIFORNIA 92660
TELEPHONE: (949) 717-3000
FACSIMILE: (949) 717-3100
dsugden@calljensen.com

**EXHIBIT F**

6/13/2005

**EXHIBIT D**

www.calljensen.com

The preceding email message (including any attachments) contains information that may be confidential, protected by the attorney-client or other applicable privileges, or constitutes non-public information.  It is intended to be conveyed only to the designated recipient(s).  If you are not an intended recipient of this message, please notify the sender by replying to this message and then delete it from your system.  Use, dissemination, or reproduction of this message by unintended recipients is not authorized and may be unlawful.

-----Original Message-----
**From:** Neal M. Cohen [mailto:nmc@cohen-sak.com]
**Sent:** Thursday, May 12, 2005 4:24 PM
**To:** David R. Sugden; Scott J. Ferrell
**Cc:** English, Bill
**Subject:** Tannas v BAE

Mr. Sugden:

Thank you for your fax earlier today.  I am available Wednesday May 18 at 10:00 am at my office.  Please confirm by email that you are available then, in which case we will conduct the meet-and-confer related to BAE's supplemental discovery responses.  I would also welcome any discussions regarding the Board's decision in the interference.


Neal M. Cohen
Cohen Sakaguchi & English LLP
2040 Main Street, 9th Floor
Irvine, CA  92614
TEL (949) 724-1849
FAX (949) 625-8955
nmc@cohen-sak.com
http://www.cohen-sak.com


The information in this transmittal (including attachments, if any) is privileged and confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

6/13/2005                                          EXHIBIT D

**David R. Sugden**

| | |
|---|---|
| **From:** | Neal M. Cohen [nmc@cohen-sak.com] |
| **Sent:** | Thursday, May 19, 2005 4:27 PM |
| **To:** | David R. Sugden |
| **Cc:** | Scott J. Ferrell; English, Bill |
| **Subject:** | Tannas v BAE CV 03-5889 RJK (FMOx) |

Mr. Sugden:

Today we filed a First Amended Complaint in the above-referenced Tannas v BAE action. I will serve a copy by regular mail today. Please note:

1. We added a cause of action under 35 U.S.C. § 146, and accordingly named BAE Systems, Plc as a defendant;

2. The 4th and 5th causes of action are being maintained (based on facts other than the statements to Thomas Electronics);

3. Although we believe the grounds for personal jurisdiction are well-pleaded, we intend to follow-through on the motion to compel (we will wait until Monday for verified supplemental responses from BAE and/or an agreement not to challenge personal jurisdiction before we serve Tannas' portion of the joint stipulation).

4. I presume your firm will accept service of the Summons and First Amended Complaint for BAE Systems, Plc, so I will include the Summons in the mail. If not, please let me know.

If you have any questions, or would like to discuss these matters, please call me or email me.

Sincerely,

Neal M. Cohen
Cohen Sakaguchi & English LLP
2040 Main Street, 9th Floor
Irvine, CA  92614
TEL (949) 724-1849
FAX (949) 625-8955
nmc@cohen-sak.com
http://www.cohen-sak.com

The information in this transmittal (including attachments, if any) is privileged and confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

EXHIBIT D

**EXHIBIT G**

# CALL, JENSEN & FERRELL

### A PROFESSIONAL CORPORATION

## LAWYERS

610 NEWPORT CENTER DRIVE, SUITE 700
NEWPORT BEACH, CALIFORNIA 92660
TELEPHONE (949) 717-3000
FACSIMILE (949) 717-3100
www.calljensen.com

June 7, 2005

OUR FILE NUMBER
BRI03-01

**BY E-MAIL AND FAX**

Neal M. Cohen, Esq.
Cohen Sakaguchi & English LLP
2040 Main Street, 9th Floor
Irvine, CA 92614
Fax No.: (949) 625-8955

      Re:   *Tannas v. BAE System Avionics Ltd, et. al*
               U.S.D.C. Central District, Case No. CV-03-5889 (RJK)

Dear Neal:

    I am writing to request that we meet and confer by telephone tomorrow regarding: (1) the intended 12(b)(6) Motions to Dismiss that Defendants intend to file in response to the First Amended Complaint; and (2) a proposed stipulation that Defendants intend to offer that may resolve certain personal jurisdiction issues.

    Please notify me if you are available at 11:00 a.m. tomorrow morning to speak with Dave Sugden and me.

    Thank you.

                        Very truly yours,

                        Scott J. Ferrell
                        For Call, Jensen & Ferrell
                        A Professional Corporation

SJF:dr

**EXHIBIT H**

EXHIBIT D

# Confirmation Report—Memory Send

```
                              Time      : Jun-07-2005  12:08pm
                              Tel line 1 : 9497173100
                              Name      : CALL, JENSEN & FERRELL
```

| | | |
|---|---|---|
| Job number | : | 152 |
| Date | : | Jun-07 12:05pm |
| To | : | 6258955-773 |
| Document Pages | : | 002 |
| Start time | : | Jun-07 12:07pm |
| End time | : | Jun-07 12:08pm |
| Pages sent | : | 002 |
| Status | : | OK |

Job number     : 152          *** SEND SUCCESSFUL ***

# CALL, JENSEN & FERRELL
A PROFESSIONAL CORPORATION
## LAWYERS
610 NEWPORT CENTER DRIVE, SUITE 700
NEWPORT BEACH, CALIFORNIA 92660
TELEPHONE (949) 717-3000
FACSIMILE (949) 717-3100
www.calljensen.com

## FACSIMILE COVER SHEET - PLEASE DELIVER IMMEDIATELY

| | |
|---|---|
| **TO:** | Neal M. Cohen, Esq. |
| **FACSIMILE NO.:** | (949) 625-8955 |
| **FROM:** | Scott J. Ferrell, Esq. |
| **DATE:** | June 7, 2005 |
| **NUMBER OF PAGES:** (including cover) | 2 |
| **CJ&F File No.:** | BRI03-01 *Tannas v. BAE Systems Avionics Ltd., et al.* |
| **MESSAGE:** | *Please see my June 7, 2005 correspondence attached.* |

If you do not receive the correct number of pages,
please call Denise Reigel at (949) 717-3000.

THE INFORMATION CONTAINED IN THIS FACSIMILE IS CONFIDENTIAL, IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED, AND MAY ALSO BE SUBJECT TO THE ATTORNEY-CLIENT PRIVILEGE. IF YOU ARE NOT THE INTENDED RECIPIENT, OR THE AGENT OR EMPLOYEE RESPONSIBLE FOR DELIVERING IT TO THE INTENDED RECIPIENT, BE ADVISED THAT YOU HAVE RECEIVED THIS DOCUMENT IN ERROR AND THAT ANY USE, DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS FACSIMILE IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE, AND RETURN THE ORIGINAL FACSIMILE AND ANY COPIES TO US AT THE ADDRESS ABOVE VIA THE APPROPRIATE POSTAL SERVICE. WE WILL REIMBURSE ANY COSTS YOU INCUR IN NOTIFYING US AND RETURNING THE FACSIMILE TO US. THANK YOU.

EXHIBIT D

# COHEN SAKAGUCHI & ENGLISH LLP

**Neal M. Cohen**
(949) 724-1849
nmc@cohen-sak.com

**James K. Sakaguchi**
(760) 803-5967
jks@cohen-sak.com

2040 MAIN STREET, 9TH FLOOR
IRVINE, CALIFORNIA 92614
TEL: (949) 724-1849
FAX: (949) 625-8955
WWW.COHEN-SAK.COM

**William A. English**
(562) 665-3953
wae@cohen-sak.com

**Michael S. Davidson***
(949) 677-7756
msd@cohen-sak.com

* Of Counsel

## FACSIMILE TRANSMITTAL FORM

| **To:**<br>Mr. Scott Ferrell<br>Mr. David Sugden | **Fax Number:**<br>949 717-3100 | **Phone Number:**<br>949 717-3000 |
|---|---|---|
| **From:**<br>Neal M. Cohen | **Fax Number:**<br>949-625-8955 | **Phone Number:**<br>949 724-1849 |
| **Re:**<br>Tannas v BAE 03-5889 (RJK) | **Date/Time sent:**<br>June 8, 2005 08:00 PST | **No. of Pages:**<br>2 |
| **Client Name:**<br>Tannas | **Client Matter No.:**<br>Tannas v BAE | |

Mr. Ferrell:

Thank you for your fax dated June 7, 2005. First let me remind you that BAE is in violation of the Court's Order requiring BAE to provide verified supplementary responses by a specific deadline. I have met and conferred with Mr. Sugden about BAE's failure to comply with that Order, and informed him that we intended to file a motion to compel and that we would seek sanctions, and that we were going to file a cause of action under 35 U.S.C. § 146. We then filed the First Amended Complaint, including the § 146 cause of action. Shortly thereafter, the Court issued an Order stating that BAE's motion to dismiss for lack of personal jurisdiction was moot.

BAE did not initially provide verified responses by the deadline to respond to Tannas' interrogatories. BAE did not provide verified responses to the interrogatories before the original hearing date on Tannas' motion to compel, despite a representation to the court in the Joint Stipulation that BAE would serve them by the hearing date. After the court took Tannas' motion to compel under submission, and issued an Order requiring BAE to serve verified supplemental responses, BAE did not provide them by the court-ordered deadline. To this date, BAE still has not provided verified responses to any of Tannas' interrogatories.

At about noon on June 7, 2005, in the above-referenced fax you sent to my attention, BAE is now asserting that it intends to file more 12(b) motions (although it is unclear under which section of 12(b)). June 7, 2005 was the deadline for the original named defendants to file their Answer to the First Amended Complaint, in accordance with F.R.Civ.P. Rule 15(a). Based on your fax, I presume no such Answer has been filed. Please be on notice that Tannas may seek a default judgment against the original BAE defendants on that basis.

EXHIBIT D

**EXHIBIT I**

Mr. Scott Ferrell
June 8, 2005
Page 2

As to those same original defendants, BAE has no basis for filing any 12(b) motions. The Court has mooted the personal jurisdiction issue, and any other 12(b) motions have been waived. Furthermore, even if BAE intended to file any such motions, the deadline to meet-and-confer expired last Thursday, June 2, 2005. In the Court's recent Order mooting BAE's 12(b) motion, the Court stated that the parties were to follow the rules. Presumably, that would include Local Rule 7-3 (which sets forth the deadline for BAE to meet and confer before filing a 12(b) motion), and F.R.Civ.P. Rule 15(a), which sets forth the deadline for BAE to have filed its Answer. I also remind you that BAE failed to comply with LR 7-3 once already, when BAE filed its original 12(b) motion. I do not expect the Court would be so lenient this time considering what has since transpired, including BAE's failure to provide the Court-Ordered verified responses to interrogatories.

If your above-referenced fax is a request to meet and confer regarding BAE Systems Plc, please clarify that to be the case, and also specify what 12(b) motions you intend to file on behalf of BAE Systems, Plc, and the bases for the motions. We will meet and confer according to the federal and local rules, although we cannot imagine what 12(b) motion BAE Systems, Plc is even considering. If we do meet and confer, doing so will have no effect on BAE's other acts or lack thereof, including the original defendants' failure to provide verified responses to interrogatories, and failure to file an Answer.

As to a specific time to meet and confer regarding BAE Systems, Plc, both Bill and I are in depositions this entire week, starting with today (June 7, 2005) and through Friday, June 10, 2005. Therefore, the first available opportunity we have is Monday June 13, 2005. As of now, we are available June 13th or June 14th. If necessary, Bill may be available after 6:00 pm Thursday or Friday this week. If you can email us a proposed date and time, we will be able to respond to your request by email.

Sincerely,

Neal M. Cohen

*The information in this transmittal (including attachments, if any) is privileged and confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.*

EXHIBIT D

# CALL, JENSEN & FERRELL

A PROFESSIONAL CORPORATION

## LAWYERS

610 NEWPORT CENTER DRIVE, SUITE 700
NEWPORT BEACH, CALIFORNIA 92660
TELEPHONE (949) 717-3000
FACSIMILE (949) 717-3100
www.calljensen.com

June 8, 2005

OUR FILE NUMBER
BRI03-01

## BY FACSIMILE AND BY U.S. MAIL

Neal M. Cohen, Esq.
William A. English, Esq.
Cohen Sakaguchi & English LLP
2040 Main Street, 9th Floor
Irvine, CA 92614
Fax No.: (949) 625-8955

      Re:   *Tannas v. BAE System Avionics Ltd, et. al*
            <u>U.S.D.C. Central District, Case No. CV-03-5889 (RJK)</u>

Gentlemen:

     I am in receipt of your letter of today's date. Please allow the following to constitute Defendants' response:

     **First**, with respect to discovery, you have made the assertion that "[t]o this date, BAE still has not provided verified responses to any of Tannas' interrogatories." As you should recall, after the Court explained that "Plaintiff has misconstrued the Court's leniency in allowing Plaintiffs an opportunity to assert personal jurisdiction over Defendants by way of 'written interrogatory,'" it required Defendants to provide supplemental discovery responses to the interrogatories by May 5, 2005.

     On April 19, Mr. Ferrell wrote to Mr. Cohen and explained that Defendants had begun to gather information to comply with the order and "[b]ecause both Mr. Sugden and I are actively engaged in trial preparation in another matter, and in order to enable us to provide reasoned and complete responses to plaintiff's interrogatories, we request a brief extension so that our verified supplemental responses will be due on or before June 6th, 2005." Without providing any explanation or justification, Mr. Cohen denied Mr. Ferrell's request the next day. Mr. Ferrell then requested an even shorter extension (a ten day extension) so that our responses would be due on May 16. Again, Mr. Cohen refused to grant such a courtesy. *See e.g., In re Snyder*, 472 U.S. 634 (1985) ("All persons involved in the judicial process--judges, litigants, witnesses, and court officers--owe a duty of courtesy to all other participants."); *see also Freshman, Mulvaney, Marantz, Comsky, Kahan, & Deutsch v. Superior Court*, 173 Cal. App. 3d 223 (1985)

EXHIBIT D

**EXHIBIT J**

Neal M. Cohen, Esq.
William A. English, Esq.
June 8, 2005
Page 2

("[R]easonable requests for extension of time [to respond to discovery requests] should be freely granted by counsel. . . .").

Because Mr. Cohen would not afford Defendants a reasonable extension to respond, Defendants provided timely responses. However, the responses explained that additional time was needed and that further responses would be supplemented. *See e.g.,* Defendant's Response To Interrogatory 1 (". . . Defendants are still calculating the precise dollar amount and will supplement these responses once it obtains this information) . . ."). In, what I perceived to be an effort to avoid a motion to compel, I went to your offices on May 18 to discuss what interrogatories would be supplemented. In addition to discussing the discovery, you explained that, when an amended complaint would be filed, Plaintiffs would be (1) dismissing the fourth cause of action for intentional interference with prospective economic advantage, (2) take another look to determine whether Plaintiffs will dismiss the fifth cause of action as well, and (3) adding a cause of action under 35 U.S.C. § 146. In the meantime, I explained that Defendants would either (1) try to come to an agreement with respect to personal jurisdiction, or (2) provide supplemental discovery responses. We informally agreed that I would make my best efforts to provide such information on May 23.

However, on May 19 (the day after our meet and confer), Mr. Cohen sent me an email explaining that an amended complaint had been filed. In addition, contrary to what you had said less than a day earlier, Plaintiff did not dismiss the fourth or fifth cause of action. Instead, the First Amended Complaint simply removes the factual allegations that had made those causes of action barred by the statute of limitations.

On May 25, the Court noted the filing of Plaintiff's First Amended Complaint and agreed that its filing rendered Defendants' motion to dismiss the *first* complaint moot. In addition, the filing of the First Amended Complaint mooted Defendants' obligation to respond to Plaintiff's discovery - since the purpose of the discovery was to provide Plaintiff the ability to "allege new grounds for Defendants' minimum contacts." Accordingly, the assertion that Defendants have failed to comply with their discovery obligations is incorrect.

**Second,** the assertion that Defendants have failed to timely respond the the First Amended Complaint is also incorrect. As you should recall, you asked me via email on May 19 whether I would accept service on behalf of BAE Systems, Plc. When I agreed, you wrote that "I will have another copy of the Summons and First Amended Complaint delivered to your office." Indeed, on May 24, you delivered a new summons directed "TO: THE ABOVE-NAMED *DEFENDANTS*." Since you served *all defendants* by courier on May 24, their responsive pleading is due on June 13. It is for that reason that we requested, pursuant to Local Rule 7-3 that you meet and confer with our office today. The assertion that two of the three defendants should have already responded, coupled with the threat that "Tannas may seek a default judgment against the original BAE defendants" is not well taken - especially given that the First Amended Complaint "goes beyond the scope of the Court's December 1, 2004 Order,

EXHIBIT D

Neal M. Cohen, Esq.
William A. English, Esq.
June 8, 2005
Page 3

which only allowed Plaintiffs to allege new grounds for Defendants' minimum contacts." *See also Pena v. Seguros La Comercial, S.A.*, 770 F. 2d 811, 814 (9th Cir. 1985) ("It is the policy of the law that, wherever possible, cases should be decided on their merits. As a result, any doubts as to the propriety of a default are usually resolved against the party seeking a default judgment.").

**Third,** the assertion that "BAE has no basis for filing any 12(b) motions" is incorrect as well. As you may recall, Defendants filed a 12(b)(6) motion to the original complaint; however, given that the Court only examined the 12(b)(2) issue, it never ruled on the 12(b)(6) issues. Accordingly, the same arguments will be made on behalf of Defendants to the First Amended Complaint as well. In addition, as the Court noted, the addition of a new party and new cause of action was improper. Accordingly, Defendants will be moving to dismiss that cause of action as well.

With respect to personal jurisdiction, it is Defendants' position that BAE Avionics will not contest that it is subject to personal jurisdiction and that BAE Electronics will contest that it is subject to personal jurisdiction.

**Fourth, and finally,** given that both of you are not available to meet and confer together until Defendants' last day to respond to the First Amended Complaint (June 13), I propose that (1) I come to your offices to meet with Bill after six on Thursday or Friday, or (2) the parties stipulate that Defendants respond to the First Amended Complaint on June 17 (and that we meet together on June 13). I believe that a meet and confer conference would be helpful to see whether any of the foregoing disputes can be informally resolved without Court intervention. Please let me know your preference and I will make myself available.

Please let me know if you have any additional questions or comments.

Very truly yours,

David R. Sugden
For Call, Jensen & Ferrell
A Professional Corporation

DRS:ae

EXHIBIT D

# Confirmation Report—Memory Send

Time       : Jun-08-2005   05:20pm
Tel line 1 : 9497173100
Name       : CALL, JENSEN & FERRELL

| | | |
|---|---|---|
| Job number | : | 178 |
| Date | : | Jun-08 05:18pm |
| To | : | 6258955-773 |
| Document Pages | : | 004 |
| Start time | : | Jun-08 05:18pm |
| End time | : | Jun-08 05:20pm |
| Pages sent | : | 004 |
| Status | : | OK |

Job number       : 178                   *** SEND SUCCESSFUL ***

# CALL, JENSEN & FERRELL
### A PROFESSIONAL CORPORATION
### LAWYERS
#### •10 NEWPORT CENTER DRIVE, SUITE 700
#### NEWPORT BEACH, CALIFORNIA 92660
#### TELEPHONE (949) 717-3000
#### FACSIMILE (949) 717-3100
#### www.calljensen.com

## FACSIMILE COVER SHEET - PLEASE DELIVER IMMEDIATELY

| | |
|---|---|
| **TO:** | Neal M. Cohen, Esq.<br>William A. English, Esq. |
| **FACSIMILE NO.:** | (949) 625-8955 |
| **FROM:** | David R. Sugden, Esq. |
| **DATE:** | June 8, 2005 |
| **NUMBER OF PAGES:**<br>(including cover) | 4 |
| **CJ&F File No.:** | BR103-01<br>*Tannas v. BAE Systems Avionics Ltd., et al.* |
| **MESSAGE:** | Please see correspondence attached. |

If you do not receive the correct number of pages,
please call Amy Egan at (949) 717-3000.

THE INFORMATION CONTAINED IN THIS FACSIMILE IS CONFIDENTIAL, IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHOM IT IS ADDRESSED, AND MAY ALSO BE SUBJECT TO THE ATTORNEY-CLIENT PRIVILEGE. IF YOU ARE NOT THE INTENDED RECIPIENT, OR THE AGENT OR EMPLOYEE RESPONSIBLE FOR DELIVERING IT TO THE INTENDED RECIPIENT, BE ADVISED THAT YOU HAVE RECEIVED THIS DOCUMENT IN ERROR AND THAT ANY USE, DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS FACSIMILE IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE, AND RETURN THE ORIGINAL FACSIMILE AND ANY COPIES TO US AT THE ADDRESS ABOVE VIA THE APPROPRIATE POSTAL SERVICE. WE WILL REIMBURSE ANY COSTS YOU INCUR IN NOTIFYING US AND RETURNING THE FACSIMILE TO US. THANK YOU.

EXHIBIT D

## David R. Sugden

**From:** Neal M. Cohen [nmc@cohen-sak.com]
**Sent:** Thursday, June 09, 2005 7:47 AM
**To:** David R. Sugden; Scott J. Ferrell
**Cc:** English, Bill
**Subject:** Tannas v BAE

Mr. Sugden:

Thank you for your fax yesterday. We will agree to meet and confer on Monday. However, our position is that the original defendants have waived all 12b motions due to LR 7-3 and FRCivP 15(a). We will discuss allowing a reasonable extension of time for the original defendants to file an ANSWER only, not to file any motions. As for BAE Systems, Plc, we will meet and confer, but only if you can provide us with the subjects on which you would like to discuss. What motion(s) is BAE Systems, Plc contemplating filing? We cannot have a meaningful meeting unless we know what you want to meet about.

Finally, any stipulation regarding extending the time to file an Answer must be approved by the Court pursuant to the Local Rules. We would expect BAE to draft the stipulation, and it will include a statement from Plaintiffs that Plaintiffs agree to the extension for the original defendants only to file an ANSWER.

Please let us know if this is acceptable and if so, when you are available on Monday.

Sincerely,

Neal M. Cohen
Cohen Sakaguchi & English LLP
2040 Main Street, 9th Floor
Irvine, California 92614
TEL: (949) 724-1849
FAX: (949) 625-8955
EMAIL: nmc@cohen-sak.com
http://www.cohen-sak.com

The information in this transmittal (including attachments, if any) is privileged and confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

EXHIBIT D

**EXHIBIT K**

6/13/2005

## David R. Sugden

**From:** David R. Sugden
**Sent:** Thursday, June 09, 2005 11:00 AM
**To:** 'Neal M. Cohen'; Scott J. Ferrell
**Cc:** English, Bill
**Subject:** RE: Tannas v BAE

Neal:

I have a meeting between 10:30 and 12:30 on Monday, but I am otherwise available. Please find attached a proposed stipulation. It provides that Defendants' responsive pleading will be filed on June 17 and, per your email below, articulates that it is Plaintiffs' position that the original defendants have waived their right to file any FRCP 12(b) motions.

With respect to BAE Systems, Plc., we anticipate filing a motion to dismiss the party because it was added without requesting leave of Court. In addition, it is not subject to personal jurisdiction. Finally, it is Defendants' position that the forum is improper for your 146 action (in addition to the fact that leave of court was not obtained before adding that cause of action).

Please sign and return the stipulation and I will have it filed with the Court. In addition, please (1) sign and return the stipulation and I will have it filed with the Court, and (2) let me know what time is convenient to meet and confer.

Dave

**David R. Sugden, Esq.**
CALL, JENSEN & FERRELL
610 NEWPORT CENTER DRIVE, SUITE 700
NEWPORT BEACH, CALIFORNIA 92660
TELEPHONE: (949) 717-3000
FACSIMILE: (949) 717-3100
dsugden@calljensen.com
www.calljensen.com

The preceding email message (including any attachments) contains information that may be confidential, protected by the attorney-client or other applicable privileges, or constitutes non-public information. It is intended to be conveyed only to the designated recipient(s). If you are not an intended recipient of this message, please notify the sender by replying to this message and then delete it from your system. Use, dissemination, or reproduction of this message by unintended recipients is not authorized and may be unlawful.

-----Original Message-----
**From:** Neal M. Cohen [mailto:nmc@cohen-sak.com]
**Sent:** Thursday, June 09, 2005 7:47 AM
**To:** David R. Sugden; Scott J. Ferrell
**Cc:** English, Bill
**Subject:** Tannas v BAE

Mr. Sugden:

Thank you for your fax yesterday. We will agree to meet and confer on Monday. However, our position is that the original defendants have waived all 12b motions due to LR 7-3 and FRCivP 15(a). We will discuss allowing a reasonable extension of time for the original defendants to file an ANSWER only, not to file any motions. As for BAE

**EXHIBIT L**

Systems, Plc, we will meet and confer, but only if you can provide us with the subjects on which you would like to discuss. What motion(s) is BAE Systems, Plc contemplating filing? We cannot have a meaningful meeting unless we know what you want to meet about.

Finally, any stipulation regarding extending the time to file an Answer must be approved by the Court pursuant to the Local Rules. We would expect BAE to draft the stipulation, and it will include a statement from Plaintiffs that Plaintiffs agree to the extension for the original defendants only to file an ANSWER.

Please let us know if this is acceptable and if so, when you are available on Monday.

Sincerely,

Neal M. Cohen
Cohen Sakaguchi & English LLP
2040 Main Street, 9th Floor
Irvine, California  92614
TEL: (949) 724-1849
FAX: (949) 625-8955
EMAIL: nmc@cohen-sak.com
http://www.cohen-sak.com

The information in this transmittal (including attachments, if any) is privileged and confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

EXHIBIT D

1  SCOTT J. FERRELL, Bar No. 202091
2  DAVID R. SUGDEN, Bar No. 218465
   CALL, JENSEN & FERRELL
3  A Professional Corporation
   610 Newport Center Drive, Suite 700
4  Newport Beach, CA 92660
   sferrell@calljensen.com
5  dsugden@calljensen.com
   (949) 717-3000 (Phone)
6  (949) 717-3100 (Fax)
7
   Attorneys for Defendants BAE Systems Avionics Limited
8    and BAE Systems Electronics Limited
9
10              UNITED STATES DISTRICT COURT
11             CENTRAL DISTRICT OF CALIFORNIA
12

| | |
|---|---|
| 13  Lawrence E. Tannas, Jr., an individual dba as Tannas Electronics; Tannas Electronic Displays, Inc., a California corporation, | Case No. CV-03-5889 RJK (FMOx) |
| 14 | **STIPULATION REGARDING RESPONSIVE PLEADING DEADLINES** |
| 15          Plaintiffs, | |
| 16          vs. | |
| 17  BAE Systems Avionics Limited, a British corporation; BAE Systems Electronics Limited, a British corporation, | |
| 18 | |
| 19 | |
| 20          Defendants. | |

21
22                        Complaint Filed:  August 19, 2003
                          Trial Date:       None Set
23
24       IT IS HEREBY STIPULATED by and between Plaintiffs Lawrence E. Tannas,
25  Jr. and Tannas Electronic Displays, Inc. ("Plaintiffs") and Defendants BAE Systems
26  Avionics Limited, BAE Systems Electronics Limited, and BAE Systems, Plc.
27  ("Defendants") by and through their undersigned counsel of record, with respect to the
28  responsive pleading date in the above-captioned matter, as follows:

CALL, JENSEN &
FERRELL
A PROFESSIONAL
CORPORATION

BRJ03-01:154059_1:6-9-05                        - 1 -

                                                              EXHIBIT D

1     WHEREAS, Plaintiffs filed a First Amended Complaint on May 19, 2005;

2

3     WHEREAS, in order to meet and confer over various issues, the parties agree

4  that Defendants' responsive pleading to the First Amended Complaint shall be filed and

5  served by no later than June 17, 2005;

6

7     WHEREAS, it is Plaintiffs' position that Defendants BAE Systems Avionics

8  Limited and BAE Systems Electronics Limited have waived all FRCP 12(b) motions

9  due to Local Rule 7-3 and FRCP 15;

10

11     WHEREAS, it is Defendants' position that Defendants have not waived their

12  right to file FRCP 12(b) motions;

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28

ALL, JENSEN &
FERRELL
PROFESSIONAL
ORPORATION

BRI03-01:154059_1:6-9-05          - 2 -

STIPULATION REGARDING RESPONSIVE PLEADING DEADLIN

EXHIBIT D

1       WHEREFORE, the parties hereby stipulate that counsel for the parties shall meet

2  and confer at a mutually convenient time on June 13, 2005, in an effort to narrow the

3  issues that will be raised in Defendants' responsive pleadings.  In the event that the

4  meet and confer does not resolve all issues, the parties further stipulate that (1)

5  Defendants responsive pleadings shall be filed and served no later than June 17, 2005,

6  and (2) Plaintiffs reserve their right to argue that Defendants BAE Systems Avionics

7  Limited and BAE Systems Electronics Limited have waived all FRCP 12(b) motions

8  due to Local Rule 7-3 and FRCP 15 and only have the right to file an Answer.

9

10  Dated:  June 9, 2005                   CALL, JENSEN & FERRELL

11                                   A Professional Corporation

12                                   SCOTT J. FERRELL
                                 DAVID R. SUGDEN

13

14                                   By:_____

15                                      David R. Sugden

16                                   Attorneys for Defendants

17

18  Dated:  June _____, 2005               COHEN, SAKAGUCHI & ENGLISH LLP

19                                   WILLIAM A. ENGLISH
                                 NEAL M. COHEN

20

21

22                                   By:_____

23                                      Neal M. Cohen

24                                     Attorneys for Plaintiffs

25  IT IS SO ORDERED

26

27  _____

28  Dated                              United States District Judge
                               Honorable Robert J. Kelleher

ALL, JENSEN &
FERRELL
PROFESSIONAL
ORPORATION
BRI03-01:154059_1:6-9-05         - 3 -
STIPULATION REGARDING RESPONSIVE PLEADING DEADLINE

EXHIBIT D

## David R. Sugden

**From:**   Neal M. Cohen [nmc@cohen-sak.com]
**Sent:**   Friday, June 10, 2005 6:25 AM
**To:**   David R. Sugden; Scott J. Ferrell
**Cc:**   English, Bill
**Subject:** Tannas v BAE

Mr. Sugden:

The proposed stipulation you sent over yesterday is unacceptable.  Tannas will not agree to extend the deadline for the original defendants to file any motions at this time.  The deadline for the original defendants to do so has already passed, even before BAE requested the extension.  As set forth in my email from yesterday, Tannas will discuss agreeing to extend the deadline for the original defendants only to file an ANSWER (even though Tannas believes BAE's request was untimely).  If BAE believes the deadline for the original defendants to file 12b motions has not passed, BAE is free to attempt to file such motions.  But it will not be with the consent of Tannas.  Tannas will not agree to any such filings.  Tannas believes the deadline to do so has passed.

We can meet and confer on these issues Monday at an agreeable time.  Tannas will not file any motion for default prior to meeting and conferring with BAE next week.

Sincerely,


Neal M. Cohen
Cohen Sakaguchi & English LLP
2040 Main Street, 9th Floor
Irvine, California  92614
TEL: (949) 724-1849
FAX: (949) 625-8955
EMAIL: nmc@cohen-sak.com
http://www.cohen-sak.com


The information in this transmittal (including attachments, if any) is privileged and confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

EXHIBIT M

6/13/2005

EXHIBIT D

## David R. Sugden

**From:**    David R. Sugden
**Sent:**    Saturday, June 11, 2005 12:39 PM
**To:**    'Neal M. Cohen'; Scott J. Ferrell
**Cc:**    English, Bill
**Subject:** RE: Tannas v BAE

Neal,

I cannot understand why you are unwilling to sign a stipulation that (1) affords the parties time to meet and confer, and (2) expressly reserves Tannas' right to make the arguments articulated in your email below. Nonetheless, since you are unwilling, Defendants have no choice but to file their responsive pleadings on Monday. And, since Defendants must file their responsive pleadings on Monday, your offer to meet and confer on Monday does not make much sense. I think a better approach would be to meet and confer at a later date (after you have had an opportunity to review our motions) to see if any of the issues can be eliminated or narrowed by stipulation.

Please let me know if you have any questions or comments.

Dave

**David R. Sugden, Esq.**
**CALL, JENSEN & FERRELL**
610 NEWPORT CENTER DRIVE, SUITE 700
NEWPORT BEACH, CALIFORNIA 92660
TELEPHONE: (949) 717-3000
FACSIMILE: (949) 717-3100
dsugden@calljensen.com
www.calljensen.com

The preceding email message (including any attachments) contains information that may be confidential, protected by the attorney-client or other applicable privileges, or constitutes non-public information. It is intended to be conveyed only to the designated recipient(s). If you are not an intended recipient of this message, please notify the sender by replying to this message and then delete it from your system. Use, dissemination, or reproduction of this message by unintended recipients is not authorized and may be unlawful.

-----Original Message-----
**From:** Neal M. Cohen [mailto:nmc@cohen-sak.com]
**Sent:** Friday, June 10, 2005 6:25 AM
**To:** David R. Sugden; Scott J. Ferrell
**Cc:** English, Bill
**Subject:** Tannas v BAE

Mr. Sugden:

The proposed stipulation you sent over yesterday is unacceptable. Tannas will not agree to extend the deadline for the original defendants to file any motions at this time. The deadline for the original defendants to do so has already passed, even before BAE requested the extension. As set forth in my email from yesterday, Tannas will discuss agreeing to extend the deadline for the original defendants only to file an ANSWER (even though Tannas believes BAE's request was untimely). If BAE believes the deadline for the original defendants to file 12b motions has not passed, BAE is free to attempt to file such motions. But it will not be with the consent of Tannas. Tannas will not agree to any

EXHIBIT D

**EXHIBIT N**

such filings.  Tannas believes the deadline to do so has passed.

We can meet and confer on these issues Monday at an agreeable time.  Tannas will not
file any motion for default prior to meeting and conferring with BAE next week.

Sincerely,


Neal M. Cohen
Cohen Sakaguchi & English LLP
2040 Main Street, 9th Floor
Irvine, California  92614
TEL: (949) 724-1849
FAX: (949) 625-8955
EMAIL: nmc@cohen-sak.com
http://www.cohen-sak.com

The information in this transmittal (including attachments, if any) is privileged and
confidential and is intended only for the recipient(s) listed above. Any review, use,
disclosure, distribution or copying of this transmittal is prohibited except by or on behalf
of the intended recipient. If you have received this transmittal in error, please notify me
immediately by reply email and destroy all copies of the transmittal. Thank you.

6/13/2005

EXHIBIT D

# David R. Sugden

| | |
|---|---|
| **From:** | Neal M. Cohen [nmc@cohen-sak.com] |
| **Sent:** | Saturday, June 11, 2005 2:39 PM |
| **To:** | David R. Sugden; Scott J. Ferrell |
| **Cc:** | English, Bill |
| **Subject:** | Re: Tannas v BAE |

Mr. Sugden:

My understanding is that the deadline for BAE Systems, Plc to respond to the First Amended Complaint is Monday, June 13. As stated in my previous communications, Tannas is available to meet-and-confer regarding BAE Systems, Plc. To allow for the requested meet-and-confer, I can discuss with you Monday entering into a stipulation to extend the time for BAE Systems, Plc to respond to the First Amended Complaint. The extension would be about a week or two, and Tannas would require a statement that the extension was requested by BAE Systems Plc. However, the Court must approve any such stipulation.

Regarding the original named defendants, the First Amended Complaint was served on the original named defendants by mail to your office on May 19, 2005. My understanding is that the deadline for the original named defendants to respond to the First Amended Complaint was June 6, 2005. Is your understanding different? If so, then on what do you base that understanding? Under the Local Rules, a meet-and-confer would have been required 5 days before the deadline. Yet the first we heard from your office requesting a meet-and-confer was on June 7, 2005. That was not only after the deadline to request a meet-and-confer, but was after the deadline to actually conduct the meet-and-confer, and was even after the deadline to file the response to the First Amended Complaint. Is your understanding different? If so, then on what do you base that understanding?

Furthermore, I caution BAE against filing any such motions which include any statement indicating or implying that we have had a meet-and-confer regarding the First Amended Complaint. We have not. I further caution BAE against filing any statement indicating that a meet-and-confer regarding the First Amended Complaint was requested by BAE at any time prior to June 7, 2005. It was not. I further caution BAE against filing any statement indicating that Tannas refused to meet-and-confer with regard to BAE Systems, Plc. Tannas has not. Any of the above types of statements would be false.

Furthermore, if any 12b2 motion is filed on behalf of the original named defendants, Tannas will seek sanctions for their failure to provide the court-ordered verified responses to Tannas' interrogatories.

With all that said, if you can provide a sound legal and factual basis that BAE's June 7, 2005 request to meet-and-confer on behalf of the original named defendants regarding the First Amended Complaint was timely and in compliance with the F.R.Civ.P., the Local Rules, and the Court's recent Order, then Tannas will stipulate to reasonable extensions to allow the meet-and-confer to occur. Even if you cannot provide any such basis, Tannas will meet-and-confer regarding potential 12b motions from the original named defendants. But you should be clear that Tannas will not at this time stipulate to any retroactive extensions of time for BAE to file pleadings.

I am available this weekend by cell phone at 760 803-8271 if you would like to discuss this further.


Neal M. Cohen
Cohen Sakaguchi & English LLP
2040 Main Street, 9th Floor
Irvine, CA  92614
TEL (949) 724-1849
FAX (949) 625-8955
nmc@cohen-sak.com
http://www.cohen-sak.com

EXHIBIT D

**EXHIBIT O**

6/13/2005

```
=====================================================================
```
—— Original Message ——
**From:** David R. Sugden
**To:** Neal M. Cohen ; Scott J. Ferrell
**Cc:** English, Bill
**Sent:** Saturday, June 11, 2005 12:38 PM
**Subject:** RE: Tannas v BAE

Neal,

I cannot understand why you are unwilling to sign a stipulation that (1) affords the parties time to meet and confer, and (2) expressly reserves Tannas' right to make the arguments articulated in your email below.  Nonetheless, since you are unwilling, Defendants have no choice but to file their responsive pleadings on Monday.  And, since Defendants must file their responsive pleadings on Monday, your offer to meet and confer on Monday does not make much sense.  I think a better approach would be to meet and confer at a later date (after you have had an opportunity to review our motions) to see if any of the issues can be eliminated or narrowed by stipulation.

Please let me know if you have any questions or comments.

Dave

**David R. Sugden, Esq.**
**CALL, JENSEN & FERRELL**
610 NEWPORT CENTER DRIVE, SUITE 700
NEWPORT BEACH, CALIFORNIA 92660
TELEPHONE: (949) 717-3000
FACSIMILE: (949) 717-3100
dsugden@calljensen.com
www.calljensen.com

The preceding email message (including any attachments) contains information that may be confidential, protected by the attorney-client or other applicable privileges, or constitutes non-public information.  It is intended to be conveyed only to the designated recipient(s).  If you are not an intended recipient of this message, please notify the sender by replying to this message and then delete it from your system.  Use, dissemination, or reproduction of this message by unintended recipients is not authorized and may be unlawful.

EXHIBIT D

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 610 Newport Center Drive, Suite 700, Newport Beach, CA 92660.

On June 13, 2005, I served the foregoing document described as DECLARATION OF DAVID R. SUGDEN on the following person(s) in the manner indicated:

**SEE ATTACHED SERVICE LIST**

[ X ]  (BY MAIL) I am familiar with the practice of Call, Jensen & Ferrell for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business. On this date, a copy of said document was placed in a sealed envelope, with postage fully prepaid, addressed as set forth herein, and such envelope was placed for collection and mailing at Call, Jensen & Ferrell, Newport Beach, California, following ordinary business practices.

[  ]  (BY FEDEX)  I am familiar with the practice of Call, Jensen & Ferrell for collection and processing of correspondence for delivery by overnight courier. Correspondence so collected and processed is deposited in a box or other facility regularly maintained by FedEx that same day in the ordinary course of business. On this date, a copy of said document was placed in a sealed envelope designated by FedEx with delivery fees paid or provided for, addressed as set forth herein, and such envelope was placed for delivery by FedEx at Call, Jensen & Ferrell, Newport Beach, California, following ordinary business practices.

[  ]  (BY FACSIMILE TRANSMISSION)  On this date, at the time indicated on the transmittal sheet, attached hereto, I transmitted from a facsimile transmission machine, which telephone number is (949) 717-3100, the document described above and an unsigned copy of this declaration to the person, and at the facsimile transmission telephone numbers, set forth herein. The above-described transmission was reported as complete and without error by a properly issued transmission report issued by the facsimile transmission machine upon which the said transmission was made immediately following the transmission.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on June 13, 2005, at Newport Beach, California.

Amy Egan

ILL, JENSEN &
FERRELL
ROFESSIONAL
ORPORATION

EXHIBIT D

1

## SERVICE LIST

2

Neal M. Cohen, Esq.                    **Attorneys for Plaintiff**

3  Cohen Sakaguchi & English LLP
   2040 Main Street, 9th Floor

4  Irvine, CA  92614
   Fax No.:  (949) 625-8955

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LL, JENSEN &
FERRELL
ROFESSIONAL
)RPORATION

EXHIBIT D

1  SCOTT J. FERRELL, Bar No. 202091
2  DAVID R. SUGDEN, Bar No. 218465
   CALL, JENSEN & FERRELL
3  A Professional Corporation
   610 Newport Center Drive, Suite 700
4  Newport Beach, CA 92660
   sferrell@calljensen.com
5  dsugdent@calljensen.com
   (949) 717-3000 (Phone)
6  (949) 717-3100 (Fax)
7
   Attorneys for Defendants BAE Systems Avionics Limited
8    and BAE Systems Electronics Limited

9                UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11
   Lawrence E. Tannas, Jr., an individual dba     Case No.  CV-03-5889 RJK (FMOx)
12 as Tannas Electronics; Tannas Electronic
   Displays, Inc., a California corporation,      DECLARATION OF DAVID PARKES
13
14            Plaintiffs,

15            vs.

16 BAE Systems Avionics Limited, a British
17 corporation; BAE Systems Electronics
   Limited, a British corporation,
18
              Defendants.
19

20
                                   Complaint Filed:  August 19, 2003
21                                 Trial Date:       None Set

22

23       I, David Parkes, declare:

24

25       1.    I am a Director of BAE Systems Electronics Limited and the Company

26 Secretary of BAE Systems, Plc. ("Defendants"). If called and sworn as a witness, I could

27 and would competently testify to these facts.

28 / / /

                                              EXHIBIT D

BRI03-01:154051_1:6-13-05            - 1 -
                        Declaration of David Parkes

1   ///

2       2.      Defendants are not registered to do business in California, and have never

3   been so registered.

4

5       3.      Defendants have not during the period 30 January 2002 to the present

6   commenced or entered into any form of appearance in any lawsuit in California.

7

8       4.      Defendants do not (1) maintain a place of business in California; (2) pay

9   taxes in California; (3) have an agent for service of process in California; (4) own or lease

10  any real or personal property situated in California; (5) maintain a bank account in

11  California; (6) maintain any agent, distributor or sales representative in California to

12  conduct or obtain business in California; or (7) manufacture any products, materials,

13  components, equipment or machinery in California.

14

15      I declare that the foregoing is true and correct to the best of my knowledge and

16  belief and that this document was executed on June 13, 2005, in London, England.

17

18

19                                  David Parkes

20

21

22

23

24

25

26

27

28

LL JENSEN &
FERRELL
ROFESSIONAL
RPORATION

BRI03-01:154051_1.DOC:6-13-05

- 2 -
Declaration of David Parkes

EXHIBIT D

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF ORANGE

    I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 610 Newport Center Drive, Suite 700, Newport Beach, CA 92660.

    On June 13, 2005, I served the foregoing document described as DECLARATION OF DAVID PARKES on the following person(s) in the manner indicated:

**SEE ATTACHED SERVICE LIST**

**[ X ]** (BY MAIL) I am familiar with the practice of Call, Jensen & Ferrell for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business. On this date, a copy of said document was placed in a sealed envelope, with postage fully prepaid, addressed as set forth herein, and such envelope was placed for collection and mailing at Call, Jensen & Ferrell, Newport Beach, California, following ordinary business practices.

**[ ]** (BY FEDEX) I am familiar with the practice of Call, Jensen & Ferrell for collection and processing of correspondence for delivery by overnight courier. Correspondence so collected and processed is deposited in a box or other facility regularly maintained by FedEx that same day in the ordinary course of business. On this date, a copy of said document was placed in a sealed envelope designated by FedEx with delivery fees paid or provided for, addressed as set forth herein, and such envelope was placed for delivery by FedEx at Call, Jensen & Ferrell, Newport Beach, California, following ordinary business practices.

**[ ]** (BY FACSIMILE TRANSMISSION) On this date, at the time indicated on the transmittal sheet, attached hereto, I transmitted from a facsimile transmission machine, which telephone number is (949) 717-3100, the document described above and an unsigned copy of this declaration to the person, and at the facsimile transmission telephone numbers, set forth herein. The above-described transmission was reported as complete and without error by a properly issued transmission report issued by the facsimile transmission machine upon which the said transmission was made immediately following the transmission.

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on June 13, 2005, at Newport Beach, California.

Amy Egan

CALL, JENSEN &
FERRELL
PROFESSIONAL
CORPORATION

**EXHIBIT D**

1

## SERVICE LIST

2

Neal M. Cohen, Esq.                          **Attorneys for Plaintiff**

3

Cohen Sakaguchi & English LLP
2040 Main Street, 9th Floor

4

Irvine, CA  92614
Fax No.:  (949) 625-8955

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ALL, JENSEN &
FERRELL
PROFESSIONAL
ORPORATION

EXHIBIT D