The opinion in support of the decision being
entered today is <u>not</u> binding precedent of the Board.

Paper 156

Filed by: Trial Section Merits Panel
Mail Stop Interference
P.O. Box 1450
Alexandria, Va. 22313-1450
Tel: 703-308-9797
Fax: 703-305-0942

Filed
13 September 2004

UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE BOARD OF PATENT APPEALS
AND INTERFERENCES

LAWRENCE E. TANNAS, JR.

Junior Party,
(Patents 6,204,906 and 6,380,999),

v.

DAVID S. WATSON
Senior Party,
(Application 09/529,201).

Patent Interference No. 105,096

Before SCHAFER, MEDLEY, and POTEATE, <u>Administrative Patent Judges</u>.

MEDLEY, <u>Administrative Patent Judge</u>.

### <u>DECISION ON REHEARING - TANNAS</u>

**A. Introduction**

On 27 July 2004, the board received from the party Tannas "TANNAS REQUEST FOR RECONSIDERATION (OF DECISION ON PRELIMINARY MOTIONS)" (Paper 154). Tannas seeks reconsideration under 37 C.F.R. § 1.640(c) of our decision on preliminary motions (Paper

FAXED

SEP 1 3 2004

PAT. & T.M. OFFICE
BOARD OF PATENT APPEALS
AND INTERFERENCES


PLAINTIFF'S
EXHIBIT
6

141), in which we denied (1) Tannas preliminary motion 2 that Watson's claims are unpatentable based on 35 U.S.C. §112, ¶ 1 for lack of written description support and (2) Tannas preliminary motion 3 that Watson claim 96 is unpatentable based on 35 U.S.C. §102/103 (Paper 67). Tannas also seeks reconsideration of our decision granting Watson preliminary motion 8 with respect to the 35 U.S.C. 112, ¶ 1 best mode violation.

B.     **Discussion**

A party requesting reconsideration of an interlocutory decision must specify with particularity points believed to have been misapprehended or overlooked in rendering the decision. 37 CFR 1.640(c). A request for reconsideration is not a new opportunity to raise issues which should have been raised during the preliminary motions period. Further, a request for reconsideration will not be granted where the moving party merely disagrees with the decision of the panel.

*Tannas preliminary motion 2*

Tannas argues that our claim construction of Watson claims 53 and 78 with the limitation of "applying a seal between the plates" was erroneous. Tannas preliminary motion 2, directed to whether Watson describes 'applying a first seal between the plates' was denied, since Tannas interpreted Watson's claims in light of Tannas' specification in violation of Rule 633(a) (Paper 141 at 29). Tannas does not apparently seek reconsideration of that part of our decision. Rather, Tannas seeks reconsideration of our interpretation of "applying a first seal between the plates."

In our decision, we stated that "[a]lthough unnecessary to our decision, we make the following comments regarding Tannas' interpretation of "applying a seal between the plates." Thus, even if we were to agree with Tannas that our interpretation was erroneous, which we do

-2-

not as discussed infra, that portion of Tannas' motion directed to "applying a first seal between the plates" would not change.

Tannas argues that the decision overlooked that "when Tannas' experts were cross-examined, they consistently testified that the phrase 'between the plates' means that the seal is located in the space between the plates, even outside the context of the Tannas patents. Tannas Facts 1-3." (Paper 154 at 12). Tannas Facts 1-3 are portions of Dr. Scheffer's cross examination testimony, e.g., Watson 1020 and portions of Mr. Fergason's cross examination testimony, e.g., Watson 1021.

The cross examination testimony of Dr. Scheffer and Mr. Fergason were not overlooked as suggested because they need not have been considered in the first place. The cross examination testimony of Dr. Scheffer and Mr. Fergason were presented in connection with Watson's opposition 2 and Tannas reply 2. Because Tannas' preliminary motion 2 (Paper 30) failed to set forth a *prima facie* case for the relief requested, the opposition to Tannas preliminary motion 2 was not considered[1]. Consequently, Tannas' reply need not have been considered.

---

[1] See ¶ 23 of Standing Order (Paper 1) ("Any motion may be dismissed or denied prior to receipt of an opposition.") and ¶ 13.1.1 Standing Order (Paper 142) ("A motion that, while complying with applicable procedural requirements, nevertheless fails to make out a substantive case may be denied on the merits. A motion may be dismissed or denied without considering the opposition and may be granted without considering the reply."). See also, 37 CFR 1.637(a) ("A party filing a motion has the burden of proof to show that it is entitled to the relief sought in the motion.").
It is implicit in our decision that Tannas failed to meet its burden of proof, since neither Watson opposition 2 or Tannas reply 2 were discussed. Compare that with the section of our decision with respect to Watson preliminary motion 8, in which we did consider Tannas opposition 8, since Watson "sufficiently demonstrated by a preponderance of the evidence that Mr. Tannas withheld the best mode of applying the adhesive between the plates" (Paper 141 at 57).

Thus, there was no occasion to consider the cross examination of Dr. Scheffer or Mr. Fergason. Had the cross examination testimony of Dr. Scheffer or Mr. Fergason been presented in Tannas' preliminary motion 2, we would need to address it. But the testimony was not presented in support of Tannas preliminary motion 2, and therefore there was no occasion to consider it.

Tannas argues that our construction for "applying a first seal between the plates" was not supported by the record and that it "eviscerates the phrase 'between the plates' from the claims" (Paper 154 at 11-12). Tannas has misunderstood our interpretation for "applying a first seal between the plates" to only include a first seal that lies along the same plane as the cut edges of the plates, by taking out of context the sentence in which we said "[a]pplying a seal between the plates is broad enough to mean that the seal lie along the same plane as the cut edges of the plates, and nothing more." The decision regarding interpretation for "applying a first seal between the plates" is as follow:

> Tannas relies on the declarations of Dr. James L. Fergason and the inventor Lawrence E. Tannas, Jr. to interpret Watson claims 53 and 78. Dr. Fergason states:
>
> Based upon my review of the claim language, the specifications, and file histories of the Tannas patents, a person of ordinary skill in the art would understand the phrase "applying a first seal between the plates" to mean that a seal is applied that is located between the front and back glass plates of a LCD and within the perimeter of the outer edges of the glass plates." (Tannas Ex. 1005, ¶ 11).
>
> Tannas declares:
>
> Based upon my review of the claim language, the specifications, and file histories of the Tannas patents, a person of ordinary skill in the art would understand the phrase "applying a first seal between the plates" to mean that a seal is applied in the space between the glass plates and not simply along the fractured edges of the plates. (Tannas Ex. 1009, ¶ 10).
>
> Besides improperly looking to the Tannas' '906 specification, Tannas' experts also suggest adding limitations to Watson's claims that are not there. Neither Watson

- 4 -

claim 53 or 78 recite applying a seal within the perimeter of the outer edges of the glass plates. Applying a seal between the plates does not necessarily mean that the seal must be between the plates <u>and</u> within the perimeter of the outer edges of the plates as suggested. Applying a seal between the plates is broad enough to mean that the seal lie along the same plane as the cut edges of the plates, and nothing more. (Paper 141 at 30)

As discussed, the interpretation that Tannas urged, e.g., that the seal must be between the plates <u>and</u> within the perimeter of the outer edges of the plates was rejected. The claim is broad enough to include a seal that is in between the plates and within the perimeter of the outer edges of the plates, or a seal that lies along the same plane as the cut edges. When read in context of the entire discussion, it is clear that our decision did not limit the phrase to only mean that the seal could lie along the same plane as the cut edges. Indeed, later in our opinion we reiterated that Tannas' narrow interpretation was rejected, e.g., that the phrase can only mean a seal that is between the plates and within the perimeter of the outer edges of the plates, by stating that "applying a seal between the plates is broad enough <u>to include</u> a seal that lies along the same plane as the cut edges of the plates, and <u>does not necessarily</u> require that the seal also lie within the parameter of the glass plates." (Paper 141 at 36). Accordingly, we see no error in our decision.

Tannas argues that we based our claim construction of "applying a first seal between the plates" on the term "gap" used in the Watson specification, despite the Watson claims never reciting the word "gap." Tannas' argument is without merit. That portion of our decision that Tannas directs us to begins with "Tannas has failed to sufficiently demonstrate that Watson does not meet Tannas' narrow interpretation of the disputed language." This portion of our discussion was clearly addressing <u>Tannas' interpretation</u> of the phrase. As discussed, Tannas failed to address that portion of Watson's specification that seemingly <u>described</u> applying a seal between

- 5 -

the plates based on Tannas' construction of the claim term. Watson's specification states that the "gap between the plates 12 and 13 is then sealed." By not addressing that portion of Watson's specification that on its face appears to describe the proposed claim construction, Tannas failed to meet its burden as discussed.

Tannas' argument that we overlooked Watson opposition 2 and Tannas reply 2 and certain cross examination evidence in support of Watson opposition 2 and Tannas reply 2 has already been addressed supra. As discussed above, Watson opposition 2 and Tannas reply 2 were not considered, since Tannas, in connection with its preliminary motion 2 (Paper 30) failed to meet its burden to demonstrate that it was entitled to the relief sought. Furthermore, the evidence that Tannas states we overlooked was relied upon to support Watson opposition 2 and/or Tannas reply 2, but was not first presented with respect to Tannas preliminary motion 2. Thus, we did not overlook these arguments and evidence, since the arguments and evidence need not have been considered and were not considered in the first instance.

*Tannas preliminary motion 3*

On page 17, line 19 to page 18, line 14, Tannas expresses its disagreement with our characterization of Dr. Scheffer's testimony as being conclusory with respect to whether the Doyle references teach applying a seal along an exposed edge of the target display (Paper 154 at 17-18). As already stated in this opinion, mere disagreement with our decision is not a basis for granting a request for reconsideration.

In any event, contrary to Tannas' argument, Dr. Scheffer was not obligated to discuss all alternative methods of applying a seal. However, something more is needed than a conclusory statement that the Doyle references teach a seal along an exposed edge, when the references

- 6 -

themselves do not expressly disclose applying a seal along an exposed edge. Tannas argues that Dr. Scheffer's testimony that one of ordinary skill in the art would appreciate that a seal was applied along the exposed edge to create a barrier and to subject the LCD to subsequent testing is sufficient. We disagree, as stated in our decision: "Scheffer does not present facts to support his conclusion that one of ordinary skill in the art would understand either of the Doyle references to teach applying a first seal along the exposed edge as claimed" (Paper 141 at 37). Scheffer presented no facts that would sufficiently demonstrate to the finder of fact that either of the Doyle references taught a method of resizing that <u>necessarily</u> included "applying a first seal along an exposed edge of the target display portion."

We note, that one of the salient issues presented throughout Tannas' preliminary motions is that there is a distinction between a seal that is applied between the plates and a seal that is applied along an exposed edge of a resized LCD (e.g., Tannas preliminary motion 1). According to Tannas there are at least two distinct ways to seal a resized LCD - by applying a seal along an exposed edge or applying a seal between the plates. The Doyle references are silent with respect to the how or where of the "resealing." Dr. Scheffer presented no facts that would sufficiently demonstrate that the Doyle references taught applying a first seal along an exposed edge, as opposed to sealing in between the plates, or in any other fashion. Dr. Scheffer's testimony goes to the issue of anticipation, and not obviousness with respect to the resealing issue. Thus, for these reasons, Scheffer's testimony, as to whether the Doyle references anticipate Watson claim 96, and thus teach applying a seal along an exposed edge, is conclusory and is entitled to little weight.

Tannas argues that our decision erroneously concludes that Watson claim 96 inherently requires the display be operative upon completing the claimed method (Paper 154 at 19). Tannas argues that we overlooked its reply 3, which explains that the expressed language of Watson claim 96 does not require that the display remain operative after completing the cutting and resealing. As Tannas failed to set forth a *prima facie* case for entitlement to the relief sought in its preliminary motion 3 (Paper 67), Watson opposition 3 and Tannas reply 3 were not and need not be considered. The argument that the express language of Watson claim 96 does not require that the display remain operative, was not made in connection with Tannas preliminary motion 3, thus we need not and did not address the argument. Nor do we need to address the argument now as it is a new argument not previously presented in connection with Tannas preliminary motion 3. Had Tannas argued, in its preliminary motion, that Watson claim 96 does not require that the display be operative upon completing the claimed method, we would have had to address the argument. But no such argument was made in Tannas preliminary motion 3.

In any event, we stated that "[i]nherent to the claimed method is that the display remain operative once its physical shape has been changed" and that both the Tannas and Watson disclosures discuss changing the physical shape of an electronic display, resulting in an operative electronic display (Paper 141 at 38). To the extent that Tannas is now arguing, for the first time, that the Watson claim 96 does not <u>explicitly</u> or <u>expressly</u> recite that the display remain operative, does not address our determination that Watson claim 96 implicitly or inherently requires that the display remain operative.

Tannas alternatively argues that the Doyle SID article does describe an operative display. Once again, this argument was not presented in connection with Tannas preliminary motion 3,

but rather in Tannas reply 3, which we did not nor need not consider. Furthermore, it is far too late for Tannas to direct our attention to where in the Doyle SID article it allegedly describes operating a resized LCD. Tannas should have done that in the first instance.

Although we need not address Tannas' new arguments regarding how the Doyle SID article teaches operating a resized LCD, we make the following comments. Tannas takes out of context the statement in the Doyle SID reference that states "[n]o difference was noted before and after cycling measurements" (Tannas 1018 at 26, col. 1:46-50), to conclude that cycling measurements must have involved operating the display in order to observe that there were no differences. The next sentence, however, in that same passage states that a sequence of seal experiments were performed in order to measure effects of different seal variables. Thus, the differences noted could be with respect to the changes in the seal, (e.g., monitoring deformations caused by solar testing), that would not require the operability of the display.

Also, the broad and general statement that "[t]esting of the displays through all individual specification requirements" (Tannas 1018 at 24, col. 2:22-29) does not necessarily include operating the displays after the displays were resealed and refilled as Tannas now argues. There is no nexus between that statement, or the statement regarding the measurable red shift in the chromaticity of the displays and whether the cell that "was resealed, refilled and cycled in solar testing and heat" was operable. In other words, these two passages that Tannas now directs our attention to are found in the section of the article entitled "history," several paragraphs prior to the passage that allegedly anticipates Watson claim 96. The history section explains what sort of testing was done in the past and problems encountered. There is no indication that the

description in the history section even applies to the subsequent testing of the "resized LCDs" described in the Doyle SID article.

### *Watson preliminary motion 8*

Tannas argues that we overlooked evidence discussed in Tannas opposition 8, that Mr. Tannas and his experts testified that the '906 patent expressly discloses how to get the adhesive between the plates at column 7, lines 23-49, citing to page 56, line 20 to page 57, line 2 (Paper 154 at 22). In our decision, at page 57, lines 3-14 we recognize that the Tannas specification describes a way to get adhesive between the plates and thus did not overlook Tannas' argument.

Tannas apparently argues on page 24 of its reconsideration, that Mr. Tannas' statements made during his cross examination were addressing enablement, that he was confused and that we somehow took his statements out of context. We need not address this new argument, but nonetheless observe that whether Mr. Tannas was confused, or that he meant something other than what he stated, does not obviate the fact that Mr. Tannas made the statements he made.

Tannas argues that the decision misapprehends Tannas' testimony identified in FF 93 and FF 96. Tannas argues, that those passages should be interpreted such that Mr. Tannas was not asked what step was taken in accordance with his patent, rather Mr. Tannas was asked questions in the present tense and answered them in the present tense, or was referring to hypothetical situations (Paper 154 at 24-25).

We disagree that we misapprehended Mr. Tannas' testimony, or overlooked Tannas' arguments. We did consider Tannas' arguments that the statements made by Mr. Tannas during his cross examination were to activities at the time of the deposition and not with respect to his patent. For example, we stated "[a]ccording to Tannas, the references to 'trade secrets' made by

- 10 -

Mr. Tannas during his cross examination deposition were to those subsequently developed trade secrets" (Paper 141 at 58-59). That Tannas disagrees with our interpretation of Mr. Tannas' statements as referring to questions asked about his patents is not a reason to grant the request for reconsideration. Moreover, when the quoted passages in FF 93 and FF 96 are read in context of the line of questioning it is apparent that Mr. Tannas is referring to his patent. For example, the answer just prior to the quoted section in FF 93 refers to the Tannas patent when Mr. Tannas responded that "the description here describes the need to clean the edge" (Watson Ex. 1018 at 60, lines 13-14).

Tannas argues, for the first time that Mr. Tannas performed activities in which he tried many things, including squeezing the plates and releasing the plates to get adhesive between the plates, but was unable to get any other process to work at the time the '427 application was filed other than that process described in '906 patent (Paper 154 at 26-27). Tannas directs our attention to evidence for the first time (e.g., Watson 1034 which is Mr. Tannas' subsequent cross examination testimony) that at the time he filed the '427 application, Mr. Tannas knew of a process that involved squeezing the plates for getting adhesive between the plates, but that he was unable to get such a procedure to work at the time he filed his '427 application, and that Mr. Tannas thought the best mode, at the time of filing, was putting adhesive along the edge and letting the adhesive go in between the plates by its own mechanism as described in the Tannas patents (Paper 154 at 26-27).

Tannas also argues that we misapprehended Mr. Tannas' testimony presented in connection with Tannas opposition 8 (Tannas Exhibit 2026) that the only method known and practiced by Mr. Tannas was the one described in the '427 application (Paper 154 at 28). In

- 11 -

other words, Tannas explains for the first time, that Mr. Tannas knew of another method, e.g., squeezing the cell to get the adhesive between the plates, but did not practice that method at the time of the invention because he was not able to successfully practice squeezing cells to get adhesive between the plates.

The subsequent cross examination testimony of Mr. Tannas (Watson Ex. 1034) that Tannas now directs our attention to and explanation that Mr. Tannas knew of squeezing the cells to get the adhesive between the plates, but was not successful in getting that method to work were not presented in connection with Tannas opposition 8. Watson apparently presented Watson exhibit 1034 for the first time in connection with Watson reply 8. As we stated in our decision "[s]ince Tannas has failed to sufficiently rebut Watson preliminary motion 8, we need not and have not considered Watson reply 8" (Paper 141 at 62). Thus, there was no occasion to consider Watson exhibit 1034, or for us to now consider Tannas' new arguments.

In any event, we make the following comments. In our decision, we characterized Mr. Tannas' testimony (Tannas exhibit 2025) as stating that he did not know of a method for squeezing the plates to get adhesive between the plates at the time he filed the '427 application and that the only method known to him at the time he filed the '427 application was the one disclosed in '427 (Paper 141 at 59-60). Indeed, that was Tannas' explanation in connection with its opposition 8. Tannas argued, in its subtitle on page 13 of its opposition 8, that "[t]he only Method Known by Mr. Tannas for Resizing LCDs at the Time of Filing the '427 Application was the Method Disclosed in the Tannas Patents," and on page 15 that "the only modes known to Mr. Tannas at the time of filing the '427 application were expressly disclosed in the Tannas patents" and "because Mr. Tannas did not, in fact, squeeze LCDs during his resizing method at the time of

- 12 -

filing the '427 application, <u>and did not even know of 'squeezing the cell,</u>' he could not possibly have concealed such a process" (emphasis added).

In the decision on preliminary motions, we found Mr. Tannas' representations and Tannas' arguments inconsistent, however, with an attachment to Tannas' preliminary statement. The attachment, allegedly describing a 22 May 1993 conception, describes a method for resizing liquid crystal displays that is not described in the '427 application - squeezing the plates to get adhesive in between the plates (Paper 141 at 60). The alleged 22 May 1993 conception describing squeezing the plates to get adhesive in between the plates facially contradicts Tannas' argument that Mr. Tannas did not even know of squeezing the cell at the time he filed his '427 application and Mr. Tannas' representation that the only method known by him at the time he filed the '427 application was the one described.

No explanation, in connection with Tannas opposition 8 was provided by Tannas regarding the attachment to its preliminary statement. Tannas now argues for the first time that Tannas knew of squeezing the cells to get adhesive between the plates, but that he did not get that method to work and that is why he did not disclose the squeezing method in its '427 application. That explanation however comes too late.

Furthermore, while we agree that Mr. Tannas stated in the Tannas exhibit 2025 declaration that the only method for resizing LCDs of <u>which he knew and which he practiced</u> between December 1998 and October 1999 was the method described in the '427 application, we disagree with Tannas that we overlooked or misapprehended that statement. We interpreted Mr. Tannas' statement as meaning that the only method known by Mr. Tannas at the time he filed his '427 application was described in the '427 application. Tannas argues that our interpretation is

- 13 -

erroneous, and that Mr. Tannas' statement should be read to mean that Tannas knew of another method, but that he did not practice that other method. That interpretation, however, is strained and inconsistent with the arguments Tannas made in connection with its opposition 8. If Mr. Tannas actually meant that he knew of another method, but that he did not practice the other method, then there would be no occasion for Mr. Tannas to state that the only method for resizing LCDs of <u>which he knew and which he practiced</u> was the method described in the '427 application. It would have been enough to say that the only method practiced was the one described, because a practiced method would of course be known by the inventor.

In any event, Tannas' proposed interpretation of Mr. Tannas' statement is in direct contradiction to Tannas' argument in its opposition 8 that "because Mr. Tannas did not, in fact, squeeze LCDs during his resizing method at the time of filing the '427 application, and did not even know of 'squeezing the cell,' he could not possibly have concealed such a process" (Paper 84 at 15). In light of the plain text of Mr. Tannas' statement and Tannas' arguments, we properly interpreted Mr. Tannas' statement to mean that Mr. Tannas did not know of any other mode than the one described in the '427 application. Note, that the statement Mr. Tannas made in ¶ 5 of the 2025 declaration regarding his knowledge of squeezing LCDs is in connection with getting liquid crystal material out of the LCD, and not for squeezing LCDs for getting adhesive in between the plates.

To now argue that Mr. Tannas actually knew of a method of squeezing the cells for getting adhesive between the plates at the time he filed the '427 application, but did not practice the method because he could not get that method to work is not only a new argument, but it is inconsistent with representations made by Tannas in connection with its opposition 8. Even if

- 14 -

we were to consider Tannas' new argument, which we will not, we would not know, at this juncture of the proceeding which story to believe. For these reasons, we will not alter our decision.

We did not overlook the testimony of Mr. Muir as argued by Tannas, and rather discuss his testimony in detail. See Paper 141, ff 103, and at 59 and 61. Tannas' disagreement as to the weight we give Mr. Muir's testimony is insufficient to grant the request for reconsideration.

Tannas argues that we transferred the burden on Tannas to prove that he did not squeeze the plates, and that he did not believe squeezing was the best mode at the time of filing the '427 application (Paper 154 at 28). Tannas did not initially bear the burden, rather Watson did. As stated in our decision, Watson sufficiently demonstrated that it was entitled to the relief requested (Paper 141 at 57), and thus we looked to Tannas' opposition 8 to determine if Tannas sufficiently rebutted Watson's proofs, which Tannas failed to do.

Tannas argues that there is no basis in the record for ignoring the [redacted] exhibits, as presented. Tannas' argument is without merit. The redacted exhibits 2026-2029 were considered and discussed (Paper 141 at 61). Tannas argues that since its request for a protective order was denied, Tannas was forced to present redacted exhibits or give up its trade secrets, which it did not want to do (Paper 154 at 29). As explained in the decision denying the protective order, since the interference ultimately becomes public and open for inspection, the board has no authority to enforce a protective order (Paper 76). Tannas never sought rehearing of the decision denying its request for a protective order. To the extent that Tannas is now seeking reconsideration of that decision, the argument is far too late for consideration. See 37 CFR § 1.640(c) (a request for reconsideration to be filed 14 days from the decision).

Having considered Tannas' arguments in its request for reconsideration, we conclude that Tannas has failed to demonstrate that we misapprehended or overlooked any fact or argument first presented prior to the filing of the request for reconsideration.

The decision on preliminary motions (Paper 141) has been reconsidered to the extent necessary to provide the discussion here. No change in the decision will be made. Tannas request for reconsideration is <u>denied</u>.

|  |  |
|---|---|
| _/s/ Richard E. Schafer_ ) | ) |
| RICHARD E. SCHAFER ) | |
| Administrative Patent Judge ) | |
| ) | |
| _/s/ Sally C. Medley_ ) | BOARD OF PATENT |
| SALLY C. MEDLEY ) | APPEALS AND |
| Administrative Patent Judge ) | INTERFERENCES |
| ) | |
| _/s/ Linda R. Poteate_ ) | |
| LINDA R. POTEATE ) | |
| Administrative Patent Judge ) | |

cc (via facsimile):

Attorney for Tannas (real party in interest - Tannas):

William A. English (lead counsel)

Cohen Sakaguchi & English LLP
2040 Main Street, 9th Floor
Irvine, CA 92614

Tel: 949-724-1849
Fax: 949-625-8955

Attorney for Watson (real party in interest - Bae Systems Avionics Limited):

Leonard C. Mitchard (lead counsel)

Nixon & Vanderhye, P.C.
8th Floor
1100 North Glebe Road
Arlington, VA 222-4714

Tel: 703-816-4005 (lead)
Fax: 703-816-4100